## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BROOKSTONE HOLDINGS CORP., *et al.*,[1] | Case No. 18-_____ (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTORS TO ASSUME THE CLOSING STORE AGREEMENT, (B) AUTHORIZING AND APPROVING STORE CLOSING SALES FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, (C) AUTHORIZING THE IMPLEMENTATION OF CUSTOMARY EMPLOYEE BONUS PROGRAM AND PAYMENTS TO NON-INSIDERS THEREUNDER, (D) APPROVING DISPUTE RESOLUTION PROCEDURES, AND (E) APPROVING THE DEBTORS' STORE CLOSING PLAN**

Brookstone Holdings Corp. and its affiliated debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "Debtors") hereby move this Court (this

"Motion") for the entry of an interim order (the "Interim Order"), substantially in the form

annexed hereto as Exhibit A, and a final order (the "Final Order"), substantially in the form

annexed hereto as Exhibit B, pursuant to sections 105(a), 363, 365, and 554 of title 11 of the

United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(m) of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"), (a) authorizing the Debtors to assume[2] the agreement dated as of

August 1, 2018 by and among Gordon Brothers Retail Partners, LLC and Hilco Merchant

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: Brookstone Holdings Corp. (4638), Brookstone, Inc. (2895), Brookstone Company, Inc. (3478), Brookstone Retail Puerto Rico, Inc. (5552), Brookstone International Holdings, Inc. (8382), Brookstone Purchasing, Inc. (2514), Brookstone Stores, Inc. (2513), Big Blue Audio LLC (N/A), Brookstone Holdings, Inc. (2515), and Brookstone Properties, Inc. (2517). The Debtors' corporate headquarters and the mailing address for each Debtor is One Innovation Way, Merrimack, NH 03054.

[2] Pursuant to this Motion, the Debtors seek an interim order confirming that the Closing Store Agreement is operative and effective, and a final order granting the Debtors authority to assume the Closing Store Agreement.

Resources, LLC (collectively, the "Liquidation Consultant") and Brookstone Holdings Corp. (as amended, modified, or restated as of the date hereof, and together with all exhibits thereto, the "Closing Store Agreement"), a copy of which is attached to the Interim Order as Exhibit 2 thereto; (b) authorizing the Debtors to conduct store closing sales (collectively, the "Closing Sales") at certain store locations designated by the Debtors (such store locations, the "Closing Stores") in accordance with the proposed sale guidelines (the "Sale Guidelines") attached hereto as Exhibit C, with such sales to be free and clear of all liens, claims, encumbrances, and interests (collectively, the "Encumbrances"); (c) authorizing, but not directing, the Debtors to honor a customary bonus program for certain non-insider personnel with responsibilities related to the Closing Stores (the "Bonus Program"); (d) approving the proposed dispute resolution procedures described herein to resolve any disputes with governmental units (the "Resolution Procedures") regarding certain applicable non-bankruptcy laws that regulate liquidation and similar-themed sales; and (e) approving the Debtors' strategic plan in connection with the closure of certain retail locations by implementing the foregoing documents and procedures (the "Store Closing Plan").  In support of this Motion, the Debtors rely on the *Declaration of Greg Tribou in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "First Day Declaration") and the *Declaration of Stephen Coulombe in Support of the Debtors' Emergency Motion for Interim and Final Orders (A) Authorizing the Debtors to Assume the Closing Store Agreement, (B) Authorizing and Approving Store Closing Sales Free and Clear of All Liens, Claims and Encumbrances, (C)  Authorizing the Implementation of Customary Employee Bonus Program and Payments to Non-Insiders Thereunder, (D) Approving Dispute Resolution Procedures, and (E) Approving the Debtors' Store Closing Plan* (the "Coulombe Declaration"), and respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested herein are sections 105, 345, 363, 364(b), 503(b), 1107(a), and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2.

## BACKGROUND

### A.      General Background

2.      On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

3.      Contemporaneously herewith, the Debtors filed a motion seeking joint administration of their chapter 11 cases (collectively, the "Chapter 11 Cases") pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No trustee, examiner, or official committee of unsecured creditors has been appointed in the Chapter 11 Cases.

4.      Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of the Chapter 11 Cases can be found in the First Day Declaration.

**B.      The Debtors' Store Closing Plan**

5.      As of the Petition Date, the Debtors operated stores in 40 states and Puerto Rico and a distribution center located in Mexico, Missouri.  Prior to the Petition Date, the Debtors completed a comprehensive review of the performance of all of their retail stores to analyze, among other things, the profitability and viability of each store location and to determine the Debtors' optimal footprint.  The Debtors also engaged Berkeley Research Group, LLC ("BRG") and GLC Advisors & Co. ("GLC") to, among other things, assist with analyses around cost reduction.

6.      As a culmination of these efforts, the Debtors developed the Store Closing Plan, which they are continuing to refine, whereby they have planned an orderly exit from certain underperforming or unprofitable store locations in an effort to conserve resources and maximize utility.  Pursuant to the Store Closing Plan, the Debtors, in consultation with BRG and GLC, have determined that it is in the best interest of their estates to immediately prepare for the closure of up to 102 of the Debtors' underperforming stores plus the Debtors' liquidation center.

**C.      Engagement of Liquidation Consultant; Closing Store Agreement**

7.      The Debtors retained the Liquidation Consultant[3] because of its extensive expertise in conducting store closing sales, including the orderly liquidation of the inventory (the "Merchandise") and certain furniture, fixtures, equipment and other assets that the Debtors do not wish to retain (collectively, the "Offered FF&E" and collectively with the Inventory and any other assets located in a Closing Store, the "Store Assets") at the respective Closing Stores, with an eye toward maximizing revenues and value for the Debtors and their creditors.  The Debtors

---

[3] Gordon Brothers Retail Partners, LLC's parent company, Gordon Brothers Group, LLC ("GBG"), owns a minority interest in, has certain contractual relationships with, and from time to time may provide contractual services to, Gordon Brothers Finance Company ("Finance Company") in the ordinary course of its business. Finance Company is a secured lender to one or more of the Debtors. Pursuant to Section 10(B) of the Closing Store Agreement, the Debtors waived any actual or perceived conflict resulting from any of the foregoing.

selected the Liquidation Consultant to conduct the Closing Sales at the Closing Stores, and

determined that engaging the Liquidation Consultant was in the best interest of the Debtors and

their stakeholders.  The Debtors negotiated the terms and conditions of the Closing Store

Agreement in good faith and at arms'-length.  Accordingly, on August 1, 2018, the Debtors and

the Liquidation Consultant executed the Closing Store Agreement.  Although the Debtors

respectfully refer the Court to the Closing Store Agreement[4] in its entirety, the material terms

thereof are summarized in the table below:

| TERM | CLOSING STORE AGREEMENT |
| --- | --- |
| **Services Provided by Liquidation Consultant** | The Liquidation Consultant will be retained as the Debtors' exclusive, independent consultant to conduct the Closing Sales at the Closing Stores during the Sale Term to, among other things: (i) recommend appropriate discounting, point-of-purchase, point-of-sale, and other internal and external advertising to sell all of Debtors' goods; (ii) provide qualified supervision to oversee the conduct of the Closing Sales; (iii) maintain communication with Closing Store employees and managers; (iv) establish and monitor accounting functions for the Closing Sales; (v) recommend loss prevention strategies; (vi) coordinate with Debtors to ensure Closing Stores are properly maintained throughout the Closing Sales; and (vii) recommend appropriate staffing levels and incentive programs for Closing Store employees at the Closing Stores. *See* Closing Store Agreement, Exhibit A. |
| **Closing Stores** | The Closing Stores are designated on <u>Exhibit A</u> to the Closing Store Agreement, which provides for closure of up to 102 stores and the liquidation center.  *See* Closing Store Agreement, Section 2. |
| **Term of Closing Sales** | The Closing Sales shall commence on August 3, 2018 (the Sale Commencement Date) and shall end on September 30, 2018 (the Sale Termination Date); <u>provided</u>, <u>however</u>, that the Debtors and the Liquidation Consultant may mutually agree upon an earlier or later Sale Termination Date with respect to any one or more stores (on a store-by-store basis). *See* Closing Store Agreement, Section 2(A). |
| **Alternative Transaction** | From and after the Sale Commencement Date, Debtors and the Liquidation Consultant may mutually agree upon the terms of a global |

---

[4]  Capitalized terms used in the summary of the Closing Store Agreement, but not otherwise defined therein, shall have the meanings ascribed to such terms in the Closing Store Agreement.

| TERM | CLOSING STORE AGREEMENT |
|---|---|
|  | transaction (an Alternative Transaction) that affects the Closing Stores and the Closing Sale and that encompasses other assets of the Debtors which are not subject to the Closing Store Agreement. Such Alternative Transaction will be subject to a separate agreement which may provide for alternative disposition of the Merchandise and Owned FF&E and may make modifications to the terms of the Closing Store Agreement. Any such Alternative Transaction shall be subject in all respects to approval of such agreement by the Court. *See* Closing Store Agreement, Section 2(C). |
| **Expenses of Liquidation Consultant** | Debtors shall be responsible for all expenses incident to the conduct of the Closing Sales and the operation of the Closing Stores during the Sale Term, except for any Consultant Controlled Expenses which exceed the amounts budgeted therefor, in the amount of $520,871, on Exhibit B to the Closing Store Agreement. Liquidation Consultant will advance funds for the Consultant's Controlled Expenses, and the Debtor shall reimburse the Liquidation Consultant for any advanced amounts up to the budgeted amount in connection with weekly reconciliations. Debtors shall also reimburse Liquidation Consultant for reasonable sales expenses associated with the sale of the Offered FF&E, not to exceed the amount agreed to by the parties in an FF&E expense budget (with such amount being in addition to the Consultant Controlled Expenses budget). *See* Closing Store Agreement, Section 3 and 6(C). |
| **Compensation for Liquidation Consultant** | In consideration of its services hereunder, Debtors shall pay Liquidation Consultant an "Incentive Fee" equal to as one of the following (e.g., back to first dollar):<br><br>| Aggregate Recovery Percentage | Incentive Fee |<br>|---|---|<br>| Below 120.0% | No Incentive Fee |<br>| Between 120.0% and 129.99% | 0.50% of Gross Sales Proceeds |<br>| Between 130.0% and 134.99% | 0.75% of Gross Sales Proceeds |<br>| Between 135.0% and 144.99% | 1.00% of Gross Sales Proceeds |<br>| Above 145.0% | 1.50% of Gross Sales Proceeds |<br><br>On a weekly basis, the Debtors shall pay the Liquidation Consultant an amount equal to 0.75% of Gross Proceeds on account of the prior week's sales as an advance on these fees, and a reconciliation of the Incentive Fee shall be performed as part of the Final Reconciliation. The Liquidation Consultant will also earn the FF&E Commission equal to 15.0% of the gross sales of Offered FF&E, net of sales taxes. *See* Closing Store Agreement, Section 4(B), (D). |
| **Commission to** | The Debtors are entitled to an Additional Goods Fee equal to 7.5% of all |

| TERM | CLOSING STORE AGREEMENT |
|---|---|
| **Debtors for Sale of Additional Consultant Goods** | non-Debtor goods sold during the Closing Sale at the Closing Stores. *See* Closing Store Agreement, Section 7(B). |
| **Insurance; Risk of Loss** | During the Sale Term, Debtors shall maintain insurance with respect to the Merchandise and comprehensive liability insurance at its own expense. The Liquidation Consultant shall not be deemed to be in possession or control of the Closing Stores or the Merchandise or assets located therein or associated therewith. Debtors shall bear all responsibility for liability claims associated with the Closing Stores and the Merchandise. *See* Closing Store Agreement, Section 8. |
| **Indemnification by Liquidation Consultant** | Liquidation Consultant shall indemnify Debtors from and against all liabilities and attorneys' fees and expenses relating to (i) Liquidation Consultant's material breach of any agreement entered into in connection with the Closing Store Agreement; (ii) any harassment, unlawful, tortious, or otherwise actionable treatment of any employees or agents of Debtors by Liquidation Consultant; (iii) any claims by any party engaged by Liquidation Consultant as an employee or independent contractor arising out of such employment or engagement; and (iv) negligence, willful misconduct, or unlawful acts of Liquidation Consultant. *See* Closing Store Agreement, Section 9(A). |
| **Indemnification by Debtors** | Debtors shall indemnify Liquidation Consultant from and against all liabilities and attorneys' fees and expenses relating to (i) Debtors' material breach of any agreement entered into in connection with the Closing Store Agreement; (ii) any claims by any party engaged by Debtors' as an employee or independent contractor arising out of such engagement; (iii) any consumer warranty or products liability claims relating to any Merchandise; and (iv) negligence, willful misconduct, or unlawful acts of Debtors. *See* Closing Store Agreement, Section 9(B). |

## **RELIEF REQUESTED**

8.     By this Motion, the Debtors seek the entry of interim and final orders approving the Store Closing Plan and the Debtors' continued efforts in accordance therewith, including approving and authorizing (a) the Debtors' assumption of the Closing Store Agreement, (b) the Sale Guidelines, (c) conducting the Closing Sales in accordance with the Sale Guidelines,

(d) payment of the prepetition claims, if any, of the Liquidation Consultant under the Closing Store Agreement, (e) the Bonus Program and payment of the Closing Bonuses (as defined below) contemplated thereby, (f) the Resolution Procedures related to any disputes respecting Liquidation Laws, and (g) any related relief.

9.      The Debtors further request that the Court (a) set a deadline for filing objections to this Motion and entry of the Final Order, (b) set a final hearing on the Motion, and (c) enter the Final Order on this Motion in connection with such final hearing.

**A.      Closing Sales According to Sale Guidelines; Assumption of Closing Store Agreement**

10.     The Debtors seek approval of the Sale Guidelines attached to both the Interim Order and Final Order as Exhibit 1 thereto, and authorization to conduct the Closing Sales in accordance therewith.  The Sale Guidelines provide, among other things, that:  (a) all sales of Store Assets would be deemed free and clear of all Encumbrances; (b) Merchandise could be sold with the benefit of various marketing techniques and price mark-downs to promote efficient liquidation; and (c) certain Store Assets that cannot be promptly liquidated may be abandoned if and when the Debtors determine, in their business judgment and in consultation with the DIP Administrative Agent and DIP Term Agent, that retaining, storing, or removing such assets would result in unnecessary expense with little or no benefit to the estates.

11.     To effectuate a smooth transition into chapter 11 and minimize administrative expenses for their estates, the Debtors seek authorization to (a) assume the Closing Store Agreement and perform their obligations thereunder, including the payment of postpetition expenses compensation and commission, as applicable, in exchange for the Liquidation Consultant's services in connection with the Closing Sales, and (b) immediately commence the Closing Sales at designated Closing Stores.  As discussed in further detail below, the Debtors request authority to conduct the Closing Sales notwithstanding any provisions in any agreements

01:23477531.1

and/or any laws that regulate liquidations sales which purport to prohibit, restrict, or interfere with the Closing Sales.

12.    The Debtors' estates will suffer significant and irreparable harm if the Debtors are not permitted to assume the Closing Store Agreement and commence the Closing Sales immediately in accordance with the Sale Guidelines.  As described at length in the First Day Declaration, the Debtors are in a difficult financial situation; they need to maximize sources of liquidity and minimize expenses as much as possible.  The Closing Sales will help the Debtors with both of these goals.  With the cooperation of their employees and the services of the Liquidation Consultant, the Debtors will be able to liquidate inventory and assets at the Closing Stores so that they can exit the Closing Stores quickly and efficiently, thereby monetizing certain assets and eliminating certain expenses.  Any delay in the Closing Sales will cause the Debtors to incur additional administrative expenses by prolonging the liquidation process and delay their exit from the underperforming and unprofitable store locations.

**B.    Bonus Program; Closing Bonuses**

13.    To ensure maximum success of the Closing Sales, the Debtors seek authorization to implement the Bonus Program and fulfill their obligations thereunder to Bonus Program participants, all of whom are non-insiders.  Specifically, the Debtors request the authority to, at their discretion and in consultation with the DIP Administrative Agent and DIP Term Agent, provide additional compensation in the form of bonuses to each employee at each Closing Store (such employees, the "Closing Sales Team"), calculated by the Debtors in consultation with the Liquidation Consultant (collectively, all bonuses to the Closing Sales Team, the "Closing Bonuses"), provided, however, that each member of the Closing Sales Team is only eligible for a bonus if he or she remains employed by the Debtors through the termination of the Closing Sale at the respective Closing Store and does not resign or is terminated for cause.  The Debtors

01:23477531.1

request authority to determine the individual amounts of each Closing Bonus in consultation with the Liquidation Consultant, the DIP Administrative Agent, and the DIP Term Agent, except that the total aggregate cost of the Bonus Program, in any event, will not exceed 10.0% of the Debtors' gross annual payroll for the Closing Stores.  For the avoidance of doubt, the Debtors do not seek authority to pay any Closing Bonuses to insiders of the Debtors.

14.     The Debtors believe that allowing the Closing Sales Team to earn Closing Bonuses at the Closing Stores will provide much-needed motivation for key personnel who are critical to the success of the Closing Sales.  The Debtors believe that, absent the Bonus Program, the Debtors are likely to lose such key personnel at the Closing Stores at a time when the Debtors have few resources available to search for new employees, which would unnecessarily delay or frustrate the Closing Sales and hamstring the Debtors' efforts to maximize value.  On balance, the Debtors believe that the costs to the Debtors of the Closing Bonuses are far outweighed by the benefits such Closing Bonuses are likely to produce in the form of maximum productivity and cooperation during the Closing Sales, resulting in higher revenues in a shorter timeframe.

## C.      Dispute Resolution Procedures Relating to Liquidation Laws

15.     The Debtors recognize that the Closing Sales at certain Closing Stores may be subject to certain Liquidation Laws, which include but are not limited to various federal, state or local statute, ordinance, or rule, or licensing requirement directed at regulating "store closing," "sale on everything," "everything must go," "liquidation sale," "winter clearance outlet," or similar themed sales or bulk sale laws, including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers in connection with the sale, and ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions.  However, many such Liquidation Laws do not apply to court-ordered sales.  To the extent that any Liquidation Laws purport to prohibit,

01:23477531.1

restrict, or otherwise interfere with the Closing Sales at any Closing Stores, the Debtors request that the Court deem such Liquidation Laws to be waived with respect to the Closing Sales, which are under the supervision of this Court.

16.    Notwithstanding such request, the Debtors propose to serve, within three business days of the entry of the Interim Order and the Final Order, copies of such Orders and the Sale Guidelines attached thereto, via email, facsimile or regular mail on (a) the Attorney General's office for each state in which the Debtors operate a retail location, (b) the county consumer protection agency or similar agency for each county in which the Debtors operate a retail location, (c) the division of consumer protection for each state in which the Debtors operate a retail location, (d) the chief legal counsel for each local jurisdiction in which the Debtors operate a retail location (collectively, clauses (a) through (d), the "Applicable Governmental Units"),[5] and (e) the Landlords.  The Debtors further propose that any governmental unit (as defined in section 101(27) of the Bankruptcy Code) may assert a dispute related to any Liquidation Laws (such dispute, a "Liquidation Dispute") by sending a notice (a "Dispute Notice") explaining the nature of the dispute to (a) Gibson, Dunn & Crutcher, LLP, 200 Park Avenue, New York, NY 10166 (Attn: Matthew J. Williams, David M. Feldman, Matthew K. Kelsey, and Keith R. Martorana), (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn:  Michael R. Nestor, Sean M. Beach, and Andrew L. Magaziner), (c) Counsel to the DIP Administrative Agent, Morgan, Lewis & Bockius LLP, One Federal Street, Boston, MA 02110 (Attn: Christopher L. Carter), and (d) counsel to the DIP Term Agent, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: Jonathan D. Marshall).  If the Debtors, the Liquidation Consultant, and such governmental unit

---

[5]  The Applicable Governmental Units are listed on Exhibit E hereto.

are unable to resolve the Liquidation Dispute promptly after service of the Dispute Notice, such

governmental unit may file a notice with this Court detailing the nature of the Liquidation

Dispute (a "Dispute Resolution Notice").  The Debtors request that the Court retain exclusive

jurisdiction to resolve any Liquidation Disputes, and that the Court resolve any Dispute

Resolution Notices at the Final Hearing, or if filed after the Final Hearing, at the next available

omnibus hearing.  The proposed dispute resolution procedures related to the Liquidation Laws

discussed in this paragraph and in the Interim Order and Final Order are referred to herein as the

"Resolution Procedures."

## BASIS FOR RELIEF REQUESTED

**A.      Assumption of the Closing Store Agreement is Warranted Under Section 365 of the Bankruptcy Code**

17.      Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the

court's approval, may assume or reject any executory contract or unexpired lease." 11 U.S.C.

§ 365(a).  A debtor's determination to assume or reject an executory contract is governed by the

"business judgment" standard.  *See, e.g., In re HQ Global Holdings, Inc.,* 290 B.R. 507, 511

(Bankr. D. Del. 2003) (stating that debtor's rejection of executory contract is governed by

business judgment standard and can only be overturned if decision was the product of bad faith,

whim, or caprice).  In applying the "business judgment" standard, courts show substantial

deference to the debtor's decision to assume or reject.  *See Summit Land Co. v. Allen (In re*

*Summit Land Co.),* 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstances,

court approval of debtor's decision to assume or reject executory contract "should be granted as

a matter of course").  "The business judgment rule 'is a presumption that in making a business

decision the directors of a corporation acted on an informed basis, in good faith and in the honest

belief that the action taken was in the best interest of the company.'" *Official Comm. of*

*Subordinated Bondholders v. Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).  The business judgment rule applies in chapter 11 cases.  *See In re Integrated Res., Inc.*, 147 B.R. at 656 ("Delaware business judgment rule principles have 'vitality by analogy' in Chapter 11."); *see also Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a Debtor's management decisions.").

18.     Here, the Debtors have satisfied the "business judgment" standard and have a sound business reason for seeking to assume the Closing Store Agreement.  Assumption of the Closing Store Agreement will allow the Debtors to engage the Liquidation Consultant, on a postpetition basis, to manage the Closing Sales at the designated Closing Stores.  The Liquidation Consultant is an experienced liquidation consultant and will facilitate the Closing Sales and help the Debtors maximize their recovery on the Merchandise and the Offered FF&E located at all Closing Stores, which in turn will maximize value for the Debtors' estates and their creditors.  The Closing Sales are a significant component of the Debtors' efforts to maximize value because these sales enable the Debtors to sell Store Assets at the Closing Stores in a manner that is designed to maximize efficiency and increase overall profitability.  Most of the Closing Stores are underperforming or unprofitable, and thereby do not generate positive cash flow and/or are a significant drain on liquidity.  Allowing the Closing Sales to proceed in accordance with the Sale Guidelines will allow the Debtors to most efficiently and quickly monetize the Store Assets in a uniform and orderly process with the assistance of an experienced liquidation consultant.  The Debtors believe that they will reap significant benefits by assuming the Closing Store Agreement and thereby allowing the Liquidation Consultant to continue to

01:23477531.1

manage the Closing Sales at the Closing Stores.  Given the complexity of the Closing Sales

across various states and given the multitude of stores, the Liquidation Consultant will provide

invaluable strategic, managerial, and accounting services, allowing the Debtors to focus their

efforts on other key aspects of their reorganization efforts.  Therefore, efficient and effective

liquidation sales and procedures, as contemplated the Sale Guidelines and the services to be

provided by the Liquidation Consultant, will allow the Debtors to more quickly vacate those

locations and avoid the accrual of unnecessary administrative expenses.

19.    On the other hand, if the Debtors do not assume the Closing Store Agreement and

their obligations thereunder, they are likely to lose the benefit of the Liquidation Consultant's

experience, judgment and guidance related to the liquidation of Merchandise and Offered FF&E.

As a result, the Debtors and their advisors will likely need to suspend the Closing Sales, which

could otherwise commence promptly after the Petition Date, and divert substantial time and

effort to prepare for and manage the Closing Sales internally or seek bids from other advisors

who could prepare for and run the Closing Sales.  Ultimately, such disruption and delay would

materially increase the Debtors' administrative expenses and overall losses, without any

associated benefits of such delays to their estates.

20.    This court has approved the assumption of agreements similar to the Closing

Store Agreement in several recent chapter 11 cases involving retail debtors.  Pursuant to this

Motion, the Debtors seek, on an interim basis, an order that confirms that the Closing Store

Agreement is operative and effective.  On a final basis, the Debtors seek authority to assume the

Closing Store Agreement.  Similar relief has been granted in this jurisdiction.

21.    Accordingly, the Debtors submit that they have exercised their reasonable

business judgment in seeking to assume the Closing Store Agreement and thereby engaging and

enabling the Liquidation Consultant to proceed with the Closing Sales at the Closing Stores, and

that there is sufficient business justification for the assumption of the Closing Store Agreement.

**B.     Commencing the Closing Sales Pursuant to the Sale Guidelines is Authorized
        Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code**

22.     Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court

may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title."  11 U.S.C. § 105(a).  Section 363(b) permits a debtor to use, sell, or

lease, estate property "other than in the ordinary course of business" after notice and a hearing.

11 U.S.C. § 363(b)(1).  Courts have authorized relief under section 363(b) where a debtor

demonstrated a sound business justification for such relief.  *See Comm. of Equity Sec. Holders v.*

*Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt

requires that a judge determining a § 363(b) application expressly find from the evidence

presented before him at the hearing a good business reason to grant such an application."); *In re*

*Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1985) ("[T]he debtor must articulate

some business justification, other than mere appeasement of major creditors.").

23.     As noted in the preceding section, once a debtor has articulated a valid business

justification, the court accords great deference to such judgment, even in the context of chapter

11 cases.  *See In re Integrated Res., Inc.*, 147 B.R. at 656; *In re Johns-Manville Corp.*, 60 B.R. at

615–16.  The benefit of the business judgment rule is equally applicable in the context of sales

under section 363.  *See, e.g.*, *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515

(7th Cir. 1991) ("[D]ebtor in possession can sell property of the estate outside the ordinary

course of business if . . . he has an 'articulated business justification.'"); *Stephens Indus., Inc. v.*

*McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (authorizing sale of debtor's assets pursuant to

section 363 "when a sound business purpose dictates such action").  The Third Circuit has

explained that "under normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification" with respect to sales under section 363. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996).

24.     As discussed in the preceding section, the Debtors have determined, in the sound exercise of their business judgment, that commencing the Closing Sales at the Closing Stores on and after the Petition Date, or as soon thereafter as possible, is essential to their reorganization efforts in order to minimize administrative expenses and liquidate assets at certain unprofitable locations as efficiently and quickly as possible.  The Sale Guidelines allow the Debtors to move forward with a uniform and orderly process of monetizing the Stores Assets at the Closing Stores, with the aid and efforts of an experienced liquidation consultant to maximize value and efficiency.  Without the Sale Guidelines, the Debtors are unlikely to be able to liquidate such assets as effectively and efficiently, which will interfere with their restructuring efforts at a time when the Debtors have little time to spare as they try to maximize value for all stakeholders.

25.     This court has approved similar store closure sales, liquidations, and disposal of assets, also with the assistance of a third-party liquidation consultant or agent, similar to the Sale Guidelines, in several recent chapter 11 cases involving retail debtors.

26.     Accordingly, the Debtors have a compelling business justification—to efficiently and effectively liquidate Store Assets for maximum value—for seeking approval to continue the Closing Sales pursuant to section 363(b) and in accordance with the Sale Guidelines.

## C.     Sale of the Store Assets Free and Clear of Liens, Claims and Encumbrances is Authorized Under Section 363 of the Bankruptcy Code

27.     A debtor in possession may sell property under section 363(b) and section 363(f) of the Bankruptcy Code "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

"(1)     applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is a bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."

11 U.S.C. § 363(f).

28.     Although the term "any interest" is not defined in the Bankruptcy Code, the Third Circuit has noted the trend in modern cases toward a "broader interpretation which includes other obligations that may flow from ownership of the property." *Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 258–59 (3d Cir. 2000). The scope of section 363(f) is not limited to *in rem* interests in a debtor's assets. *Id.* (citing *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581–82 (4th Cir. 1996)). A debtor can therefore sell its assets under section 363(f) free and clear of successor liability that otherwise would have arisen under federal statute. *Id.*

29.     The Debtors request approval to sell the Store Assets on a final "as is" basis, free and clear of any Encumbrances in accordance with section 363(f) of the Bankruptcy Code. The Debtors anticipate that they will be able to satisfy one or more of the conditions set forth in section 363(f) in connection with any Encumbrance a party may assert against the Store Assets. Indeed, the lenders under the Credit Agreement, dated as July 7, 2014, which have first priority perfected security interests in the Store Assets, have expressly consented to selling the Store Assets free and clear of Encumbrances. Furthermore, the Debtors propose that any such liens, claims, and encumbrances be transferred and attached to the proceeds of the Closing Sales, as applicable, with the same priority and subject to the same rights, claims, defenses, and

01:23477531.1

objections, if any, of all parties with respect thereto.  This court has approved similar relief in

several recent chapter 11 cases involving retail debtors.

**D.    Waiver of Contractual Restrictions in Leases Restricting the Closing Sales is Authorized and Appropriate**

30.    The Debtors recognize that the Closing Sales and the Sale Guidelines may be

inconsistent with certain Contractual Restrictions contained in leases, agreements, licenses,

recorded documents or other obligations applicable to certain Closing Stores.  However, the

Debtors request that the Court override or invalidate any Contractual Restrictions that may

impair the Debtors' ability to conduct the Closing Sales at the Closing Stores.

31.    Store closing or liquidation sales have become a routine aspect of chapter 11

cases involving retail debtors.  Such sales are consistently approved by courts despite provisions

in various contractual and recorded documents that seek and purport to prohibit or restrict such

sales.  *See In re R.H. Macy & Co.*, 170 B.R. 69, 77 (Bankr. S.D.N.Y. 1994) (finding restrictive

lease provision is unenforceable against debtor seeking to conduct going-out-of-business sale

"because it conflicts with the Debtor's fiduciary duty to maximize estate assets"); *In re Ames

Dep't Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992) ("[T]o enforce the anti-[going out-

of-business] sale clause of the Lease would contravene overriding federal policy requiring

Debtor to maximize estate assets by imposing additional constraints never envisioned by

Congress."); *In re Tobago Bay Trading Co.*, 112 B.R. 463, 467 (Bankr. N.D. Ga. 1990) (finding

clause in lease prohibiting going-out-of-business sales is unenforceable).

