**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BROOKSTONE HOLDINGS CORP., *et al.*,[1] | Case No. 18-11780 (BLS) |
| Debtors. | (Joint Administration Requested) |

**DECLARATION OF STEPHEN COULOMBE IN SUPPORT OF THE DEBTORS'
MOTION FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTORS
TO ASSUME THE CLOSING STORE AGREEMENT, (B) AUTHORIZING AND
APPROVING STORE CLOSING SALES FREE AND CLEAR OF ALL LIENS, CLAIMS
AND ENCUMBRANCES, (C) AUTHORIZING THE IMPLEMENTATION OF
CUSTOMARY EMPLOYEE BONUS PROGRAM AND PAYMENTS TO NON-
INSIDERS THEREUNDER, (D) APPROVING DISPUTE RESOLUTION
PROCEDURES, AND (E) APPROVING THE DEBTORS' STORE CLOSING PLAN**

I, Stephen Coulombe, hereby declare under penalty of perjury, pursuant to section 1746

of title 28 of the United States Code, as follows:

1.      I am a Managing Director at Berkeley Research Group, LLC ("BRG").  As of

June 25, 2018, BRG was engaged by Brookstone Holdings Corp. and each of its subsidiaries, all

of which are affiliated debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "Debtors") to serve as financial advisor.

2.      Since joining BRG in 2016, I have been a Managing Director in BRG's

Corporate Finance/Restructuring practice.  I have 20 years of experience serving as financial

advisor and providing performance improvement services to corporations, various creditor

classes, equity owners, and directors of underperforming companies.

---

[1]  The Debtors, along with the last four digits of each Debtor's tax identification number, are: Brookstone Holdings
Corp. (4638), Brookstone, Inc. (2895), Brookstone Company, Inc. (3478), Brookstone Retail Puerto Rico, Inc.
(5552), Brookstone International Holdings, Inc. (8382), Brookstone Purchasing, Inc. (2514), Brookstone Stores,
Inc. (2513), Big Blue Audio LLC (N/A), Brookstone Holdings, Inc. (2515), and Brookstone Properties, Inc.
(2517). The Debtors' corporate headquarters and the mailing address for each Debtor is One Innovation Way,
Merrimack, NH 03054.

3.    I submit this declaration (this "Declaration") in support of the *Debtors' Motion for Interim and Final Orders (A) Authorizing the Debtors to Assume the Closing Store Agreement, (B) Authorizing and Approving Store Closing Sales Free and Clear of All Liens, Claims and Encumbrances, (C) Authorizing the Implementation of Customary Employee Bonus Program and Payments to Non-Insiders Thereunder, (D) Approving Dispute Resolution Procedures, and (E) Approving the Debtors' Store Closing Plan* (the "Motion").

4.    Except as otherwise indicated herein, all facts set forth in this Declaration and the Motion are based upon my personal knowledge of the Debtors' operations and financial condition, information learned from my review of relevant documents, information supplied to me by other members of the Debtors' management team and the Debtors' advisors, or my opinion based upon my knowledge and experience or information I have reviewed concerning the Debtors' operations and financial condition. I am over eighteen (18) years of age and I am authorized to submit this Declaration on behalf of the Debtors. If called upon to testify, I could and would competently testify to the facts set forth in this Declaration and the Motion based upon my own personal knowledge, except as otherwise stated herein.

**A.    The Debtors' Store Closing Plan**

5.    As of the Petition Date, the Debtors operated stores in 40 states and Puerto Rico and a distribution center located in Mexico, Missouri.  Prior to the Petition Date, I understand that the Debtors completed a comprehensive review of the performance of all of their retail stores to analyze, among other things, the profitability and viability of each store location and to determine the Debtors' optimal footprint.  The Debtors also engaged BRG and GLC Advisors & Co. ("GLC") to, among other things, assist with analyses around cost reduction.

6.      As a culmination of these efforts, the Debtors developed the Store Closing Plan, which they are continuing to refine, whereby they have planned an orderly exit from certain underperforming or unprofitable store locations in an effort to conserve resources and maximize utility.  Pursuant to the Store Closing Plan, the Debtors, in consultation with BRG and GLC, have determined that it is in the best interest of their estates to immediately prepare for the closure of up to 102 of the Debtors' underperforming stores, plus the Debtors' liquidation center.

**B.      Engagement of Liquidation Consultant; Closing Store Agreement**

7.      The Debtors retained Gordon Brothers Retail Partners, LLC and Hilco Merchant Resources, LLC (collectively, the "Liquidation Consultant") because of its extensive expertise in conducting store closing sales, including the orderly liquidation of the inventory (the "Merchandise") and certain furniture, fixtures, equipment and other assets that the Debtors do not wish to retain (collectively, the "Offered FF&E" and collectively with the Inventory and any other assets located in a Closing Store, the "Store Assets") at the respective Closing Stores, with an eye toward maximizing revenues and value for the Debtors and their creditors.  The Debtors selected the Liquidation Consultant to conduct the Closing Sales at the Closing Stores, and determined that engaging the Liquidation Consultant was in the best interest of the Debtors and their stakeholders.  The Debtors negotiated the terms and conditions of the Store Closing Agreement in good faith and at arms'-length.  Accordingly, on August 1, 2018, the Debtors and the Liquidation Consultant executed the Store Closing Agreement.  The material terms of the Store Closing Agreement[2] are summarized in the table below:

| TERM | CLOSING STORE AGREEMENT |
|------|-------------------------|
|      |                         |

---

[2]  Capitalized terms used in the summary of the Closing Store Agreement, but not otherwise defined therein, shall have the meanings ascribed to such terms in the Closing Store Agreement.

