**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BROKSTONE HOLDINGS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-11780 (BLS)<br><br>(Jointly Administered)<br><br>**Related to Docket No. 2, 25, 63, 75, 185, 186, 232, 234** |

**JOINT STIPULATION OF FACTS BY AND BETWEEN THE OFFICE OF THE UNITED STATES TRUSTEE FOR REGION 3, A CONTRACTUAL JOINT VENTURE COMPRISED OF GORDON BROTHERS RETAIL PARTNERS AND HILCO MERCHANT RESOURCES, LLC IN CONNECTION WITH THE FINAL HEARING ON DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTORS TO ASSUME THE CLOSING STORE AGREEMENT, (B) AUTHORIZING AND APPROVING STORE CLOSING SALES FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, (C) AUTHORIZING THE IMPLEMENTATION OF CUSTOMARY EMPLOYEE BONUS PROGRAM AND PAYMENTS TO NONINSIDERS THEREUNDER, (D) APPROVING DISPUTE RESOLUTION PROCEDURES, AND (E) APPROVING THE DEBTORS' STORE CLOSING PLAN**

The Office of the United States Trustee for Region 3 (the "United States Trustee") and a contractual joint venture comprised of Gordon Brothers Retail Partners ("GBRP") and Hilco Merchant Resources, LLC ("HMR", and together with GBRP, the "Consultant") hereby stipulate and jointly move this Court for an Order approving the Stipulation and deeming the stipulated facts established, and hereby state and stipulate as follows:

WHEREAS, on August 3, 2018, this Court entered the *Interim Order (A) Authorizing The Debtors To Assume Closing Store Agreement; (B) Authorizing And Approving Closing Sales Free And Clear Of All Liens, Claims And Encumbrances; (C) Authorizing The Implementation*

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: Brookstone Holdings Corp. (4638), Brookstone, Inc. (2895), Brookstone Company, Inc. (3478), Brookstone Retail Puerto Rico, Inc. (5552), Brookstone International Holdings, Inc. (8382), Brookstone Purchasing, Inc. (2514), Brookstone Stores, Inc. (2513), Big Blue Audio LLC (N/A), Brookstone Holdings, Inc. (2515), and Brookstone Properties, Inc. (2517). The Debtors' corporate headquarters and the mailing address for each Debtor is One Innovation Way, Merrimack, NH 03054.

*Of Customary Employee Bonus Program And Payments To Non-Insiders Thereunder; (D) Approving Dispute Resolution Procedures; And (E) Approving The Debtors' Store Closing Plan* [Docket No. 75] (the "Interim Order").  The Interim Order deferred the United States Trustee's objection that Bankruptcy Code Section 327(a) should apply to the Consultant, and scheduled argument for the Debtors' next hearing, set for August 29, 2018 (the "Final Hearing"), and provided the United States Trustee, and the Consultant an opportunity to file simultaneous briefs on the issue by August 22, 2018.  Interim Order ¶ 34.

WHEREAS, on August 22, 2018, pursuant to the Interim Order, the Consultant and the United States Trustee filed their respective briefs.

WHEREAS, in order to avoid the time and added expense of an evidentiary hearing at the Final Hearing, the Consultant and the United States Trustee have agreed to stipulate to the following facts for purposes of the Final Hearing.

WHEREAS, to the extent the Court has questions or either of the parties wish to present further evidence, both parties reserve the rights to call and cross-examine witnesses.

NOW THEREFORE, subject to the Court's approval, the parties stipulate as follows:

**A.   Case Background.**

1. Before commencing these chapter 11 cases, Brookstone Holdings Corp. and its affiliated debtors and debtors in possession (the "Debtors") operated 137 retail stores across 40 states and Puerto Rico.  [Docket No. 2 (the "First Day Declaration"), ¶ 11].  Prior to the Petition Date (as defined below), the Debtors completed a comprehensive review of the performance of all of their retail stores to analyze, among other things, the profitability and viability of each store location and to determine the Debtors' optimal footprint.  [Docket No. 63 (the "Coulombe Declaration"), ¶ 5.]  The Debtors also engaged Berkeley Research Group, LLC ("BRG") and

GLC Advisors & Co. ("GLC") to, among other things, assist with analyses around cost reduction. *Id.*

2. Through these efforts, the Debtors developed the Store Closing Plan,[2] whereby they have planned an orderly exit from certain underperforming or unprofitable store locations in an effort to conserve resources and maximize utility. *Id.* ¶ 6. Pursuant to the Store Closing Plan, the Debtors, in consultation with BRG and GLC, determined that it was in the best interest of their estates to immediately prepare for the closure of up to 102 of the Debtors' underperforming stores plus the Debtors' liquidation center (the "Closing Stores"). *Id.* The Debtors believe that there are meaningful assets at the Closing Stores that will be monetized most efficiently and quickly through an orderly process conducted in consultation with an experienced liquidation firm. First Day Declaration ¶ 112.