32.    Here, for the reasons discussed in this Motion and in the First Day Declaration,

the Debtors believe that the Closing Sales are an essential and critical component of the Debtors'

restructuring strategy.  Therefore, any Contractual Restrictions that would prohibit, restrict, or

otherwise interfere with the Closing Sales should be deemed unenforceable.  Courts in this and

other jurisdictions have granted similar relief in other bankruptcy cases involving retail debtors,

holding that restrictive provisions in various documents are impermissible restraints on a

debtor's ability to maximize the value of its assets under section 363 of the Bankruptcy Code.

33.    Accordingly, the Debtors respectfully request the Court to waive the applicability

or deem unenforceable any Contractual Restrictions with respect to any Closing Stores that could

otherwise inhibit the Debtors' ability to conduct the Closing Sales.

**E.    Exemption from Liquidation Laws Imposing Restrictions on the Closing Sales is Warranted and Appropriate**

34.    The Debtors recognize that various Liquidation Laws, including but not limited to

state and local rules, laws, ordinances, and regulations that relate to permitting, licensing,

bonding, waiting periods, time limits, bulk sale restrictions, and other related laws governing the

conduct of store closing, liquidation, or other inventory clearance sales, may apply in certain

states in which the Closing Stores are located.  But, such Liquidation Laws often provide that

court-ordered liquidation sales are exempt from compliance therewith.

35.    In the event, however, that a Liquidation Law does not expressly waive

compliance therewith of a court-supervised bankruptcy sale, the Debtors submit that such

Liquidation Law should be deemed to be waived to the extent that it conflicts with section 363 of

the Bankruptcy Code.  Here, the Closing Sales are already subject to this Court's supervision.

*See* 28 U.S.C. § 1334.  Therefore, this Court is able to supervise the Closing Sales and such

supervision adequately protects the public interest and the Debtors' creditors.  Moreover, section

363 requires the Debtors to operate their businesses in a way that maximizes recoveries for

creditors, but compliance with Liquidation Laws could constrain the Debtors' ability to marshal

and maximize assets for the benefit of creditors.  The Closing Sales are a legitimate method by

which the Debtors can maximize returns from the sale of the Store Assets for the benefit of their

01:23477531.1

estates, their creditors, and their stakeholders, in accordance with the obligations under section 363.

36.     Therefore, to the extent that any Liquidation Laws purport to interfere with the Closing Sales, the Debtors seek authority to nevertheless proceed with the Closing Sales without the necessity of, and the delay associated with, complying with such Liquidation Laws (except health and safety laws), which would otherwise require the Debtors to obtain various state licenses or permits, observe state and local waiting periods or time limits, and/or satisfy any additional requirements with respect to advertising or conducting the Closing Sales, or transferring merchandise among the Debtors' various stores and distribution center.  Specifically, the Debtors submit that such Liquidation Laws should be deemed inapplicable given this Court's supervision of the Closing Sales.  The Debtors further request that no other person or entity, including (but not limited to) any governmental unit, including any federal, state, or local agency, department, or governmental authority, or any lessor be allowed to take any action to prevent, interfere with, or otherwise hinder the conduct of the Closing Sales, including the advertisement and promotion of the Closing Sales, as contemplated in the Closing Store Agreement and in accordance with the Sale Guidelines.

37.     The Debtors propose that, to the extent that any Applicable Governmental Unit seeks to dispute a Closing Sale at a Closing Store on the basis of one or more Liquidation Laws, such party may serve a Dispute Notice on the Debtors, in accordance with the Resolution Procedures described in this Motion and set forth in the Interim Order and the Final Order.  Such relief has been granted to other retail debtors by this Court and courts in other jurisdictions.

01:23477531.1

F.    **Abandonment of Certain Property in Connection with the Closing Sales and in Accordance with the Sale Guidelines is Warranted Under Section 554 of the Bankruptcy Code**

38.    Section 554 of the Bankruptcy Code provides that after notice and a hearing, a debtor "may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a); s*ee also Hanover Ins. Co. v. Tyco Indus., Inc.*, 500 F.2d 654, 657 (3d Cir. 1974) ("[A trustee] may abandon his claim to any asset, including a cause of action, he deems less valuable than the cost of asserting that claim."). *See, e.g.*, *In re Contract Research Solutions, Inc.*, No. 12-11004, 2013 WL 1910286, at *4 (Bankr. D. Del. May 1, 2013) ("[A debtor] need only demonstrate that [it] has exercised sound business judgment in making the determination to abandon.").

39.    Here, in accordance with the Sale Guidelines and with the aid of the Liquidation Consultant, the Debtors will make every reasonable effort to sell all Store Assets at the Closing Stores as quickly and efficiently as possible for the purpose of monetizing such assets and vacating the Closing Stores as soon as possible.  As noted above, the Debtors are seeking to liquidate Merchandise as well as Offered FF&E (which the Debtors have determined is in their best interest to sell) located at each of the Closing Stores, in consultation with the Liquidation Consultant.  However, during the course of the Closing Sales, the Debtors may determine, in consultation with the DIP Administrative Agent and DIP Term Agent, that the costs associated with the continued storage and sale efforts respecting certain Merchandise and/or Offered FF&E is likely to exceed the projected proceeds that could be realized from the sale thereof, or that certain Merchandise, Offered FF&E or other remaining Stores Assets may have low prospects for resale.  In such event, any remaining Store Assets would likely impose a financial burden on the estates, in the form of storage and removal costs, but are unlikely to provide much, if any, value in return to the estates (such remaining Store Assets, the "Remaining Property").

40.     To maximize the value of the Debtors' assets and to minimize unnecessary costs to the estates, the Debtors respectfully request authority to designate any property located at the Closing Stores as Remaining Property and, in consultation with the DIP Administrative Agent and DIP Term Agent, to abandon such Remaining Property located at any of the Closing Stores once the applicable Closing Sale has terminated without incurring liability to any person or entity.  Before designating any assets as Remaining Property and/or abandoning any Remaining Property at any Closing Store, the Debtors will have determined in the exercise of their sound business judgment and in consultation with the DIP Administrative Agent and DIP Term Agent that such Remaining Property to be abandoned by the Debtors is either (a) burdensome to the estates because removal and storage costs for the Remaining Property are likely to exceed any net proceeds therefrom or (b) of inconsequential value and benefit to the estates.  Similar relief for other retail debtors has been approved by courts in this jurisdiction under similar circumstances in recent bankruptcy cases.

41.     The Debtors will use all commercially reasonable efforts to remove, or cause to be removed, any confidential or personal identifying information (which alone or in conjunction with other information identifies an individual, including, but not limited to, an individual's name, social security number, date of birth, government-issued identification number, account number, and credit or debit card number) in any of the Debtors' hardware, software, computers or cash registers or similar equipment that constitute any Offered FF&E or any Remaining Property before any such property is sold or abandoned.

42.     Accordingly, the Debtors respectfully request Court authorization to designate and thereafter abandon Remaining Property if they determine, in consultation with the DIP

01:23477531.1

Administrative Agent and DIP Term Agent, that the benefits of retaining such property for storage or resale are greater than the costs of such retention.

**G.**     **The Bonus Program and Payment of Closing Bonuses is Warranted Under Sections 105(a) and 363(b) of the Bankruptcy Code**

43.     As discussed above, section 105(a) of the Bankruptcy Code empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," whereas section 363 empowers the court to authorize a debtor to use assets outside the ordinary course of business for a valid business purpose.  11 U.S.C. §§ 105(a), 363(b).  On the basis of these provisions, the Debtors seek the Court's approval to implement the Bonus Program and to honor their obligations thereunder, subject to entry of a Final Order, in connection with the Closing Sales at the Closing Stores, including the payment of Closing Bonuses to certain of the Debtors' non-insider employees.

44.     The Debtors submit that the Bonus Program and the Closing Bonuses will drive the success of the Closing Sales for the benefit of the Debtors and all creditors.  The Debtors believe that the Closing Bonuses will motivate key personnel at the Closing Stores to cooperate with the Debtors and the Liquidation Consultant and facilitate the Closing Sales, thereby increasing the Debtors' prospects for maximizing liquidation revenues at the Closing Stores.  For instance, if one of the members of the Closing Sales Team where to quit, such a vacancy would be filled by more expensive personnel of the Liquidation team.  The Debtors further believe that without the Closing Bonuses, the Debtors will be unable to retain the Closing Sales Team for the benefit of each Closing Store.  Such attrition at this difficult time will cause delays and frustrate the goals of the Closing Sales because the Debtors will need to seek additional employees to manage the Closing Stores, and such new employees will likely be less familiar with the

Merchandise and the operations of the Closing Stores.  Ultimately, such delays will reduce the overall success and profitability of the Closing Sales.

45.      Therefore, the Debtors submit that there is ample justification and compelling business reasons for implementing the Bonus Program and paying the Closing Bonuses associated with the Closing Sales.  Bonuses in connection with store closing sales in the retail industry are a typical practice in many store liquidations.  Indeed, courts in this jurisdiction have approved similar bonus programs under similar circumstances in other retail bankruptcy cases.

46.      Accordingly, the Debtors respectfully submit that the Bonus Program and the Closing Bonuses warrant approval under sections 105(a) and 363 of the Bankruptcy Code.

**H.      Appointment of a Consumer Privacy Ombudsman is Not Required by Sections 332 and 363(b)(1) of the Bankruptcy Code**

47.      Section 363(b)(1) of the Bankruptcy Code provides that a debtor may not sell or lease personally identifiable information unless such sale or lease is consistent with its policies or upon appointment of a consumer privacy ombudsman (a "CPO") pursuant to section 332 of the Bankruptcy Code.  Section 332 requires the appointment of a CPO no less than seven days in advance of a hearing on a sale under section 363(b)(1) so that such CPO can assist the Court in its consideration of a "proposed sale or lease of personally identifiable information under section 363(b)."

48.      Here, pursuant to the Closing Store Agreement, the Liquidation Consultant will not be purchasing any assets from the Debtors, much less personally identifiable information from the Debtors (e.g., customer lists).  The Debtors also do not intend to sell any personally identifiable information in the course of the Closing Sales, and indeed, intend to scrub all Store Assets to ensure that no confidential and personally identifiable information is transferred in connection with the sale of any such assets.

49.     Accordingly, the Debtors submit that the appointment of a CPO is not necessary in connection with the Closing Sales.

## IMMEDIATE RELIEF IS JUSTIFIED

50.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief within 21 days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief is necessary to avoid immediate and irreparable harm.  Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. at 36 n.2 (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

51.     The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions, and has instructed that irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  *See, e.g.*, *Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 Fed. App. 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)); *see also In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008) (holding that Bankruptcy Rule 6003 permits entry of retention orders on an interim basis to avoid irreparable harm).

52.     As described herein and in the First Day Declaration, the Debtors will suffer immediate and irreparable harm without Court authorization for the relief requested herein.

53.     Accordingly, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## REQUEST FOR WAIVER OF STAY

54.    The Debtors request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief sought herein is necessary for the Debtors to realize maximum return from the Closing Sales and, ultimately, to preserve value for their estates and creditors.  Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## DEBTORS' RESERVATION OF RIGHTS

55.    Nothing contained herein is intended, or should be construed, as an admission of the validity of any claim against the Debtors or a waiver of the Debtors' rights to dispute any claim.  The Debtors expressly reserve their rights to contest all Liquidation Disputes and any invoice or claim of any governmental unit, any landlord, or any other party.  Moreover, to the extent the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be, and should not be construed as, an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

56.    Nothing contained herein is intended, or should be construed, as an approval, assumption, or rejection of any agreement, contract, or lease other than the Closing Store Agreement under section 365 of the Bankruptcy Code.  This Motion should not be construed as a determination that any leases not associated with the Closing Stores are to be assumed or rejected.

01:23477531.1

## NOTICE

57.    The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) holders of the 30 largest unsecured claims on a consolidated basis against the Debtors; (c) counsel to Wells Fargo Bank, National Association in its capacity as DIP Administrative Agent and as Agent under the Credit Agreement, dated as July 7, 2014; (d) counsel to Gordon Brothers Finance Company, in its capacity as DIP Term Agent and Term Agent under the Term Note dated June 3, 2015; (e) counsel to Wilmington Trust, National Association, in its capacity as Trustee under the Indenture dated as of July 7, 2014; (f) counsel to Sanpower (Hong Kong) Company Limited as Lender under certain secured and unsecured notes; (g) all state and local taxing authorities in the State(s) where the assets are located; (h) the Internal Revenue Service; and (i) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of page intentionally left blank]*

01:23477531.1

WHEREFORE, the Debtors respectfully request that the Court enter interim and final orders, substantially in the forms annexed hereto, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: August 2, 2018
      Wilmington, Delaware

*/s/ Andrew L. Magaziner*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Michael R. Nestor (No. 3526)
Sean M. Beach (No. 4070)
Andrew L. Magaziner (No. 5426)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:    (302) 571-6600
Fax:    (302) 571-1253
Email: mnestor@ycst.com
       sbeach@ycst.com
       amagaziner@ycst.com

-and-

GIBSON, DUNN & CRUTCHER LLP
Matthew J. Williams
David M. Feldman
Matthew K. Kelsey
Keith R. Martorana
Jason Zachary Goldstein
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
Email:  mjwilliams@gibsondunn.com
       dfeldman@gibsondunn.com
       mkelsey@gibsondunn.com
       kmartorana@gibsondunn.com
       jgoldstein@gibsondunn.com

*Proposed Counsel to the Debtors and Debtors in Possession*

01:23477531.1

**<u>EXHIBIT A</u>**

**PROPOSED INTERIM ORDER**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BROOKSTONE HOLDINGS CORP., *et al.*,[1] | Case No. 18-_____ (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. ___** |

**INTERIM ORDER (A) AUTHORIZING THE DEBTORS TO ASSUME CLOSING STORE AGREEMENT; (B) AUTHORIZING AND APPROVING CLOSING SALES FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES; (C) AUTHORIZING THE IMPLEMENTATION OF CUSTOMARY EMPLOYEE BONUS PROGRAM AND PAYMENTS TO NON-INSIDERS THEREUNDER; (D) APPROVING DISPUTE RESOLUTION PROCEDURES; AND (E) APPROVING THE DEBTORS' STORE CLOSING PLAN**

Upon the *Debtors' Motion for Interim and Final Orders (A) Authorizing the Debtors to Assume Closing Store Agreement; (B) Authorizing and Approving Closing Sales Free and Clear of All Liens, Claims and Encumbrances; (C) Authorizing the Implementation of Customary Employee Bonus Program and Payments to Non-Insiders Thereunder; (D) Approving Dispute Resolution Procedures; and (E) Approving the Debtors' Store Closing Plan* (the "Motion")[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"); and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and the Court having found that venue of

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: Brookstone Holdings Corp. (4638), Brookstone, Inc. (2895), Brookstone Company, Inc. (3478), Brookstone Retail Puerto Rico, Inc. (5552), Brookstone International Holdings, Inc. (8382), Brookstone Purchasing, Inc. (2514), Brookstone Stores, Inc. (2513), Big Blue Audio LLC (N/A), Brookstone Holdings, Inc. (2515), and Brookstone Properties, Inc. (2517). The Debtors' corporate headquarters and the mailing address for each Debtor is One Innovation Way, Merrimack, NH 03054.

[2] All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

these cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and

the Court having found that due and sufficient notice of the Motion has been given under the

particular circumstances and that no other or further notice of the Motion need be given; and the

Court having determined that it may enter a final order consistent with Article III of the United

States Constitution; and upon consideration of the First Day Declaration; and a hearing having

been held to consider the relief requested in the Motion; and upon the record of the hearing and

all of the proceedings had before the Court; and the Court having found and determined that the

relief sought in the Motion is in the best interest of the Debtors, their estates, their creditors and

all other parties in interest; and that the legal and factual bases set forth in the Motion establish

just cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor,

### FOUND, CONCLUDED AND DETERMINED that:[3]

A.      The Debtors have advanced sound business reasons for entering into the Closing

Store Agreement on an interim basis as set forth in the Motion and at the hearing, and entering

into the Closing Store Agreement is a reasonable exercise of the Debtors' business judgment and

is in the best interest of the Debtors and their estates.

B.      The Closing Store Agreement was negotiated, proposed, and entered into by

Debtor Brookstone Company, Inc. and the Liquidation Consultant without collusion, in good

faith and from arm's-length bargaining positions.

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law
pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the
extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent
any of the following conclusions of law constitute findings of fact, they are adopted as such.

01:23477531.1

2

C.      The Sale Guidelines, as described in the Motion and attached as <u>Exhibit 1</u> hereto, are reasonable and will maximize the returns on the Store Assets for the benefit of the Debtors' estates and creditors.

D.      The Closing Sales, in accordance with the Sale Guidelines and with the assistance of the Liquidation Consultant, will provide an efficient means for the Debtors to liquidate and dispose of the Store Assets as quickly and effectively as possible, and are in the best interest of the Debtors' estates.

E.      The Bonus Program will help the Debtors retain key non-insider personnel, ensure that the Closing Sales are not delayed or frustrated, maximize loss prevention efforts, and minimize shrink.

F.      The Resolution Procedures are fair and reasonable, and comply with applicable law.

G.      The Debtors have represented that, pursuant to the Motion, they are not seeking to either sell or lease personally identifiable information during the course of the Closing Sales at the Closing Stores; <u>provided</u>, <u>however</u>, that the Liquidation Consultant will be authorized to distribute emails and promotional materials to the Debtors' customers consistent with the Debtors' existing policies on the use of consumer information.

H.      The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

I.      The entry of this Interim Order is in the best interest of the Debtors and their estates, creditors, and all other parties in interest herein.

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED as set forth herein on an interim basis through and including _____ __, 2018 (the "Interim Period").

2. On _____ __, 2018, at _____ (ET), a hearing (the "Final Hearing") will be held before this Court to consider the relief requested in the Motion on a final basis. All objections, if any, to the Motion shall be in writing and filed with the Court and served on counsel to the Debtors, the DIP Administrative Agent and the DIP Term Agent, any duly appointed Committee, the Liquidation Consultant, and Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709 Wilmington, Delaware 19899 (Attn: Douglas D. Herrmann), as to be received on or before _____ __, 2018, at 4:00 p.m. (ET). The Debtors shall file any reply (or replies) to such objections on or before _____ __, 2018 at 4:00 p.m. (ET) and serve such replies on the objecting parties, as applicable, the DIP Administrative Agent and the DIP Term Agent, and any duly appointed committee's counsel.

3. The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order. The failure to specifically include any particular provision of the Closing Store Agreement in this Interim Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Closing Store Agreement and all of its provisions, payments and transactions, be and hereby are authorized and approved as and to the extent provided for in this Interim Order.

4. To the extent there is any conflict between this Interim Order, the Sale Guidelines, and the Closing Store Agreement, the terms of this Interim Order shall control over all other documents, and the Sale Guidelines shall control over the Closing Store Agreement.

**A.      Assumption of the Closing Store Agreement by the Debtors**

5.       The Closing Store Agreement, a copy of which is attached to this Interim Order as

Exhibit 2, is hereby assumed, on an interim basis pending the entry of a final order, pursuant to

section 365 of the Bankruptcy Code.  The Debtors are authorized to act and perform in

accordance with the terms of the Closing Store Agreement, including, making payments required

by the Closing Store Agreement to the Liquidation Consultant without the need for any

application of the Liquidation Consultant or a further order of the Court, subject to the Objection

Rights (as defined below).  Within thirty (30) days of the conclusion of all Closing Sales, the

Debtors shall file a summary report of such Closing Sales that will include (i) the stores closed,

(ii) gross revenue from Merchandise sold, and (iii) gross revenue from FF&E sold, and also

provide the U.S. Trustee, the DIP Administrative Agent, the DIP Term Agent, and the

Committee (y) the calculation of and compensation paid to the Liquidation Consultant and (z)

expenses reimbursed to the Liquidation Consultant; provided, further, that only the U.S. Trustee

or Committee may, within twenty (20) days after such report is filed and information is provided,

object to the compensation paid or expenses reimbursed to the Liquidation Consultant only as to

and on the following grounds: (i) that the calculation of the compensation paid to the Liquidation

Consultant pursuant to the compensation structure contemplated by the Closing Store Agreement

as of the date of this Interim Order was not performed correctly; (ii) the calculation and

reasonableness of any compensation paid to the Liquidation Consultant pursuant to a

compensation structure other than as reflected in the Closing Store Agreement as of the date of

this Interim Order; and (iii) the reasonableness of any expenses reimbursed by the Debtors to the

Liquidation Consultant that were in excess of the expense budget(s) filed with the court prior to

the final hearing on the Motion ((i) through (iii), collectively, the "Objection Rights").

Notwithstanding this or any other provision of this Interim Order, nothing shall prevent or be

construed to prevent the Liquidation Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates from (x) guaranteeing a recovery on or otherwise acquiring Merchandise or FF&E that may not be sold during the Closing Sales, subject to reaching an agreement with the Debtors with respect to such guarantee or other acquisition and providing notice as would be reasonable under the circumstances; or (y)(1) bidding on the Debtors' assets not subject to the Closing Store Agreement pursuant to an agency agreement or otherwise and (2) the Liquidation Consultant is hereby authorized to bid on and guarantee or otherwise acquire such assets notwithstanding anything to the contrary in the Bankruptcy Code or other applicable law, provided that such guarantee transaction or acquisition is approved by separate order of this Court.

**B.      Authority to Engage in the Closing Sales at the Closing Stores**

6.      The Debtors are authorized, on an interim basis pending the Final Hearing, pursuant to section 105(a) and section 363(b)(1) of the Bankruptcy Code, to conduct the Closing Sales at the Closing Stores in accordance with this Interim Order, the Sale Guidelines, and the Closing Store Agreement.

7.      The Sale Guidelines are approved in their entirety on an interim basis.

8.      Except as provided herein, neither the Debtors nor the Liquidation Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any governmental unit (as defined in section 101(27) of the Bankruptcy Code) or any landlord, to conduct the Closing Sales at the Closing Stores and any related activities in accordance with the Sale Guidelines.

9.      No landlord, licensor, property owner, and/or property manager shall prohibit, restrict, or otherwise interfere with any Closing Sale at any Closing Store.

01:23477531.1

C.      **Conducting the Closing Sales at the Closing Stores**

10.     All newspapers and other advertising media in which the Closing Sales may be advertised and all landlords of the Closing Stores are directed to accept this Interim Order as binding authority so as to authorize the Debtors and the Liquidation Consultant to conduct the Closing Sales and the sale of Merchandise and Offered FF&E pursuant to the Closing Store Agreement and the Sale Guidelines, including, without limitation, to conduct and advertise the sale of the Merchandise and Offered FF&E in the manner contemplated by and in accordance with this Interim Order, the Sale Guidelines, and the Closing Store Agreement.

11.     Nothing in this Interim Order or the Closing Store Agreement releases the Debtors or the Liquidation Consultant from complying with laws and regulations of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws").

12.     The Debtors and the Liquidation Consultant are hereby authorized to take such actions as may be necessary and appropriate to implement the Closing Store Agreement and to conduct the Closing Sales without the need for a further order of this Court, including, but not limited to, advertising the sale as a "store closing," "sale on everything," "everything must go," "liquidation sale," or similar themed sale through the posting of signs in accordance with the Sale Guidelines, notwithstanding any applicable non-bankruptcy laws that restrict such sales and activities, and notwithstanding any provision in any lease, sublease, license or other agreement related to occupancy, "going dark," or abandonment of assets (subject to the entry of a final order), or other provisions that purport to prohibit, restrict, or otherwise interfere with the Closing Sales.

01:23477531.1

13.     No person or entity, including, but not limited to, any landlord, service providers, utility provider, and creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder the Closing Sales or the sale of Merchandise or Offered FF&E, or the advertising and promotion of the Closing Sales.

14.     The Debtors and the Liquidation Consultant shall (a) accept the Debtors' validly-issued Gift Cards, Gift Certificates, and Rewards Certificates (each as defined in the Customer Programs Motion)[4] that were issued by or on behalf of the Debtors before the Petition Date in accordance with the Debtors' applicable policies and procedures as they existed as of the Petition Date, as described in the Customer Programs Motion and (b) accept returns of merchandise sold by the Debtors before the Petition Date, provided that such return is otherwise in compliance with the Debtors' applicable policies and procedures as of the Petition Date.

15.     All sales of all Store Assets shall be "as is" and final.  Conspicuous signs stating that "all sales are final" and "as is" will be posted at the cash register areas at all Closing Stores. All state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales." Further, as to the Closing Stores only, the Debtors and/or the Agent shall accept return of any goods purchased during the Store Closing Sales that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within the return period advertised to the purchaser at the Closing Store at the time of such purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect.

---

[4]     As used herein, the "Customer Programs Motion" refers to the *Debtors' Motion for Interim and Final Orders Authorizing Debtors to Honor and Continue Certain Customer Programs and Customer Obligations in the Ordinary Course of Business.*

16.     The Liquidation Consultant may sell Additional Consultant Goods at any of the Closing Sales on the terms and subject to the conditions set forth in the Closing Store Agreement and this Interim Order.

17.     The Debtors remain responsible for the payment of any and all sales taxes.  The Debtors are directed to remit all taxes accruing from the Closing Sales to the applicable governmental units as and when due, provided that in the case of a bona fide dispute, the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable governmental unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable governmental unit for which the sales taxes are collected.

18.     Pursuant to section 363(f) of the Bankruptcy Code, the Liquidation Consultant, on behalf of the Debtors, is authorized to sell all Merchandise or Offered FF&E pursuant to the Closing Store Agreement and in accordance with the Sale Guidelines.  All sales of Merchandise or Offered FF&E, whether by the Liquidation Consultant or the Debtors, shall be free and clear of any and all liens, claims, and encumbrances; provided, however, that any liens, claims, and encumbrances shall attach to the proceeds of the sale of applicable Merchandise or Offered FF&E with the same validity and priority and to the same extent and amount that any such liens, claims, and encumbrances had with respect to such Merchandise and/or Offered FF&E, subject to any claims and defenses that the Debtors may possess with respect thereto and subject to the Liquidation Consultant's fees and expenses pursuant to the Closing Store Agreement.

19.     To the extent that the Debtors propose to sell or abandon Store Assets that may contain any personal and/or confidential information about the Debtors' employees and/or

customers (the "Confidential Information"), the Debtors shall remove all such the Confidential Information from such Store Assets before they are sold or abandoned.

20.    The Debtors and the Liquidation Consultant are authorized and empowered to transfer Merchandise and other Store Assets among the Closing Stores as well as among the Debtors' non-Closing Stores.  The Liquidation Consultant is authorized to sell or, in consultation with the DIP Administrative Agent and the DIP Term Agent, abandon the Debtors' Offered FF&E, in accordance with the terms of the Closing Store Agreement and the Sale Guidelines.

**D.    Resolution Procedures for Disputes Regarding Liquidation Laws**

21.    To the extent that the Closing Sales at the Closing Stores are conducted in accordance with this Interim Order and the Sale Guidelines and are, therefore, conducted under the supervision of this Court, such Closing Sales are authorized notwithstanding any federal, state or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws, including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions (collectively, the "Liquidation Laws") that contain exemptions for court-ordered sales.  Given such exemptions, the Debtors shall be presumed to be in compliance with any Liquidation Laws and are authorized on an interim basis to conduct the Closing Sales in accordance with the terms of this Interim Order and the Sale Guidelines without the necessity of showing compliance with any Liquidation Laws during the Interim Period.

22.    To the extent that any Applicable Governmental Unit disputes the Debtors' compliance with any Liquidation Law, such Applicable Governmental Unit may assert a dispute (a "Liquidation Dispute") by serving written notice (a "Dispute Notice") of such Liquidation

01:23477531.1

10

Dispute on the following parties: (a) Gibson, Dunn & Crutcher, LLP, 200 Park Avenue, New

York, NY 10166 (Attn: Matthew J. Williams, David M. Feldman, Matthew K. Kelsey, and Keith

R. Martorana), (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King

Street, Wilmington, DE 19801 (Attn:  Michael R. Nestor, Sean M. Beach, and Andrew L.

Magaziner), (c) Counsel to the DIP Administrative Agent, Morgan, Lewis & Bockius LLP, One

Federal Street, Boston, MA 02110 (Attn: Christopher L. Carter), (d) counsel to the DIP Term

Agent, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn:

Jonathan D. Marshall), (e) Gordon Brothers Retail Partners LLC, 800 Boylston Street, 27th Floor,

Boston, MA 02199 (Attn: Mackenzie Shea), (f) Hilco Merchant Resources, LLC, 5 Revere

Drive, Suite 206, Northbrook, IL 60062 (Attn: Ian Fredericks); and (g) Pepper Hamilton LLP,

Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709 Wilmington, Delaware 19899

(Attn: Douglas D. Herrmann).  If the Debtors, the Liquidation Consultant, and such Applicable

Governmental Unit are unable to resolve the Liquidation Dispute promptly after service of the

Dispute Notice, such Applicable Governmental Unit may file a notice with this Court detailing

the nature of the Liquidation Dispute (a "Dispute Resolution Notice"), which shall be heard at

the Final Hearing, or if filed after the Final Hearing, at the next regularly scheduled omnibus

hearing in these Chapter 11 Cases.  The filing of a Dispute Resolution Notice shall not be

deemed to affect the finality of this Interim Order or to limit or interfere with the Debtors' or the

Liquidation Consultant's ability to conduct or to continue to conduct the Closing Sales pursuant

to this Interim Order and in accordance with the Sale Guidelines, absent further order of this

Court.  The dispute resolution procedures relating to any Liquidation Disputes described in this

paragraph are referred to as the "Resolution Procedures."

23.     Within three (3) business days of the entry of this Interim Order, the Debtors shall serve copies of this Interim Order, the Closing Store Agreement, and the Sale Guidelines via email, facsimile or regular mail, on (a) the Attorney General's office for each state where the Closing Sales are being held, (b) the county consumer protection agency or similar agency for each county where the Closing Sales are being held, (c) the division of consumer protection for each state where the Closing Sales are being held, (d) the chief legal counsel for the local jurisdiction the Closing Sales are being held, and (e) the landlords.

**E.     Bonus Program; Closing Bonuses**

24.     On an interim basis and pending the Final Hearing, the Debtors are authorized but not obligated to implement the Bonus Program for certain non-insider employees as described in the Motion.  However, for the avoidance of the doubt, the Debtors are not authorized to pay any Closing Bonuses to insiders of the Debtors.

**F.     Miscellaneous**

25.     Except with respect to the Closing Store Agreement, nothing in this Interim Order or the Motion shall be deemed to constitute a postpetition assumption of any agreement under section 365 of the Bankruptcy Code.