| TERM | CLOSING STORE AGREEMENT |
|------|-------------------------|
| **Services Provided by Liquidation Consultant** | The Liquidation Consultant will be retained as the Debtors' exclusive, independent consultant to conduct the Closing Sales at the Closing Stores during the Sale Term to, among other things: (i) recommend appropriate discounting, point-of-purchase, point-of-sale, and other internal and external advertising to sell all of Debtors' goods; (ii) provide qualified supervision to oversee the conduct of the Closing Sales; (iii) maintain communication with Closing Store employees and managers; (iv) establish and monitor accounting functions for the Closing Sales; (v) recommend loss prevention strategies; (vi) coordinate with Debtors to ensure Closing Stores are properly maintained throughout the Closing Sales; and (vii) recommend appropriate staffing levels and incentive programs for Closing Store employees at the Closing Stores. *See* Closing Store Agreement, <u>Exhibit A</u>. |
| **Closing Stores** | The Closing Stores are designated on Exhibit A to the Closing Store Agreement, which provides for closure of up to 102 stores and the liquidation center.  *See* Closing Store Agreement, Section 2. |
| **Term of Closing Sales** | The Closing Sales shall commence on August 3, 2018 (the Sale Commencement Date) and shall end on September 30, 2018 (the Sale Termination Date); <u>provided</u>, <u>however</u>, that the Debtors and the Liquidation Consultant may mutually agree upon an earlier or later Sale Termination Date with respect to any one or more stores (on a store-by-store basis). *See* Closing Store Agreement, Section 2(A). |
| **Alternative Transaction** | From and after the Sale Commencement Date, Debtors and the Liquidation Consultant may mutually agree upon the terms of a global transaction (an Alternative Transaction) that affects the Closing Stores and the Closing Sale and that encompasses other assets of the Debtors which are not subject to the Closing Store Agreement.  Such Alternative Transaction will be subject to a separate agreement which may provide for alternative disposition of the Merchandise and Owned FF&E and may make modifications to the terms of the Closing Store Agreement. Any such Alternative Transaction shall be subject in all respects to approval of such agreement by the Court.  *See* Closing Store Agreement, Section 2(C). |
| **Expenses of Liquidation Consultant** | Debtors shall be responsible for all expenses incident to the conduct of the Closing Sales and the operation of the Closing Stores during the Sale Term, except for any Consultant Controlled Expenses which exceed the amounts budgeted therefor, in the amount of $520,871, on Exhibit B to the Closing Store Agreement.  Liquidation Consultant will advance funds for the Consultant's Controlled Expenses, and the Debtor shall reimburse the Liquidation Consultant for any advanced amounts |

| TERM | CLOSING STORE AGREEMENT |
|---|---|
| | up to the budgeted amount in connection with weekly reconciliations. Debtors shall also reimburse Liquidation Consultant for reasonable sales expenses associated with the sale of the Offered FF&E, not to exceed the amount agreed to by the parties in an FF&E expense budget (with such amount being in addition to the Consultant Controlled Expenses budget). *See* Closing Store Agreement, Section 3. |
| **Compensation for Liquidation Consultant** | In consideration of its services hereunder, Debtors shall pay Liquidation Consultant an "Incentive Fee" equal to as one of the following (e.g., back to first dollar): |

| Aggregate Recovery Percentage | Incentive Fee |
|---|---|
| Below 120.0% | No Incentive Fee |
| Between 120.0% and 129.99% | 0.50% of Gross Sales Proceeds |
| Between 130.0% and 134.99% | 0.75% of Gross Sales Proceeds |
| Between 135.0% and 144.99% | 1.00% of Gross Sales Proceeds |
| Above 145.0% | 1.50% of Gross Sales Proceeds |

| TERM | CLOSING STORE AGREEMENT |
|---|---|
| | On a weekly basis, the Debtors shall pay the Liquidation Consultant an amount equal to 0.75% of Gross Proceeds on account of the prior week's sales as an advance on these fees, and a reconciliation of the Incentive Fee shall be performed as part of the Final Reconciliation. The Liquidation Consultant will also earn the FF&E Commission equal to 15.0% of the gross sales of Offered FF&E, net of sales taxes. *See* Closing Store Agreement, Section 4(B), (D). |
| **Commission to Debtors for Sale of Additional Consultant Goods** | The Debtors are entitled to an Additional Goods Fee equal to 7.5% of all non-Debtor goods sold during the Closing Sale at the Closing Stores. *See* Closing Store Agreement, Section 7(B). |
| **Insurance; Risk of Loss** | During the Sale Term, Debtors shall maintain insurance with respect to the Merchandise and comprehensive liability insurance at its own expense. The Liquidation Consultant shall not be deemed to be in possession or control of the Closing Stores or the Merchandise or assets located therein or associated therewith. Debtors shall bear all responsibility for liability claims associated with the Closing Stores and the Merchandise. *See* Closing Store Agreement, Section 8. |
| **Indemnification by Liquidation Consultant** | Liquidation Consultant shall indemnify Debtors from and against all liabilities and attorneys' fees and expenses relating to (i) Liquidation Consultant's material breach of any agreement entered into in connection with the Closing Store Agreement; (ii) any harassment, unlawful, tortious, or otherwise actionable treatment of any employees |

| TERM | CLOSING STORE AGREEMENT |
|---|---|
| | or agents of Debtors by Liquidation Consultant; (iii) any claims by any party engaged by Liquidation Consultant as an employee or independent contractor arising out of such employment or engagement; and (iv) negligence, willful misconduct, or unlawful acts of Liquidation Consultant. *See* Closing Store Agreement, Section 9(A). |
| **Indemnification by Debtors** | Debtors shall indemnify Liquidation Consultant from and against all liabilities and attorneys' fees and expenses relating to (i) Debtors' material breach of any agreement entered into in connection with the Closing Store Agreement; (ii) any claims by any party engaged by Debtors' as an employee or independent contractor arising out of such engagement; (iii) any consumer warranty or products liability claims relating to any Merchandise; and (iv) negligence, willful misconduct, or unlawful acts of Debtors. *See* Closing Store Agreement, Section 9(B). |

**C.     Assumption of the Store Closing Agreement on an Interim Basis is in the Best Interests of the Debtors**

8.      The Debtors, in conjunction with BRG, have determined that entering into the Store Closing Agreement would provide the greatest return to the Debtors' estates for the Store Assets. I believe that the terms set forth in the Store Closing Agreement are the best alternative for conducting the Closing Sales. The terms of the Store Closing Agreement are the result of arm's length bargaining, and I believe them to be the best terms available to the Debtors.

9.      I understand that the Liquidation Consultant has extensive experience in conducting liquidation sales and can oversee and assist in the management and implementation of the Closing Sales in an efficient and cost-effective manner.

10.      If the Store Closing Agreement is not assumed, I believe there will be significant harm to all stakeholders. The Debtors' estates will lose the benefit of the Liquidation Consultant's experience, judgment and guidance related to the liquidation of Merchandise and Offered FF&E.  In addition, the Debtors would need to suspend the Closing Sales, conduct a process to find a new Liquidation Consultant, and then recommence the Closing Sales.  I believe

6

that the resulting disruption and delay would lead to a material loss of value and increased administrative expense.