3. The Debtors retained the Consultant because of its extensive expertise in conducting store closing sales, including the orderly liquidation of the inventory and certain furniture, fixtures, equipment and other assets at the respective Closing Stores, with an eye toward maximizing revenues and value for the Debtors and their creditors. Coulombe Declaration ¶ 7. The Debtors selected the Consultant to conduct the store closing Sales at the Closing Stores, and determined that engaging the Consultant was in the best interest of the Debtors and their stakeholders. *Id.* ¶ 7. The Debtors negotiated the terms and conditions of the Closing Store Agreement in good faith and at arms'-length with the Consultant. *Id.* ¶ 7.

4. On August 1, 2018, the Debtors and the Consultant executed the Closing Store Agreement (the "Closing Store Agreement") whereby the Consultant agreed to provide certain services to the Debtors in connection with the liquidation of the Closing Stores over an eight-

---

[2] As defined in Store Closing Motion (as defined below).

week period—August 3 to September 30, 2018.  Closing Store Agreement §§ 5, Exhibit A.[3]  The Debtors, with the assistance of BRG and GLC, selected the stores to liquidate, and selected September 30, 2018 as the estimated Sale termination date.  The Consultant did not provide input regarding the stores selected by the Debtors for closure.  The Consultant did recommend a sale termination date in mid-October, 2018, however, the Debtors required that the Sale termination date be set as September 30, 2018.

5. On August 2, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (as amended, the "Bankruptcy Code") with the Bankruptcy Court for the District of Delaware (the "Court").

6. On the Petition Date, the Debtors filed the *Debtors' Motion For Interim And Final Orders (A) Authorizing The Debtors To Assume The Closing Store Agreement, (B) Authorizing And Approving Store Closing Sales Free And Clear Of All Liens, Claims And Encumbrances, (C) Authorizing The Implementation Of Customary Employee Bonus Program And Payments To Noninsiders Thereunder, (D) Approving Dispute Resolution Procedures, And (E) Approving The Debtors' Store Closing Plan* (the "Store Closing Motion").

7. The Debtors determined, in their business judgment, that assumption of the Closing Store Agreement was reasonable and would maximize the value of the Debtors' estates. Coulombe Declaration ¶ 11.  The Consultant is not aware of any other arrangements considered by the Debtors.

8. Under the Closing Store Agreement, the Consultant's duties and obligations include:

> (i) Recommend appropriate discounting to effectively sell all of Merchant's goods located at the Stores as of the Sale

---

[3] A copy of the Closing Store Agreement is attached hereto as **Exhibit A**.

> Commencement Date or thereafter delivered thereto as may be mutually agreed by the parties in accordance with a "store closing" and other mutually agreed upon themed sale, and recommend appropriate point-of-purchase, point-of-sale, and other internal and external advertising in connection therewith.
>
> (ii) Provide qualified supervision to oversee the conduct of the Sale.
>
> (iii) Maintain focused and constant communication with Merchant's Store Operations team to coordinate and keep them abreast of strategy and timing and to properly effect Store-level communication by Merchant's employees to customers and others about the Sale.
>
> (iv) Establish and monitor accounting functions for the Sale, including evaluation of sales of Merchant's goods located at the Stores by category, sales reporting and expense monitoring.
>
> (v) Recommend loss prevention strategies.
>
> (vi) Coordinate with Merchant so that the operation of the Stores is being properly maintained including ongoing customer service and housekeeping activities; and
>
> (vii) Recommend appropriate staffing levels for the Stores and appropriate bonus and/or incentive programs (to be funded by Merchant) for Store employees.

Closing Store Agreement §§ 1(A)(i) to (vii).

9. In exchange for the Consultant's services under the Store Closing Agreement, the Debtors agreed to pay the Consultant a sliding "Incentive Fee" from no Incentive Fee to 1.50 percent, which is tied to merchandise sales and the Aggregate Recovery Percentage. *See* Closing Store Agreement § 4(B). The Consultant will be reimbursed for controlled expenses ("Consultant Controlled Expenses") upon presentation of reasonable documentation for expenses actually incurred up to $520,871 (or such amount as mutually agreed by Consultant and Debtors). *Id.* § 3(B) & Exhibit B. The Consultant will also receive a separate 15% commission for selling furnishings, trade fixtures, and equipment, which the Debtors has not informed the Consultant that the Debtors wish to retain ("Retained FF&E"). Any furniture, fixtures, and

equipment not identified as Retained FF&E, the Consultant may sell on a commission basis ("Offered FF&E").  Closing Store Agreement § 6.