26.     The Closing Store Agreement and related documents may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court.

27.     This Court shall retain exclusive jurisdiction with regard to all issues or disputes arising from or relating to the implementation, interpretation, or enforcement of this Interim Order or the Closing Store Agreement, including, but not limited to, any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit the Closing Sales in accordance with the Sale Guidelines, or any other disputes related to the Closing Sales.  No

01:23477531.1

parties or person shall take any action against the Debtors or the Liquidation Consultant until this Court has resolved such dispute.  This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

28.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in respect of payments made in accordance with this Interim Order that are dishonored or rejected.

29.     Each of the Debtors' banks and financial intuitions is authorized to honor checks presented for payment and all fund transfer requests made by the Debtors, to the extent that sufficient funds are on deposit in the applicable accounts, in accordance with this Interim Order and any other order of this Court.

30.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

31.     [Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under the Debtors' postpetition financing agreements (the "DIP Documents") and any orders approving the DIP Documents and governing the Debtors' use of cash collateral (including with respect to any budgets governing or relating thereto).]

32.     Nothing in this Interim Order is intended to affect any rights of any Applicable Governmental Unit to enforce any law affecting the Debtors' conduct of the Closing Sales prior to the Petition Date.

01:23477531.1

33.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied because the

relief requested in the Motion, as granted hereby, is necessary to avoid immediate and irreparable

harm to the Debtors and their estates.

34.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this

Interim Order shall be immediately effective and enforceable upon its entry.

Dated: August ___, 2018
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT 1**

### **SALE GUIDELINES**

*(see attached)*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BROOKSTONE HOLDINGS CORP., *et al.*,[1] | Case No. 18-_____ (___) |
| Debtors. | (Jointly Administered) |

## SALE GUIDELINES

The following procedures (the "Sale Guidelines") shall apply to the closing sale (each, a "Closing Sale" and collectively, the "Closing Sales") to be held at each of the store locations operated by the above-captioned debtors in possession (collectively, "Brookstone") to be closed (collectively, the "Closing Stores" and each, a "Closing Store"), subject to the agreement (the "Closing Store Agreement") dated as of August 1, 2018 by and among Gordon Brothers Retail Partners, LLC and Hilco Merchant Resources, LLC (collectively, the "Liquidation Consultant") and Debtor Brookstone Holdings Corp., and in accordance with the order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and approving the Closing Sales at the Closing Stores in accordance with these Sale Guidelines:

1.      The Closing Sales will commence at the Closing Stores on or about August 3, 2018 (the "Sale Commencement Date") and will terminate on or about September 30, 2018 (the "Sale Termination Date"), subject to a mutually agreed extension between Brookstone and the Liquidation Consultant thereof.

2.      Each Closing Sale shall be conducted so that the Closing Store in which sales are to occur will remain open no longer than during the normal hours of operation provided for in the respective leases for the Closing Stores.

3.      Each Closing Sale shall be conducted at the Closing Stores during the normal business hours maintained at each Closing Store by Brookstone prior to the filing of their bankruptcy petitions; provided that Brookstone may in its discretion modify the business hours as necessary or advisable.

4.      Conspicuous signs stating that "all sales are final" and "as is" will be posted at the cash register areas at all Closing Stores.

---

1 The Debtors, along with the last four digits of each Debtor's tax identification number, are: Brookstone Holdings Corp. (4638), Brookstone, Inc. (2895), Brookstone Company, Inc. (3478), Brookstone Retail Puerto Rico, Inc. (5552), Brookstone International Holdings, Inc. (8382), Brookstone Purchasing, Inc. (2514), Brookstone Stores, Inc. (2513), Big Blue Audio LLC (N/A), Brookstone Holdings, Inc. (2515), and Brookstone Properties, Inc. (2517). The Debtors' corporate headquarters and the mailing address for each Debtor is One Innovation Way, Merrimack, NH 03054.

5.    The Liquidation Consultant and Brookstone may advertise each Closing Sale as a "store closing," "sale on everything," "everything must go," "liquidation sale," or similar themed sale.  The Liquidation Consultant and Brookstone may also have "countdown to closing" signs prominently displayed in a manner consistent with these Sale Guidelines.

6.    The Liquidation Consultant and Brookstone shall be permitted to utilize exterior banners at (a) non-enclosed mall Stores and (b) enclosed mall Stores to the extent the entrance to the applicable Store does not require entry into the enclosed mall common area; provided, however, that such banners (i) shall not exceed 4 feet by 40 feet in size; (ii) shall be located or hung so as to make clear that the Sale is being conducted only at the affected Store; and (iii) shall not be wider than the storefront of the Store.

7.    Except with respect to the hanging of exterior banners, the Liquidation Consultant and Brookstone shall not make any alterations to the storefront or exterior walls of any Closing Stores.

8.    No landlord, licensor, property owner, and/or property manager (each, a "Landlord" and collectively, the "Landlords") shall prohibit, restrict, or otherwise interfere with any Closing Sale at any Closing Store.

9.    The Liquidation Consultant and Brookstone shall not make any alterations to interior or exterior Closing Store lighting.  No property of a Landlord of a Closing Store shall be removed or sold during any Closing Sale.  The hanging of exterior banners or signage or banners in a Closing Store shall not constitute an alteration to a Closing Store.

10.    The Liquidation Consultant and Brookstone shall be permitted to utilize sign-walkers in a safe and professional manner.

11.    On "shopping center" property, neither Brookstone or the Liquidation Consultant shall distribute handbills, leaflets or other written materials to customers outside of any Closing Store's premises, unless permitted by the lease or, if distribution is customary in the "shopping center" in which such Closing Store is located; provided that Brookstone and the Liquidation Consultant may solicit customers in the Closing Stores themselves.  On "shopping center" property, Brookstone and the Liquidation Consultant shall not use any flashing lights or amplified sound to advertise the Closing Sale or solicit customers, except as permitted under the applicable lease or agreed to by the Landlord.

12.    The Liquidation Consultant and Brookstone shall be permitted to utilize A-frames, to be used only with secure tiedowns.

13.    With respect to any Closing Stores location in enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines.

14.    The Liquidation Consultant and Brookstone shall keep Closing Store premises and surrounding areas clean and orderly consistent with present practices.

01:23477531.1

15. Nothing contained in these Sale Guidelines shall be construed to create or impose upon the Liquidation Consultant and Brookstone any additional restrictions not contained in the applicable lease agreement.

16. Brookstone shall have consulted with the DIP Administrative Agent and the DIP Term Agent and shall have informed the Liquidation Consultant of those items of furniture, fixtures, and equipment located at each Closing Store which are not to be sold (because either Brookstone does not have the right to sell such items or because Brookstone wishes to retain such items for itself, or otherwise) (collectively, the "Retained FF&E").

17. The Liquidation Consultant may advertise and sell all furniture, fixtures, and equipment located at each Closing Store as of the Sale Commencement Date which is not Retained FF&E (collectively, the "Offered FF&E") in a manner consistent with these Sale Guidelines and the Closing Store Agreement.

18. The purchasers of any Offered FF&E sold at any Closing Stores shall be permitted to remove the Offered FF&E either through the back shipping areas at any time, or through other areas after Closing Store business hours. Purchased Offered FF&E may be carried out the front door during regular store hours if it fits into a shopping bag.

19. All Merchandise (as defined in the Closing Store Agreement) and all Offered FF&E shall be sold free and clear of all claims, liens, and encumbrances.

20. The Liquidation Consultant shall have the right to supplement the Merchandise with Additional Consultant Goods in accordance with the Consulting Agreement.

21. Upon the earlier of (a) the completion of the Closing Sale at a Closing Store or (b) the Sale Termination Date, the Liquidation Consultant shall leave each Closing Store in broom clean condition and shall abandon all Retained FF&E and all unsold Offered FF&E in a neat and orderly manner.

22. Brookstone, in consultation with the DIP Administrative Agent and the DIP Term Agent, may abandon any Retained FF&E that it has not removed and any unsold FF&E located at a Closing Store (collectively, the "Remaining Property").

23. The Liquidation Consultant and its respective agents and representatives shall continue to have exclusive and unfettered access to the Closing Stores until the conclusion of the applicable Sale Term for each Store under the Closing Store Agreement.

24. The rights of any Landlord as against Brookstone's estates for any damages caused to a Closing Store shall be reserved in accordance with the provisions of the applicable lease. If and to the extent that a Landlord of any Closing Store affected hereby contends that the Liquidation Consultant or Brookstone are in breach of or default under these Sale Guidelines, such Landlord shall deliver notice on the following parties via email or deliver written notice so as to ensure delivery thereof within one business day thereafter: (a) Gibson, Dunn & Crutcher, LLP, 200 Park Avenue, New York, NY 10166 (Attn: Matthew J. Williams, David M. Feldman, Matthew K. Kelsey, and Keith R. Martorana), (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn: Michael R. Nestor, Sean

M. Beach, and Andrew L. Magaziner), (c) Gordon Brothers Retail Partners, LLC, 800 Boylston Street, 27th Floor, Boston, MA 02199 (Attn: Mackenzie Shea, Associate General Counsel), (d) Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709 Wilmington, Delaware 19899 (Attn: Douglas D. Herrmann), and (e) Hilco Merchant Resources, LLC, 5 Revere Drive, Suite 206, Northbrook, IL 60062 (Attn: Ian Fredericks).

*[End of Sale Guidelines]*

## **EXHIBIT 2**

### **CLOSING STORE AGREEMENT**

*(see attached)*




August 1, 2018

To:   Brookstone Company, Inc.
      One Innovation Way
      Merrimack, NH 03054

From:  Gordon Brothers Retail Partners, LLC
      800 Boylston Street, 27th Floor
      Boston, MA 02199

      -and-

      Hilco Merchant Resources, LLC
      5 Revere Drive, Suite 206
      Northbrook, Illinois 60062

Re:   Store Closing Program – Consulting Agreement

Ladies and Gentlemen:

This letter shall serve as the agreement between a contractual joint venture comprised of Gordon Brothers Retail Partners, LLC and Hilco Merchant Resources, LLC (together, the "Consultant") and Brookstone Company, Inc. and its affiliates (together, the "Merchant") pursuant to which Consultant shall serve as the exclusive consultant to Merchant to conduct a "store closing" and other mutually agreed upon themed sale ("Sale") at Merchant's non-Airport retail stores identified on <u>Exhibit A</u> attached hereto (each a "Store" and collectively the "Stores"), subject to the terms and conditions set forth herein.

1.    <u>**RETENTION**</u>
(A)    Merchant hereby retains Consultant as its exclusive, independent consultant to conduct the Sale at the Stores during the Sale Term, and in connection therewith, Consultant shall, throughout the Sale Term:

      (i)    Recommend appropriate discounting to effectively sell all of Merchant's goods located at the Stores as of the Sale Commencement Date or thereafter delivered thereto as may be mutually agreed by the parties in accordance with a "store closing" and other mutually agreed upon themed sale, and recommend appropriate point-of-purchase, point-of-sale, and other internal and external advertising in connection therewith.

(ii)     Provide qualified supervision to oversee the conduct of the Sale.

(iii)    Maintain focused and constant communication with Merchant's Store Operations team to coordinate and keep them abreast of strategy and timing and to properly effect Store-level communication by Merchant's employees to customers and others about the Sale.

(iv)    Establish and monitor accounting functions for the Sale, including evaluation of sales of Merchant's goods located at the Stores by category, sales reporting and expense monitoring.

(v)     Recommend loss prevention strategies.

(vi)    Coordinate with Merchant so that the operation of the Stores is being properly maintained including ongoing customer service and housekeeping activities; and

(vii)   Recommend appropriate staffing levels for the Stores and appropriate bonus and/or incentive programs (to be funded by Merchant) for Store employees.

## 2.     SALE TERM; VACATING STORES

(A)     The term "Sale Term" with respect to each respective Store shall commence on or about the date identified on Exhibit B ("Sale Commencement Date") and shall end on the date identified on Exhibit B ("Sale Termination Date"); provided however, that Consultant and Merchant may mutually agree upon an earlier or later "Sale Termination Date" with respect to any one or more Stores (on a Store-by-Store basis).

(B)     Upon the conclusion of the Sale Term at each Store, Consultant shall leave such Store in broom clean condition, subject to Consultant's right pursuant to Section 6 below to abandon in a neat and orderly manner all unsold Offered FF&E and all Retained FF&E.

(C)     From and after the Sale Commencement Date, Merchant and Consultant may mutually agree upon the terms of a global transaction (an "Alternative Transaction") that affects the Sale and Stores contemplated hereunder and encompasses Merchant's other assets not subject to this Agreement (including, without limitation, the Airport retail stores, intellectual property, accounts receivable, owned and leased real property, executory contracts, chapter 5 causes of action, and/or other miscellaneous assets), and the definitive agreement executed by the parties regarding such Alternative Transaction may, *inter alia*, provide for alternative disposition of the Merchandise and Owned FF&E hereunder and corresponding changes to the Sale Term, Consultant Controlled Expenses, Incentive Fee, FF&E Commission, and/or Additional Goods Fee, subject in all respects to approval of such agreement by the Bankruptcy Court.

## 3.     EXPENSES

(A)     All expenses incident to the conduct of the Sale and the operation of the Stores during the Sale Term (including without limitation all Consultant Controlled Expenses and all other store-



level and corporate expenses associated with the Sale) shall be borne by Merchant; except solely for any of the specifically enumerated "Consultant Controlled Expenses" that exceed the aggregate budgeted amount (as provided in Section 3(B) below) for such Consultant Controlled Expenses.

(B) Attached hereto as Exhibit B is an expense budget for the "Consultant Controlled Expenses." Consultant will advance funds for the Consultant's Controlled Expenses, and Merchant shall reimburse Consultant therefor (up to the aggregate budgeted amount) in connection with each weekly reconciliation contemplated by Section 5(B) upon presentation of reasonable documentation for such actually-incurred expenses. The parties may from time to time mutually agree in writing to increase the budget of Consultant Controlled Expenses based upon circumstances of the Sale.

**4. CONSULTANT COMPENSATION**

(A) As used herein, the following terms shall have the following meanings:

(i) "Gross Proceeds" shall mean the gross proceeds of all sales of Merchandise during the Sale Term, net only of sales taxes.

(ii) "Merchandise" shall mean the goods actually sold in the Stores during the Sale Term, the aggregate amount of which shall be determined using the gross rings inventory taking method.

(ii) "Aggregate Recovery Percentage" shall mean the Gross Proceeds divided by the aggregate Cost Value of all of the Merchandise.

(iv) "Cost Value" with respect to each item of Merchandise sold shall be determined by reference to the per unit cost in Merchant's books and records, maintained in the ordinary course consistent with historic practices.

(B) In consideration of its services hereunder, Merchant shall pay Consultant an "Incentive Fee" equal to as one of the following (e.g., back to first dollar):

| Aggregate Recovery Percentage | Incentive Fee |
|---|---|
| Below 120.0% | No Incentive Fee |
| Between 120.0% and 129.99% | 0.50% of Gross Proceeds |
| Between 130.0 to 134.99% | 0.75% of Gross Proceeds |
| Between 135.0% to 144.99% | 1.00% of Gross Proceeds |
| Above 145.0% | 1.50% of Gross Proceeds |

(C) The parties acknowledge that the fee has been established based upon Consultant's reliance that Merchant's personnel (including district, regional, and store managers, and Store-level personnel) will provide Consultant with reasonable and good faith cooperation and support throughout the Sale Term in connection with the conduct of the Sale.

(D) On a weekly basis in connection with each weekly reconciliation contemplated by Section 5(B) below, Merchant shall pay Consultant an amount equal to 0.75% of Gross Proceeds

on account of the prior week's sales as an advance on account of the fees payable hereunder. The parties shall determine the definitive Gross Proceeds connection with the Final Reconciliation; and thus at such time the definitive Incentive Fee also will be determined in connection with the Final Reconciliation.  Immediately thereafter (and as part of the Final Reconciliation), Merchant shall pay Consultant any additional amount owed on account of the Incentive Fee.

## 5.    CONDUCT OF SALE; OTHER SALE MATTERS

(A)    Merchant shall have control over the personnel in the Stores and shall handle the cash, debit and charge card payments for all Merchandise in accordance with Merchant's normal cash management procedures, subject to Consultant's right to audit any such items.  Merchant (and not Consultant) shall be responsible for ensuring that the Sale, and the operation of the Stores (before, during, and after the Sale Term) shall be conducted in compliance with all applicable laws and regulations.

(B)    The parties will meet on each Wednesday during the Sale Term to review any Sale matters reasonably requested by either party; and all amounts payable or reimbursable to Consultant for the prior week (or the partial week in the case of the first and last weeks) shall be reconciled and paid immediately thereafter.  No later than twenty (20) days following the end of the Sale, the parties shall complete a final reconciliation and settlement of all amounts contemplated by this Agreement ("Final Reconciliation").  From time to time upon request, each party shall prepare and deliver to the other party such other reports as either party may reasonably request.  Each party to this Agreement shall, at all times during the Sale Term and during the one (1) year period thereafter, provide the other with access to all information, books and records relating to the Sale and to this Agreement.  All records and reports shall be made available to Consultant and Merchant during regular business hours upon reasonable notice.

(C)    Merchant shall be solely responsible for the computing, collecting, holding, reporting, and paying all sales taxes associated with the sale of Merchandise during the Sale Term, and Consultant shall have absolutely no responsibilities or liabilities therefor.

(D)    Although Consultant shall undertake its obligations under this Agreement in a manner designed to achieve the desired results of the Sale and to maximize the recovery to the Merchant, Merchant expressly acknowledges that Consultant is not guaranteeing the results of the Sale.

(E)    Merchant acknowledges that (i) the parties are not conducting an inventory of Merchant's goods located at the Stores; (ii) Consultant has made no independent assessment of the beginning levels of such goods; and (iii) Consultant shall not bear any liability for shrink or other loss to Merchant's goods located at the Stores (including without limitation Merchandise).

(F)    All sales of Merchandise in the Stores during the Sale shall be made in the name, and on behalf, of Merchant.

(G)    All sales of Merchandise in the Stores during the Sale Term shall be "final sales" and "as is," and all advertisements and sales receipts will reflect the same.



(H)    Consultant shall, during the Sale Term at the Stores, cooperate with Merchant in respect of Merchant's procedures governing returns of goods otherwise sold by Merchant (e.g., not in the Stores during the Sale Term).

(I)    Merchant hereby permits the Sale to be, and shall ensure that the Sale otherwise may be, advertised as a "store closing" or other mutually agreed upon handle throughout the term of the Sale.

(J)    Intentionally Omitted.

**6.    FF&E**

(A)    Promptly following the Sale Commencement Date, Merchant shall inform Consultant of those items of furniture, fixtures, and equipment located at the Stores which are not to be sold (because Merchant does not have the right to sell such items, because Merchant wishes to retain such items for itself, or otherwise) (collectively, "Retained FF&E").

(B)    With respect to all furniture, fixtures, and equipment located at the Stores as of the Sale Commencement Date which is not Retained FF&E (collectively the "Offered FF&E"), Consultant shall have the right to sell such Offered FF&E during the Sale Term on a commission basis equal to fifteen percent (15.0%) of the gross sales of Offered FF&E, net only of sales tax ("FF&E Commission").

(C)    Merchant shall reimburse Consultant for its reasonable sale expenses associated with the sale of the Offered FF&E, not to exceed the amount shown on an FF&E expense budget (which shall be in addition to the Consultant Controlled Expenses budget), to be mutually and reasonably agreed to by the parties promptly after Merchant identifies/designates/distinguishes between the Offered FF&E and Retained FF&E ("FF&E Expenses").

(D)    Consultant shall have the right to abandon any unsold Offered FF&E (and all Retained FF&E) at the Stores at the conclusion of the Sale Term without liability to Merchant or any third party.

**7.    ADDITIONAL CONSULTANT GOODS**

(A)    In connection with the Sale, Consultant may supplement the Sale with additional goods procured by Consultant on its credit which are of like kind, and no lesser quality to the other Merchandise in the Sale ("Additional Consultant Goods"). Sales of Additional Consultant Goods shall be run through Merchant's cash register systems; provided, however, that Consultant shall mark the Additional Consultant Goods using either a "dummy" SKU or department number, or in such other manner so as to distinguish the sale of Additional Consultant Goods from the sale of Merchandise. Consultant and Merchant shall also cooperate so as to ensure that the Additional Consultant Goods are marked in such a way that a reasonable consumer could identify the Additional Consultant Goods as non-Merchant goods. Additionally, Consultant shall


1 9 0 3

provide signage in the Stores notifying customers that the Additional Consultant Goods have been included in the Sale. Upon the sale of any Additional Consultant Goods to a customer, any sales taxes associated therewith will be collected from the consumer at the point of sale and thereafter remitted by Merchant to the applicable authorities.

(B)    Consultant shall pay to Merchant an amount equal to seven and one half percent (7.5%) of the gross proceeds of Additional Consultant Goods actually sold in the Sale (the "Additional Goods Fee"). Consultant shall pay Merchant its Additional Goods Fee in connection with each weekly sale reconciliation with respect to sales of Additional Consultant Goods sold during each then prior week (or at such other mutually agreed upon time) from the proceeds thereof.

(C)    Consultant and Merchant intend that the transactions relating to the Additional Consultant Goods are, and shall be construed as, a true consignment from Consultant to Merchant in all respects and not a consignment for security purposes. At all times and for all purposes the Additional Consultant Goods and their proceeds shall be the exclusive property of Consultant, and no other person or entity shall have any claim against any of the Additional Consultant Goods or their proceeds. The Additional Consultant Goods shall at all times remain subject to the exclusive control of Consultant.

(D)    Merchant shall, at Consultant's sole cost and expense, insure the Additional Consultant Goods and, if required, promptly file any proofs of loss with regard to same with Merchant's insurers. Consultant shall be responsible for payment of any deductible (but only in relation to the Additional Consultant Goods) under any such insurance in the event of any casualty affecting the Additional Consultant Goods.

(E)    Merchant acknowledges that the Additional Consultant Goods shall be consigned to Merchant as a true consignment under Article 9 of the Uniform Commercial Code (the "UCC"). Consultant is hereby granted a first priority security interest in and lien upon (i) the Additional Consultant Goods and (ii) the Additional Consultant Goods proceeds, and Consultant is hereby authorized to file UCC financing statements and provide notifications to any prior secured parties.

## 8.    INSURANCE; RISK OF LOSS

During the Sale Term: (a) Merchant shall maintain (at its expense) insurance with respect to the Merchandise in amounts and on such terms and conditions as are consistent with Merchant's ordinary course operations, and (b) each of Merchant and Consultant shall maintain (at each party's respective expense) comprehensive liability and workers' compensation insurance covering injuries to persons and property in or in connection with the Stores, in such amounts as are reasonable and consistent with its ordinary practices, for bodily injury, personal injury and/or property damage. Each party shall be added as an additional insured on all such insurance of the other party, all such insurance shall provide that it shall be non-cancelable and non-changeable except after 30 days' prior written notice to the other party, and each party shall provide the other with certificates of all such insurance prior to the commencement of the Sale.



Notwithstanding any other provision of this Agreement, Merchant and Consultant agree that Consultant shall not be deemed to be in possession or control of the Stores, or the Merchandise or other assets located therein or associated therewith, or of Merchant's employees located at the Stores; and Consultant does not assume any of Merchant's obligations or liabilities with respect thereto.

Notwithstanding any other provision of this Agreement, Merchant and Consultant agree that Merchant shall bear all responsibility for liability claims (product liability and otherwise) of customers, employees and other persons arising from events occurring at the Stores, and Merchandise sold in the Stores, before, during and after the Sale Term (except (i) any liability arising out of Consultant's indemnification obligations set forth below, and (ii) Consultant shall be responsible for all workers' compensation claims related to its employees, agents and representatives).

## 9.    INDEMNIFICATION

(A)    Consultant shall indemnify and hold Merchant and its affiliates, and their respective officers, directors, employees, consultants, and independent contractors (collectively, "Merchant Indemnified Parties") harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to:

    (i)    Consultant's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith;

    (ii)    any harassment or any other unlawful, tortious or otherwise actionable treatment of any employees or agents of Merchant by Consultant, its affiliates or their respective officers, directors, employees, agents, independent contractors or representatives (including without limitation any supervisors);

    (iii)    any claims by any party engaged by Consultant as an employee or independent contractor (including without limitation any non-Merchant employee supervisor) arising out of such employment or engagement; or

    (iv)    the negligence, willful misconduct or unlawful acts of Consultant, its affiliates or their respective officers, directors, employees, Consultants, independent contractors or representatives.

(B)    Merchant shall indemnify and hold Consultant, its affiliates and their respective officers, directors, employees, consultants, and independent contractors (collectively, "Consultant Indemnified Parties") harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to:

    (i)    Merchant's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith;



(ii)    any claims by any party engaged by Merchant as an employee or independent contractor arising out of such engagement;

(iii)    any consumer warranty or products liability claims relating to any Merchandise; and/or

(iv)    the negligence, willful misconduct or unlawful acts of Merchant, its affiliates or their respective officers, directors, employees, agents, independent contractors or representatives.

## 10.   <u>MISCELLANEOUS</u>

(A) In the event Merchant becomes subject to a chapter 11 bankruptcy case in any United States Bankruptcy Court (the "Bankruptcy Court"), Merchant shall promptly upon seek to have this Agreement, and the transactions contemplated by this Agreement, approved by the Bankruptcy Court pursuant to Sections 363 and 365 of the United States Bankruptcy Code and an order acceptable to both Merchant and Consultant, which order shall specifically provide, among other things, that: (i) Merchant assumes this Agreement and the transactions contemplated by this Agreement, including (without limitation) with respect to the payment of all fees and reimbursement of expenses, (ii) authorizing the Sale without the necessity of complying with federal or provincial rules, laws, ordinances and regulations, including, without limitation, permitting and licensing requirements, that would otherwise govern the Sale; (iii) authorizing the Sale notwithstanding restrictions in leases, occupancy agreements or other contracts that purport to restrict the Sale or the necessity of obtaining any third party consents; and (iv) take all further actions as are necessary or appropriate to carry out the terms and conditions of this Agreement.

(B) Consultant hereby discloses, and Merchant hereby acknowledges, that Gordon Brothers Retail Partners, LLC's parent company, Gordon Brothers Group, LLC ("GBG"), owns a minority interest in, has certain contractual relationships with, and from time to time may provide contractual services to, Gordon Brothers Finance Company ("Finance Company") in the ordinary course of its business. Finance Company is a secured lender to Merchant. Merchant hereby waives any actual or perceived conflict resulting from any of the foregoing.