**E.        The Closing Sales Should be Approved on an Interim Basis**

11.        The Debtors, in consultation with BRG, have determined that the Closing Sales represent the best alternative to maximize recoveries to the Debtors' estates with respect to the Closing Stores. I understand that there are meaningful Store Assets at the Closing Stores that that will be monetized most efficiently and quickly through an orderly process conducted in consultation with an experienced liquidation firm. Further, I believe that delaying the Closing Sales will diminish the recoveries on the Store Assets for several important reasons. First, I understand that many of the Closing Stores fail to generate positive cash flow and therefore are a significant drain on liquidity. As such, I believe that the Debtors will realize an immediate benefit in terms of financial liquidity upon the sale of the Store Assets and the termination of operations at the Closing Stores. Second, I understand that allowing the Closing Sales to be officially launched be will allow the Debtors to vacate the premises of the Closing Stores more quickly, reject the applicable leases, and therefore avoid the accrual of unnecessary administrative expenses.

12.        On the other hand, any disruption or delays of the Closing Sales, including delay in the Debtors' authorization to assume the Closing Store Agreement, will cause the Debtors' estates significant and irreparable harm. The Debtors are in a difficult financial situation; they need to maximize sources of liquidity and minimize expenses as much as possible and as quickly as possible. The Closing Sales will help the Debtors with both of these goals. With the cooperation of their employees and the services of the Liquidation Consultant, the Debtors will be able to liquidate inventory and assets at the Closing Stores so that they can exit the Closing

Stores quickly and efficiently, thereby monetizing certain assets and eliminating certain

expenses. Any delay in the Closing Sales will cause the Debtors to incur additional

administrative expenses by prolonging the liquidation process and delay their exit from the

underperforming and unprofitable store locations.

**F.     The Store Closing Bonus Program**

13.     To ensure maximum success of the Closing Sales, the Debtors are seeking

authorization to implement the Bonus Program and fulfill their obligations thereunder to Bonus

Program participants, all of whom are non-insiders.  Specifically, the Debtors are requesting the

authority to, at their discretion, provide additional compensation in the form of bonuses to each

employee at each Closing Store (such employees, the "Closing Sales Team"), calculated by the

Debtors in consultation with the Liquidation Consultant (collectively, all bonuses to the Closing

Sales Team, the "Closing Bonuses"), provided, however, that each member of the Closing Sales

Team is only eligible for a bonus if he or she remains employed by the Debtors through the

termination of the Closing Sale at the respective Closing Store and does not resign or is

terminated for cause.  The Debtors are requesting authority to determine the individual amounts

of each Closing Bonus in consultation with the Liquidation Consultant, except that the total

aggregate cost of the Bonus Program, in any event, will not exceed 10.0% of the Debtors' gross

annual payroll for the Closing Stores.  For the avoidance of doubt, the Debtors are not seeking

authority to pay any Closing Bonuses to insiders of the Debtors.

14.     I believe that allowing the Closing Sales Teams to earn Closing Bonuses will

provide much-needed motivation for key personnel who are critical to the success of the Closing

Sales. I believe that, absent the Bonus Program, the Debtors are likely to lose such key personnel

at the Closing Stores at a time when the Debtors have few resources available to search for new

employees, which would unnecessarily delay or frustrate the Closing Sales and hamstring the Debtors' efforts to maximize value.

15.     On balance, I believe that the costs to the Debtors of the Closing Bonuses are far outweighed by the benefits such Closing Bonuses are likely to produce in the form of maximum productivity and cooperation during the Closing Sales, resulting in higher revenues in a shorter timeframe.

**G.     Proposed Postpetition Financing, Cash Flow Projections, and Sale Timeline**

16.     In consultation with their advisors, the Debtors have entered into certain post-petition DIP financing with their prepetition senior secured lenders (the "DIP Facility").  I understand that the financing provided by the DIP Facility will serve primarily as a bridge to the Debtors' proposed sale of their business operations.

17.     The DIP Credit Agreement imposes an expeditious, but sustainable, timeline for the proposed sale of the Debtors' business operations, which is driven primarily by the risk of deteriorating asset value attendant to any delays in the sale of the Debtors' business, as well as other milestones in the Debtors' chapter 11 cases. Specifically, in order to satisfy the requirements set forth in the DIP Facility, an interim order granting the relief sought in the Motion must be entered by August 3, 2018. Therefore, I believe that any delay in the approval of the Closing Sales could put pressure on the Debtors' ability to remain in compliance with its DIP financing covenants.

18.     Accordingly, for the reasons set forth herein and in the Motion, on behalf of the Debtors, I respectfully submit that the Debtors should be authorized to assume the Closing Store Agreement and to continue or launch their Closing Sales across the Closing Stores to significantly reduce their expenses and preserve value for their estates and other stakeholders.

19.     In conclusion, for the reasons stated herein and in the Motion, I respectfully request, on behalf of the Debtors, that the Motion be granted in its entirety, together with such other and further relief as the Court deems just and proper.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 2, 2018                    */s/ Stephen Coulombe*
                                         Stephen Coulombe

# **EXHIBIT A**

## **STORE CLOSING AGREEMENT**

[*See attached*]

102894878.3

  

August 1, 2018

To:    Brookstone Company, Inc.
       One Innovation Way
       Merrimack, NH 03054

From:  Gordon Brothers Retail Partners, LLC
       800 Boylston Street, 27th Floor
       Boston, MA 02199

       -and-

       Hilco Merchant Resources, LLC
       5 Revere Drive, Suite 206
       Northbrook, Illinois 60062

Re:    Store Closing Program – Consulting Agreement

Ladies and Gentlemen:

This letter shall serve as the agreement between a contractual joint venture comprised of Gordon Brothers Retail Partners, LLC and Hilco Merchant Resources, LLC (together, the "Consultant") and Brookstone Company, Inc. and its affiliates (together, the "Merchant") pursuant to which Consultant shall serve as the exclusive consultant to Merchant to conduct a "store closing" and other mutually agreed upon themed sale ("Sale") at Merchant's non-Airport retail stores identified on <u>Exhibit A</u> attached hereto (each a "Store" and collectively the "Stores"), subject to the terms and conditions set forth herein.

1.    **<u>RETENTION</u>**
(A)    Merchant hereby retains Consultant as its exclusive, independent consultant to conduct the Sale at the Stores during the Sale Term, and in connection therewith, Consultant shall, throughout the Sale Term:

      (i)    Recommend appropriate discounting to effectively sell all of Merchant's goods located at the Stores as of the Sale Commencement Date or thereafter delivered thereto as may be mutually agreed by the parties in accordance with a "store closing" and other mutually agreed upon themed sale, and recommend appropriate point-of-purchase, point-of-sale, and other internal and external advertising in connection therewith.

(ii)    Provide qualified supervision to oversee the conduct of the Sale.

(iii)   Maintain focused and constant communication with Merchant's Store Operations team to coordinate and keep them abreast of strategy and timing and to properly effect Store-level communication by Merchant's employees to customers and others about the Sale.