10. "The Consultant may supplement the Merchandise in the sale at the Stores with additional goods procured by the Consultant which are of like kind, and no lesser quality to the Merchandise in the Sale ("Additional Consultant Goods")."  Closing Store Agreement § 7(A).  The Debtors[4] shall be entitled to "an amount equal to seven and one half percent (7.5%) of the gross proceeds of Additional Consultant Goods actually sold in the Sale."  Closing Store Agreement § 7(B).  The Debtors "shall have control over the personnel in the Stores and shall handle the cash, debit and charge card payments for all Merchandise in accordance with [the Debtors'] normal cash management procedures…"  Closing Store Agreement § 5(A).  The Debtors "(and not Consultant) shall be responsible for ensuring that the Sale, and the operation of the Stores (before, during, and after the Sale Term) shall be conducted in compliance with all applicable laws and regulations."  *Id.*

11. The Debtors are solely responsible for computing, collecting, holding, reporting, and paying all sales taxes.  Closing Store Agreement § 5(C).

12. The Debtors retain the Consultant as its exclusive, independent consultant to conduct the Sale at the Stores during the Sale Term.  Closing Store Agreement § 1(A).

13. The Consultant is conducting the Sales within Consultant Controlled Expenses established by the Debtors, which establishes the expenses the Consultant can receive reimbursement from the Debtors with regards to the Consultant's field supervisors, advertising for the Sales (assuming the Debtors have given their approval to the particular advertising), and other miscellaneous expenses.  Closing Store Agreement §§ 3, Exhibit B.

---

[4] In the Closing Store Agreement, the term "Merchant" is used instead of the word "Debtors."

14. The Debtors are responsible for the payment of expenses related to the Sales, except for any specifically enumerated Consultant Controlled Expenses that exceed the budgeted amount. Closing Store Agreement § 3(A)

15. To discharge its duties under the Closing Store Agreement, the Consultant, in its discretion, contracted with temporary employment agencies to provide supervision for the Sales. The supervisors have retail experience but there are no minimum educational benchmarks for the Consultant's field supervisors.

16. The Consultant's field supervisors work in the Closing Stores assisting the Debtors' corporate and store employees. The supervisors monitor daily sales, suggest merchandise discounts, and propose potential Closing Store advertising. The supervisors also routinely evaluate the Closing Store's visual appearance and make recommendations for merchandise arrangement so that the Closing Stores presents well to customers.

17. The Consultant provides services substantially similar to the services that it is providing to the Debtors pursuant to the Closing Store Agreement to retailers outside of bankruptcy, including retailers with strong balance sheets. Inside of bankruptcy, retailers face fewer restrictions regarding the messaging of signs and posting advertising, and can receive relief from lease restrictions, and additional strategy considerations may be present such as dealing with rent. In bankruptcy, debtors have other rights that a retailer in a non-bankruptcy context does not.

18. The bankruptcy's impact with respect to signage and permitting, relieves the Debtors from obtaining waivers from landlords, and Court approval eliminates the need to comply with local ordinances relating to conducting store closings and going out of business sales.

19. The Consultant does not anticipate assisting the Debtors with respect to the formulation or negotiation of their plan of reorganization. Nevertheless, the Closing Store Agreement does provide for the potential of an Alternative Transaction (as defined below) and conversations regarding such Alternative Transaction may occur prior to the time that an Alternative Transaction is disclosed to the Court.

20. The Consultant will be assisting the Debtors, in part, with respect to its negotiation with landlords and other parties in interest impacted by the relief requested in the Store Closing Motion.

21. The Consultant will not be assisting the Debtors with claims reconciliation.

22. The Consultant is a service provider to the Debtors whose services have a limited purview, but may be expanded should the Debtors and the Consultant agree mutually upon the terms of a global transaction (an "<u>Alternative Transaction</u>") for assets not subject to the Closing Stores Agreement. Closing Store Agreement § 2(C). In the event that the Debtors and the Consultant do enter into an Alternative Transaction, the Store Closing Agreement may be terminated. HMR, GBRP, and a third party, as a joint venture submitted an offer to the Debtors to purchase certain other assets of the Debtors that expired by its own terms prior to August 28, 2018. It is still possible that HMR, GBRP, or both may submit additional offers at this time.