(C) This Agreement constitutes the entire agreement between the parties with respect to the matters contemplated hereby and supersedes and cancels all prior agreements, including, but not limited to, all proposals, letters of intent or representations, written or oral, with respect thereto. This Agreement may not be modified except in a written instrument executed by each of the parties hereto. No consent or waiver by any party, express or implied, to or of any breach or default by the other in the performance of its obligations hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance by such other party of the same or any other obligation of such party. The failure on the part of any party to complain of any act or failure to act by the other party or to declare the other party in default, irrespective of how long such failure continues, shall not constitute a waiver by such party of its rights hereunder. Nothing contained in this Agreement shall be deemed to create any relationship between Merchant and Consultant other than that of Consultant as an independent contractor of Merchant, and it is stipulated that the parties are not partners or joint venturers in



any way.  Unless expressly set forth herein to the contrary, to the extent that either party's consent is required/requested hereunder, such consent shall not be unreasonably withheld or delayed.  This Agreement shall inure to the benefit of and be binding upon the parties and their respective successors and assigns; provided however, that this Agreement may not be assigned by either party without the prior written consent of the other.  Written notices contemplated by this Agreement shall be sent by email (i) if to Merchant c/o the person indicated below at the address specified above attn: Legal Department and legaldepartment@brookstone.com; and (ii) if to Consultant c/o Mackenzie Shea at mshea@gordonbrothers.com and Ian Fredericks at ifredericks@hilcoglobal.com



1903

Very truly yours,
**Gordon Brothers Retail Partners, LLC**

By: _____
Print Name and Title:
Robert Grosskopf
co President
Gordon Brothers Retail

-and-


**Hilco Merchant Resources, LLC**

By: _____
Print Name and Title:  Ian S. Fredericks, EVP


Agreed and Accepted:
**Brookstone Company, Inc., on behalf of itself
and its affiliates**

By: _____
Print Name and Title:  Greg TriLou, VP-CFO
Address:

Exhibits:

A      Stores
B      Budget of Consultant Controlled Expenses



1 9 0 3

Exhibit A

# Brookstone
## Store List

| Store No. | Store | Address | Address | City | State | Zip Code | Square Ft |
|---|---|---|---|---|---|---|---|
| 10 | King of Prussia | 160 N Gulph Road | Space 2909 | King Of Prussia | PA | 19406 | 2,028 |
| 11 | The Mall in Columbia | 10300 Little Patuxent Pkwy | Space 1740 | Columbia | MD | 21044 | 3,400 |
| 16 | Fair Oaks Mall | 11750 Fair Oaks Mall | Space #L-109 | Fairfax | VA | 22033 | 3,507 |
| 21 | The Mall at Short Hills | 1200 Morris Turnpike | Suite #D115 | Short Hills | NJ | 07078 | 3,500 |
| 24 | NorthPark Center | 915 Northpark Center | | Dallas | TX | 75225 | 3,810 |
| 25 | South Coast Plaza | 3333 Bristol Street | Suite 1870 | Costa Mesa | CA | 92626 | 4,655 |
| 26 | Beverly Center | 8500 Beverly Blvd. | Space #694 | Los Angeles | CA | 90048 | 2,800 |
| 27 | Paramus Park | 1045 Paramus Park | | Paramus | NJ | 07652 | 3,371 |
| 28 | Crystal Mall | 850 Hartford Turnpike | | Waterford | CT | 06385 | 3,680 |
| 36 | Crabtree Valley Mall | 4325 Glenwood Ave | Space #2118 | Raleigh | NC | 27612 | 4,463 |
| 45 | Del Amo Fashion Center | 21712 Hawthorne Blvd | Space #219B | Torrance | CA | 90503 | 3,043 |
| 55 | The Galleria at Fort Lauderdale | 2490 East Sunrise Blvd. | | Fort Lauderdale | FL | 33304 | 3,515 |
| 58 | The Shops at LaCantera | 15900 La Cantera Pkwy | Space # 1430 | San Antonio | TX | 78256 | 3,000 |
| 60 | North County Fair | 200 East Via Rancho Parkway | Suite 189 | Escondido | CA | 92025 | 3,405 |
| 65 | Houston Galleria | 5085 Westheimer Blvd | Space 2514 | Houston | TX | 77056 | 2,497 |
| 68 | Pheasant Lane Mall | 310 Daniel Webster Highway | | Nashua | NH | 03060 | 3,408 |
| 69 | Valley Fair Mall | 2855 Stevens Creek Blvd. | Space #A133 | Santa Clara | CA | 95050 | 2,813 |
| 70 | Westfield Palm Desert | 72840 Highway 111 | Space V417 | Palm Desert | CA | 92260 | 3,075 |
| 72 | Stoneridge Mall | 1116 Stoneridge Mall Road | Space #B-108 | Pleasanton | CA | 94566 | 3,468 |
| 74 | Town Center at Boca Raton | 6000 Glades Road | Suite 1092 | Boca Raton | FL | 33431 | 3,380 |
| 80 | Princeton Marketfair | 3535 US Highway 1 | Space 428 | Princeton | NJ | 08540 | 3,200 |
| 86 | Stonestown Galleria | 3251 20th Ave | Space #151 | San Francisco | CA | 94132 | 4,045 |
| 87 | Settler's Green Outlet | Route 16 & 302 | | North Conway | NH | 03860 | 3,369 |
| 94 | The Garden at Palm Beach | 3101 PGA Blvd. | Space #E125 | Palm Beach Gardens | FL | 33410 | 3,309 |
| 97 | Santa Anita | 400 S. Baldwin Avenue | New Temp Space #1260 | Arcadia | CA | 91006 | 3,426 |
| 98 | Maine Mall | 364 Maine Mall Road | Box 218 | South Portland | ME | 04106 | 3,452 |
| 105 | Cherry Creek | 3000 East 1st Ave | #132 | Denver | CO | 80206 | 3,422 |
| 107 | Towson Town Center | 825 Dulaney Valley Road | Space 3145 | Towson | MD | 21204 | 3,012 |
| 108 | Menlo Park Mall | 55 Parsonage Road | Space #224S Unit/4S6 | Edison | NJ | 08837 | 3,564 |
| 110 | Mall Of America | 162 West Market Street | S105 | Bloomington | MN | 55425 | 2,960 |
| 111 | Burlington Mall | 75 Middlesex Turnpike | Space K-4 | Burlington | MA | 01803 | 3,489 |
| 113 | South Shore Plaza | 250 Granite Street | | Braintree | MA | 02184 | 4,457 |
| 116 | Tysons Corner Center | 7967 Tysons Corner Center | | McLean | VA | 22102 | 4,324 |
| 123 | Brea Mall | 2015 Brea Mall | | Brea | CA | 92821 | 2,902 |
| 136 | Hillsdale Mall | 320 Hillsdale Mall | | San Mateo | CA | 94403 | 2,790 |
| 140 | Sun Valley Mall | 424 Sun Valley Mall Rd. | Space #A-216 | Concord | CA | 94520 | 3,955 |
| 144 | Walt Whitman Mall | 160 Walt Whitman Rd | Suite #1059 | Huntington Station | NY | 11746 | 2,938 |
| 148 | Natick Mall | 1245 Worcester Street | Space #1044 | Natick | MA | 01760 | 3,662 |
| 149 | The Avenues | 10300 Southside Boulevard | Suite #1290 | Jacksonville | FL | 32256 | 3,062 |
| 160 | West Town Mall | 7600 Kingston Pike | #1492 | Knoxville | TN | 37919 | 3,446 |
| 162 | The Westchester | 125 Westchester Avenue | Space #2320 | White Plains | NY | 10601 | 2,934 |
| 163 | Roosevelt Field Mall | 630 Old Country Rd. | Space 1038 | Garden City | NY | 11530 | 4,236 |
| 166 | Christiana Mall | 747 Christiana Mall Road | Space #613 | Newark | DE | 19702 | 3,075 |
| 167 | Circle Centre | 49 W. Maryland Street | Space #D-12 | Indianapolis | IN | 46204 | 3,200 |
| 169 | Seminole Towne Center | 228 Town Center Circle | | Sanford | FL | 32771 | 3,657 |
| 171 | Arden Fair Mall | 1689 Arden Way | Suite 1338 | Sacramento | CA | 95815 | 3,186 |
| 173 | Aventura Mall | 19575 Biscayne Blvd. | Space #519 | North Miami | FL | 33180 | 2,874 |
| 174 | Lenox Square | 3393 Peachtree Rd NE | Space #4046E | Atlanta | GA | 30326 | 2,993 |
| 180 | Dallas Galleria | 13350 N. Dallas Pkwy | Space 1140 | Dallas | TX | 75240 | 3,150 |
| 181 | Park Meadows Mall | 8405 Park Meadows Center Dr | Suite 1460 | Lone Tree | CO | 80124 | 3,618 |
| 182 | The Florida Mall | 8001 So. Orange Blossom Trail | #1013-B | Orlando | FL | 32809 | 3,003 |
| 184 | Smith Haven Mall | 145 Smith Haven Mall | | Lake Grove | NY | 11755 | 4,292 |
| 185 | Penn Square Mall | 1901 Northwest Expressway | Space 1032 | Oklahoma City | OK | 73118 | 3,610 |
| 187 | Hanes Mall | 3320 Silas Creek Pkwy | Space D784 | Winston-Salem | NC | 27103 | 4,500 |
| 214 | West County Center | 42 West Country Center | Space 1150 | Des Peres | MO | 63131 | 3,142 |
| 216 | Fashion Show | 3200 Las Vegas Blvd South | Space 1860 | Las Vegas | NV | 89109 | 3,157 |
| 221 | Somerset Collection | 2801 W. Big Beaver Road | Space G243 | Troy | MI | 48084 | 3,000 |
| 223 | Macarthur Center | 300 East Monticello Avenue | Suite 224 | Norfolk | VA | 23510 | 3,525 |
| 225 | Dulles Town Center | 21100 Dulles Town Circle | Suite B214 | Dulles | VA | 20166 | 3,122 |
| 227 | Towne East Square | 7700 East Kellogg | #835 | Wichita | KS | 67207 | 3,950 |
| 233 | Plaza Las Americas | Brookstone Local Number 30D 525 FDR Avenue | | San Juan | PR | 00918 | 4,390 |
| 234 | Lakeside Mall | 3301 Veterans Blvd | Suite 10 | Metairie | LA | 70002 | 4,500 |
| 238 | 30 Rock Plaza | 30 Rockefeller Plaza | Concourse Level, Space 1 | New York | NY | 10112 | 2,011 |
| 244 | Stonebriar Centre | 2601 Preston Road | Space 1162 | Frisco | TX | 75034 | 3,610 |
| 245 | Westfield Galleria at Roseville | 1151 Galleria Blvd | Suite 115 | Roseville | CA | 95678 | 3,339 |
| 248 | Woodland Mall | 3195 28th St. SE | Space E109 | Grand Rapids | MI | 49512 | 2,171 |
| 249 | Third Street Promenade | 1313 Third Street Promenade | | Santa Monica | CA | 90401 | 4,107 |
| 254 | Danbury Fair Mall | 7 Backus Avenue | Space #D-203 | Danbury | CT | 06810 | 3,394 |
| 255 | Coronado Center | 6600 Menaul Blvd NE | Suite 305 | Albuquerque | NM | 87110 | 4,275 |
| 258 | Rockaway Townsquare | Rte 80 & Mt. Hope Ave. | #1107 | Rockaway | NJ | 07866 | 2,800 |
| 260 | Fashion Valley Center | 7007 Friars Road | Suite 316 | San Diego | CA | 92108 | 4,650 |
| 261 | Palisades Center | 1452 Palisades Ctr. Dr. | Space B103 | West Nyack | NY | 10994 | 3,500 |
| 262 | Mall Of Louisiana | 6401 Bluebonnet Blvd | Suite 1034 | Baton Rouge | LA | 70836 | 3,438 |
| 265 | Oak Park Mall | 11469 W 95th Street | Space #60 | Overland Park | KS | 66214 | 3,250 |
| 266 | Twelve Oaks Mall | 27402 Novi Road | Space #207 | Novi | MI | 48377 | 3,177 |
| 270 | Irvine Spectrum | 609 Spectrum Center Drive | Suite 912 | Irvine | CA | 92618 | 3,016 |
| 275 | Santa Rosa Plaza | 1027 Santa Rosa Plaza | | Santa Rosa | CA | 95401 | 3,509 |

Exhibit A

## Brookstone
### Store List

| Store No. | Store | Address | Address | City | State | Zip Code | Square Ft |
|---|---|---|---|---|---|---|---|
| 287 | International Plaza | 2223 North West Shore Blvd. | Space #173 | Tampa | FL | 33607 | 3,318 |
| 288 | Shops At Willow Bend | 6121 West Park Blvd | Space D-105 | Plano | TX | 75093 | 3,551 |
| 291 | Mohegan Sun | 1 Mohegan Sun Blvd | Space C228 | Uncasville | CT | 06382 | 3,661 |
| 313 | Westfield Oakridge Mall | 925 Blossom Hill Road | Suite 1174 | San Jose | CA | 95123 | 3,157 |
| 314 | Scottsdale Fashion Square | 7014-S90 East Camelback Road | Suite 0557 | Scottsdale | AZ | 85251 | 2,967 |
| 320 | Coconut Point | 23150 Fashion Drive | Suite 105 | Estero | FL | 33928 | 3,500 |
| 327 | Parkway Place | 2801 Memorial Pkwy South | Space 125 | Huntsville | AL | 35801 | 4,958 |
| 330 | Southdale Center | 1840 Southdale Center | | Edina | MN | 55435 | 3,388 |
| 332 | Victoria Gardens | 12534 South Main Street | Space 1740 | Rancho Cucamonga | CA | 91739 | 3,122 |
| 333 | Treasure Coast Square | 3266 NW Federal Highway | Space 3266A | Jensen Beach | FL | 34954 | 3,667 |
| 338 | Branson Landing | 309 Branson Landing | | Branson | MO | 65616 | 3,550 |
| 351 | Baybrook Mall | 1132 Baybrook Mall | | Friendswood | TX | 77546 | 2,389 |
| 353 | International Market Place | 2330 Kalakaua Avenue | Space #2514 | Honolulu | HI | 96815 | 2,075 |
| 358 | The Village At Corte Madera | 1728 Redwood Highway | | Corte Madera | CA | 94925 | 2,660 |
| 364 | Fayette Mall | 3401 Nicholasville Road | Suite 110 | Lexington | KY | 40503 | 3,313 |
| 376 | Coastal Grand | 2000 Coastal Grand Circle | Space 188 | Myrtle Beach | SC | 29577 | 3,584 |
| 386 | Destin Commons | 4345 Legendary Drive | Space D-110 | Destin | FL | 32541 | 3,400 |
| 387 | Dadeland Mall | 7523 Dadeland Mall | Space 2360 | Miami | FL | 33156 | 1,801 |
| 388 | Fashion Place Mall | 6191 S State Street | Space 1485 | Murray | UT | 84107 | 2,897 |
| 389 | Tyrone Square Mall | 6939 Tyrone Square | Space 648 | St. Petersburg | FL | 33710 | 3,790 |
| 390 | Alderwood Mall | 3000 184th Street S.W. | Space 486 | Lynnwood | WA | 98037 | 4,219 |
| 393 | North East Mall | 1101 Melbourne Street | Space #3059 | Hurst | TX | 76053 | 3,348 |
| 704 | University Town Center | 140 University Town Ctr Dr. | Space # 242 | Sarasota | FL | 34243 | 2,289 |
| 727 | Ala Moana Center | 1450 Ala Moana Blvd | Space # 2011 | Honolulu | HI | 96814 | 2,424 |
| 909 | Bellevue | 133 Bellevue Square | Space 133 | Bellevue | WA | 98004 | 2,668 |
| 931 | Westfield Garden State Plaza | 1 Garden State Plaza | Space #2128 | Paramus | NJ | 07652 | 2,161 |

103

**Exhibit B**

### Brookstone
### Budget of Consultant Controlled Expenses

| | |
|---|---|
| # of Stores | 103 |
| Sale Term: | 8/3/18-9/30/18 |
| # of Days | 59 |
| # of Weeks | 8.4 |

Consultant Controlled Expenses:

| | | |
|---|---|---|
| Advertising | $ | 123,600 |
| Supervision | $ | 382,271 |
| Miscellaneous | $ | 15,000 |
| **Total Consultant Controlled Expenses** | **$** | **520,871** |

- This expense budget is based upon the above Sale Term. Any
changes to the Sale Term may result in adjustments to the expense
budget, which will be agreed upon by Merchant and Consultant.

- The supervision expense planned assumes that we will leverage the
existing 6 district managers. Their expense is not included in this budget.

# EXHIBIT B

## PROPOSED FINAL ORDER

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BROOKSTONE HOLDINGS CORP., *et al.*,[1] | Case No. 18-_____ (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. ___ & ___** |

**FINAL ORDER (A) AUTHORIZING THE DEBTORS TO ASSUME CLOSING STORE AGREEMENT; (B) AUTHORIZING AND APPROVING CLOSING SALES FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES; (C) AUTHORIZING THE IMPLEMENTATION OF CUSTOMARY EMPLOYEE BONUS PROGRAM AND PAYMENTS TO NON-INSIDERS THEREUNDER; (D) APPROVING DISPUTE RESOLUTION PROCEDURES; AND (E) APPROVING THE DEBTORS' STORE CLOSING PLAN**

Upon the *Debtors' Motion for Interim and Final Orders (A) Authorizing the Debtors to Assume Closing Store Agreement; (B) Authorizing and Approving Closing Sales Free and Clear of All Liens, Claims and Encumbrances; (C) Authorizing the Implementation of Customary Employee Bonus Program and Payments to Non-Insiders Thereunder; (D) Approving Dispute Resolution Procedures; and (E) Approving the Debtors' Store Closing Plan* (the "Motion")[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"); and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and the Court having found that venue of

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: Brookstone Holdings Corp. (4638), Brookstone, Inc. (2895), Brookstone Company, Inc. (3478), Brookstone Retail Puerto Rico, Inc. (5552), Brookstone International Holdings, Inc. (8382), Brookstone Purchasing, Inc. (2514), Brookstone Stores, Inc. (2513), Big Blue Audio LLC (N/A), Brookstone Holdings, Inc. (2515), and Brookstone Properties, Inc. (2517). The Debtors' corporate headquarters and the mailing address for each Debtor is One Innovation Way, Merrimack, NH 03054.

[2] All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

these cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and

the Court having found that due and sufficient notice of the Motion has been given under the

particular circumstances and that no other or further notice of the Motion need be given; and the

Court having determined that it may enter a final order consistent with Article III of the United

States Constitution; and upon consideration of the First Day Declaration; and hearings having

been held to consider the relief requested in the Motion; and upon the record of the hearings and

all of the proceedings had before the Court, including the hearing held on _____ __, 2018; and

the Court having entered that certain *Interim Order (A) Authorizing the Debtors to Assume*

*Closing Store Agreement; (B) Authorizing and Approving Closing Sales Free and Clear of All*

*Liens, Claims and Encumbrances; (C) Authorizing the Implementation of Customary Employee*

*Bonus Program and Payments to Non-Insiders Thereunder; (D) Approving Dispute Resolution*

*Procedures; and (E) Approving the Debtors' Store Closing Plan* on _____ __, 2018; and the

Court having found and determined that the relief sought in the Motion is in the best interest of

the Debtors, their estates, their creditors and all other parties in interest; and that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and after

due deliberation and sufficient cause appearing therefor,

## FOUND, CONCLUDED AND DETERMINED that:[3]

A.      The Debtors have advanced sound business reasons for entering into the Closing

Store Agreement as set forth in the Motion and at the hearing, and entering into the Closing Store

---

[3]  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law
pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the
extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent
any of the following conclusions of law constitute findings of fact, they are adopted as such.

Agreement is a reasonable exercise of the Debtors' business judgment and is in the best interest of the Debtors and their estates.

B.      The Closing Store Agreement was negotiated, proposed, and entered into by Debtor Brookstone Company Inc. and the Liquidation Consultant without collusion, in good faith and from arm's length bargaining positions.

C.      The Sale Guidelines, as described in the Motion and attached as <u>Exhibit 1</u> hereto, are reasonable and will maximize the returns on the Store Assets for the benefit of the Debtors' estates and creditors.

D.      The Closing Sales, in accordance with the Sale Guidelines and with the assistance of the Liquidation Consultant, will provide an efficient means for the Debtors to liquidate and dispose of the Store Assets as quickly and effectively as possible, and are in the best interest of the Debtors' estates.

E.      The Bonus Program will help the Debtors retain key non-insider personnel, ensure that the Closing Sales are not delayed or frustrated, maximize loss prevention efforts, and minimize shrink.

F.      The Resolution Procedures are fair and reasonable, and comply with applicable law.

G.      The Debtors have represented that, pursuant to the Motion, they are not seeking to either sell or lease personally identifiable information during the course of the Closing Sales at the Closing Stores; <u>provided</u>, <u>however</u>, that the Liquidation Consultant will be authorized to distribute emails and promotional materials to the Debtors' customers consistent with the Debtors' existing policies on the use of consumer information.

H.    The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

I.    The entry of this Final Order is in the best interest of the Debtors and their estates, creditors, and all other parties in interest herein.

**IT IS HEREBY ORDERED THAT:**

1.    The Motion is GRANTED on a final basis as set forth herein.

2.    The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Final Order.  The failure to include specifically any particular provision of the Closing Store Agreement in this Final Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Closing Store Agreement and all of its provisions, payments and transactions, be and hereby are authorized and approved on a final basis.

3.    To the extent there is any conflict between this Final Order, the Sale Guidelines, and the Closing Store Agreement, the terms of this Final Order shall control over all other documents, and the Sale Guidelines shall control over the Closing Store Agreement.

**A.    Assumption of the Closing Store Agreement by the Debtors**

4.    The Closing Store Agreement, a copy of which is attached to this Final Order as Exhibit 2, is hereby assumed pursuant to section 365 of the Bankruptcy Code.  The Debtors are authorized to act and perform in accordance with the terms of the Closing Store Agreement, including, making payments required by the Closing Store Agreement to the Liquidation Consultant without the need for any application of the Liquidation Consultant or a further order of the Court, subject to the Objection Rights (as defined below).  Within thirty (30) days of the

conclusion of all Closing Sales, the Debtors shall file a summary report of such Closing Sales

that will include (i) the stores closed, (ii) gross revenue from Merchandise sold, and (iii) gross

revenue from FF&E sold, and also provide the U.S. Trustee, the DIP Administrative Agent, the

DIP Term Agent, and the Committee (y) the calculation of and compensation paid to the

Liquidation Consultant and (z) expenses reimbursed to the Liquidation Consultant; provided,

further, that only the U.S. Trustee or the Committee may, within twenty (20) days after such

report is filed and information is provided, object to the compensation paid or expenses

reimbursed to the Liquidation Consultant only as to and on the following grounds: (i) that the

calculation of the compensation paid to the Liquidation Consultant pursuant to the compensation

structure contemplated by the Closing Store Agreement as of the date of this Final Order was not

performed correctly; (ii) the calculation and reasonableness of any compensation paid to the

Liquidation Consultant pursuant to a compensation structure other than as reflected in the

Closing Store Agreement as of the date of this Final Order; and (iii) the reasonableness of any

expenses reimbursed by the Debtors to the Liquidation Consultant that were in excess of the

expense budget(s) filed with the court prior to the final hearing on the Motion ((i) through (iii),

collectively, the "Objection Rights").  Notwithstanding this or any other provision of this Final

Order, nothing shall prevent or be construed to prevent the Liquidation Consultant (individually,

as part of a joint venture, or otherwise) or any of its affiliates from (x) guaranteeing a recovery

on or otherwise acquiring Merchandise or FF&E that may not be sold during the Closing Sales,

subject to reaching an agreement with the Debtors with respect to such guarantee or other

acquisition and providing notice as would be reasonable under the circumstances; or (y) (1)

bidding on the Debtors' assets not subject to the Closing Store Agreement pursuant to an agency

agreement or otherwise and (2) the Liquidation Consultant is hereby authorized to bid on and

guarantee or otherwise acquire such assets notwithstanding anything to the contrary in the Bankruptcy Code or other applicable law, <u>provided</u> that such guarantee transaction or acquisition is approved by separate order of this Court.

**B.      Authority to Engage in the Closing Sales at the Closing Stores**

5.      The Debtors are authorized, pursuant to section 105(a) and section 363(b)(1) of the Bankruptcy Code, to conduct the Closing Sales at the Closing Stores in accordance with this Final Order, the Sale Guidelines, and the Closing Store Agreement.

6.      The Sale Guidelines are approved in their entirety.

7.      Except as provided herein, neither the Debtors nor the Liquidation Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any governmental unit (as defined in section 101(27) of the Bankruptcy Code ) or any landlord, to conduct the Closing Sales at the Closing Stores and any related activities in accordance with the Sale Guidelines.

8.      No landlord, licensor, property owner, and/or property manager shall prohibit, restrict, or otherwise interfere with any Closing Sale at any Closing Store.

**C.      Conducting the Closing Sales at the Closing Stores**

9.      All newspapers and other advertising media in which the Closing Sales may be advertised and all landlords of the Closing Stores are directed to accept this Final Order as binding authority so as to authorize the Debtors and the Liquidation Consultant to conduct the Closing Sales and the sale of Merchandise and Offered FF&E pursuant to the Closing Store Agreement and the Sale Guidelines, including, without limitation, to conduct and advertise the sale of the Merchandise and Offered FF&E in the manner contemplated by and in accordance with this Final Order, the Sale Guidelines, and the Closing Store Agreement.

01:23477531.1

10.     Nothing in this Final Order or the Closing Store Agreement releases the Debtors or the Liquidation Consultant from complying with laws and regulations of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws").

11.     The Debtors and the Liquidation Consultant are hereby authorized to take such actions as may be necessary and appropriate to implement the Closing Store Agreement and to conduct the Closing Sales without the need for a further order of this Court, including, but not limited to, advertising the sale as a "store closing," "sale on everything," "everything must go," "liquidation sale," or similar themed sale through the posting of signs in accordance with the Sale Guidelines, notwithstanding any applicable non-bankruptcy laws that restrict such sales and activities, and notwithstanding any provision in any lease, sublease, license or other agreement related to occupancy, "going dark," or abandonment of assets, or other provisions that purport to prohibit, restrict, or otherwise interfere with the Closing Sales.

12.     No person or entity, including, but not limited to, any landlord, service providers, utility provider, and creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder the Closing Sales or the sale of Merchandise or Offered FF&E, or the advertising and promotion of the Closing Sales.

13.     The Debtors and the Liquidation Consultant shall (a) accept the Debtors' validly-issued Gift Cards, Gift Certificates, and Rewards Certificates (each as defined in the Customer

Programs Motion)[4] that were issued by or on behalf of the Debtors before the Petition Date in

accordance with the Debtors' applicable policies and procedures as they existed as of the Petition

Date, as described in the Customer Programs Motion and (b) accept returns of merchandise sold

by the Debtors before the Petition Date, provided that such return is otherwise in compliance

with the Debtors' applicable policies and procedures as of the Petition Date.

14.     All sales of all Store Assets shall be "as is" and final.  Conspicuous signs stating

that "all sales are final" and "as is" will be posted at the cash register areas at all Closing Stores.

All state and federal laws relating to implied warranties for latent defects shall be complied with

and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."

Further, as to the Closing Stores only, the Debtors and/or the Agent shall accept return of any

goods purchased during the Store Closing Sales that contain a defect which the lay consumer

could not reasonably determine was defective by visual inspection prior to purchase for a full

refund, provided that the consumer must return the merchandise within the return period

advertised to the purchaser at the Closing Store at the time of such purchase, the consumer must

provide a receipt, and the asserted defect must in fact be a "latent" defect.

15.     The Liquidation Consultant may sell Additional Consultant Goods at any of the

Closing Sales on the terms and subject to the conditions set forth in the Closing Store Agreement

and this Final Order.

16.     The Debtors remain responsible for the payment of any and all sales taxes.  The

Debtors are directed to remit all taxes accruing from the Closing Sales to the applicable

governmental units as and when due, provided that in the case of a bona fide dispute, the Debtors

---

[4]     As used herein, the "Customer Programs Motion" refers to the *Debtors' Motion for Interim and Final Orders Authorizing Debtors to Honor and Continue Certain Customer Programs and Customer Obligations in the Ordinary Course of Business.*

are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the

dispute is decided in favor of the applicable governmental unit.  For the avoidance of doubt, sales

taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other

party, other than the applicable governmental unit for which the sales taxes are collected.

17.     Pursuant to section 363(f) of the Bankruptcy Code, the Liquidation Consultant, on

behalf of the Debtors, is authorized to sell all Merchandise or Offered FF&E pursuant to the

Closing Store Agreement and in accordance with the Sale Guidelines.  All sales of Merchandise

or Offered FF&E, whether by the Liquidation Consultant or the Debtors, shall be free and clear

of any and all Encumbrances; provided, however, that any liens, claims, and encumbrances shall

attach to the proceeds of the sale of applicable Merchandise or Offered FF&E with the same

validity and priority and to the same extent and amount that any such liens, claims, and

encumbrances had with respect to such Merchandise and/or Offered FF&E, subject to any claims

and defenses that the Debtors may possess with respect thereto and subject to the Liquidation

Consultant's fees and expenses pursuant to the Closing Store Agreement.

18.     To the extent that the Debtors propose to sell or abandon Store Assets that may

contain any personal and/or confidential information about the Debtors' employees and/or

customers (the "Confidential Information"), the Debtors shall remove all such the Confidential

Information from such Store Assets before they are sold or abandoned.

19.     The Debtors and the Liquidation Consultant are authorized and empowered to

transfer Merchandise and other Store Assets among the Closing Stores as well as among the

Debtors' non-Closing Stores.  The Liquidation Consultant is authorized to sell or, in consultation

with the DIP Administrative Agent and the DIP Term Agent, abandon the Debtors' Offered

FF&E, in accordance with the terms of the Closing Store Agreement and the Sale Guidelines.

**D.**     **Resolution Procedures for Disputes Regarding Liquidation Laws**

20.     To the extent that the Closing Sales at the Closing Stores are conducted in accordance with this Final Order and the Sale Guidelines, and are therefore conducted under the supervision of this Court, such Closing Sales are authorized notwithstanding any federal, state or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws, including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions (collectively, the "Liquidation Laws") that contain exemptions for court-ordered sales. Given such exemptions, the Debtors shall be presumed to be in compliance with any Liquidation Laws and are authorized to conduct the Closing Sales in accordance with the terms of this Final Order and the Sale Guidelines without the necessity of showing compliance with any Liquidation Laws.

21.     To the extent that any Applicable Governmental Unit disputes the Debtors' compliance with any Liquidation Law, such Applicable Governmental Unit may assert a dispute (a "Liquidation Dispute") by serving written notice (a "Dispute Notice") of such Liquidation Dispute on the following parties: (a) Gibson, Dunn & Crutcher, LLP, 200 Park Avenue, New York, NY 10166 (Attn: Matthew J. Williams, David M. Feldman, Matthew K. Kelsey, and Keith R. Martorana), (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn:  Michael R. Nestor, Sean M. Beach, and Andrew L. Magaziner), (c) Counsel to the DIP Administrative Agent, Morgan, Lewis & Bockius LLP, One Federal Street, Boston, MA 02110 (Attn: Christopher L. Carter), (d) counsel to the DIP Term

Agent, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn:

Jonathan D. Marshall), (e) Gordon Brothers Retail Partners LLC, 800 Boylston Street, 27th Floor,

Boston, MA 02199 (Attn: Mackenzie Shea), (f) Hilco Merchant Resources, LLC, 5 Revere

Drive, Suite 206, Northbrook, IL 60062 (Attn: Ian Fredericks); and (g) Pepper Hamilton LLP,

Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709 Wilmington, Delaware 19899

(Attn: Douglas D. Herrmann).  If the Debtors, the Liquidation Consultant, and such Applicable

Governmental Unit are unable to resolve the Liquidation Dispute promptly after service of the

Dispute Notice, such Applicable Governmental Unit may file a notice with this Court detailing

the nature of the Liquidation Dispute (a "Dispute Resolution Notice"), which shall be heard at

the next regularly scheduled omnibus hearing in these Chapter 11 Cases.  The filing of a Dispute

Resolution Notice shall not be deemed to affect the finality of this Final Order or to limit or

interfere with the Debtors' or the Liquidation Consultant's ability to conduct or to continue to

conduct the Closing Sales pursuant to this Final Order and in accordance with the Sale

Guidelines, absent further order of this Court.  The dispute resolution procedures relating to any

Liquidation Disputes described in this paragraph are referred to as the "Resolution Procedures."

22.     Within three (3) business days of the entry of this Final Order, the Debtors shall

serve copies of this Final Order, the Closing Store Agreement, and the Sale Guidelines via email,

facsimile or regular mail, on (a) the Attorney General's office for each state where the Closing

Sales are being held, (b) the county consumer protection agency or similar agency for each

county where the Closing Sales are being held, (c) the division of consumer protection for each

state where the Closing Sales are being held, (d) the chief legal counsel for the local jurisdiction

the Closing Sales are being held, and (e) the landlords.

**E.     Bonus Program; Closing Bonuses**

23.     The Debtors are authorized but not obligated to implement and honor the Bonus Program and to pay Closing Bonuses thereunder.  In no event shall Closing Bonuses authorized hereunder by paid to insiders of the Debtors.

**F.     Miscellaneous**

24.     Except with respect to the Closing Store Agreement, nothing in this Final Order or the Motion shall be deemed to constitute a postpetition assumption of any agreement under section 365 of the Bankruptcy Code.

25.     The Closing Store Agreement and related documents may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court.

26.     This Court shall retain exclusive jurisdiction with regard to all issues or disputes arising from or relating to the implementation, interpretation, or enforcement of this Final Order or the Closing Store Agreement, including, but not limited to, any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit the Closing Sales in accordance with the Sale Guidelines, or any other disputes related to the Closing Sales.  No parties or person shall take any action against the Debtors or the Liquidation Consultant until this Court has resolved such dispute.  This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

27.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in respect of payments made in accordance with this Final Order that are dishonored or rejected.

01:23477531.1

28.     Each of the Debtors' banks and other financial institutions is authorized to honor checks presented for payment and all fund transfer requests made by the Debtors, to the extent that sufficient funds are on deposit in the applicable accounts, in accordance with this Final Order and any other order of this Court.