(iv)   Establish and monitor accounting functions for the Sale, including evaluation of sales of Merchant's goods located at the Stores by category, sales reporting and expense monitoring.

(v)    Recommend loss prevention strategies.

(vi)   Coordinate with Merchant so that the operation of the Stores is being properly maintained including ongoing customer service and housekeeping activities; and

(vii)  Recommend appropriate staffing levels for the Stores and appropriate bonus and/or incentive programs (to be funded by Merchant) for Store employees.

## 2.    SALE TERM; VACATING STORES

(A)    The term "Sale Term" with respect to each respective Store shall commence on or about the date identified on Exhibit B ("Sale Commencement Date") and shall end on the date identified on Exhibit B ("Sale Termination Date"); provided however, that Consultant and Merchant may mutually agree upon an earlier or later "Sale Termination Date" with respect to any one or more Stores (on a Store-by-Store basis).

(B)    Upon the conclusion of the Sale Term at each Store, Consultant shall leave such Store in broom clean condition, subject to Consultant's right pursuant to Section 6 below to abandon in a neat and orderly manner all unsold Offered FF&E and all Retained FF&E.

(C)    From and after the Sale Commencement Date, Merchant and Consultant may mutually agree upon the terms of a global transaction (an "Alternative Transaction") that affects the Sale and Stores contemplated hereunder and encompasses Merchant's other assets not subject to this Agreement (including, without limitation, the Airport retail stores, intellectual property, accounts receivable, owned and leased real property, executory contracts, chapter 5 causes of action, and/or other miscellaneous assets), and the definitive agreement executed by the parties regarding such Alternative Transaction may, *inter alia*, provide for alternative disposition of the Merchandise and Owned FF&E hereunder and corresponding changes to the Sale Term, Consultant Controlled Expenses, Incentive Fee, FF&E Commission, and/or Additional Goods Fee, subject in all respects to approval of such agreement by the Bankruptcy Court.

## 3.    EXPENSES

(A)    All expenses incident to the conduct of the Sale and the operation of the Stores during the Sale Term (including without limitation all Consultant Controlled Expenses and all other store-



level and corporate expenses associated with the Sale) shall be borne by Merchant; except solely for any of the specifically enumerated "Consultant Controlled Expenses" that exceed the aggregate budgeted amount (as provided in Section 3(B) below) for such Consultant Controlled Expenses.

(B)    Attached hereto as <u>Exhibit B</u> is an expense budget for the "Consultant Controlled Expenses." Consultant will advance funds for the Consultant's Controlled Expenses, and Merchant shall reimburse Consultant therefor (up to the aggregate budgeted amount) in connection with each weekly reconciliation contemplated by Section 5(B) upon presentation of reasonable documentation for such actually-incurred expenses. The parties may from time to time mutually agree in writing to increase the budget of Consultant Controlled Expenses based upon circumstances of the Sale.

## 4.    CONSULTANT COMPENSATION

(A)    As used herein, the following terms shall have the following meanings:
    (i)    "Gross Proceeds" shall mean the gross proceeds of all sales of Merchandise during the Sale Term, net only of sales taxes.
    (ii)    "Merchandise" shall mean the goods actually sold in the Stores during the Sale Term, the aggregate amount of which shall be determined using the gross rings inventory taking method.
    (ii)    "Aggregate Recovery Percentage" shall mean the Gross Proceeds divided by the aggregate Cost Value of all of the Merchandise.
    (iv)    "Cost Value" with respect to each item of Merchandise sold shall be determined by reference to the per unit cost in Merchant's books and records, maintained in the ordinary course consistent with historic practices.

(B)    In consideration of its services hereunder, Merchant shall pay Consultant an "Incentive Fee" equal to as one of the following (e.g., back to first dollar):

| Aggregate Recovery Percentage | Incentive Fee |
|---|---|
| Below 120.0% | No Incentive Fee |
| Between 120.0% and 129.99% | 0.50% of Gross Proceeds |
| Between 130.0 to 134.99% | 0.75% of Gross Proceeds |
| Between 135.0 to 144.99% | 1.00% of Gross Proceeds |
| Above 145.0% | 1.50% of Gross Proceeds |

(C)    The parties acknowledge that the fee has been established based upon Consultant's reliance that Merchant's personnel (including district, regional, and store managers, and Store-level personnel) will provide Consultant with reasonable and good faith cooperation and support throughout the Sale Term in connection with the conduct of the Sale.

(D)    On a weekly basis in connection with each weekly reconciliation contemplated by Section 5(B) below, Merchant shall pay Consultant an amount equal to 0.75% of Gross Proceeds



1 9 0 3

on account of the prior week's sales as an advance on account of the fees payable hereunder. The parties shall determine the definitive Gross Proceeds connection with the Final Reconciliation; and thus at such time the definitive Incentive Fee also will be determined in connection with the Final Reconciliation. Immediately thereafter (and as part of the Final Reconciliation), Merchant shall pay Consultant any additional amount owed on account of the Incentive Fee.

## 5.    CONDUCT OF SALE; OTHER SALE MATTERS

(A)    Merchant shall have control over the personnel in the Stores and shall handle the cash, debit and charge card payments for all Merchandise in accordance with Merchant's normal cash management procedures, subject to Consultant's right to audit any such items. Merchant (and not Consultant) shall be responsible for ensuring that the Sale, and the operation of the Stores (before, during, and after the Sale Term) shall be conducted in compliance with all applicable laws and regulations.

(B)    The parties will meet on each Wednesday during the Sale Term to review any Sale matters reasonably requested by either party; and all amounts payable or reimbursable to Consultant for the prior week (or the partial week in the case of the first and last weeks) shall be reconciled and paid immediately thereafter. No later than twenty (20) days following the end of the Sale, the parties shall complete a final reconciliation and settlement of all amounts contemplated by this Agreement ("Final Reconciliation"). From time to time upon request, each party shall prepare and deliver to the other party such other reports as either party may reasonably request. Each party to this Agreement shall, at all times during the Sale Term and during the one (1) year period thereafter, provide the other with access to all information, books and records relating to the Sale and to this Agreement. All records and reports shall be made available to Consultant and Merchant during regular business hours upon reasonable notice.

(C)    Merchant shall be solely responsible for the computing, collecting, holding, reporting, and paying all sales taxes associated with the sale of Merchandise during the Sale Term, and Consultant shall have absolutely no responsibilities or liabilities therefor.

(D)    Although Consultant shall undertake its obligations under this Agreement in a manner designed to achieve the desired results of the Sale and to maximize the recovery to the Merchant, Merchant expressly acknowledges that Consultant is not guaranteeing the results of the Sale.