B. **Facts Relating to the Consultant and its Members**

23. In general terms, the Consultant (and each of HMR and GBRP independently) provides assistance with store closing projects, going out of business sales or other promotion sales in retail stores. The Consultant (and each of HMR and GBRP independently) provides services to retailers both in and out of bankruptcy. HMR and GBRP have marketing materials that explain the experience and expertise of each firm. The websites of HMR and GBRP identify the signatories to the Closing Store Agreement as "professionals."

24. In providing such assistance, the Consultant (and each of HMR and GBRP independently) recommends sales strategies for a particular sale, including discounting, advertising strategies, and merchandise arrangement. Depending on the clients' decisions, the Consultant (and each of HMR and GBRP independently) assists in implementing its clients' strategic decision.

25. With respect to advertising, the Consultant (and each of HMR and GBRP independently) might recommend, for example, signs in stores, email marketing, social media and similar advertising, and TV and radio ads.

26. The Consultant (and each of HMR and GBRP independently) also might recommend visual presentations in stores, including product location and in store signs and rack toppers.

27. The Consultant (and each of HMR and GBRP independently) understands that retailers select it to provide store liquidating services for a few reasons. The primary reason that retailers hire the Consultant (and each of HMR and GBRP independently) is to allow management to focus on their go-forward business. Hiring the Consultant (and each of HMR and GBRP independently) also relieves pressure on retailers by allowing the Consultant (and each of HMR and GBRP independently) –as opposed to its client –to focus on a particular sale and leverage employees to make sure that the retailer's sale strategy is successful.

28. Other than general licenses to conduct business in jurisdictions in which the Consultant (and each of HMR and GBRP independently) operate, the Consultant (and each of HMR and GBRP independently) is not required to hold and does not have any licenses to conduct store closing or going out of business sales, other than general doing business licenses in

a particular area where it does business.  Outside of bankruptcy, Consultant is required to comply with all applicable law regarding store closing or going out of business sales.

29. Except where State, county, or local governments require a retailer (or, in some instances, a party assisting a retailer with a store closing or similar project) to obtain a permit to conduct the sale in a non-bankruptcy context, no licenses are required for a party to act as a store liquidation consultant.  If approved by the Bankruptcy Court, certain non-bankruptcy laws do not apply in the bankruptcy context.

30. The Consultant (and each of HMR and GBRP independently) was not required to and has not obtained any licenses in connection with its services to the Debtors.

31. There are no accrediting bodies that govern store liquidating services.  As a consequence, the Consultant (and each of HMR and GBRP independently) is not an accredited entity.

32. There are no professional associations for store liquidating services.  However, certain individuals that serve as officers and employees for the Consultant (and each of HMR and GBRP independently) do belong to professional organizations like the American Bankruptcy Institute (ABI) and Turnaround Management Association (TMA).

33. The Consultant (and each of HMR and GBRP independently) does not provide valuation or appraisal services and has (and will) not held provide any valuations or appraisal services for the Debtors.

34. Separate entities that are affiliates of each of HMR and GBRP provide valuation and appraisal services.  Certain employees of those affiliates have accreditation and/or designation as appraisers through the American Society of Appraisers (ASA), the National Association of Certified Valuators and Analysts (NACV), the Association of Machinery and

-11-

Equipment Appraisers (CEA), and/or the Appraisal Institute. The Uniform Standards of Professional Appraisal Practice (USPAP) is the professional association that issues the generally recognized ethical and performance standards for the appraisal profession in the United States.

35. Opening and closing stores can be normal course activity in the retail business. It is the United States Trustee's position that the liquidation of substantially all assets and closure of a majority of a retail business's store locations is not ordinary course business activity.

The parties agree that the above facts are admitted into evidence for all purposes for the Court's consideration.

Dated: August 29, 2018

Wilmington, Delaware

/s/ *Douglas D. Herrmann*
Douglas D. Herrmann (DE No. 4872)
Marcy J. McLaughlin (DE No. 6184)
**PEPPER HAMILTON LLP**
1313 N. Market Street, P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: (302) 777-6500
Facsimile: (302) 421-8390
E-mail: herrmannd@pepperlaw.com
mclaughlinm@pepperlaw.com

- and -

Steven J. Reisman (admitted *pro hac vice*)
Cindi M. Giglio (admitted *pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, NY 10022-2585
Telephone: (212) 940-8800
Facsimile: (212) 940-8776
E-mail: sreisman@katten.com
cgiglio@katten.com

*Counsel to the Consultant*

/s/ *Timothy Fox*
Timothy Fox
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Room 2207, Lockbox 35
Wilmington, DE 19801
Telephone:(302) 573-6491
 Facsimile:(302) 573-6497

*ANDREW R. VARA*
*ACTING UNITED STATES TRUSTEE*
*REGION 3*