29.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

30.     [Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under the Debtors' postpetition financing agreements (the "DIP Documents") and any orders approving the DIP Documents and governing the Debtors' use of cash collateral (including with respect to any budgets governing or relating thereto).]

31.     Nothing in this Final Order is intended to affect any rights of any Applicable Governmental Unit to enforce any law affecting the Debtors' conduct of the Closing Sales prior to the Petition Date.

32.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.


Dated: _____, 2018
Wilmington, Delaware

_____

UNITED STATES BANKRUPTCY JUDGE


01:23477531.1

## **EXHIBIT 1**

## **SALE GUIDELINES**

*(see attached)*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BROOKSTONE HOLDINGS CORP., *et al.*,[1] | Case No. 18-_____ (___) |
| Debtors. | (Jointly Administered) |

## SALE GUIDELINES

The following procedures (the "Sale Guidelines") shall apply to the closing sale (each, a "Closing Sale" and collectively, the "Closing Sales") to be held at each of the store locations operated by the above-captioned debtors in possession (collectively, "Brookstone") to be closed (collectively, the "Closing Stores" and each, a "Closing Store"), subject to the agreement (the "Closing Store Agreement") dated as of August 1, 2018 by and among Gordon Brothers Retail Partners, LLC and Hilco Merchant Resources, LLC (collectively, the "Liquidation Consultant") and Debtor Brookstone Holdings Corp., and in accordance with the order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court")  and approving the Closing Sales at the Closing Stores in accordance with these Sale Guidelines:

1.      The Closing Sales will commence at the Closing Stores on or about August 3, 2018 (the "Sale Commencement Date") and will terminate on or about September 30, 2018 (the "Sale Termination Date"), subject to a mutually agreed extension between Brookstone and the Liquidation Consultant thereof.

2.      Each Closing Sale shall be conducted so that the Closing Store in which sales are to occur will remain open no longer than during the normal hours of operation provided for in the respective leases for the Closing Stores.

3.      Each Closing Sale shall be conducted at the Closing Stores during the normal business hours maintained at each Closing Store by Brookstone prior to the filing of their bankruptcy petitions; provided that Brookstone may in its discretion modify the business hours as necessary or advisable.

4.      Conspicuous signs stating that "all sales are final" and "as is" will be posted at the cash register areas at all Closing Stores.

---

1 The Debtors, along with the last four digits of each Debtor's tax identification number, are: Brookstone Holdings Corp. (4638), Brookstone, Inc. (2895), Brookstone Company, Inc. (3478), Brookstone Retail Puerto Rico, Inc. (5552), Brookstone International Holdings, Inc. (8382), Brookstone Purchasing, Inc. (2514), Brookstone Stores, Inc. (2513), Big Blue Audio LLC (N/A), Brookstone Holdings, Inc. (2515), and Brookstone Properties, Inc. (2517). The Debtors' corporate headquarters and the mailing address for each Debtor is One Innovation Way, Merrimack, NH 03054.

5.      The Liquidation Consultant and Brookstone may advertise each Closing Sale as a "store closing," "sale on everything," "everything must go," "liquidation sale," or similar themed sale.  The Liquidation Consultant and Brookstone may also have "countdown to closing" signs prominently displayed in a manner consistent with these Sale Guidelines.

6.      The Liquidation Consultant and Brookstone shall be permitted to utilize exterior banners at (a) non-enclosed mall Stores and (b) enclosed mall Stores to the extent the entrance to the applicable Store does not require entry into the enclosed mall common area; provided, however, that such banners (i) shall not exceed 4 feet by 40 feet in size; (ii) shall be located or hung so as to make clear that the Sale is being conducted only at the affected Store; and (iii) shall not be wider than the storefront of the Store.

7.      Except with respect to the hanging of exterior banners, the Liquidation Consultant and Brookstone shall not make any alterations to the storefront or exterior walls of any Closing Stores.

8.      No landlord, licensor, property owner, and/or property manager (each, a "Landlord" and collectively, the "Landlords") shall prohibit, restrict, or otherwise interfere with any Closing Sale at any Closing Store.

9.      The Liquidation Consultant and Brookstone shall not make any alterations to interior or exterior Closing Store lighting.  No property of a Landlord of a Closing Store shall be removed or sold during any Closing Sale.  The hanging of exterior banners or signage or banners in a Closing Store shall not constitute an alteration to a Closing Store.

10.     The Liquidation Consultant and Brookstone shall be permitted to utilize sign-walkers in a safe and professional manner.

11.     On "shopping center" property, neither Brookstone or the Liquidation Consultant shall distribute handbills, leaflets or other written materials to customers outside of any Closing Store's premises, unless permitted by the lease or, if distribution is customary in the "shopping center" in which such Closing Store is located; provided that Brookstone and the Liquidation Consultant may solicit customers in the Closing Stores themselves.  On "shopping center" property, Brookstone and the Liquidation Consultant shall not use any flashing lights or amplified sound to advertise the Closing Sale or solicit customers, except as permitted under the applicable lease or agreed to by the Landlord.

12.     The Liquidation Consultant and Brookstone shall be permitted to utilize A-frames, to be used only with secure tiedowns.

13.     With respect to any Closing Stores location in enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines.

14.     The Liquidation Consultant and Brookstone shall keep Closing Store premises and surrounding areas clean and orderly consistent with present practices.

01:23477531.1

2

15.     Nothing contained in these Sale Guidelines shall be construed to create or impose upon the Liquidation Consultant and Brookstone any additional restrictions not contained in the applicable lease agreement.

16.     Brookstone shall have consulted with the DIP Administrative Agent and the DIP Term Agent and shall have informed the Liquidation Consultant of those items of furniture, fixtures, and equipment located at each Closing Store which are not to be sold (because either Brookstone does not have the right to sell such items or because Brookstone wishes to retain such items for itself, or otherwise) (collectively, the "Retained FF&E").

17.     The Liquidation Consultant may advertise and sell all furniture, fixtures, and equipment located at each Closing Store as of the Sale Commencement Date which is not Retained FF&E (collectively, the "Offered FF&E") in a manner consistent with these Sale Guidelines and the Closing Store Agreement.

18.     The purchasers of any Offered FF&E sold at any Closing Stores shall be permitted to remove the Offered FF&E either through the back shipping areas at any time, or through other areas after Closing Store business hours. Purchased Offered FF&E may be carried out the front door during regular store hours if it fits into a shopping bag.

19.     All Merchandise (as defined in the Closing Store Agreement) and all Offered FF&E shall be sold free and clear of all claims, liens, and encumbrances.

20.     The Liquidation Consultant shall have the right to supplement the Merchandise with Additional Consultant Goods in accordance with the Consulting Agreement.

21.     Upon the earlier of (a) the completion of the Closing Sale at a Closing Store or (b) the Sale Termination Date, the Liquidation Consultant shall leave each Closing Store in broom clean condition and shall abandon all Retained FF&E and all unsold Offered FF&E in a neat and orderly manner.

22.     Brookstone, in consultation with the DIP Administrative Agent and the DIP Term Agent, may abandon any Retained FF&E that it has not removed and any unsold FF&E located at a Closing Store (collectively, the "Remaining Property").

23.     The Liquidation Consultant and its respective agents and representatives shall continue to have exclusive and unfettered access to the Closing Stores until the conclusion of the applicable Sale Term for each Store under the Closing Store Agreement.

24.     The rights of any Landlord as against Brookstone's estates for any damages caused to a Closing Store shall be reserved in accordance with the provisions of the applicable lease.  If and to the extent that a Landlord of any Closing Store affected hereby contends that the Liquidation Consultant or Brookstone are in breach of or default under these Sale Guidelines, such Landlord shall deliver notice on the following parties via email or deliver written notice so as to ensure delivery thereof within one business day thereafter: (a) Gibson, Dunn & Crutcher, LLP, 200 Park Avenue, New York, NY 10166 (Attn: Matthew J. Williams, David M. Feldman, Matthew K. Kelsey, and Keith R. Martorana), (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn:  Michael R. Nestor, Sean

01:23477531.1

3

M. Beach, and Andrew L. Magaziner), (c) Gordon Brothers Retail Partners, LLC, 800 Boylston Street, 27th Floor, Boston, MA 02199 (Attn: Mackenzie Shea, Associate General Counsel), (d) Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709 Wilmington, Delaware 19899 (Attn: Douglas D. Herrmann), and (e) Hilco Merchant Resources, LLC, 5 Revere Drive, Suite 206, Northbrook, IL 60062 (Attn: Ian Fredericks).

*[End of Sale Guidelines]*

**EXHIBIT 2**

**CLOSING STORE AGREEMENT**

*(see attached)*

 

August 1, 2018

To:     Brookstone Company, Inc.
        One Innovation Way
        Merrimack, NH 03054

From:   Gordon Brothers Retail Partners, LLC
        800 Boylston Street, 27th Floor
        Boston, MA 02199

        -and-

        Hilco Merchant Resources, LLC
        5 Revere Drive, Suite 206
        Northbrook, Illinois 60062

Re:     Store Closing Program – Consulting Agreement

Ladies and Gentlemen:

This letter shall serve as the agreement between a contractual joint venture comprised of Gordon
Brothers Retail Partners, LLC and Hilco Merchant Resources, LLC (together, the "Consultant")
and Brookstone Company, Inc. and its affiliates (together, the "Merchant") pursuant to which
Consultant shall serve as the exclusive consultant to Merchant to conduct a "store closing" and
other mutually agreed upon themed sale ("Sale") at Merchant's non-Airport retail stores
identified on <u>Exhibit A</u> attached hereto (each a "Store" and collectively the "Stores"), subject to
the terms and conditions set forth herein.

1.      **RETENTION**
(A)     Merchant hereby retains Consultant as its exclusive, independent consultant to conduct
the Sale at the Stores during the Sale Term, and in connection therewith, Consultant shall,
throughout the Sale Term:

        (i)     Recommend appropriate discounting to effectively sell all of Merchant's goods
                located at the Stores as of the Sale Commencement Date or thereafter delivered
                thereto as may be mutually agreed by the parties in accordance with a "store
                closing" and other mutually agreed upon themed sale, and recommend
                appropriate point-of-purchase, point-of-sale, and other internal and external
                advertising in connection therewith.

(ii)     Provide qualified supervision to oversee the conduct of the Sale.

(iii)    Maintain focused and constant communication with Merchant's Store Operations team to coordinate and keep them abreast of strategy and timing and to properly effect Store-level communication by Merchant's employees to customers and others about the Sale.

(iv)    Establish and monitor accounting functions for the Sale, including evaluation of sales of Merchant's goods located at the Stores by category, sales reporting and expense monitoring.

(v)     Recommend loss prevention strategies.

(vi)    Coordinate with Merchant so that the operation of the Stores is being properly maintained including ongoing customer service and housekeeping activities; and

(vii)   Recommend appropriate staffing levels for the Stores and appropriate bonus and/or incentive programs (to be funded by Merchant) for Store employees.

**2.    SALE TERM; VACATING STORES**

(A)     The term "Sale Term" with respect to each respective Store shall commence on or about the date identified on Exhibit B ("Sale Commencement Date") and shall end on the date identified on Exhibit B ("Sale Termination Date"); provided however, that Consultant and Merchant may mutually agree upon an earlier or later "Sale Termination Date" with respect to any one or more Stores (on a Store-by-Store basis).

(B)     Upon the conclusion of the Sale Term at each Store, Consultant shall leave such Store in broom clean condition, subject to Consultant's right pursuant to Section 6 below to abandon in a neat and orderly manner all unsold Offered FF&E and all Retained FF&E.

(C)     From and after the Sale Commencement Date, Merchant and Consultant may mutually agree upon the terms of a global transaction (an "Alternative Transaction") that affects the Sale and Stores contemplated hereunder and encompasses Merchant's other assets not subject to this Agreement (including, without limitation, the Airport retail stores, intellectual property, accounts receivable, owned and leased real property, executory contracts, chapter 5 causes of action, and/or other miscellaneous assets), and the definitive agreement executed by the parties regarding such Alternative Transaction may, *inter alia*, provide for alternative disposition of the Merchandise and Owned FF&E hereunder and corresponding changes to the Sale Term, Consultant Controlled Expenses, Incentive Fee, FF&E Commission, and/or Additional Goods Fee, subject in all respects to approval of such agreement by the Bankruptcy Court.

**3.    EXPENSES**

(A)     All expenses incident to the conduct of the Sale and the operation of the Stores during the Sale Term (including without limitation all Consultant Controlled Expenses and all other store-



level and corporate expenses associated with the Sale) shall be borne by Merchant; <u>except</u> solely for any of the specifically enumerated "Consultant Controlled Expenses" that exceed the aggregate budgeted amount (as provided in Section 3(B) below) for such Consultant Controlled Expenses.

(B)     Attached hereto as <u>Exhibit B</u> is an expense budget for the "Consultant Controlled Expenses." Consultant will advance funds for the Consultant's Controlled Expenses, and Merchant shall reimburse Consultant therefor (up to the aggregate budgeted amount) in connection with each weekly reconciliation contemplated by Section 5(B) upon presentation of reasonable documentation for such actually-incurred expenses. The parties may from time to time mutually agree in writing to increase the budget of Consultant Controlled Expenses based upon circumstances of the Sale.

### 4.     CONSULTANT COMPENSATION

(A)     As used herein, the following terms shall have the following meanings:

    (i)     "Gross Proceeds" shall mean the gross proceeds of all sales of Merchandise during the Sale Term, net only of sales taxes.

    (ii)     "Merchandise" shall mean the goods actually sold in the Stores during the Sale Term, the aggregate amount of which shall be determined using the gross rings inventory taking method.

    (ii)     "Aggregate Recovery Percentage" shall mean the Gross Proceeds divided by the aggregate Cost Value of all of the Merchandise.

    (iv)     "Cost Value" with respect to each item of Merchandise sold shall be determined by reference to the per unit cost in Merchant's books and records, maintained in the ordinary course consistent with historic practices.

(B)     In consideration of its services hereunder, Merchant shall pay Consultant an "Incentive Fee" equal to as one of the following (e.g., back to first dollar):

| Aggregate Recovery Percentage | Incentive Fee |
| --- | --- |
| Below 120.0% | No Incentive Fee |
| Between 120.0% and 129.99% | 0.50% of Gross Proceeds |
| Between 130.0 to 134.99% | 0.75% of Gross Proceeds |
| Between 135.0 to 144.99% | 1.00% of Gross Proceeds |
| Above 145.0% | 1.50% of Gross Proceeds |

(C)     The parties acknowledge that the fee has been established based upon Consultant's reliance that Merchant's personnel (including district, regional, and store managers, and Store-level personnel) will provide Consultant with reasonable and good faith cooperation and support throughout the Sale Term in connection with the conduct of the Sale.

(D)     On a weekly basis in connection with each weekly reconciliation contemplated by Section 5(B) below, Merchant shall pay Consultant an amount equal to 0.75% of Gross Proceeds


1 9 0 3

on account of the prior week's sales as an advance on account of the fees payable hereunder. The parties shall determine the definitive Gross Proceeds connection with the Final Reconciliation; and thus at such time the definitive Incentive Fee also will be determined in connection with the Final Reconciliation. Immediately thereafter (and as part of the Final Reconciliation), Merchant shall pay Consultant any additional amount owed on account of the Incentive Fee.

## 5.    CONDUCT OF SALE; OTHER SALE MATTERS

(A)    Merchant shall have control over the personnel in the Stores and shall handle the cash, debit and charge card payments for all Merchandise in accordance with Merchant's normal cash management procedures, subject to Consultant's right to audit any such items. Merchant (and not Consultant) shall be responsible for ensuring that the Sale, and the operation of the Stores (before, during, and after the Sale Term) shall be conducted in compliance with all applicable laws and regulations.

(B)    The parties will meet on each Wednesday during the Sale Term to review any Sale matters reasonably requested by either party; and all amounts payable or reimbursable to Consultant for the prior week (or the partial week in the case of the first and last weeks) shall be reconciled and paid immediately thereafter. No later than twenty (20) days following the end of the Sale, the parties shall complete a final reconciliation and settlement of all amounts contemplated by this Agreement ("Final Reconciliation"). From time to time upon request, each party shall prepare and deliver to the other party such other reports as either party may reasonably request. Each party to this Agreement shall, at all times during the Sale Term and during the one (1) year period thereafter, provide the other with access to all information, books and records relating to the Sale and to this Agreement. All records and reports shall be made available to Consultant and Merchant during regular business hours upon reasonable notice.

(C)    Merchant shall be solely responsible for the computing, collecting, holding, reporting, and paying all sales taxes associated with the sale of Merchandise during the Sale Term, and Consultant shall have absolutely no responsibilities or liabilities therefor.

(D)    Although Consultant shall undertake its obligations under this Agreement in a manner designed to achieve the desired results of the Sale and to maximize the recovery to the Merchant, Merchant expressly acknowledges that Consultant is not guaranteeing the results of the Sale.

(E)    Merchant acknowledges that (i) the parties are not conducting an inventory of Merchant's goods located at the Stores; (ii) Consultant has made no independent assessment of the beginning levels of such goods; and (iii) Consultant shall not bear any liability for shrink or other loss to Merchant's goods located at the Stores (including without limitation Merchandise).

(F)    All sales of Merchandise in the Stores during the Sale shall be made in the name, and on behalf, of Merchant.

(G)    All sales of Merchandise in the Stores during the Sale Term shall be "final sales" and "as is," and all advertisements and sales receipts will reflect the same.



(H)    Consultant shall, during the Sale Term at the Stores, cooperate with Merchant in respect of Merchant's procedures governing returns of goods otherwise sold by Merchant (e.g., not in the Stores during the Sale Term).

(I)    Merchant hereby permits the Sale to be, and shall ensure that the Sale otherwise may be, advertised as a "store closing" or other mutually agreed upon handle throughout the term of the Sale.

(J)    Intentionally Omitted.

**6.    FF&E**

(A)    Promptly following the Sale Commencement Date, Merchant shall inform Consultant of those items of furniture, fixtures, and equipment located at the Stores which are not to be sold (because Merchant does not have the right to sell such items, because Merchant wishes to retain such items for itself, or otherwise) (collectively, "Retained FF&E").

(B)    With respect to all furniture, fixtures, and equipment located at the Stores as of the Sale Commencement Date which is not Retained FF&E (collectively the "Offered FF&E"), Consultant shall have the right to sell such Offered FF&E during the Sale Term on a commission basis equal to fifteen percent (15.0%) of the gross sales of Offered FF&E, net only of sales tax ("FF&E Commission").

(C)    Merchant shall reimburse Consultant for its reasonable sale expenses associated with the sale of the Offered FF&E, not to exceed the amount shown on an FF&E expense budget (which shall be in addition to the Consultant Controlled Expenses budget), to be mutually and reasonably agreed to by the parties promptly after Merchant identifies/designates/distinguishes between the Offered FF&E and Retained FF&E ("FF&E Expenses").

(D)    Consultant shall have the right to abandon any unsold Offered FF&E (and all Retained FF&E) at the Stores at the conclusion of the Sale Term without liability to Merchant or any third party.

**7.    ADDITIONAL CONSULTANT GOODS**

(A)    In connection with the Sale, Consultant may supplement the Sale with additional goods procured by Consultant on its credit which are of like kind, and no lesser quality to the other Merchandise in the Sale ("Additional Consultant Goods").  Sales of Additional Consultant Goods shall be run through Merchant's cash register systems; provided, however, that Consultant shall mark the Additional Consultant Goods using either a "dummy" SKU or department number, or in such other manner so as to distinguish the sale of Additional Consultant Goods from the sale of Merchandise.  Consultant and Merchant shall also cooperate so as to ensure that the Additional Consultant Goods are marked in such a way that a reasonable consumer could identify the Additional Consultant Goods as non-Merchant goods.  Additionally, Consultant shall



1 9 0 3

provide signage in the Stores notifying customers that the Additional Consultant Goods have been included in the Sale. Upon the sale of any Additional Consultant Goods to a customer, any sales taxes associated therewith will be collected from the consumer at the point of sale and thereafter remitted by Merchant to the applicable authorities.

(B)     Consultant shall pay to Merchant an amount equal to seven and one half percent (7.5%) of the gross proceeds of Additional Consultant Goods actually sold in the Sale (the "Additional Goods Fee"). Consultant shall pay Merchant its Additional Goods Fee in connection with each weekly sale reconciliation with respect to sales of Additional Consultant Goods sold during each then prior week (or at such other mutually agreed upon time) from the proceeds thereof.

(C)     Consultant and Merchant intend that the transactions relating to the Additional Consultant Goods are, and shall be construed as, a true consignment from Consultant to Merchant in all respects and not a consignment for security purposes. At all times and for all purposes the Additional Consultant Goods and their proceeds shall be the exclusive property of Consultant, and no other person or entity shall have any claim against any of the Additional Consultant Goods or their proceeds. The Additional Consultant Goods shall at all times remain subject to the exclusive control of Consultant.

(D)     Merchant shall, at Consultant's sole cost and expense, insure the Additional Consultant Goods and, if required, promptly file any proofs of loss with regard to same with Merchant's insurers. Consultant shall be responsible for payment of any deductible (but only in relation to the Additional Consultant Goods) under any such insurance in the event of any casualty affecting the Additional Consultant Goods.

(E)     Merchant acknowledges that the Additional Consultant Goods shall be consigned to Merchant as a true consignment under Article 9 of the Uniform Commercial Code (the "UCC"). Consultant is hereby granted a first priority security interest in and lien upon (i) the Additional Consultant Goods and (ii) the Additional Consultant Goods proceeds, and Consultant is hereby authorized to file UCC financing statements and provide notifications to any prior secured parties.

8.     **INSURANCE; RISK OF LOSS**

During the Sale Term: (a) Merchant shall maintain (at its expense) insurance with respect to the Merchandise in amounts and on such terms and conditions as are consistent with Merchant's ordinary course operations, and (b) each of Merchant and Consultant shall maintain (at each party's respective expense) comprehensive liability and workers' compensation insurance covering injuries to persons and property in or in connection with the Stores, in such amounts as are reasonable and consistent with its ordinary practices, for bodily injury, personal injury and/or property damage. Each party shall be added as an additional insured on all such insurance of the other party, all such insurance shall provide that it shall be non-cancelable and non-changeable except after 30 days' prior written notice to the other party, and each party shall provide the other with certificates of all such insurance prior to the commencement of the Sale.



Notwithstanding any other provision of this Agreement, Merchant and Consultant agree that Consultant shall not be deemed to be in possession or control of the Stores, or the Merchandise or other assets located therein or associated therewith, or of Merchant's employees located at the Stores; and Consultant does not assume any of Merchant's obligations or liabilities with respect thereto.

Notwithstanding any other provision of this Agreement, Merchant and Consultant agree that Merchant shall bear all responsibility for liability claims (product liability and otherwise) of customers, employees and other persons arising from events occurring at the Stores, and Merchandise sold in the Stores, before, during and after the Sale Term (except (i) any liability arising out of Consultant's indemnification obligations set forth below, and (ii) Consultant shall be responsible for all workers' compensation claims related to its employees, agents and representatives).

## 9.     INDEMNIFICATION

(A)      Consultant shall indemnify and hold Merchant and its affiliates, and their respective officers, directors, employees, consultants, and independent contractors (collectively, "Merchant Indemnified Parties") harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to:

     (i)      Consultant's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith;

     (ii)      any harassment or any other unlawful, tortious or otherwise actionable treatment of any employees or agents of Merchant by Consultant, its affiliates or their respective officers, directors, employees, agents, independent contractors or representatives (including without limitation any supervisors);

     (iii)      any claims by any party engaged by Consultant as an employee or independent contractor (including without limitation any non-Merchant employee supervisor) arising out of such employment or engagement; or

     (iv)      the negligence, willful misconduct or unlawful acts of Consultant, its affiliates or their respective officers, directors, employees, Consultants, independent contractors or representatives.

(B)      Merchant shall indemnify and hold Consultant, its affiliates and their respective officers, directors, employees, consultants, and independent contractors (collectively, "Consultant Indemnified Parties") harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to:

     (i)      Merchant's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith;



(ii)     any claims by any party engaged by Merchant as an employee or independent
contractor arising out of such engagement;

(iii)    any consumer warranty or products liability claims relating to any Merchandise;
and/or

(iv)    the negligence, willful misconduct or unlawful acts of Merchant, its affiliates or
their respective officers, directors, employees, agents, independent contractors or
representatives.

## 10.    MISCELLANEOUS

(A) In the event Merchant becomes subject to a chapter 11 bankruptcy case in any United States
Bankruptcy Court (the "Bankruptcy Court"), Merchant shall promptly upon seek to have this
Agreement, and the transactions contemplated by this Agreement, approved by the Bankruptcy
Court pursuant to Sections 363 and 365 of the United States Bankruptcy Code and an order
acceptable to both Merchant and Consultant, which order shall specifically provide, among other
things, that: (i) Merchant assumes this Agreement and the transactions contemplated by this
Agreement, including (without limitation) with respect to the payment of all fees and
reimbursement of expenses, (ii) authorizing the Sale without the necessity of complying with
federal or provincial rules, laws, ordinances and regulations, including, without limitation,
permitting and licensing requirements, that would otherwise govern the Sale; (iii) authorizing the
Sale notwithstanding restrictions in leases, occupancy agreements or other contracts that purport
to restrict the Sale or the necessity of obtaining any third party consents; and (iv) take all further
actions as are necessary or appropriate to carry out the terms and conditions of this Agreement.

(B) Consultant hereby discloses, and Merchant hereby acknowledges, that Gordon Brothers
Retail Partners, LLC's parent company, Gordon Brothers Group, LLC ("GBG"), owns a
minority interest in, has certain contractual relationships with, and from time to time may
provide contractual services to, Gordon Brothers Finance Company ("Finance Company") in the
ordinary course of its business.  Finance Company is a secured lender to Merchant. Merchant
hereby waives any actual or perceived conflict resulting from any of the foregoing.

(C) This Agreement constitutes the entire agreement between the parties with respect to the
matters contemplated hereby and supersedes and cancels all prior agreements, including, but not
limited to, all proposals, letters of intent or representations, written or oral, with respect thereto.
This Agreement may not be modified except in a written instrument executed by each of the
parties hereto.  No consent or waiver by any party, express or implied, to or of any breach or
default by the other in the performance of its obligations hereunder shall be deemed or construed
to be a consent or waiver to or of any other breach or default in the performance by such other
party of the same or any other obligation of such party.  The failure on the part of any party to
complain of any act or failure to act by the other party or to declare the other party in default,
irrespective of how long such failure continues, shall not constitute a waiver by such party of its
rights hereunder.  Nothing contained in this Agreement shall be deemed to create any
relationship between Merchant and Consultant other than that of Consultant as an independent
contractor of Merchant, and it is stipulated that the parties are not partners or joint venturers in



any way.  Unless expressly set forth herein to the contrary, to the extent that either party's consent is required/requested hereunder, such consent shall not be unreasonably withheld or delayed.  This Agreement shall inure to the benefit of and be binding upon the parties and their respective successors and assigns; provided however, that this Agreement may not be assigned by either party without the prior written consent of the other.  Written notices contemplated by this Agreement shall be sent by email (i) if to Merchant c/o the person indicated below at the address specified above attn: Legal Department and legaldepartment@brookstone.com; and (ii) if to Consultant c/o Mackenzie Shea at mshea@gordonbrothers.com and Ian Fredericks at ifredericks@hilcoglobal.com



Very truly yours,
**Gordon Brothers Retail Partners, LLC**

By: _____

Print Name and Title:
Robert Grosskopf
co President
Gordon Brothers Retail

-and-


**Hilco Merchant Resources, LLC**

By: _____

Print Name and Title: Ian S. Fredericks, EVP




Agreed and Accepted:
**Brookstone Company, Inc., on behalf of itself
and its affiliates**

By: _____

Print Name and Title: Greg Tribou, VP-CFO

Address:

Exhibits:

A      Stores

B      Budget of Consultant Controlled Expenses




Exhibit A

# Brookstone
## Store List

| Store No. | Store | Address | Address | City | State | Zip Code | Square Ft |
|---|---|---|---|---|---|---|---|
| 10 | King of Prussia | 160 N Gulph Road | Space 2909 | King Of Prussia | PA | 19406 | 2,028 |
| 11 | The Mall in Columbia | 10300 Little Patuxent Pkwy | Space 1740 | Columbia | MD | 21044 | 3,400 |
| 16 | Fair Oaks Mall | 11750 Fair Oaks Mall | Space #L-109 | Fairfax | VA | 22033 | 3,507 |
| 21 | The Mall at Short Hills | 1200 Morris Turnpike | Suite #D115 | Short Hills | NJ | 07078 | 3,500 |
| 24 | NorthPark Center | 915 Northpark Center | | Dallas | TX | 75225 | 3,810 |
| 25 | South Coast Plaza | 3333 Bristol Street | Suite 1870 | Costa Mesa | CA | 92626 | 4,655 |
| 26 | Beverly Center | 8500 Beverly Blvd. | Space #694 | Los Angeles | CA | 90048 | 2,800 |
| 27 | Paramus Park | 1045 Paramus Park | | Paramus | NJ | 07652 | 3,371 |
| 28 | Crystal Mall | 850 Hartford Turnpike | | Waterford | CT | 06385 | 3,680 |
| 36 | Crabtree Valley Mall | 4325 Glenwood Ave | Space #2118 | Raleigh | NC | 27612 | 4,463 |
| 55 | Del Amo Fashion Center | 21712 Hawthorne Blvd | Space #219B | Torrance | CA | 90503 | 3,043 |
| 56 | The Galleria at Fort Lauderdale | 2490 East Sunrise Blvd. | | Fort Lauderdale | FL | 33304 | 3,515 |
| 58 | The Shops at LaCantera | 15900 La Cantera Pkwy | Space # 1430 | San Antonio | TX | 78256 | 3,000 |
| 60 | North County Fair | 200 East Via Rancho Parkway | Suite 189 | Escondido | CA | 92025 | 3,405 |
| 65 | Houston Galleria | 5085 Westheimer Blvd | Space 2514 | Houston | TX | 77056 | 2,497 |
| 68 | Pheasant Lane Mall | 310 Daniel Webster Highway | | Nashua | NH | 03060 | 3,408 |
| 69 | Valley Fair Mall | 2855 Stevens Creek Blvd. | Space #A133 | Santa Clara | CA | 95050 | 2,813 |
| 70 | Westfield Palm Desert | 72840 Highway 111 | Space V417 | Palm Desert | CA | 92260 | 3,075 |
| 72 | Stoneridge Mall | 1116 Stoneridge Mall Road | Space #B-108 | Pleasanton | CA | 94566 | 3,468 |
| 74 | Town Center at Boca Raton | 6000 Glades Road | Suite 1092 | Boca Raton | FL | 33431 | 3,380 |
| 80 | Princeton Marketfair | 3535 US Highway 1 | Space 428 | Princeton | NJ | 08540 | 3,200 |
| 86 | Stonestown Galleria | 3251 20th Ave | Space #151 | San Francisco | CA | 94132 | 4,045 |
| 87 | Settler's Green Outlet | Route 16 & 302 | | North Conway | NH | 03860 | 3,369 |
| 94 | The Garden at Palm Beach | 3101 PGA Blvd. | Space #E125 | Palm Beach Gardens | FL | 33410 | 3,309 |
| 97 | Santa Anita | 400 S. Baldwin Avenue | New Temp Space #1260 | Arcadia | CA | 91006 | 3,426 |
| 98 | Maine Mall | 364 Maine Mall Road | Box 218 | South Portland | ME | 04106 | 3,452 |
| 105 | Cherry Creek | 3000 East 1st Ave | #132 | Denver | CO | 80206 | 3,422 |
| 107 | Towson Town Center | 825 Dulaney Valley Road | Space 3145 | Towson | MD | 21204 | 3,012 |
| 108 | Menlo Park Mall | 55 Parsonage Road | Space #224S Unit/4S6 | Edison | NJ | 08837 | 3,564 |
| 110 | Mall Of America | 162 West Market Street | S105 | Bloomington | MN | 55425 | 2,960 |
| 111 | Burlington Mall | 7S Middlesex Turnpike | Space K-4 | Burlington | MA | 01803 | 3,489 |
| 113 | South Shore Plaza | 250 Granite Street | | Braintree | MA | 02184 | 4,457 |
| 116 | Tysons Corner Center | 7967 Tysons Corner Center | | McLean | VA | 22102 | 4,324 |
| 123 | Brea Mall | 2015 Brea Mall | | Brea | CA | 92821 | 2,902 |
| 136 | Hillsdale Mall | 320 Hillsdale Mall | | San Mateo | CA | 94403 | 2,790 |
| 140 | Sun Valley Mall | 424 Sun Valley Mall Rd. | Space #A-216 | Concord | CA | 94520 | 3,955 |
| 144 | Walt Whitman Mall | 160 Walt Whitman Rd | Suite #1059 | Huntington Station | NY | 11746 | 2,938 |
| 148 | Natick Mall | 1245 Worcester Street | Space #1044 | Natick | MA | 01760 | 3,662 |
| 149 | The Avenues | 10300 Southside Boulevard | Suite #1290 | Jacksonville | FL | 32256 | 3,062 |
| 160 | West Town Mall | 7600 Kingston Pike | #1492 | Knoxville | TN | 37919 | 3,646 |
| 162 | The Westchester | 125 Westchester Avenue | Space #2320 | White Plains | NY | 10601 | 2,934 |
| 163 | Roosevelt Field Mall | 630 Old Country Rd. | Space 1038 | Garden City | NY | 11530 | 4,236 |
| 166 | Christiana Mall | 747 Christiana Mall Road | Space #613 | Newark | DE | 19702 | 3,075 |
| 167 | Circle Centre | 49 W. Maryland Street | Space #D-12 | Indianapolis | IN | 46204 | 3,200 |
| 169 | Seminole Towne Center | 228 Town Center Circle | | Sanford | FL | 32771 | 3,657 |
| 171 | Arden Fair Mall | 1689 Arden Way | Suite 1338 | Sacramento | CA | 95815 | 3,186 |
| 173 | Aventura Mall | 1957S Biscayne Blvd. | Space #519 | North Miami | FL | 33180 | 2,874 |
| 174 | Lenox Square | 3393 Peachtree Rd NE | Space #4046E | Atlanta | GA | 30326 | 2,993 |
| 180 | Dallas Galleria | 13350 N. Dallas Pkwy | Space 1140 | Dallas | TX | 75240 | 3,150 |
| 181 | Park Meadows Mall | 840S Park Meadows Center Dr | Suite 1460 | Lone Tree | CO | 80124 | 3,618 |
| 182 | The Florida Mall | 8001 So. Orange Blossom Trail | #1013-B | Orlando | FL | 32809 | 3,003 |
| 184 | Smith Haven Mall | 145 Smith Haven Mall | | Lake Grove | NY | 11755 | 4,292 |
| 185 | Penn Square Mall | 1901 Northwest Expressway | Space 1032 | Oklahoma City | OK | 73118 | 3,610 |
| 187 | Hanes Mall | 3320 Silas Creek Pkwy | Space D784 | Winston-Salem | NC | 27103 | 4,500 |
| 214 | West County Center | 42 West Country Center | Space 1150 | Des Peres | MO | 63131 | 3,142 |
| 216 | Fashion Show | 3200 Las Vegas Blvd South | Space 1860 | Las Vegas | NV | 89109 | 3,157 |
| 221 | Somerset Collection | 2801 W. Big Beaver Road | Space G243 | Troy | MI | 48084 | 3,000 |
| 223 | Macarthur Center | 300 East Monticello Avenue | Suite 224 | Norfolk | VA | 23510 | 3,525 |
| 225 | Dulles Town Center | 21100 Dulles Town Circle | Suite B214 | Dulles | VA | 20166 | 3,122 |
| 227 | Towne East Square | 7700 East Kellogg | #835 | Wichita | KS | 67207 | 3,950 |
| 233 | Plaza Las Americas | Brookstone Local Number 30D 525 FDR Avenue | | San Juan | PR | 00918 | 4,390 |
| 234 | Lakeside Mall | 3301 Veterans Blvd | Suite 10 | Metairie | LA | 70002 | 4,500 |
| 238 | 30 Rock Plaza | 30 Rockefeller Plaza | Concourse Level, Space 1 | New York | NY | 10112 | 2,011 |
| 244 | Stonebriar Centre | 2601 Preston Road | Space 1162 | Frisco | TX | 75034 | 3,610 |
| 245 | Westfield Galleria at Roseville | 1151 Galleria Blvd | Suite 115 | Roseville | CA | 95678 | 3,339 |
| 248 | Woodland Mall | 3195 28th St. SE | Space E109 | Grand Rapids | MI | 49512 | 2,171 |
| 249 | Third Street Promenade | 1313 Third Street Promenade | | Santa Monica | CA | 90401 | 4,107 |
| 254 | Danbury Fair Mall | 7 Backus Avenue | Space #D-203 | Danbury | CT | 06810 | 3,394 |
| 255 | Coronado Center | 6600 Menaul Blvd NE | Suite 305 | Albuquerque | NM | 87110 | 4,275 |
| 258 | Rockaway Townsquare | Rte 80 & Mt. Hope Ave. | #1107 | Rockaway | NJ | 07866 | 2,800 |
| 260 | Fashion Valley Center | 7007 Friars Road | Suite 316 | San Diego | CA | 92108 | 4,650 |
| 261 | Palisades Center | 1452 Palisades Ctr. Dr. | Space B103 | West Nyack | NY | 10994 | 3,500 |
| 262 | Mall Of Louisiana | 6401 Bluebonnet Blvd | Suite 1034 | Baton Rouge | LA | 70836 | 3,438 |
| 265 | Oak Park Mall | 11469 W 95th Street | Space #60 | Overland Park | KS | 66214 | 3,250 |
| 266 | Twelve Oaks Mall | 27402 Novi Road | Space #207 | Novi | MI | 48377 | 3,177 |
| 270 | Irvine Spectrum | 609 Spectrum Center Drive | Suite 912 | Irvine | CA | 92618 | 3,016 |
| 275 | Santa Rosa Plaza | 1027 Santa Rosa Plaza | | Santa Rosa | CA | 9S401 | 3,509 |

Exhibit A

## Brookstone
### Store List

| Store No. | Store | Address | Address | City | State | Zip Code | Square Ft |
|---|---|---|---|---|---|---|---|
| 287 | International Plaza | 2223 North West Shore Blvd. | Space #173 | Tampa | FL | 33607 | 3,318 |
| 288 | Shops At Willow Bend | 6121 West Park Blvd | Space D-105 | Plano | TX | 75093 | 3,551 |
| 291 | Mohegan Sun | 1 Mohegan Sun Blvd | Space C228 | Uncasville | CT | 06382 | 3,661 |
| 313 | Westfield Oakridge Mall | 925 Blossom Hill Road | Suite 1174 | San Jose | CA | 95123 | 3,157 |
| 314 | Scottsdale Fashion Square | 7014-S90 East Camelback Road | Suite 0557 | Scottsdale | AZ | 85251 | 2,967 |
| 320 | Coconut Point | 23150 Fashion Drive | Suite 105 | Estero | FL | 33928 | 3,500 |
| 327 | Parkway Place | 2801 Memorial Pkwy South | Space 125 | Huntsville | AL | 35801 | 4,958 |
| 330 | Southdale Center | 1840 Southdale Center | | Edina | MN | 55435 | 3,388 |
| 332 | Victoria Gardens | 12534 South Main Street | Space 1740 | Rancho Cucamonga | CA | 91739 | 3,122 |
| 333 | Treasure Coast Square | 3266 NW Federal Highway | Space 3266A | Jensen Beach | FL | 34954 | 3,667 |
| 338 | Branson Landing | 309 Branson Landing | | Branson | MO | 65616 | 3,550 |
| 351 | Baybrook Mall | 1132 Baybrook Mall | | Friendswood | TX | 77546 | 2,389 |
| 353 | International Market Place | 2330 Kalakaua Avenue | Space #2514 | Honolulu | HI | 96815 | 2,075 |
| 358 | The Village At Corte Madera | 1728 Redwood Highway | | Corte Madera | CA | 94925 | 2,660 |
| 364 | Fayette Mall | 3401 Nicholasville Road | Suite 110 | Lexington | KY | 40503 | 3,313 |
| 376 | Coastal Grand | 2000 Coastal Grand Circle | Space 188 | Myrtle Beach | SC | 29577 | 3,584 |
| 386 | Destin Commons | 4345 Legendary Drive | Space D-110 | Destin | FL | 32541 | 3,400 |
| 387 | Dadeland Mall | 7523 Dadeland Mall | Space 2360 | Miami | FL | 33156 | 1,801 |
| 388 | Fashion Place Mall | 6191 S State Street | Space 1485 | Murray | UT | 84107 | 2,897 |
| 389 | Tyrone Square Mall | 6939 Tyrone Square | Space 648 | St. Petersburg | FL | 33710 | 3,790 |
| 390 | Alderwood Mall | 3000 184th Street S.W. | Space 486 | Lynnwood | WA | 98037 | 4,219 |
| 393 | North East Mall | 1101 Melbourne Street | Space #3059 | Hurst | TX | 76053 | 3,348 |
| 704 | University Town Center | 140 University Town Ctr Dr. | Space # 242 | Sarasota | FL | 34243 | 2,289 |
| 727 | Ala Moana Center | 1450 Ala Moana Blvd | Space # 2011 | Honolulu | HI | 96814 | 2,424 |
| 909 | Bellevue | 133 Bellevue Square | Space 133 | Bellevue | WA | 98004 | 2,668 |
| 931 | Westfield Garden State Plaza | 1 Garden State Plaza | Space #2128 | Paramus | NJ | 07652 | 2,161 |

103

## Exhibit B

**Brookstone**
**Budget of Consultant Controlled Expenses**

| | |
|---|---|
| # of Stores | 103 |
| Sale Term: | 8/3/18-9/30/18 |
| # of Days | 59 |
| # of Weeks | 8.4 |

Consultant Controlled Expenses:

| | | |
|---|---|---|
| Advertising | $ | 123,600 |
| Supervision | $ | 382,271 |
| Miscellaneous | $ | 15,000 |
| **Total Consultant Controlled Expenses** | **$** | **520,871** |

- This expense budget is based upon the above Sale Term. Any changes to the Sale Term may result in adjustments to the expense budget, which will be agreed upon by Merchant and Consultant.

- The supervision expense planned assumes that we will leverage the existing 6 district managers. Their expense is not included in this budget.

**EXHIBIT C**

**SALE GUIDELINES**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BROOKSTONE HOLDINGS CORP., *et al.*,[1] | Case No. 18-_____ (___) |
| Debtors. | (Jointly Administered) |

## SALE GUIDELINES

      The following procedures (the "Sale Guidelines") shall apply to the closing sale (each, a "Closing Sale" and collectively, the "Closing Sales") to be held at each of the store locations operated by the above-captioned debtors in possession (collectively, "Brookstone") to be closed (collectively, the "Closing Stores" and each, a "Closing Store"), subject to the agreement (the "Closing Store Agreement") dated as of August 1, 2018 by and among Gordon Brothers Retail Partners, LLC and Hilco Merchant Resources, LLC (collectively, the "Liquidation Consultant") and Debtor Brookstone Holdings Corp., and in accordance with the order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court")  and approving the Closing Sales at the Closing Stores in accordance with these Sale Guidelines:

      1.      The Closing Sales will commence at the Closing Stores on or about August 3, 2018 (the "Sale Commencement Date") and will terminate on or about September 30, 2018 (the "Sale Termination Date"), subject to a mutually agreed extension between Brookstone and the Liquidation Consultant thereof.

      2.      Each Closing Sale shall be conducted so that the Closing Store in which sales are to occur will remain open no longer than during the normal hours of operation provided for in the respective leases for the Closing Stores.

      3.      Each Closing Sale shall be conducted at the Closing Stores during the normal business hours maintained at each Closing Store by Brookstone prior to the filing of their bankruptcy petitions; provided that Brookstone may in its discretion modify the business hours as necessary or advisable.

      4.      Conspicuous signs stating that "all sales are final" and "as is" will be posted at the cash register areas at all Closing Stores.

---

1 The Debtors, along with the last four digits of each Debtor's tax identification number, are: Brookstone Holdings Corp. (4638), Brookstone, Inc. (2895), Brookstone Company, Inc. (3478), Brookstone Retail Puerto Rico, Inc. (5552), Brookstone International Holdings, Inc. (8382), Brookstone Purchasing, Inc. (2514), Brookstone Stores, Inc. (2513), Big Blue Audio LLC (N/A), Brookstone Holdings, Inc. (2515), and Brookstone Properties, Inc. (2517). The Debtors' corporate headquarters and the mailing address for each Debtor is One Innovation Way, Merrimack, NH 03054.

5.      The Liquidation Consultant and Brookstone may advertise each Closing Sale as a "store closing," "sale on everything," "everything must go," "liquidation sale," or similar themed sale.  The Liquidation Consultant and Brookstone may also have "countdown to closing" signs prominently displayed in a manner consistent with these Sale Guidelines.

6.      The Liquidation Consultant and Brookstone shall be permitted to utilize exterior banners at (a) non-enclosed mall Stores and (b) enclosed mall Stores to the extent the entrance to the applicable Store does not require entry into the enclosed mall common area; provided, however, that such banners (i) shall not exceed 4 feet by 40 feet in size; (ii) shall be located or hung so as to make clear that the Sale is being conducted only at the affected Store; and (iii) shall not be wider than the storefront of the Store.

7.      Except with respect to the hanging of exterior banners, the Liquidation Consultant and Brookstone shall not make any alterations to the storefront or exterior walls of any Closing Stores.

8.      No landlord, licensor, property owner, and/or property manager (each, a "Landlord" and collectively, the "Landlords") shall prohibit, restrict, or otherwise interfere with any Closing Sale at any Closing Store.

9.      The Liquidation Consultant and Brookstone shall not make any alterations to interior or exterior Closing Store lighting.  No property of a Landlord of a Closing Store shall be removed or sold during any Closing Sale.  The hanging of exterior banners or signage or banners in a Closing Store shall not constitute an alteration to a Closing Store.

10.     The Liquidation Consultant and Brookstone shall be permitted to utilize sign-walkers in a safe and professional manner.

11.     On "shopping center" property, neither Brookstone or the Liquidation Consultant shall distribute handbills, leaflets or other written materials to customers outside of any Closing Store's premises, unless permitted by the lease or, if distribution is customary in the "shopping center" in which such Closing Store is located; provided that Brookstone and the Liquidation Consultant may solicit customers in the Closing Stores themselves.  On "shopping center" property, Brookstone and the Liquidation Consultant shall not use any flashing lights or amplified sound to advertise the Closing Sale or solicit customers, except as permitted under the applicable lease or agreed to by the Landlord.

12.     The Liquidation Consultant and Brookstone shall be permitted to utilize A-frames, to be used only with secure tiedowns.

13.     With respect to any Closing Stores location in enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines.

14.     The Liquidation Consultant and Brookstone shall keep Closing Store premises and surrounding areas clean and orderly consistent with present practices.

01:23477531.1

15.     Nothing contained in these Sale Guidelines shall be construed to create or impose upon the Liquidation Consultant and Brookstone any additional restrictions not contained in the applicable lease agreement.

16.     Brookstone shall have consulted with the DIP Administrative Agent and the DIP Term Agent and shall have informed the Liquidation Consultant of those items of furniture, fixtures, and equipment located at each Closing Store which are not to be sold (because either Brookstone does not have the right to sell such items or because Brookstone wishes to retain such items for itself, or otherwise) (collectively, the "Retained FF&E").

17.     The Liquidation Consultant may advertise and sell all furniture, fixtures, and equipment located at each Closing Store as of the Sale Commencement Date which is not Retained FF&E (collectively, the "Offered FF&E") in a manner consistent with these Sale Guidelines and the Closing Store Agreement.

18.     The purchasers of any Offered FF&E sold at any Closing Stores shall be permitted to remove the Offered FF&E either through the back shipping areas at any time, or through other areas after Closing Store business hours. Purchased Offered FF&E may be carried out the front door during regular store hours if it fits into a shopping bag.

19.     All Merchandise (as defined in the Closing Store Agreement) and all Offered FF&E shall be sold free and clear of all claims, liens, and encumbrances.

20.     The Liquidation Consultant shall have the right to supplement the Merchandise with Additional Consultant Goods in accordance with the Consulting Agreement.

21.     Upon the earlier of (a) the completion of the Closing Sale at a Closing Store or (b) the Sale Termination Date, the Liquidation Consultant shall leave each Closing Store in broom clean condition and shall abandon all Retained FF&E and all unsold Offered FF&E in a neat and orderly manner.

22.     Brookstone, in consultation with the DIP Administrative Agent and the DIP Term Agent, may abandon any Retained FF&E that it has not removed and any unsold FF&E located at a Closing Store (collectively, the "Remaining Property").

23.     The Liquidation Consultant and its respective agents and representatives shall continue to have exclusive and unfettered access to the Closing Stores until the conclusion of the applicable Sale Term for each Store under the Closing Store Agreement.

24.     The rights of any Landlord as against Brookstone's estates for any damages caused to a Closing Store shall be reserved in accordance with the provisions of the applicable lease. If and to the extent that a Landlord of any Closing Store affected hereby contends that the Liquidation Consultant or Brookstone are in breach of or default under these Sale Guidelines, such Landlord shall deliver notice on the following parties via email or deliver written notice so as to ensure delivery thereof within one business day thereafter: (a) Gibson, Dunn & Crutcher, LLP, 200 Park Avenue, New York, NY 10166 (Attn: Matthew J. Williams, David M. Feldman, Matthew K. Kelsey, and Keith R. Martorana), (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn: Michael R. Nestor, Sean

M. Beach, and Andrew L. Magaziner), (c) Gordon Brothers Retail Partners, LLC, 800 Boylston Street, 27th Floor, Boston, MA 02199 (Attn: Mackenzie Shea, Associate General Counsel), (d) Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709 Wilmington, Delaware 19899 (Attn: Douglas D. Herrmann), and (e) Hilco Merchant Resources, LLC, 5 Revere Drive, Suite 206, Northbrook, IL 60062 (Attn: Ian Fredericks).

*[End of Sale Guidelines]*

**<u>EXHIBIT D</u>**

**LANDLORDS**

*(see attached)*

**Landlords**

| Store Number | Property Location | Counterparty |
|---|---|---|
| 10 | 160 N Gulph Rd, King of Prussia, PA 19406 | King Of Prussia Associates |
| 11 | 10300 Little Patuxent Pkwy, Columbia, MD 21044 | The Mall in Columbia in Trust |
| 16 | 11750 Fair Oaks Mall, Fairfax, VA 22033 | Fairfax Company Of Virginia LLC |
| 21 | 120 Morris Turnpike, Short Hills, NJ 07078 | Short Hills Associates, L.L.C. |
| 21 | 120 Morris Turnpike, Short Hills, NJ 07078 | Public Storage Inc. |
| 24 | 214 NorthPark Center, Dallas, TX 75225 | NorthPark Center, Ltd. |
| 25 | 3333 Bristol Street, Suite 1870, Costa Mesa, CA 92626 | South Coast Plaza |
| 26 | 8500 Beverly Blvd., Los Angeles, CA 90048 | La Cienega Partners Limited Partnership |
| 27 | 700 Paramus Park, Paramus, NJ 07652 | The Paramus Park Shopping Center Limited Partnership |
| 28 | 850 Hartford Turnpike, Waterford, CT 06385 | Crystal Mall, LLC |
| 36 | 4325 Glenwood Avenue, Raleigh, NC 27612 | CVM Holdings, LLC |
| 40 | 3525 West Carson Street, Torrance, CA 90503 | Del Amo Fashion Center Operating Company, L.L.C. |
| 55 | 2414 East Sunrise Blvd, Fort Lauderdale, FL 33304 | Keystone-Florida Property Holding Corp. |
| 58 | 15900 La Cantera Parkway, San Antonio, TX 78256 | La Cantera Retail Limited Partnership |
| 60 | 272 E Via Rancho Pkwy, Escondido, CA 92025 | North County Fair LP |
| 65 | 5085 Westheimer Rd, Houston, TX 77056 | HG Galleria, LLC |
| 68 | 310 Daniel Webster Hwy., Nashua, NH 03060 | Pheasant Lane Realty Trust |
| 69 | 2855 Stevens Creek Blvd., Santa Clara, CA 95050 | VF Mall LLC |
| 70 | 72-840 CA-111 Highway 111, Palm Desert, CA 92260 | WEA Palm Desert LP |
| 72 | 1116 Stoneridge Mall Rd., Space B-108, Pleasanton, CA 94588 | Stoneridge Properties LLC |
| 74 | 6000 Glades Rd, Boca Raton, FL 33431 | The Town Center at Boca Raton Trust |
| 80 | 3535 US-1, Princeton, NJ 08540 | Teachers Insurance and Annuity Association of America, for the Benefit of its Separate Real Estate Account |
| 86 | 3251 Twentieth Avenue, San Francisco, CA 94132 | Stonestown Shopping Center, L.P. |
| 87 | 2 Common Court, North Conway, NH 03860 | Settlers' R1, Inc. |
| 94 | 3101 PGA Boulevard, Palm Beach Gardens, FL 33410 | Forbes/Cohen Florida Properties Limited Partnership |
| 97 | 400 South Baldwin Ave., Arcadia, CA 91007 | Santa Anita Shopping LP |
| 98 | 364 Maine Mall Road, South Portland, ME 04106 | GGP-Maine Mall, LLC |
| 99 | 390 Hackensack Avenue, Hackensack, NJ 07601 | Riverside Square Limited Partnership |
| 105 | 3000 East 1st Avenue, Denver, CO 80206 | Taubman Cherry Creek Shopping Center, L.L.C. |
| 107 | 825 Dulaney Road, Towson, MD 21204 | Towson TC, LLC |
| 108 | 55 Parsonage Road, Edison, NJ 08837 | Shopping Center Associates |
| 110 | 105 South Avenue, Bloomington, MN 55425 | MOAC Mall Holdings LLC |
| 111 | 75 Middlesex Turnpike, Burlington, MA 01803 | Bellwether Properties of Massachusetts Limited Partnership |
| 113 | South Shore Plaza, 250 Granite Street, Braintree, MA 02184 | Braintree Associates Limited Partnership |
| 116 | 1961 Chain Bridge Road, Tysons, VA 22102 | Tysons Corner Holdings LLC |
| 123 | 1065 Brea Mall, Brea, CA 92821 | The Retail Property Trust |
| 136 | 60 31st Avenue, San Mateo, CA 94403 | HSC Holdings, LLC |
| 140 | 424 Sunvalley Mall Road, Concord, CA 94520 | Sunvalley Shopping Center LLC |
| 144 | 160 Walt Whitman Rd, Huntington Station, NY 11746 | Walt Whitman Mall, LLC |
| 148 | 1245 Worcester Street, Suite 1218, Natick, MA 01760 | Natick Mall, LLC |
| 148 | 1245 Worcester Street, Suite 1218, Natick, MA 01760 | Natick Mall, LLC |
| 149 | 10300 Southside Boulevard, Jacksonville, FL 32256 | Jacksonville Avenues Limited Partnership |
| 160 | 7600 Kingston Pike, Knoxville, TN 37919 | West Town Mall Joint Venture |
| 162 | 125 Westchester Avenue, White Plains, NY 10601 | Westchester Mall, LLC |
| 163 | 630 Old Country Rd, Garden City, NY 11530 | The Retail Property Trust |
| 166 | 715 Christiana Mall, Newark, DE 19702 | Christiana Mall LLC |
| 167 | 49 W Maryland St, Indianapolis, IN 46204 | Circle Centre Mall LLC |
| 169 | 200 Towne Center Circle, Sanford, FL 32771 | Seminole Towne Center Limited Partnership |
| 171 | 1689 Arden Way, Sacramento, CA 95815 | Arden Fair Associates, L.P. |
| 173 | 19501 Biscayne Boulevard, Aventura, Florida 33180 | Aventura Mall Venture |
| 173 | 19501 Biscayne Boulevard, Aventura, Florida 33180 | Public Storage Inc. |
| 174 | 3393 Peachtree Rd NE, Atlanta, GA 30326 | The Retail Property Trust |
| 180 | 13550 Dallas Parkway, Dallas, TX 75240 | Galleria Mall Investors LP |
| 181 | 8401 Park Meadows Drive, Lone Tree, CO 80124 | Park Meadows Mall, LLC |
| 182 | 8001 South Orange Blossom Trail, Orlando, FL 32809 | Florida Mall Associates, Ltd. |
| 184 | 313 Smith Haven Mall, Lake Grove, NY 11755 | Mall at Smith Haven, LLC |
| 185 | 1901 Northwest Expressway, Oklahoma City, OK 73118 | Penn Square Mall Limited Partnership |
| 187 | 3320 Silas Creek Pkwy, Winston-Salem, NC 27103 | Winston-Salem Joint Venture |
| 214 | 80 West County Center Drive, Des Peres, MO 63131 | West County Mall CMBS, LLC |
| 216 | 3200 Las Vegas Boulevard, Las Vegas, NV 89109 | Fashion Show Mall LLC |
| 221 | 2800 W Big Beaver Rd, Troy, MI 48084 | Somerset Collection Limited Partnership |
| 223 | 300 Monticello Avenue, Norfolk, VA 23510 | MacArthur Shopping Center LLC |
| 225 | 21100 Dulles Town Circle, Sterling, VA 20166 | Dulles Town Center Mall LLC |
| 227 | 7700 East Kellogg Drive, Wichita, KS 67207 | Simon Property Group, L.P. |
| 233 | 525 Av. Franklin Delanor Roosevelt, San Juan, 00918, Puerto Rico | Plaza Las Americas, Inc. |

| Store Number | Property Location | Counterparty |
|---|---|---|
| 234 | 3301 Veterans Memorial Blvd, Metairie, LA 70002 | Greater Lakeside Corp.<br>Causeway Associates |
| 238 | 30 Rockefeller Plaza, Rockefeller Center, New York, NY 10111 | RCPI Landmark Properties, L.L.C. |
| 244 | 2601 Preston Rd, Frisco, TX 75034 | Stonebriar Mall, LLC |
| 245 | 1151 Galleria Boulevard, Roseville, CA 95678 | Roseville Shopping LLC |
| 248 | 3195 28th St SE, Kentwood, MI 49512 | PREIT Services, LLC, c/o PR Woodland Limited Partnership |
| 249 | 1313 Third Street Promenade, Santa Monica, CA 90401 | Criterion Santa Monica, LLC |
| 254 | 7 Backus Avenue, Danbury, CT 06810 | Danbury Mall, LLC |
| 255 | 6600 Menaul Boulevard N.E., Albuquerque, New Mexico 87110 | Coronado Center L.L.C. |
| 258 | 301 Mt. Hope Avenue, Rockaway, NJ 07866 | Rockaway Center Associates |
| 260 | 7007 Friars Road, San Diego, CA 92108 | Fashion Valley Mall, LLC |
| 261 | 1000 Palisades Center Drive, West Nyack, NY 10994 | Ekelco Newco LLC |
| 262 | 6401 Bluebonnet Blvd, Baton Rouge, LA 70836 | Mall of Louisiana, LLC |
| 265 | 11149 W 95th Street, Overland Park, KS 66214 | Oak Park Mall, LLC |
| 266 | 27500 Novi Road, Novi, MI 48377 | Twelve Oaks Mall, LLC |
| 270 | 670 Spectrum Center Drive, Irvine, CA 92618 | The Irvine Company LLC |
| 275 | 1071 Santa Rosa Plaza, Santa Rosa, CA 95401 | EMI Santa Rosa Limited Partnership |
| 287 | 2223 N Westshore Boulevard, Tampa, FL 33607 | Tampa Westshore Associates Limited Partnership |
| 287 | 2223 N Westshore Boulevard, Tampa, FL 33607 | Public Storage Inc. |
| 288 | 6121 W Park Boulevard, Plano, TX 75093 | Willow Bend Shopping Center Limited Partnership |
| 291 | 1 Mohegan Sun Blvd, Uncasville, CT 06382 | Mohegan Tribal Gaming Authority |
| 291 | 1 Mohegan Sun Blvd, Uncasville, CT 06382 | Advanced Self-Storage |
| 313 | 925 Blossom Hill Road, San Jose, CA 95123 | Oakridge Mall LP |
| 314 | 7014 East Camelback Road, Suite 0557, Scottsdale, AZ 85251 | Scottsdale Fashion Square LLC |
| 314 | 7014 East Camelback Road, Suite 0557, Scottsdale, AZ 85251 | Public Storage Inc. |
| 320 | 23106 Fashion Drive, Estero, FL 33928 | Coconut Point Town Center, LLC |
| 327 | 2801 Memorial Parkway South, Huntsville, AL 35801 | Parkway Place SPE, LLC |
| 330 | 10 Southdale Center, Edina, MN 55435 | Southdale Center, LLC |
| 330 | 10 Southdale Center, Edina, MN 55435 | Southdale Center, LLC |
| 332 | 12505 North Main Street, Rancho Cucamonga, CA 91739 | Victoria Gardens Mall, LLC |
| 332 | 12505 North Main Street, Rancho Cucamonga, CA 91739 | Public Storage Inc. |
| 333 | 3174 NW Federal Highway, Jensen Beach, FL 34957 | Treasure Coast-JCP Associates, Ltd. |
| 338 | 100 Branson Landing Boulevard, Branson, MO 65616 | HCW Development Company, L.L.C. |
| 351 | 500 Baybrook Mall Dr, Friendswood, TX 77546 | Baybrook Mall, LLC |
| 353 | 2330 Kalakaua Avenue, Honolulu, HI 96815 | TRG IMP LLC |
| 358 | 1618 Redwood Highway, Corte Madera, CA 94925 | Corte Madera Village, LLC |
| 364 | 3401 Nicholasville Road, Lexington, KY 40503 | Lexington Joint Venture |
| 376 | 2000 Coastal Grand Circle, Myrtle Beach, SC 29577 | Coastal Grand, LLC |
| 386 | 4100 Legendary Drive, Destin, FL 32541 | Destin Commons, Ltd. |
| 387 | 7535 North Kendall Drive, Miami, FL 33156 | SDG Dadeland Associates, Inc. |
| 387 | 7535 North Kendall Drive, Miami, FL 33156 | U-Haul Moving & Storage of Dadeland |
| 388 | 6191 S. State Street, Murray, UT 84107 | Fashion Place, LLC |
| 389 | 6901 22nd Avenue North, St. Petersburg, FL 33710 | Simon Capital GP |
| 390 | 3000 - 184th Street SW, Lynwood, WA 98037 | Alderwood Mall LLC |
| 393 | 1101 Melbourne Road, Hurst, TX 76053 | Simon Property Group (Texas), L.P. |
| 704 | 140 University Town Center Drive, Sarasota, FL 34243 | TB Mall at UTC LLC |
| 709 | 9585 SW Washington Square Road, Portland, OR 97223 | PPR Washington Square LLC |
| 727 | 1450 Ala Moana Boulevard, Honolulu, HI 96814 | GGP Ala Moana L.L.C. |
| 727 | 1450 Ala Moana Boulevard, Honolulu, HI 96814 | Public Storage Inc. |
| 736 | 2000 Route 38, Cherry Hill, NJ 08002 | Cherry Hill Center, LLC |
| 742 | 1201 Lake Woodlands Dr., The Woodlands, TX 77380 | The Woodlands Mall Associates, LLC |
| 909 | 575 Bellevue Square, Bellevue, WA 98004 | Bellevue Square LLC |
| 909 | 575 Bellevue Square, Bellevue, WA 98004 | Public Storage Inc. |
| 931 | One Garden State Plaza, Paramus, NJ 07652 | Westland Garden State Plaza Limited Partnership |