(E)    Merchant acknowledges that (i) the parties are not conducting an inventory of Merchant's goods located at the Stores; (ii) Consultant has made no independent assessment of the beginning levels of such goods; and (iii) Consultant shall not bear any liability for shrink or other loss to Merchant's goods located at the Stores (including without limitation Merchandise).

(F)    All sales of Merchandise in the Stores during the Sale shall be made in the name, and on behalf, of Merchant.

(G)    All sales of Merchandise in the Stores during the Sale Term shall be "final sales" and "as is," and all advertisements and sales receipts will reflect the same.



(H)    Consultant shall, during the Sale Term at the Stores, cooperate with Merchant in respect of Merchant's procedures governing returns of goods otherwise sold by Merchant (e.g., not in the Stores during the Sale Term).

(I)    Merchant hereby permits the Sale to be, and shall ensure that the Sale otherwise may be, advertised as a "store closing" or other mutually agreed upon handle throughout the term of the Sale.

(J)    Intentionally Omitted.

**6.    FF&E**
(A)    Promptly following the Sale Commencement Date, Merchant shall inform Consultant of those items of furniture, fixtures, and equipment located at the Stores which are not to be sold (because Merchant does not have the right to sell such items, because Merchant wishes to retain such items for itself, or otherwise) (collectively, "Retained FF&E").

(B)    With respect to all furniture, fixtures, and equipment located at the Stores as of the Sale Commencement Date which is not Retained FF&E (collectively the "Offered FF&E"), Consultant shall have the right to sell such Offered FF&E during the Sale Term on a commission basis equal to fifteen percent (15.0%) of the gross sales of Offered FF&E, net only of sales tax ("FF&E Commission").

(C)    Merchant shall reimburse Consultant for its reasonable sale expenses associated with the sale of the Offered FF&E, not to exceed the amount shown on an FF&E expense budget (which shall be in addition to the Consultant Controlled Expenses budget), to be mutually and reasonably agreed to by the parties promptly after Merchant identifies/designates/distinguishes between the Offered FF&E and Retained FF&E ("FF&E Expenses").

(D)    Consultant shall have the right to abandon any unsold Offered FF&E (and all Retained FF&E) at the Stores at the conclusion of the Sale Term without liability to Merchant or any third party.

**7.    ADDITIONAL CONSULTANT GOODS**

(A)    In connection with the Sale, Consultant may supplement the Sale with additional goods procured by Consultant on its credit which are of like kind, and no lesser quality to the other Merchandise in the Sale ("Additional Consultant Goods").  Sales of Additional Consultant Goods shall be run through Merchant's cash register systems; provided, however, that Consultant shall mark the Additional Consultant Goods using either a "dummy" SKU or department number, or in such other manner so as to distinguish the sale of Additional Consultant Goods from the sale of Merchandise.  Consultant and Merchant shall also cooperate so as to ensure that the Additional Consultant Goods are marked in such a way that a reasonable consumer could identify the Additional Consultant Goods as non-Merchant goods.  Additionally, Consultant shall



provide signage in the Stores notifying customers that the Additional Consultant Goods have been included in the Sale. Upon the sale of any Additional Consultant Goods to a customer, any sales taxes associated therewith will be collected from the consumer at the point of sale and thereafter remitted by Merchant to the applicable authorities.

(B)    Consultant shall pay to Merchant an amount equal to seven and one half percent (7.5%) of the gross proceeds of Additional Consultant Goods actually sold in the Sale (the "Additional Goods Fee"). Consultant shall pay Merchant its Additional Goods Fee in connection with each weekly sale reconciliation with respect to sales of Additional Consultant Goods sold during each then prior week (or at such other mutually agreed upon time) from the proceeds thereof.

(C)    Consultant and Merchant intend that the transactions relating to the Additional Consultant Goods are, and shall be construed as, a true consignment from Consultant to Merchant in all respects and not a consignment for security purposes. At all times and for all purposes the Additional Consultant Goods and their proceeds shall be the exclusive property of Consultant, and no other person or entity shall have any claim against any of the Additional Consultant Goods or their proceeds. The Additional Consultant Goods shall at all times remain subject to the exclusive control of Consultant.

(D)    Merchant shall, at Consultant's sole cost and expense, insure the Additional Consultant Goods and, if required, promptly file any proofs of loss with regard to same with Merchant's insurers. Consultant shall be responsible for payment of any deductible (but only in relation to the Additional Consultant Goods) under any such insurance in the event of any casualty affecting the Additional Consultant Goods.

(E)    Merchant acknowledges that the Additional Consultant Goods shall be consigned to Merchant as a true consignment under Article 9 of the Uniform Commercial Code (the "UCC"). Consultant is hereby granted a first priority security interest in and lien upon (i) the Additional Consultant Goods and (ii) the Additional Consultant Goods proceeds, and Consultant is hereby authorized to file UCC financing statements and provide notifications to any prior secured parties.

8.    **INSURANCE; RISK OF LOSS**
During the Sale Term: (a) Merchant shall maintain (at its expense) insurance with respect to the Merchandise in amounts and on such terms and conditions as are consistent with Merchant's ordinary course operations, and (b) each of Merchant and Consultant shall maintain (at each party's respective expense) comprehensive liability and workers' compensation insurance covering injuries to persons and property in or in connection with the Stores, in such amounts as are reasonable and consistent with its ordinary practices, for bodily injury, personal injury and/or property damage. Each party shall be added as an additional insured on all such insurance of the other party, all such insurance shall provide that it shall be non-cancelable and non-changeable except after 30 days' prior written notice to the other party, and each party shall provide the other with certificates of all such insurance prior to the commencement of the Sale.



Notwithstanding any other provision of this Agreement, Merchant and Consultant agree that Consultant shall not be deemed to be in possession or control of the Stores, or the Merchandise or other assets located therein or associated therewith, or of Merchant's employees located at the Stores; and Consultant does not assume any of Merchant's obligations or liabilities with respect thereto.

Notwithstanding any other provision of this Agreement, Merchant and Consultant agree that Merchant shall bear all responsibility for liability claims (product liability and otherwise) of customers, employees and other persons arising from events occurring at the Stores, and Merchandise sold in the Stores, before, during and after the Sale Term (except (i) any liability arising out of Consultant's indemnification obligations set forth below, and (ii) Consultant shall be responsible for all workers' compensation claims related to its employees, agents and representatives).