# **EXHIBIT E**

## **APPLICABLE GOVERNMENTAL UNITS**

*(see attached)*

| Type of Governmental Unit | Associated Store Location or State | Governmental Unit name and Address |
|---|---|---|
| State Attorney General | State of Alabama | Office of the Alabama Attorney General<br>Attn: Luther Strange<br>P.O. Box 300152<br>Montgomery, AL 36130-0152 |
| State Attorney General | State of Alaska | Office of the Alaska Attorney General<br>Attn: Jahna Lindemuth<br>P.O. Box 110300<br>Juneau, AK 99811-0300 |
| State Attorney General | State of Arizona | Office of the Arizona Attorney General<br>Attn: Mark Brnovich<br>1275 West Washington Street<br>Phoenix, AZ 85007-2926 |
| State Attorney General | State of Arkansas | Office of the Arkansas Attorney General<br>Attn: Leslie Carol Rutledge<br>323 Center Street, Suite 200<br>Little Rock, AR 72201 |
| State Attorney General | State of California | Office of the California Attorney General<br>Attn: Kamala D. Harris<br>Attn: Public Inquiry Unit<br>P.O. Box 944255<br>Sacramento, CA 94244-2550 |
| State Attorney General | State of Colorado | Office of the Colorado Attorney General<br>Attn: Cynthia Coffman<br>Ralph L. Carr Colorado Judicial Center<br>1300 Broadway, 10th Floor<br>Denver, CO 80203 |
| State Attorney General | State of Connecticut | Office of the Connecticut Attorney General<br>Attn: George Jepsen<br>55 Elm Street<br>Hartford, CT 06103 |
| State Attorney General | State of Delaware | Office of the Delaware Attorney General<br>Attn: Matt Denn<br>Carvel State Office Bldg<br>820 N. French Street<br>Wilmington, DE 19801 |
| State Attorney General | State of Dist. of Columbia | Office of the DC Attorney General<br>Attn: Karl Racine<br>441 4th Street, NW<br>Washington, DC 20001 |

| | | |
|---|---|---|
| State Attorney General | State of Florida | Office of the Florida Attorney General<br>Attn: Pam Bondi<br>The Capitol PL-01<br>Tallahassee, FL 32399-1050 |
| State Attorney General | State of Georgia | Office of the Georgia Attorney General<br>Attn: Chris Carr<br>40 Capitol Square, SW<br>Atlanta, GA 30334 |
| State Attorney General | State of Hawaii | Office of the Hawaii Attorney General<br>Attn: Douglas Chin<br>425 Queen Street<br>Honolulu, HI 96813 |
| State Attorney General | State of Idaho | Office of the Idaho Attorney General<br>Attn: Lawrence G. Wasden<br>700 W. Jefferson Street, Suite 210<br>P.O. Box 83720<br>Boise, ID 83720-0010 |
| State Attorney General | State of Illinois | Office of the Illinois Attorney General<br>Attn: Lisa Madigan<br>100 West Randolph Street<br>Chicago, IL 60601 |
| State Attorney General | State of Indiana | Office of the Indiana Attorney General<br>Attn: Curtis T. Hill<br>Indiana Government Center South<br>302 W. Washington St., 5th Floor<br>Indianapolis, IN 46204 |
| State Attorney General | State of Iowa | Office of the Iowa Attorney General<br>Attn: Tom Miller<br>1305 E. Walnut Street<br>Des Moines, IA 50319 |
| State Attorney General | State of Kansas | Office of the Kansas Attorney General<br>Attn: Derek Schmidt<br>120 SW 10th Ave., 2nd Floor<br>Topeka, KS 66612 |
| State Attorney General | State of Kentucky | Office of the Kentucky Attorney General<br>Attn: Andy Beshear<br>700 Capitol Avenue, Suite 118<br>Frankfort, KY 40601 |
| State Attorney General | State of Louisiana | Office of the Louisiana Attorney General<br>Attn: Jeff Landry<br>P.O Box 94005<br>Baton Rouge, LA 70804 |

| | | |
|---|---|---|
| State Attorney General | State of Maine | Office of the Maine Attorney General<br>Attn: Janet T. Mills<br>6 State House Station<br>Augusta, ME 04333 |
| State Attorney General | State of Maryland | Office of the Maryland Attorney General<br>Attn: Brian E. Frosh<br>200 St. Paul Place<br>Baltimore, MD 21202 |
| State Attorney General | State of Massachusetts | Office of the Massachusetts Attorney General<br>Attn: Maura Healey<br>One Ashburton Place<br>Boston, MA 02108-1518 |
| State Attorney General | State of Michigan | Office of the Michigan Attorney General<br>Attn: Bill Schuette<br>G. Mennen Williams Building, 7th Floor<br>525 W. Ottawa St., P.O. Box 30212<br>Lansing, MI 48909 |
| State Attorney General | State of Minnesota | Office of the Minnesota Attorney General<br>Attn: Lori Swanson<br>445 Minnesota Street<br>Suite 1400<br>St. Paul, MN 55101-2131 |
| State Attorney General | State of Mississippi | Office of the Mississippi Attorney General<br>Attn: Jim Hood<br>P.O. Box 220<br>Jackson, MS 39205 |
| State Attorney General | State of Missouri | Office of the Missouri Attorney General<br>Attn: Joshua D. Hawley<br>Supreme Court Building<br>207 W. High St., P.O. Box 899<br>Jefferson City, MO 65102 |
| State Attorney General | State of Montana | Office of the Montana Attorney General<br>Attn: Tim Fox<br>215 N Sanders, Third Floor<br>P.O. Box 201401<br>Helena, MT 59620-1401 |
| State Attorney General | State of Nebraska | Office of the Nebraska Attorney General<br>Attn: Doug Peterson<br>2115 State Capitol<br>Lincoln, NE 68509 |
| State Attorney General | State of Nevada | Office of the Nevada Attorney General<br>Attn: Adam Paul Laxalt<br>100 North Carson Street<br>Carson City, NV 89701-4717 |

| | | |
|---|---|---|
| State Attorney General | State of New Hampshire | Office of the New Hampshire Attorney General<br>Attn: Joseph Foster<br>33 Capitol Street<br>Concord, NH 03301 |
| State Attorney General | State of New Jersey | Office of the New Jersey Attorney General<br>Attn: Christopher S. Porrino<br>RJ Hughes Justice Complex<br>25 Market Street, Box 080<br>Trenton, NJ 08625-0080 |
| State Attorney General | State of New Mexico | Office of the New Mexico Attorney General<br>Attn: Hector Balderas<br>P.O. Drawer 1508<br>Santa Fe, NM 87504-1508 |
| State Attorney General | State of New York | Office of the New York Attorney General<br>Attn: Eric T. Schneiderman<br>The Capitol<br>Albany, NY 12224-0341 |
| State Attorney General | State of North Carolina | Office of the North Carolina Attorney General<br>Attn: Roy Cooper<br>9001 Mail Service Center<br>Raleigh, NC 27699-9001 |
| State Attorney General | State of North Dakota | Office of the North Dakota Attorney General<br>Attn: Wayne Stenehjem<br>State Capitol<br>600 E. Boulevard Ave., Dept. 125<br>Bismarck, ND 58505 |
| State Attorney General | State of Ohio | Office of the Ohio Attorney General<br>Attn: Mike DeWine<br>30 E. Broad St., 14th Floor<br>Columbus, OH 43215 |
| State Attorney General | State of Oklahoma | Office of the Oklahoma Attorney General<br>Attn: E. Scott Pruitt<br>313 NE 21st Street<br>Oklahoma City, OK 73105 |
| State Attorney General | State of Oregon | Office of the Oregon Attorney General<br>Attn: Ellen F. Rosenblum<br>Oregon Department of Justice<br>1162 Court Street NE<br>Salem, OR 97301-4096 |

| | | | |
|---|---|---|---|
| State Attorney General | State of Pennsylvania | | Office of the Pennsylvania Attorney General<br>Attn: Josh Shapiro<br>16th Floor, Strawberry Square<br>Harrisburg, PA 17120 |
| State Attorney General | State of Puerto Rico | | Puerto Rico Attorney General<br>Attn: Bankruptcy Department<br>Calle Olimpo, Esq.<br>Axtmayer Pda.<br>11 Miramar<br>San Juan, PR 00907 |
| State Attorney General | State of Rhode Island | | Office of the Rhode Island Attorney General<br>Attn: Peter F. Kilmartin<br>150 South Main Street<br>Providence, RI 02903 |
| State Attorney General | State of South Carolina | | Office of the South Carolina Attorney General<br>Attn: Alan Wilson<br>P.O. Box 11549<br>Columbia, SC 29211 |
| State Attorney General | State of South Dakota | | Office of the South Dakota Attorney General<br>Attn: Marty J. Jackley<br>1302 E Hwy 14<br>Suite 1<br>Pierre, SD 57501-8501 |
| State Attorney General | State of Tennessee | | Office of the Tennessee Attorney General<br>Attn: Herbert H. Slatery III<br>P.O. Box 20207<br>Nashville, TN 37202-0207 |
| State Attorney General | State of Texas | | Office of the Texas Attorney General<br>Attn: Ken Paxton<br>P.O. Box 12548<br>Austin, TX 78711-2548 |
| State Attorney General | State of Utah | | Office of the Utah Attorney General<br>Attn: Sean D. Reyes<br>P.O. Box 142320<br>Salt Lake City, UT 84114-2320 |
| State Attorney General | State of Vermont | | Office of the Vermont Attorney General<br>Attn: TJ Donovan<br>109 State Street<br>Montpelier, VT 05609-1001 |
| State Attorney General | State of Virginia | | Office of the Virginia Attorney General<br>Attn: Mark R. Herring<br>202 North Ninth Street<br>Richmond, VA 23219 |

| | | |
|---|---|---|
| State Attorney General | State of Washington | Office of the Washington Attorney General<br>Attn: Bob Ferguson<br>1125 Washington Street SE<br>P.O. Box 40100<br>Olympia, WA 98504-0100 |
| State Attorney General | State of West Virginia | Office of the West Virginia Attorney General<br>Attn: Patrick Morrisey<br>State Capitol Complex<br>Bldg. 1, Room E-26<br>Charleston, WV 25305 |
| State Attorney General | State of Wisconsin | Office of the Wisconsin Attorney General<br>Attn: Brad D. Schimel<br>P.O. Box 7857<br>Madison, WI 53707-7857 |
| State Attorney General | State of Wyoming | Office of the Wyoming Attorney General<br>Attn: Peter K. Michael<br>Kendrick Building<br>2320 Capitol Avenue<br>Cheyenne, WY 82002 |

| Type of Governmental Unit | Associated Store Location or State | Governmental Unit name and Address |
|---|---|---|
| County Consumer Protection Agency or County District Attorney | Madison County, AL | Madison County District Attorney's Office<br>100 North Side Square<br>Huntsville, AL 35801 |
| County Consumer Protection Agency or County District Attorney | Maricopa County, AZ | Maricopa County District Attorney<br>301 West Jefferson Street Suite 800<br>Phoenix, AZ 85003 |
| County Consumer Protection Agency or County District Attorney | Riverside County, CA | Riverside County District Attorney<br>Consumer Fraud Unit<br>3960 Orange Street<br>Riverside, CA 92501 |
| County Consumer Protection Agency or County District Attorney | Santa Clara County, CA | Santa Clara County District Attorney<br>Consumer Protection Unit<br>70 W Hedding St West Wing 4th Floor<br>San Jose, CA 95110 |
| County Consumer Protection Agency or County District Attorney | San Bernardino County, CA | San Bernardino County District Attorney<br>Michael Ramos 303 West 3rd Street 6th Floor<br>San Berardino, CA 92415-0502 |
| County Consumer Protection Agency or County District Attorney | Santa Clara County, CA | Santa Clara County District Attorney<br>Consumer Protection Unit<br>70 W Hedding St West Wing 4th Floor<br>San Jose, CA 95110 |
| County Consumer Protection Agency or County District Attorney | Los Angeles County, CA | Los Angeles County District Attorney<br>Consumer Protection Division<br>211 West Temple Street, Suite 1000<br>Los Angeles, CA 90012 |

| | | |
|---|---|---|
| County Consumer Protection Agency or County District Attorney | Marin County, CA | Marin County District Attorney<br>Consumer Protection Unit<br>Andres H Perez, Deputy District Attorney<br>3501 Civic Center Dr<br>San Rafael, CA 94903 |
| County Consumer Protection Agency or County District Attorney | Contra Costa County, CA | Contra Costa County District Attorney<br>Consumer Protection (Civil) Unit<br>Gary Koeppel, Deputy District Attorney<br>900 Ward Street, 4th Floor<br>Martinez, CA 94553 |
| County Consumer Protection Agency or County District Attorney | San Francisco County, CA | San Francisco County District Attorney<br>Consumer Protection Unit<br>732 Brannan Street<br>San Francisco, CA 94103 |
| County Consumer Protection Agency or County District Attorney | Alameda County, CA | Alameda County District Attorney<br>Consumer, Environmental & Worker Protection Division<br>7677 Oakport Street, Suite 650<br>Oakland, CA 94621 |
| County Consumer Protection Agency or County District Attorney | Orange County, CA | Orange County District Attorney<br>Consumer Protection Unit<br>401 Civic Center Drive West<br>PO Box 808<br>Santa Ana, CA 92701 |
| County Consumer Protection Agency or County District Attorney | Sonoma County, CA | Sonoma County District Attorney<br>Environmental & Consumer Law Division<br>2300 County Center Drive Suite 170 B<br>Santa Rosa, CA 95403 |
| County Consumer Protection Agency or County District Attorney | Los Angeles County, CA | Los Angeles County District Attorney<br>Consumer Protection Division<br>211 West Temple Street, Suite 1000<br>Los Angeles, CA 90012 |
| County Consumer Protection Agency or County District Attorney | San Diego County, CA | San Diego County District Attorney<br>Consumer Protection Unit<br>Hall of Justice 330 W Broadway<br>San Diego, CA 92101 |

| | | |
|---|---|---|
| County Consumer Protection Agency or County District Attorney | Orange County, CA | Orange County District Attorney<br>Consumer Protection Unit<br>401 Civic Center Drive West<br>PO Box 808<br>Santa Ana, CA 92701 |
| County Consumer Protection Agency or County District Attorney | San Mateo County, CA | San Mateo County District Attorney<br>Consumer and Environmental Protection Unit<br>400 County Center<br>3rd Floor<br>Redwood City, CA 94063 |
| County Consumer Protection Agency or County District Attorney | Placer County, CA | Placer County District Attorney<br>Consumer Fraud & Environmental Crimes Unit<br>10810 Justice Center Drive Suite #240<br>Roseville, CA 95678 |
| County Consumer Protection Agency or County District Attorney | San Diego County, CA | San Diego County District Attorney<br>Consumer Protection Unit<br>Hall of Justice 330 W Broadway<br>San Diego, CA 92101 |
| County Consumer Protection Agency or County District Attorney | Los Angeles County, CA | Los Angeles County District Attorney<br>Consumer Protection Division<br>211 West Temple Street, Suite 1000<br>Los Angeles, CA 90012 |
| County Consumer Protection Agency or County District Attorney | Orange County, CA | Orange County District Attorney<br>Consumer Protection Unit<br>401 Civic Center Drive West<br>PO Box 808<br>Santa Ana, CA 92701 |
| County Consumer Protection Agency or County District Attorney | Los Angeles County, CA | Los Angeles County District Attorney<br>Consumer Protection Division<br>211 West Temple Street, Suite 1000<br>Los Angeles, CA 90012 |
| County Consumer Protection Agency or County District Attorney | Sacramento County, CA | Sacramento County District Attorney<br>Consumer & Environmental Protection Division<br>901 G Street<br>Sacramento, CA 95814 |

| | | |
|---|---|---|
| County Consumer Protection Agency or County District Attorney | Douglas County, CO | Douglas County District Attorney<br>Attn: Lance Ingalls<br>110 Third Street<br>Castle Rock, CO 80104 |
| County Consumer Protection Agency or County District Attorney | Denver County, CO | Denver County District Attorney<br>Second Judicial District<br>201 W. Colfax Avenue<br>Denver, CO 80202 |
| County Consumer Protection Agency or County District Attorney | Fairfield County, CT | Fairfield County States Attorney<br>Attn: John Smriga<br>1061 Main Street<br>Bridgeport, CT 06604 |
| County Consumer Protection Agency or County District Attorney | New Castle County, DE | New Castle County Attorney General<br>Attn: Matt Denn<br>Consumer Protection Unit<br>Delaware Department of Justice<br>820 N. French St.<br>Wilmington, DE 19801 |
| County Consumer Protection Agency or County District Attorney | Pinellas County, FL | Pinellas County Attorney<br>315 Court Street<br>Clearwater, FL 33756 |
| County Consumer Protection Agency or County District Attorney | Martin County, FL | Martin County Attorney<br>2401 SE Monterey Road<br>Stuart, FL 34996 |
| County Consumer Protection Agency or County District Attorney | Palm Beach County, FL | Palm Beach County Attorney<br>301 N Olive Avenue Suite 601<br>West Palm Beach, FL 33401 |
| County Consumer Protection Agency or County District Attorney | Orange County, FL | Orange County Attorney<br>Attn: Jeffrey J Newton<br>PO Box 1393<br>Orlando, FL 32802-1393 |

| | | |
|---|---|---|
| County Consumer Protection Agency or County District Attorney | Seminole County, FL | Seminole County District Attorney<br>Attn: Bryant Applegate<br>1101 East 1st Street<br>Sanford, FL 32771 |
| County Consumer Protection Agency or County District Attorney | Hillsborough County, FL | Hillsborough County Attorney<br>Chip Fletcher County Center<br>601 E Kennedy Blvd<br>Tampa, FL 33602 |
| County Consumer Protection Agency or County District Attorney | Broward County, FL | Broward County Attorney<br>115 S. Andrews Ave.<br>Annex B Fort<br>Lauderdale, FL 33301-4800 |
| County Consumer Protection Agency or County District Attorney | Leon County, FL | Leon County Attorney<br>Attn: Herbert W. A. Thiele<br>301 S Monroe St Suite 202<br>Tallahassee, FL 32301 |
| County Consumer Protection Agency or County District Attorney | Leon County, FL | Leon County Attorney<br>Attn: Herbert W. A. Thiele<br>301 S Monroe St Suite 202<br>Tallahassee, FL 32301 |
| County Consumer Protection Agency or County District Attorney | Palm Beach County, FL | Palm Beach County Attorney<br>301 N Olive Avenue Suite 601<br>West Palm Beach, FL 33401 |
| County Consumer Protection Agency or County District Attorney | Dade County, FL | Miami-Dade County Attorney<br>Attn: Abigail Price-Williams<br>111 NW 1st Street Suite 2810<br>Miami, FL 33128 |
| County Consumer Protection Agency or County District Attorney | Sarasota County, FL | Sarasota County Attorney<br>1660 Ringling Blvd<br>Sarasota, FL 34236 |

| | | |
|---|---|---|
| County Consumer Protection Agency or County District Attorney | Fulton County, GA | Fulton County District Attorney<br>Attn: Paul L Howard Jr<br>136 Pryor Street SW Third Floor<br>Atlanta, GA 30303 |
| County Consumer Protection Agency or County District Attorney | Honolulu County, HI | Honolulu County Prosecuting Attorney<br>Attn: Keith M. Kaneshiro<br>1060 Richards St.<br>Honolulu, HI 96813 |
| County Consumer Protection Agency or County District Attorney | Sedgwick County, KS | Sedgwick County District Attorney<br>Consumer Protection Division<br>535 N. Main<br>Wichita, KS 67203 |
| County Consumer Protection Agency or County District Attorney | Johnson County, KS | Johnson County District Attorney<br>Consumer Protection Unit<br>100 N Kansas<br>Olathe, KS 66061 |
| County Consumer Protection Agency or County District Attorney | East Baton Rouge Parish, LA | East Baton Rouge Parish District Attorney's Office<br>222 St. Louis St. Suite 550<br>Baton Rouge, LA 70802 |
| County Consumer Protection Agency or County District Attorney | Jefferson Parish, LA | Jefferson Parish District Attorney's Office<br>200 Derbigny St.<br>Gretna, LA 70053 |
| County Consumer Protection Agency or County District Attorney | Essex County, NJ | Essex District Attorney Jonathan W. Blodgett<br>10 Federal St.<br>5th Floor<br>Salem, MA 01970 |
| County Consumer Protection Agency or County District Attorney | Norfolk County, MA | Norfolk County District Attorney<br>Attn: Michael W Morrissey<br>45 Shawmut Road<br>Canton, MA 02021 |

| | | |
|---|---|---|
| County Consumer Protection Agency or County District Attorney | Middlesex County, MA | Middlesex County District Attorney<br>Attn: Marian T. Ryan<br>15 Commonwealth Avenue<br>Woburn, MA 01801 |
| County Consumer Protection Agency or County District Attorney | Middlesex County, MA | Middlesex County District Attorney<br>Attn: Marian T. Ryan<br>15 Commonwealth Avenue<br>Woburn, MA 01801 |
| County Consumer Protection Agency or County District Attorney | Baltimore County, MD | Baltimore County Attorney<br>Attn: Michael E. Field<br>Historic Courthouse<br>400 Washington Avenue<br>Towson, MD 21204 |
| County Consumer Protection Agency or County District Attorney | Howard County, MD | Howard County Solicitor<br>Gary W. Kuc Carroll Building<br>3450 Court House Dr<br>Ellicott City, MD 21043 |
| County Consumer Protection Agency or County District Attorney | Cumberland County, ME | Cumberland County District Attorney<br>Attn: Stephanie Anderson<br>142 Federal St.<br>Portland, ME 04101 |
| County Consumer Protection Agency or County District Attorney | Oakland County, MI | Oakland County Prosecutors Office<br>Attn: Jessica R Cooper<br>West Wing - Building 14E<br>1200 North Telegraph Road<br>Pontiac, MI 48341-0461 |
| County Consumer Protection Agency or County District Attorney | Oakland County, MI | Oakland County Prosecutors Office<br>Attn: Jessica R Cooper<br>West Wing - Building 14E<br>1200 North Telegraph Road<br>Pontiac, MI 48341-0461 |
| County Consumer Protection Agency or County District Attorney | Hennepin County, MN | Hennepin County District Attorney<br>C-2000 Government Center<br>300 South Sixth Street<br>Minneapolis, MN 55487 |

| | | |
|---|---|---|
| County Consumer Protection Agency or County District Attorney | Hennepin County, MN | Hennepin County District Attorney C-2000 Government Center 300 South Sixth Street Minneapolis, MN 55487 |
| County Consumer Protection Agency or County District Attorney | St Louis County, MO | St Louis County Prosecuting Attorney Attn: Robert P. McCulloch 100 South Central Avenue, 2nd Floor Clayton, MO 63105 |
| County Consumer Protection Agency or County District Attorney | Forsyth County, NC | Forsyth County Hall of Justice 200 North Main St. Winston-Salem, NC 27101 |
| County Consumer Protection Agency or County District Attorney | Wake County, NC | District Attorney's Office 300 S. Salisbury St. Raleigh, NC 27601 |
| County Consumer Protection Agency or County District Attorney | Hillsborough County, NH | Hillsborough County Attorney Attn: Dennis C. Hogan 300 Chestnut Street Manchester, NH 03101 |
| County Consumer Protection Agency or County District Attorney | Bergen County, NJ | Bergen County Counsel Attn: Julien X. Neals, Esq. Department of Law Office of County Counsel One Bergen County Plaza Rm. 580 Hackensack, NJ 07601 |
| County Consumer Protection Agency or County District Attorney | Morris County, NJ | Morris County Prosecutors Office P.O. Box 900 Court Street Morristown, NJ 0793-0900 |
| County Consumer Protection Agency or County District Attorney | Bergen County, NJ | Bergen County Counsel Attn: Julien X. Neals, Esq. Department of Law Office of County Counsel One Bergen County Plaza Rm. 580 Hackensack, NJ 07601 |

| | | |
|---|---|---|
| County Consumer Protection Agency or County District Attorney | Bergen County, NJ | Bergen County Counsel<br>Attn: Julien X. Neals, Esq.<br>Department of Law Office of County Counsel<br>One Bergen County Plaza Rm. 580<br>Hackensack, NJ 07601 |
| County Consumer Protection Agency or County District Attorney | Middlesex County, NJ | Office of the Middlesex County Prosecutor<br>Public Safety Building<br>25 Kirkpatrick Street 3rd Floor<br>New Brunswick, NJ 08901 |
| County Consumer Protection Agency or County District Attorney | Bernalillo County, NM | Second Judicial District Attorneys Office<br>520 Lomas Blvd NW<br>Albuquerque, NM 87102 |
| County Consumer Protection Agency or County District Attorney | Clark County, NV | Clark County District Attorney<br>Attn: Steve Wolfson<br>500 S. Grand Central Pkwy<br>Las Vegas, NV 89155 |
| County Consumer Protection Agency or County District Attorney | Suffolk County, NY | Suffolk County District Attorney<br>Attn: Thomas J Spota<br>William J. Lindsay<br>County Complex Building 77<br>Veterans Memorial Highway<br>Hauppauge, NY 11788 |
| County Consumer Protection Agency or County District Attorney | Westchester County, NY | Westchester County District Attorney<br>Attn: James A. McCarty<br>111 Dr. Martin Luther King Jr. Blvd<br>White Plains, NY 10601 |
| County Consumer Protection Agency or County District Attorney | Suffolk County, NY | Suffolk County District Attorney<br>Attn: Thomas J Spota<br>William J. Lindsay<br>County Complex Building 77<br>Veterans Memorial Highway<br>Hauppauge, NY 11788 |
| County Consumer Protection Agency or County District Attorney | Nassau County, NY | Nassau County District Attorney<br>Attn: Madeline Singas<br>262 Old Country Road<br>Mineola, NY 11501 |

| | | |
|---|---|---|
| County Consumer Protection Agency or County District Attorney | New York County, NY | New York County District Attorney<br>Attn: Cyrus R. Vance Jr.<br>One Hogan Place<br>New York, NY 10013 |
| County Consumer Protection Agency or County District Attorney | Rockland County, NY | Rockland County District Attorney's Office<br>1 South Main St, Suite 500<br>New City, NY 10956 |
| County Consumer Protection Agency or County District Attorney | Oklahoma County, OK | Oklahoma County District Attorney<br>320 Robert S. Kerr Ave. Room 505<br>Oklahoma City, OK 73102 |
| County Consumer Protection Agency or County District Attorney | Montgomery County, PA | Montgomery County District Attorney<br>Attn: Kevin R. Steele<br>County Courthouse 4th Floor<br>Norristown, PA  19404-0311 |
| County Consumer Protection Agency or County District Attorney | Knox County, TN | Office of District Attonrey General<br>PO Box 1468<br>400 Main St. Suite 168<br>Knoxville, TN 37901-1468 |
| County Consumer Protection Agency or County District Attorney | Bexar County, TX | Bexar County Criminal District Attorney<br>Bexar County<br>101 West Nueva<br>San Antonio, TX 78205 |
| County Consumer Protection Agency or County District Attorney | Collin County, TX | Collin County District Attorney<br>Attn: Greg Willis<br>2100 Bloomdale Road<br>Suite 100<br>McKinney, TX 75071 |
| County Consumer Protection Agency or County District Attorney | Collin County, TX | Collin County District Attorney<br>Attn: Greg Willis<br>2100 Bloomdale Road<br>Suite 100<br>McKinney, TX 75071 |