## 9.    INDEMNIFICATION

(A)    Consultant shall indemnify and hold Merchant and its affiliates, and their respective officers, directors, employees, consultants, and independent contractors (collectively, "Merchant Indemnified Parties") harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to:

    (i)      Consultant's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith;

    (ii)     any harassment or any other unlawful, tortious or otherwise actionable treatment of any employees or agents of Merchant by Consultant, its affiliates or their respective officers, directors, employees, agents, independent contractors or representatives (including without limitation any supervisors);

    (iii)    any claims by any party engaged by Consultant as an employee or independent contractor (including without limitation any non-Merchant employee supervisor) arising out of such employment or engagement; or

    (iv)    the negligence, willful misconduct or unlawful acts of Consultant, its affiliates or their respective officers, directors, employees, Consultants, independent contractors or representatives.

(B)    Merchant shall indemnify and hold Consultant, its affiliates and their respective officers, directors, employees, consultants, and independent contractors (collectively, "Consultant Indemnified Parties") harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to:

    (i)      Merchant's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith;



(ii)     any claims by any party engaged by Merchant as an employee or independent contractor arising out of such engagement;

(iii)    any consumer warranty or products liability claims relating to any Merchandise; and/or

(iv)    the negligence, willful misconduct or unlawful acts of Merchant, its affiliates or their respective officers, directors, employees, agents, independent contractors or representatives.

## 10.    <u>MISCELLANEOUS</u>

(A) In the event Merchant becomes subject to a chapter 11 bankruptcy case in any United States Bankruptcy Court (the "Bankruptcy Court"), Merchant shall promptly upon seek to have this Agreement, and the transactions contemplated by this Agreement, approved by the Bankruptcy Court pursuant to Sections 363 and 365 of the United States Bankruptcy Code and an order acceptable to both Merchant and Consultant, which order shall specifically provide, among other things, that: (i) Merchant assumes this Agreement and the transactions contemplated by this Agreement, including (without limitation) with respect to the payment of all fees and reimbursement of expenses, (ii) authorizing the Sale without the necessity of complying with federal or provincial rules, laws, ordinances and regulations, including, without limitation, permitting and licensing requirements, that would otherwise govern the Sale; (iii) authorizing the Sale notwithstanding restrictions in leases, occupancy agreements or other contracts that purport to restrict the Sale or the necessity of obtaining any third party consents; and (iv) take all further actions as are necessary or appropriate to carry out the terms and conditions of this Agreement.

(B) Consultant hereby discloses, and Merchant hereby acknowledges, that Gordon Brothers Retail Partners, LLC's parent company, Gordon Brothers Group, LLC ("GBG"), owns a minority interest in, has certain contractual relationships with, and from time to time may provide contractual services to, Gordon Brothers Finance Company ("Finance Company") in the ordinary course of its business.  Finance Company is a secured lender to Merchant. Merchant hereby waives any actual or perceived conflict resulting from any of the foregoing.

(C) This Agreement constitutes the entire agreement between the parties with respect to the matters contemplated hereby and supersedes and cancels all prior agreements, including, but not limited to, all proposals, letters of intent or representations, written or oral, with respect thereto. This Agreement may not be modified except in a written instrument executed by each of the parties hereto.  No consent or waiver by any party, express or implied, to or of any breach or default by the other in the performance of its obligations hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance by such other party of the same or any other obligation of such party.  The failure on the part of any party to complain of any act or failure to act by the other party or to declare the other party in default, irrespective of how long such failure continues, shall not constitute a waiver by such party of its rights hereunder.  Nothing contained in this Agreement shall be deemed to create any relationship between Merchant and Consultant other than that of Consultant as an independent contractor of Merchant, and it is stipulated that the parties are not partners or joint venturers in



any way.  Unless expressly set forth herein to the contrary, to the extent that either party's consent is required/requested hereunder, such consent shall not be unreasonably withheld or delayed.  This Agreement shall inure to the benefit of and be binding upon the parties and their respective successors and assigns; provided however, that this Agreement may not be assigned by either party without the prior written consent of the other.  Written notices contemplated by this Agreement shall be sent by email (i) if to Merchant c/o the person indicated below at the address specified above attn: Legal Department and legaldepartment@brookstone.com; and (ii) if to Consultant c/o Mackenzie Shea at mshea@gordonbrothers.com and Ian Fredericks at ifredericks@hilcoglobal.com



Very truly yours,
**Gordon Brothers Retail Partners, LLC**

By: _____

Print Name and Title:
*Robert Grosskopf*
*co President*
*Gordon Brothers Retail*

-and-

**Hilco Merchant Resources, LLC**

By: _____

Print Name and Title:  Ian S. Fredericks, EVP


Agreed and Accepted:
**Brookstone Company, Inc., on behalf of itself**
**and its affiliates**

By: _____

Print Name and Title:  Greg Tribou, VP-CFO

Address:

Exhibits:

A    Stores
B    Budget of Consultant Controlled Expenses



Exhibit A

## Brookstone
### Store List

| Store No. | Store | Address | Address | City | State | Zip Code | Square Ft |
|---|---|---|---|---|---|---|---|
| 10 | King of Prussia | 160 N Gulph Road | Space 2909 | King Of Prussia | PA | 19406 | 2,028 |
| 11 | The Mall in Columbia | 10300 Little Patuxent Pkwy | Space 1740 | Columbia | MD | 21044 | 3,400 |
| 16 | Fair Oaks Mall | 11750 Fair Oaks Mall | Space #L-109 | Fairfax | VA | 22033 | 3,507 |
| 21 | The Mall at Short Hills | 1200 Morris Turnpike | Suite #D115 | Short Hills | NJ | 07078 | 3,500 |
| 24 | NorthPark Center | 915 Northpark Center | | Dallas | TX | 75225 | 3,810 |
| 25 | South Coast Plaza | 3333 Bristol Street | Suite 1870 | Costa Mesa | CA | 92626 | 4,655 |
| 26 | Beverly Center | 8500 Beverly Blvd. | Space #694 | Los Angeles | CA | 90048 | 2,800 |
| 27 | Paramus Park | 1045 Paramus Park | | Paramus | NJ | 07652 | 3,371 |
| 28 | Crystal Mall | 850 Hartford Turnpike | | Waterford | CT | 06385 | 3,680 |
| 36 | Crabtree Valley Mall | 4325 Glenwood Ave | Space #2118 | Raleigh | NC | 27612 | 4,463 |
| 45 | Del Amo Fashion Center | 21712 Hawthorne Blvd | Space #219B | Torrance | CA | 90503 | 3,043 |
| 55 | The Galleria at Fort Lauderdale | 2490 East Sunrise Blvd. | | Fort Lauderdale | FL | 33304 | 3,515 |
| 58 | The Shops at LaCantera | 15900 La Cantera Pkwy | Space # 1430 | San Antonio | TX | 78256 | 3,000 |
| 60 | North County Fair | 200 East Via Rancho Parkway | Suite 189 | Escondido | CA | 92025 | 3,405 |
| 65 | Houston Galleria | 5085 Westheimer Blvd | Space 2514 | Houston | TX | 77056 | 2,497 |
| 68 | Pheasant Lane Mall | 310 Daniel Webster Highway | | Nashua | NH | 03060 | 3,408 |
| 69 | Valley Fair Mall | 2855 Stevens Creek Blvd. | Space #A133 | Santa Clara | CA | 95050 | 2,813 |
| 70 | Westfield Palm Desert | 72840 Highway 111 | Space V417 | Palm Desert | CA | 92260 | 3,075 |
| 72 | Stoneridge Mall | 1116 Stoneridge Mall Road | Space #B-108 | Pleasanton | CA | 94566 | 3,468 |
| 74 | Town Center at Boca Raton | 6000 Glades Road | Suite 1092 | Boca Raton | FL | 33431 | 3,380 |
| 80 | Princeton Marketfair | 3535 US Highway 1 | Space 428 | Princeton | NJ | 08540 | 3,200 |
| 86 | Stonestown Galleria | 3251 20th Ave | Space #151 | San Francisco | CA | 94132 | 4,045 |
| 87 | Settler's Green Outlet | Route 16 & 302 | | North Conway | NH | 03860 | 3,369 |
| 94 | The Garden at Palm Beach | 3101 PGA Blvd. | Space #E125 | Palm Beach Gardens | FL | 33410 | 3,309 |
| 97 | Santa Anita | 400 S. Baldwin Avenue | | Arcadia | CA | 91006 | 3,426 |
| 98 | Maine Mall | 364 Maine Mall Road | Box 218 | South Portland | ME | 04106 | 3,452 |
| 105 | Cherry Creek | 3000 East 1st Ave | #132 | Denver | CO | 80206 | 3,422 |
| 107 | Towson Town Center | 825 Dulaney Valley Road | Space 3145 | Towson | MD | 21204 | 3,012 |
| 108 | Menlo Park Mall | 55 Parsonage Road | Space #224S Unit/4S6 | Edison | NJ | 08837 | 3,564 |
| 110 | Mall Of America | 162 West Market Street | S105 | Bloomington | MN | 55425 | 2,960 |
| 111 | Burlington Mall | 75 Middlesex Turnpike | Space K-4 | Burlington | MA | 01803 | 3,489 |
| 113 | South Shore Plaza | 250 Granite Street | | Braintree | MA | 02184 | 4,457 |
| 116 | Tysons Corner Center | 7967 Tysons Corner Center | | McLean | VA | 22102 | 4,324 |
| 123 | Brea Mall | 2015 Brea Mall | | Brea | CA | 92821 | 2,902 |
| 136 | Hillsdale Mall | 320 Hillsdale Mall | | San Mateo | CA | 94403 | 2,790 |
| 140 | Sun Valley Mall | 424 Sun Valley Mall Rd. | Space #A-216 | Concord | CA | 94520 | 3,955 |
| 144 | Walt Whitman Mall | 160 Walt Whitman Rd | Suite #1059 | Huntington Station | NY | 11746 | 2,938 |
| 148 | Natick Mall | 1245 Worcester Street | Space #1044 | Natick | MA | 01760 | 3,662 |
| 149 | The Avenues | 10300 Southside Boulevard | Suite #1290 | Jacksonville | FL | 32256 | 3,062 |
| 160 | West Town Mall | 7600 Kingston Pike | #1492 | Knoxville | TN | 37919 | 3,646 |
| 162 | The Westchester | 125 Westchester Avenue | Space #2320 | White Plains | NY | 10601 | 2,934 |
| 163 | Roosevelt Field Mall | 630 Old Country Rd. | Space 1038 | Garden City | NY | 11530 | 4,236 |
| 166 | Christiana Mall | 747 Christiana Mall Road | Space #613 | Newark | DE | 19702 | 3,075 |
| 167 | Circle Centre | 49 W. Maryland Street | Space #D-12 | Indianapolis | IN | 46204 | 3,200 |
| 169 | Seminole Towne Center | 228 Town Center Circle | | Sanford | FL | 32771 | 3,657 |
| 171 | Arden Fair Mall | 1689 Arden Way | Suite 1338 | Sacramento | CA | 95815 | 3,186 |
| 173 | Aventura Mall | 19575 Biscayne Blvd. | Space #519 | North Miami | FL | 33180 | 2,874 |
| 174 | Lenox Square | 3393 Peachtree Rd NE | Space #4046E | Atlanta | GA | 30326 | 2,993 |
| 180 | Dallas Galleria | 13350 N. Dallas Pkwy | Space 1140 | Dallas | TX | 75240 | 3,150 |
| 181 | Park Meadows Mall | 8405 Park Meadows Center Dr | Suite 1460 | Lone Tree | CO | 80124 | 3,618 |
| 182 | The Florida Mall | 8001 So. Orange Blossom Trail | #1013-B | Orlando | FL | 32809 | 3,003 |
| 184 | Smith Haven Mall | 145 Smith Haven Mall | | Lake Grove | NY | 11755 | 4,292 |
| 185 | Penn Square Mall | 1901 Northwest Expressway | Space 1032 | Oklahoma City | OK | 73118 | 3,610 |
| 187 | Hanes Mall | 3320 Silas Creek Pkwy | Space D784 | Winston-Salem | NC | 27103 | 4,500 |
| 214 | West County Center | 42 West Country Center | Space 1150 | Des Peres | MO | 63131 | 3,142 |
| 216 | Fashion Show | 3200 Las Vegas Blvd South | Space 1860 | Las Vegas | NV | 89109 | 3,157 |
| 221 | Somerset Collection | 2801 W. Big Beaver Road | Space G243 | Troy | MI | 48084 | 3,000 |
| 223 | Macarthur Center | 300 East Monticello Avenue | Suite 224 | Norfolk | VA | 23510 | 3,525 |
| 225 | Dulles Town Center | 21100 Dulles Town Circle | Suite B214 | Dulles | VA | 20166 | 3,122 |
| 227 | Towne East Square | 7700 East Kellogg | #835 | Wichita | KS | 67207 | 3,950 |
| 233 | Plaza Las Americas | Brookstone Local Number 30D 525 FDR Avenue | | San Juan | PR | 00918 | 4,390 |
| 234 | Lakeside Mall | 3301 Veterans Blvd | Suite 10 | Metairie | LA | 70002 | 4,500 |
| 238 | 30 Rock Plaza | 30 Rockefeller Plaza | Concourse Level, Space 1 | New York | NY | 10112 | 2,011 |
| 244 | Stonebriar Centre | 2601 Preston Road | Space 1162 | Frisco | TX | 75034 | 3,610 |
| 245 | Westfield Galleria at Roseville | 1151 Galleria Blvd | Suite 115 | Roseville | CA | 95678 | 3,339 |
| 248 | Woodland Mall | 3195 28th St. SE | Space E109 | Grand Rapids | MI | 49512 | 2,171 |
| 249 | Third Street Promenade | 1313 Third Street Promenade | | Santa Monica | CA | 90401 | 4,107 |
| 254 | Danbury Fair Mall | 7 Backus Avenue | Space #D-203 | Danbury | CT | 06810 | 3,394 |
| 255 | Coronado Center | 6600 Menaul Blvd NE | Suite 305 | Albuquerque | NM | 87110 | 4,275 |
| 258 | Rockaway Townsquare | Rte 80 & Mt. Hope Ave. | #1107 | Rockaway | NJ | 07866 | 2,800 |
| 260 | Fashion Valley Center | 7007 Friars Road | Suite 316 | San Diego | CA | 92108 | 4,650 |
| 261 | Palisades Center | 1452 Palisades Ctr. Dr. | Space B103 | West Nyack | NY | 10994 | 3,500 |
| 262 | Mall Of Louisiana | 6401 Bluebonnet Blvd | Suite 1034 | Baton Rouge | LA | 70836 | 3,438 |
| 265 | Oak Park Mall | 11469 W 95th Street | Space #60 | Overland Park | KS | 66214 | 3,250 |
| 266 | Twelve Oaks Mall | 27402 Novi Road | Space #207 | Novi | MI | 48377 | 3,177 |
| 270 | Irvine Spectrum | 609 Spectrum Center Drive | Suite 912 | Irvine | CA | 92618 | 3,016 |
| 275 | Santa Rosa Plaza | 1027 Santa Rosa Plaza | | Santa Rosa | CA | 95401 | 3,509 |