| | | |
|---|---|---|
| County Consumer Protection Agency or County District Attorney | Dallas County, TX | Dallas County District Attorney<br>Attn: Susan Hawk<br>Frank Crowley Courts Building<br>133 N. Riverfront Boulevard, LB 19<br>Dallas, TX 75207 |
| County Consumer Protection Agency or County District Attorney | Tarrant County, TX | Tarrant County District Attorney<br>Attn: Sharen Wilson<br>Tim Curry Criminal Justice Center<br>401 West Belknap<br>Fort Worth, TX 76196 |
| County Consumer Protection Agency or County District Attorney | Harris County, TX | Harris County District Attorney<br>Attn: Devon Anderson<br>1201 Franklin Street<br>Suite 600<br>Houston, TX 77002-1923 |
| County Consumer Protection Agency or County District Attorney | Dallas County, TX | Dallas County District Attorney<br>Attn: Susan Hawk<br>Frank Crowley Courts Building<br>133 N. Riverfront Boulevard, LB 19<br>Dallas, TX 75207 |
| County Consumer Protection Agency or County District Attorney | Galveston County, TX | Galveston County Criminal District Attorney<br>Attn: Jack Roady<br>Galveston County<br>722 Moody Avenue<br>Galveston, TX 77550 |
| County Consumer Protection Agency or County District Attorney | Salt Lake County, UT | Salt Lake County District Attorney<br>Attn: Sim Gill<br>Salt Lake County Justice Court<br>2001 South State Street<br>S3-600<br>Salt Lake City, UT 84190 |
| County Consumer Protection Agency or County District Attorney | Fairfax County, VA | Fairfax County Commonwealths Attorney<br>Judicial Center / Jennings Building<br>4110 Chain Bridge Road<br>Fairfax, VA 22030 |
| County Consumer Protection Agency or County District Attorney | Loudoun County, VA | Loudoun County Attorney<br>Attn: Lee Rogers<br>1 Harrison St. SE<br>P. O. Box 7000<br>Leesburg, VA 20177-7000 |

| | | |
|---|---|---|
| County Consumer Protection Agency or County District Attorney | King County, WA | King County Prosecuting Attorney<br>Attn: Dan Satterberg<br>King County Courthouse Room W554<br>516 Third Avenue<br>Seattle, WA 98104-2362 |
| County Consumer Protection Agency or County District Attorney | Snohomish County, WA | Snohomish County Prosecutor<br>Attn: Mark Roe<br>3000 Rockefeller, M/S 504<br>First floor of Mission Building<br>Everett, WA 98201 |

| Type of Governmental Unit | Associated Store Location or State | Governmental Unit name and Address |
|---|---|---|
| Local Jurisdiction Chief Legal Counsel or Local Manager | Huntsville, AL | Huntsville City<br>City Attorney's Office<br>P O Box 308<br>Huntsville, AL 35804 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Scottsdale, AZ | Scottsdale City Attorney<br>Attn: Bruce Washburn<br>3939 N Drinkwater Blvd<br>Scottsdale, AZ 85251 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Brea, CA | Brea City Council<br>1 Civic Center Cir,<br>Brea, CA 92821 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Torrance, CA | Torrance City Attorney<br>City Hall<br>3031 Torrance Blvd<br>Torrance, CA 90503 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | San Diego, CA | San Diego City Attorney<br>Attn: Jan Goldsmith<br>1200 Third Ave, Suite 1620<br>San Diego, CA 92101 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Roseville, CA | Roseville City Attorney<br>311 Vernon St<br>Roseville, CA 95678 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | San Mateo, CA | San Mateo City Attorney<br>330 West 20th Avenue<br>San Mateo, CA 94403 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Irvine, CA | Irvine City Attorney<br>c/o Rutan & Tucker<br>Attn: Todd O Litfin<br>611 Anton Blvd. Suite 1400<br>Costa Mesa, CA 92626-1931 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Escondido, CA | Escondido City Attorney<br>City Hall, Second Floor<br>201 North Broadway<br>Escondido, CA 92025 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Arcadia, CA | City of Arcadia, cA<br>City Manager's Office<br>240 W Huntington Drive<br>Arcadia, Ca 91007 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Santa Rosa, CA | Santa Rosa City Attorney<br>100 Santa Rosa Ave Room 8<br>Santa Rosa, CA 95404 |

| | | |
|---|---|---|
| Local Jurisdiction Chief Legal Counsel or Local Manager | Costa Mesa, CA | Costa Mesa City<br>City Attorney's Office<br>Attn: Tom Duarte<br>77 Fair Drive<br>Costa Mesa, CA 92626 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Pleasanton, CA | City of Pleasanton<br>City Attorney's Office<br>123 Main St.<br>P O Box 520<br>Pleasanton, Ca 94566 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | San Francisco, CA | San Francisco City Attorney<br>Attn: Dennis J Herrera<br>City Hall, Room 234<br>1 Dr Carlton B. Goodlett Pl<br>San Francisco, CA 94102 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Concord, CA | Concord City Attorney<br>Attn: Susanne Brown<br>1950 Parkside Dr<br>Concord, CA 94519 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Corte Madera, CA | Corte Madera Town Attorney<br>Attn: Randy Riddle<br>300 Tamapalis Dr<br>Corte Madera, CA 94925 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Santa Monica, CA | City of Santa Monica, CA<br>City Attorney's Office<br>Attn: George S. Cardona<br>685 Main St. Room 310<br>Santa Monica, Ca 90401 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Santa Clara, CA | City of Santa Clara, CA<br>City Attorney's Office<br>Attn: Brian Doyle<br>1500 Warburton Avenue<br>Santa Clara, CA 9505 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Rancho Cucamonga, CA | City of Rancho Cuamonga, CA<br>City Attorney's Office<br>Attn: James L. Markman<br>10500 Civic Center Drive<br>Rancho Cucamonga, CA 91730 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | San Jose, CA | San Jose City Attorney<br>Attn: Richard Doyle<br>200 E Santa Clara St 16th Floor<br>San Jose, CA 95113 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Palm Desert, Ca | Palm Desert City Attorney<br>c/o Best Best & Krieger<br>Attn: Robert Hargreaves<br>74760 Highway 111, Ste 200<br>Indian Wells, CA 92210 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Newark, DE | City of Newark, CA<br>City Attorney's Office<br>Attn: David J. Benoun<br>37101 Newark Blvd<br>Newark, CA 94560 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Sacramento, CA | California Office of the Attorney General<br>Office of the City Attorney<br>915 I Street, 4th Floor<br>Sacramento, CA 95814-2608 |

| | | |
|---|---|---|
| Local Jurisdiction Chief Legal Counsel or Local Manager | Los Angeles, CA | Los Angeles City Attorney<br>Attn: James K. Hahn<br>City Hall East<br>200 North Main Street, 8th Floor<br>Los Angeles, CA 90012 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Denver, CO | Denver City Attorney<br>201 W.Colfax Ave Dept 1207<br>Denver, CO 80202 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Lone Tree, CO | City of Lone Tree<br>City Attorney's Office<br>Attn: Gary R. White<br>9220 Kimmer Dr., Suite 100<br>Lone Tree, CO 80124 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Waterford, CT | Town of Waterford, CT<br>15 Rope Ferry Rd.<br>Waterford, CT 06385-2886 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Danbury, CT | Danbury Corporation Counsel<br>155 Deer Hill Avenue<br>Danbury, CT 06810 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Uncasville, CT | Town of Montville<br>Attn: Ronald K. McDaniel<br>Montville Town Hall, 2nd Floor<br>310 Norwich-New London Tpke.<br>Uncasville, CT 06382 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | North Miami, FL | City of North Miami, FL<br>City Attorney's Office<br>Attn: Jeff P.H. Cazeau<br>776 NE 125 Street - 1st Floor<br>North Miami, FL 33161 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Boca Raton, FL | Boca Raton City Attorney<br>201 West Palmetto Park Rd<br>Baca Raton, FL 33432 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Estero, FL | Estero FL<br>c/o Chief Legal Counsel or City Manager<br>Attn: Burt Sanders / Gray Robinson<br>8889 Pelican Bay Blvd. Suite 400<br>Naples, FL 34108 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Miami, FL | Miami City Attorney<br>444 S.W. 2nd Ave, Suite 945<br>Miami, FL 33130 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Destin, FL | City of Clearwater, FL<br>City Attorney's Office<br>P.O. Box 4748<br>Clearwater, FL 33758-4748 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Fort Lauderdale, FL | Fort Lauderdale City Attorney<br>100 N. Andrews Ave<br>Fort Lauderdale, FL 33301 |

| | | |
|---|---|---|
| Local Jurisdiction Chief Legal Counsel or Local Manager | Tampa, FL | Tampa City Attorney<br>Old City Hall 5th Floor<br>315 E. Kennedy Blvd<br>Tampa, FL 33602 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Sanford, FL | Sanford City Attorney<br>1001 Heathrow Park Lane Suite 4001<br>Heathrow, FL 32746 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Jacksonville, FL | City of St. Augustine, FL<br>City Attorney's Office<br>Attn: Isabelle C. Lopez<br>P O Box 210<br>St. Augustine, FL 32085-0210 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Orlando, FL | Orlando City Attorney<br>400 S. Orange Avenue<br>Orlando, FL 32802-4990 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Palm Beach Gardens, FL | Palm Beach Gardens City Attorney<br>10500 N. Military Trail<br>Palm Beach Gardens, FL 33410 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Jensen Beach, FL | Jensen Beach FL<br>Chief Legal Counsel or City Manager<br>Attn: Martin County Attorney<br>2401 SE Monterey Road<br>Stuart, FL 34996 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | St. Petersburgh, FL | St. Petersburg City Attorney<br>City of St. Petersburg<br>P.O. Box 2842<br>St. Petersburg, FL 33731 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Sarasota, FL | Sarasota City Attorney<br>1565 1st Street<br>Sarasota, FL 34236 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Atlanta, GA | Atlanta City Attorney<br>City of Atlanta Department of Law<br>55 Trinity Ave., Suite 5000<br>Atlanta, GA 30303 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Honolulu, HI | Honolulu Prosecuting Attorney<br>Attn: Keith M. Kaneshiro<br>1060 Richards St.<br>Honolulu, HI 96813 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Indianapolis, IN | City of Indianapolis, IN<br>Office of the Attorney General<br>302 W. Washington St. -5th FL<br>Indianapolis, IN 46204 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Overland Park, KS | City of Overland Park, KS<br>Office of the City Attorney<br>12400 Foster St,<br>Overland Park, KS 66213 |

| | | |
|---|---|---|
| Local Jurisdiction Chief Legal Counsel or Local Manager | Wichita, KS | Wichita City Attorney<br>Attn: Jennifer Magana Law<br>455 N Main, 11th Floor<br>Wichita, KS 67202 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Lexington, KY | Commonwealth's Attorneys Office<br>116 N Upper St<br>Lexington, KY 40507 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Melairie, LA | City of New Orleans<br>Attn Latoy Cantrell<br>1300 Perdido St.<br>New Orleans, LA 70112 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Baton Rouge, LA | Baton Rouge city Court<br>233 Saint Louis St. Room 208<br>Baton Rouge, LA 70802 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Burlington, MA | Tax Collector Office<br>Attn: Brian Curtin<br>29 Center Street<br>Burlington, Ma 01803 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Natick, MA | Natick Town Offices<br>Attn: Stephen Price<br>13 E Central St.<br>Natick, MA 01760 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Braintree, MA | Town of Braintree Town Solicitor<br>One JFK Memorial Drive<br>Braintree, MA 02184 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Columbia, MD | Columbia County Solicitor<br>Gary W. Kuc Carroll Building<br>3450 Court House Drive<br>Ellicott City, MD 21043 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Towson, MD | Towson County Attorney<br>Attn: Michael E. Field<br>Historic Courthouse<br>400 Washington Avenue<br>Towson, MD 21204 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | South Portland, ME | South Portland Corporation Counsel<br>Attn: Sally Daggett<br>South Portland Legal Department City Hall<br>25 Cottage Road South<br>Portland, ME 04106 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Troy, MI | Troy City Attorney<br>Attn: Lori Grigg<br>500 W Big Beaver Rd.<br>Troy, MI 48084 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Novi, MI | Office of the City Clerk<br>Attn: Cortney Harrison<br>Novi Civic Center<br>45175 10 Mile Road<br>Novi, MI 48375 |

| | | |
|---|---|---|
| Local Jurisdiction Chief Legal Counsel or Local Manager | Grand Rapids, MI | Office of the City Attorney<br>Attn: Anita Hitchcock<br>City Hall<br>300 Monroe Ave. NW Ste. 620<br>Grand Rapids, MN 49503 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Minneapolis, MN | Minneapolis City Attorney<br>Attn: Susan L. Segal<br>City Hall, Room 210 350 S. 5th St.<br>Minneapolis, MN 55415 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Edina, MN | City Clerk Office<br>4801 W 50th St.<br>Edina, MN 55424 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Branson, MO | City of Branson, MO<br>110 West Maddux<br>Branson, MO 65616 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Des Peres, MO | City Attorney Office<br>Attn: Kevin O'Keefe<br>12325 Manchester Rd.<br>Des Peres, MO 63131 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Raleigh, NC | Raleigh City Attorney<br>1 Exchange Plaza<br>Raleigh, NC 27601 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Winston-Salem, NC | City Attorney Office<br>101 N Main St.<br>Winston-Salem, NC 27101 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Nashua, NH | Nashua City Attorney<br>Attn: Stephen Bennett Corporation Counsel<br>229 Main Street<br>Nashua, NH 03060 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Edison, NJ | Edison Township Municipal Court<br>100 Municipal Blvd.<br>Edison, NJ 08817 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Paramus, NJ | Paramus City Attorney<br>Attn: Borough Attorney (via Borough Clerk)<br>Coleen Goddel, Deputy Clerk<br>1 Jockish Square<br>Paramus, NJ 07652 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Princeton, NJ | Witherspoon Hall<br>400 Whitherspoon St.<br>Princeton, NJ 08540 |

| | | |
|---|---|---|
| Local Jurisdiction Chief Legal Counsel or Local Manager | Hackensack, NJ | City of Hackensack<br>65 Central Avenue<br>Hackensack, NJ 07601 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Rockaway, NJ | Rockaway Township<br>65 Mt. Hope Road<br>Rockaway, NJ 07866 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Short Hills, NJ | Millburn Municipal  Court Clerk<br>436 Essex St.<br>Milburn, NJ 07041 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Paramus, NJ | Paramus City Attorney<br>c/o Borough Attorney (via Borough Clerk)<br>Attn: Coleen Goddel, Deputy Clerk<br>1 Jockish Square<br>Paramus, NJ 07652 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Albuqwuerque, NM | Albuquerque City Attorney<br>Attn: Jessica M. Hernandez<br>One Civic Plaza NW Room 4015<br>Albuquerque, NM 87102 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Las Vegas, NV | Las Vegas City Attorney<br>Attn: Brad Jerbic<br>City Hall, 6th Floor<br>495. S. Main St.<br>Las Vegas, NV 89101 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | White Plains, NY | White Plains New York<br>Corporate Counsel<br>Attn: John Callahan<br>255 Main St.<br>White Plains,NY 10601 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | West Nyack, NY | Town of Clarkstown<br>10 Maple Avenue<br>New City, NY 10956 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | New York, NY | New York, NY<br>Attn: Chief Legal Counsel or City Manager<br>City Hall Park<br>New York, NY 10007 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Garden City, NY | Garden City City Attorney<br>Attn: Village Clerk Brian Ridgway<br>351 Stewart Avenue<br>Garden City, NY 11530 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Lake Grove, NY | Suffolk County Government<br>Babylon Town Hall<br>200 East Sunrise Highway<br>Lindenhurst, NY 11757 |

| | | |
|---|---|---|
| Local Jurisdiction Chief Legal Counsel or Local Manager | Huntington Station, NY | Town of Huntington, Long Island, NY Attn: Nicholas Ciappetta Town Hall (Room 203) 100 Main Street Huntington, NY 11743 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Oklahoma City, OK | Oklahoma Attorney General Attn: Mike Hunter 313 NE 21st St, Oklahoma City, OK 73105 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | King of Prussia, PA | Pennsylvania Office of Attorney Attn: Josh Shapiro General Strawberry Square Harrisburg, PA 17120 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | San Juan, PR | San Juan Puerto Rico Attn: Chief Legal Counsel or City Manager PO Box 9024100 San Juan, PR 00902-4100 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Myrtle Beach, SC | City of Myrtle Beach Attn: Thomas E. Ellenburg P O Box 2468 Myrtle Beach, SC 29578 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Knowville, TN | City of Knoxville Attn: Madeline Rogero 400 Main St., Room 699 Knoxville, TN 37902 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Friendswood, TX | Friendswood City Attorney Attn: Arnold Polanco 910 South Friendswood Drive Friendswood, TX 77546 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Dallas, TX | Dallas City Attorney Dallas City Hall 1500 Marilla Street Room 7DN Dallas, TX 75201-6622 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Houston, TX | Houston City Attorney City of Houston Attn: Legal Department 900 Bagby, 4th Floor Houston, TX 77002 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Hurst, TX | City of Hurst, TX 1505 Precinct Line Rd. Hurst, TX 76054 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Dallas, TX | Dallas City Attorney Dallas City Hall 1500 Marilla Street Room 7DN Dallas, TX 75201-6622 |

| | | |
|---|---|---|
| Local Jurisdiction Chief Legal Counsel or Local Manager | Plano, TX | Plano City Attorney<br>Attn: City Attorney's Office Main Office<br>1520 Avenue K Ste 340<br>Plano, TX 75074 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Frisco, TX | Frisco City Attorney<br>c/o Abernathy, Roeder, Boyd & Hullett P.C.<br>Attn: Richard Abernathy<br>1700 Redbud Blvd, Suite 300<br>McKinney, TX 75069 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | San Antonio, TX | San Antonio City Attorney Office<br>of the City Attorney<br>100 Military Plaza<br>City Hall Third Floor<br>San Antonio, TX 78205 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Murray, UT | Murray City, Utah<br>City Attorney's Office<br>5025 S State St. Suite 106<br>Murray, UT 84107 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Dulles, VA | The City of Portsmouth<br>Attn: Solomon H. Ashby<br>801 Crawford Street<br>Portsmouth, VA 23704 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Fairfax, VA | Fairfax VA<br>Attn: Chief Legal Counsel or City Manager<br>City Hall<br>10455 Armstrong St<br>Fairfax, VA 22030 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Norfolk, VA | Norfolk City Attorney<br>Attn: Bernard A Pishko<br>810 Union St. Suite 900<br>Norfolk, VA 23510 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Mclean, VA | City of Alexandria, VA<br>City Attorney's Office<br>301 King St. Room 1300<br>Alexandria, VA 22314 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Lynnwood, WA | Lynnwood WA<br>Attn: Chief Legal Counsel or City Manager<br>19100 44th Ave W<br>Lynnwood, WA 98046 |
| Local Jurisdiction Chief Legal Counsel or Local Manager | Bellevue, WA | Bellevue City Attorney<br>Attn: Lori Riordan<br>450 110th Ave. NE<br>Bellevue, WA 98009 |

| Type of Governmental Unit | Associated Store Location or State | Governmental Unit name and Address |
|---|---|---|
| State Consumer Protection | State of Alaska | Office of the Attorney General<br>Consumer Protection Unit<br>1031 W. 4th Ave. Suite 200<br>Anchorage, AK 99501-5903 |
| State Consumer Protection | State of Arizona | Arizona Office of the Attorney General - Phoenix<br>Consumer Information and Complaints<br>1275 W. Washington St<br>Phoenix, AZ 85007 |
| State Consumer Protection | State of Arizona | Arizona Office of the Attorney General - Tucson<br>Consumer Information and Complaints<br>400 W. Congress St<br>South Bldg Suite 315<br>Tucson, AZ 85701-1367 |
| State Consumer Protection | State of Arizona | Arizona Office of the Attorney General - Prescott<br>Consumer Information and Complaints<br>1000 Ainsworth Dr. Suite A-210<br>Prescott, AZ 86305-1610 |
| State Consumer Protection | State of California | California Bureau of Automotive Repair<br>Department of Consumer Affairs<br>10949 N. Mather Blvd<br>Rancho Cordova, CA 95670 |
| State Consumer Protection | State of California | California Department of Consumer Affairs<br>Consumer Information Division<br>1625 N. Market Blvd Suite N 112<br>Sacramento, CA 95834 |
| State Consumer Protection | State of California | California Office of the Attorney General<br>Public Inquiry Unit<br>PO Box 944255<br>Sacramento, CA 94244-2550 |
| State Consumer Protection | State of California | Contractors State License Board<br>Consumer Protection<br>9821 Business Park Dr<br>Sacramento, CA 95827 |
| State Consumer Protection | State of Colorado | Colorado Office of the Attorney General<br>Consumer Protection Division<br>Ralph L. Carr<br>Judicial Building<br>1300 Broadway, 7th Floor |
| State Consumer Protection | State of Colorado | AARP ElderWatch Consumer Protection<br>1301 Pennsylvania St., # 280<br>Denver, CO 80203 |

| | | |
|---|---|---|
| State Consumer Protection | State of Connecticut | Connecticut Attorney General's Office<br>Consumer Protection<br>55 Elm St<br>Hartford, CT 06106 |
| State Consumer Protection | State of Connecticut | Department of Consumer Protection<br>Consumer Protection<br>165 Capitol Ave<br>Hartford, CT 06106-1630 |
| State Consumer Protection | State of Delaware | Delaware Department of Justice<br>Consumer Protection Division<br>820 N. French St., 5th Floor<br>Wilmington, DE 19801 |
| State Consumer Protection | State of Florida | Florida Department of Agriculture and Consumer Services<br>Division of Consumer Services<br>Terry Lee Rhodes Building<br>2005 Apalachee Pkwy<br>Mail Stop R44 |
| State Consumer Protection | State of Florida | Florida Office of the Attorney General<br>Consumer Protection PL-01<br>The Capitol<br>Tallahassee, FL 32399-1050 |
| State Consumer Protection | State of Georgia | Georgia Governors Office of Consumer Affairs<br>Consumer Protection<br>2 Martin Luther King, Dr., SE Suite 356<br>Atlanta, GA 30334-9077 |
| State Consumer Protection | State of Hawaii | Hawaii Department of Commerce and Consumer Affairs - Hilo<br>Office of Consumer Protection<br>345 Kekuanaoa St<br>Suite 12<br>Hilo, HI 96720 |
| State Consumer Protection | State of Hawaii | Hawaii Department of Commerce and Consumer Affairs - Honolulu<br>Office of Consumer Protection<br>235 S. Beretania St<br>Suite 801<br>Honolulu, HI 96813 |
| State Consumer Protection | State of Hawaii | Hawaii Department of Commerce and Consumer Affairs<br>Wailuku Office of Consumer Protection<br>1063 Lower Main St<br>Suite C-216 Wailuku, HI 96793 |
| State Consumer Protection | State of Idaho | Idaho Attorney Generals Office Consumer Protection Division<br>954 W. Jefferson 2nd Floor<br>PO Box 83720<br>Boise, ID 83720 |

| | | |
|---|---|---|
| State Consumer Protection | State of Illinois | Illinois Office of the Attorney General - Carbondale<br>Consumer Fraud Bureau<br>601 S. University Ave<br>Carbondale, IL 62901 |
| State Consumer Protection | State of Illinois | Illinois Office of the Attorney General - Chicago<br>Consumer Fraud Bureau<br>100 W. Randolph St<br>Chicago, IL 60601 |
| State Consumer Protection | State of Illinois | Illinois Office of the Attorney General - Springfield<br>Consumer Fraud Bureau<br>500 S. 2nd St<br>Springfield, IL 62706 |
| State Consumer Protection | State of Indiana | Office of the Attorney General<br>Consumer Protection Division<br>Government Center South 5th Floor<br>302 W. Washington St.<br>Indianapolis, IN 46204 |
| State Consumer Protection | State of Iowa | Iowa Office of the Attorney General<br>Consumer Protection Division<br>1305 E. Walnut St.<br>Des Moines, IA 50319 |
| State Consumer Protection | State of Kansas | Office of Kansas Attorney<br>Consumer Protection and Antitrust Division<br>120 S.W. 10th St<br>Suite 430<br>Topeka, KS 66612-1597 |
| State Consumer Protection | State of Louisiana | Louisiana Office of the Attorney General<br>Consumer Protection Section<br>1885 N 3rd St<br>Baton Rouge, LA 70802 |
| State Consumer Protection | State of Maine | Bureau of Consumer Credit Protection<br>Consumer Protection<br>35 State House Station<br>Augusta, ME 04333 |
| State Consumer Protection | State of Maryland | Maryland Office of the Attorney General<br>Consumer Protection Division<br>200 Saint Paul Pl<br>Baltimore, MD 21202 |
| State Consumer Protection | State of Massachusetts | Massachusetts Office of the Attorney General<br>Consumer Protection Division<br>One Ashburton Pl<br>Boston, MA 02108-1518 |

| | | |
|---|---|---|
| State Consumer Protection | State of Massachusetts | Office of Consumer Affairs and Business Regulation Consumer Protection<br>10 Park Plaza<br>Suite 5170<br>Boston, MA 02116 |
| State Consumer Protection | State of Michigan | Office of the Attorney General<br>Consumer Protection Division<br>PO Box 30213<br>Lansing, MI 48909-7713 |
| State Consumer Protection | State of Minnesota | Office of the Attorney General<br>Consumer Services Division<br>1400 Bremer Tower<br>445 Minnesota St<br>St. Paul, MN 55101 |
| State Consumer Protection | State of Mississippi | Mississippi Office of the Attorney General<br>Consumer Protection Division<br>Walter Sillers Building<br>550 High Street, Suite 1200<br>Jackson, MS 39201 |
| State Consumer Protection | State of Missouri | Missouri Attorney General's Office<br>Consumer Protection Unit<br>207 W. High St.<br>PO Box 899<br>Jefferson City, MO 65102 |
| State Consumer Protection | State of Montana | Montana Office of Consumer Protection<br>555 Fuller Avenue<br>PO Box 200151<br>Helena, MT 59620-0151 |
| State Consumer Protection | State of Nebraska | Nebraska Office of the Attorney General<br>Consumer Protection Division<br>2115 State Capitol<br>Lincoln, NE 68509 |
| State Consumer Protection | State of Nevada | Office of the Secretary of State<br>Securities Division<br>555 E. Washington Ave Suite 5200<br>Las Vegas, NV 89101 |
| State Consumer Protection | State of New Hampshire | New Hampshire Office of the Attorney General<br>Consumer Protection and Antitrust Bureau<br>33 Capitol St<br>Concord, NH 03301 |
| State Consumer Protection | State of New Jersey | Department of Law and Public Safety<br>Division of Consumer Affairs<br>124 Halsey St<br>Newark, NJ 07102 |
| State Consumer Protection | State of New Mexico | Office of Attorney General<br>Consumer Protection Division<br>408 Galisteo Street Villagra Building<br>Santa Fe, NM 87501 |

| | | |
|---|---|---|
| State Consumer Protection | State of New York | New York State Department of State Division of Consumer Protection Consumer Assistance Unit 99 Washington Ave Albany, NY 12231 |
| State Consumer Protection | State of New York | Office of the Attorney General - Albany Office Bureau of Consumer Fruads and Protection State Capitol Albany, NY 12224-0341 |
| State Consumer Protection | State of New York | Office of the Attorney General - New York City Office Bureau of Consumer Fruads and Protection 120 Broadway, 3rd Floor New York, NY 10271-0332 |
| State Consumer Protection | State of North Carolina | North Carolina Department of Agriculture and Consumer Services 1001 Mail Service Center Raleigh, NC 27699-1001 |
| State Consumer Protection | State of North Carolina | North Carolina Office of the Attorney General Consumer Protection Division Mail Service Center 9001 Raleigh, NC 27699-9001 |
| State Consumer Protection | State of Ohio | Ohio Attorney Generals Office Consumer Protection Section 30 E. Broad St., 14th Floor Columbus, OH 43215-3400 |
| State Consumer Protection | State of Oklahoma | Oklahoma Attorney General Consumer Protection Unit 313 NE 21st St Oklahoma City, OK 73105 |
| State Consumer Protection | State of Oregon | Department of Consumer and Business Services Division of Finance and Corporate Securities PO Box 14480 Salem, OR 97309-0405 |
| State Consumer Protection | State of Oregon | Oregon Department of Justice Financial Fraud/Consumer Protection Section 1162 Court St., NE Salem, OR 97301-4096 |
| State Consumer Protection | State of Pennsylvania | Office of the Attorney General Bureau of Consumer Protection Strawberry Square, 14th Floor Harrisburg, PA 17120 |

| | | |
|---|---|---|
| State Consumer Protection | State of Puerto Rico | Office of the Attorney General<br>Consumer Protection Unit<br>Torre Chardon<br>350 Carlos Chardon Street, Suite 1201<br>San Juan, PR 00918 |
| State Consumer Protection | State of Rhode Island | Rhode Island Department of the Attorney General<br>Consumer Protection Unit<br>150 S Main St<br>Providence, RI 02903 |
| State Consumer Protection | State of Tennessee | Tennessee Department of Commerce and Insurance<br>Division of Consumer Affairs<br>500 James Robertson Pkwy., 12th Floor<br>Nashville, TN 37243-0600 |
| State Consumer Protection | State of Tennessee | Tennessee Office of the Attorney General<br>Consumer Advocate and Protection Division<br>PO Box 20207<br>Nashville, TN 37202-0207 |
| State Consumer Protection | State of Texas | Texas Office of the Attorney General<br>Consumer Protection Division<br>PO Box 12548<br>Austin, TX 78711-2548 |
| State Consumer Protection | State of Utah | Utah Department of Commerce<br>Division of Consumer Protection<br>160 E. 300 S, 2nd Floor<br>PO Box 146704<br>Salt Lake City, UT 84114-6704 |
| State Consumer Protection | State of Virginia | Virginia Office of the Attorney General<br>Consumer Protection Section<br>900 E. Main St<br>Richmond, VA 23219 |
| State Consumer Protection | State of Washington | Washington Office of the Attorney General<br>Consumer Protection Division<br>1125 Washington St., SE PO Box 40100<br>Olympia, WA 98504-0100 |
| State Consumer Protection | State of Wisconsin | Wisconsin Department of Agriculture, Trade and Consumer Protection<br>Bureau of Consumer Protection<br>2811 Agriculture Dr<br>PO Box 8911<br>Madison, WI 53708-8911 |
| State Consumer Protection | State of Wyoming | Office of the Attorney General<br>Consumer Protection Unit<br>2320 Capitol Avenue<br>Cheyenne, WY 82002 |