Exhibit A

## Brookstone
### Store List

| Store No. | Store | Address | Address | City | State | Zip Code | Square Ft |
|---|---|---|---|---|---|---|---|
| 287 | International Plaza | 2223 North West Shore Blvd. | Space #173 | Tampa | FL | 33607 | 3,318 |
| 288 | Shops At Willow Bend | 6121 West Park Blvd | Space D-105 | Plano | TX | 75093 | 3,551 |
| 291 | Mohegan Sun | 1 Mohegan Sun Blvd | Space C228 | Uncasville | CT | 06382 | 3,661 |
| 313 | Westfield Oakridge Mall | 925 Blossom Hill Road | Suite 1174 | San Jose | CA | 95123 | 3,157 |
| 314 | Scottsdale Fashion Square | 7014-S90 East Camelback Road | Suite 0557 | Scottsdale | AZ | 85251 | 2,967 |
| 320 | Coconut Point | 23150 Fashion Drive | Suite 105 | Estero | FL | 33928 | 3,500 |
| 327 | Parkway Place | 2801 Memorial Pkwy South | Space 125 | Huntsville | AL | 35801 | 4,958 |
| 330 | Southdale Center | 1840 Southdale Center | | Edina | MN | 55435 | 3,388 |
| 332 | Victoria Gardens | 12534 South Main Street | Space 1740 | Rancho Cucamonga | CA | 91739 | 3,122 |
| 333 | Treasure Coast Square | 3266 NW Federal Highway | Space 3266A | Jensen Beach | FL | 34954 | 3,667 |
| 338 | Branson Landing | 309 Branson Landing | | Branson | MO | 65616 | 3,550 |
| 351 | Baybrook Mall | 1132 Baybrook Mall | | Friendswood | TX | 77546 | 2,389 |
| 353 | International Market Place | 2330 Kalakaua Avenue | Space #2514 | Honolulu | HI | 96815 | 2,075 |
| 358 | The Village At Corte Madera | 1728 Redwood Highway | | Corte Madera | CA | 94925 | 2,660 |
| 364 | Fayette Mall | 3401 Nicholasville Road | Suite 110 | Lexington | KY | 40503 | 3,313 |
| 376 | Coastal Grand | 2000 Coastal Grand Circle | Space 188 | Myrtle Beach | SC | 29577 | 3,584 |
| 386 | Destin Commons | 4345 Legendary Drive | Space D-110 | Destin | FL | 32541 | 3,400 |
| 387 | Dadeland Mall | 7523 Dadeland Mall | Space 2360 | Miami | FL | 33156 | 1,801 |
| 388 | Fashion Place Mall | 6191 S State Street | Space 1485 | Murray | UT | 84107 | 2,897 |
| 389 | Tyrone Square Mall | 6939 Tyrone Square | Space 648 | St. Petersburg | FL | 33710 | 3,790 |
| 390 | Alderwood Mall | 3000 184th Street S.W. | Space 486 | Lynnwood | WA | 98037 | 4,219 |
| 393 | North East Mall | 1101 Melbourne Street | Space #3059 | Hurst | TX | 76053 | 3,348 |
| 704 | University Town Center | 140 University Town Ctr Dr. | Space # 242 | Sarasota | FL | 34243 | 2,289 |
| 727 | Ala Moana Center | 1450 Ala Moana Blvd | Space # 2011 | Honolulu | HI | 96814 | 2,424 |
| 909 | Bellevue | 133 Bellevue Square | Space 133 | Bellevue | WA | 98004 | 2,668 |
| 931 | Westfield Garden State Plaza | 1 Garden State Plaza | Space #2128 | Paramus | NJ | 07652 | 2,161 |

103

<u>**Exhibit B**</u>

**Brookstone**
**Budget of Consultant Controlled Expenses**

| | |
|---|---|
| # of Stores | 103 |
| Sale Term: | 8/3/18-9/30/18 |
| # of Days | 59 |
| # of Weeks | 8.4 |

Consultant Controlled Expenses:

| | | |
|---|---|---|
| Advertising | $ | 123,600 |
| Supervision | $ | 382,271 |
| Miscellaneous | $ | 15,000 |
| **Total Consultant Controlled Expenses** | **$** | **520,871** |

- This expense budget is based upon the above Sale Term. Any changes to the Sale Term may result in adjustments to the expense budget, which will be agreed upon by Merchant and Consultant.

- The supervision expense planned assumes that we will leverage the existing 6 district managers. Their expense is not included in this budget.