# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BROOKSTONE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 18-11780 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Ref. Docket Nos. 19, 76, 122 & 264** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION ABL PARTIES, (V) MODIFYING AUTOMATIC STAY, AND (VI) GRANTING RELATED RELIEF**

Upon the motion, dated August 2, 2018 (the "DIP Motion") of Brookstone Company, Inc. (the "Company," or the "Borrower") and Brookstone Holdings Corp., Brookstone Inc., Brookstone Stores, Inc., Brookstone Purchasing, Inc., Brookstone Properties, Inc., Brookstone Retail Puerto Rico, Inc., Brookstone International Holdings, Inc., Big Blue Audio LLC and Brookstone Holdings, Inc. (the "Guarantors"), each as a debtor and debtor in possession (collectively, the "Debtors") in the above-captioned Chapter 11 cases (collectively, the "Cases"), seeking entry of an interim order and a final order (this "Final Order") pursuant to sections 105, 361, 362, 363, 364(c)(l), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: Brookstone Holdings Corp. (4638), Brookstone, Inc. (2895), Brookstone Company, Inc. (3478), Brookstone Retail Puerto Rico, Inc. (5552), Brookstone International Holdings, Inc. (8382), Brookstone Purchasing, Inc. (2514), Brookstone Stores, Inc. (2513), Big Blue Audio LLC (N/A), Brookstone Holdings, Inc. (2515), and, Brookstone Properties, Inc. (2517). The Debtors' corporate headquarters and the mailing address for each Debtor is One Innovation Way, Merrimack, NH 03054.

Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules")

and unless otherwise ordered by this Court, *inter alia*:

      (i)      Authorizing, on a final basis, the Debtors to obtain senior secured,

superpriority postpetition financing on a superpriority basis consisting of a senior secured

superpriority credit facility in the aggregate principal amount of up to $30,000,000 (the "DIP

Facility") consisting of (a) $15,000,000 in aggregate principal amount of revolving loans (the

"DIP Revolving Loans") and commitments and (b) $15,000,000 in aggregate principal amount of

term loans ("DIP Term Loans," and together with the DIP Revolving Loans, the "DIP Loans"),

and which shall include a $5,000,000 sublimit for the issuance of letters of credit, pursuant to the

terms and conditions of that certain *Senior Secured, Super-Priority Debtor-In-Possession Credit*

*Agreement* (as the same may be amended, restated, supplemented, waived or otherwise modified

from time to time, the "DIP Agreement"), by and among the Borrower, the Guarantors, Wells

Fargo Bank, National Association, as administrative agent and collateral agent (in such capacity,

the "DIP Administrative Agent") for and on behalf of itself and the other lenders party thereto

(such lenders, collectively with the DIP Administrative Agent and the DIP Term Agent, the "DIP

Lenders"), and Gordon Brothers Finance Company, as term agent (in such capacity, the "DIP

Term Agent"), substantially in the form of **Exhibit D**, attached to the DIP Motion[2];

      (ii)      authorizing the Debtors to execute and deliver the DIP Agreement and any

other agreements, instruments, pledge agreements, guarantees, control agreements  and other

Loan Documents (as defined in the DIP Agreement) and documents related thereto (including

any security agreements, intellectual property security agreements, control agreements, or notes)

(as amended, restated, supplemented, waived, and/or modified from time to time, and

---

[2] Upon entry of the Interim Order, all Prepetition ABL Obligations (as defined herein) and all accrued and unpaid interest thereon and fees and expenses were fully-rolled into the DIP Facility and now constitute DIP Obligations (as defined herein) hereunder.

collectively, with the DIP Agreement, the "DIP Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)    granting to the DIP Administrative Agent, for the benefit of itself and the DIP Lenders on account of the DIP Facility and all obligations owing thereunder and under, or secured by, the DIP Documents (collectively, and including all "Obligations" as described in the DIP Agreement, the "DIP Obligations") allowed superpriority administrative expense claim status in each of the Cases and any Successor Cases (as defined herein), subject only to the Carve Out (as defined below);

(iv)    granting to the DIP Administrative Agent, for the benefit of itself and the DIP Lenders and the other Secured Parties (as defined in the DIP Agreement) under the DIP Documents, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including all property constituting "cash collateral" as defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), which liens shall be subject to the priorities set forth herein;

(v)    authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become earned, due and payable, including, letter of credit fees (including issuance and other related charges), continuing commitment fees, closing fees, audit fees, appraisal fees, valuation fees, liquidator fees, structuring fees, arrangement fees, upfront fees, administrative agent's fees, the reasonable fees and disbursements of the DIP Administrative Agents' and the DIP Term Agent's attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, the DIP Documents;

(vi)    authorizing the Debtors to use the Prepetition Collateral (as defined herein),

including the Cash Collateral of the Prepetition ABL Parties under the Prepetition ABL Documents and the Prepetition Second Lien Parties under the Prepetition Second Lien Documents (each as defined herein), and (solely in the event and to the extent that Prepetition ABL Obligations (as defined herein) remain outstanding) providing adequate protection to the Prepetition ABL Parties for any diminution in value of their interests in the Prepetition Collateral, including Cash Collateral, resulting from the imposition of the automatic stay, the Debtors' use, sale, or lease of the Prepetition Collateral, including Cash Collateral, and the priming of their respective interests in the Prepetition Collateral, including Cash Collateral (including by the Carve Out) ("Diminution in Value"); and

(vii)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Final Order.

The Court having considered the DIP Motion, the exhibits attached thereto, the *Declaration of J. Soren Reynertson in Support of the Debtors' Motions for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition ABL Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* (the "DIP Declaration") and the *Declaration of Greg Tribou in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), the DIP Documents, and the evidence submitted and argument made at the interim hearing held on August 3, 2018 (the "Interim Hearing") and the final hearing held on August 29, 2018 (the "Final Hearing"); and the Court having entered the *Interim Order (I)*

*Authorizing the Debtors to Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition ABL Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Dkt. No. 76], as amended by the *Order Amending Interim Order (I) Authorizing the Debtors to Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition ABL Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Dkt. No. 122] (the "Interim Order"); and notice of the Interim Hearing and the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Interim Hearing and Final Hearing having been held and concluded; and all objections, if any, to the relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the relief requested in the DIP Motion on a final basis is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors and their estates, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM AND FINAL HEARINGS, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

    A.   **Petition Date**. On August 2, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").

    B.   **Debtors in Possession**. The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

    C.   **Jurisdiction and Venue**. This Court has jurisdiction over the Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

    D.   **Committee Formation**. On August 14, 2018, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (the "Committee").

    E.   **Notice**. Notice of the DIP Motion and the Final Hearing have been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the DIP Motion with respect to the relief requested at the Final Hearing or the entry of this Final Order shall be required.

    F.   **Debtors' Stipulations**. After consultation with their attorneys and

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

financial advisors, and without prejudice to the rights of parties-in-interest as set forth in paragraph 42 herein, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(xi) below are referred to herein, collectively, as the "Debtors' Stipulations"):

   (i) *Prepetition ABL Facility.* Pursuant to that certain Credit Agreement dated as of July 7, 2014 (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition ABL Agreement," and collectively with the Loan Documents (as defined in the Prepetition ABL Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition ABL Documents"), among (a) the borrower party thereto (the "Prepetition ABL Borrower"), (b) the guarantors party thereto (the "Prepetition ABL Guarantors"), (c) Wells Fargo Bank, National Association, as successor-in-interest to General Electric Capital Corporation, as administrative agent (in such capacity, the "Prepetition ABL Administrative Agent"); (d) Gordon Brothers Finance Company, as "Term Agent" (in such capacity, the "Prepetition Term Agent"); (e) the "Revolving Lenders" and the "Term Lenders" (each as defined in the Prepetition ABL Agreement) party thereto (and including the Prepetition ABL Administrative Agent and the Prepetition Term Agent, the "Prepetition ABL Lenders," and collectively with the Prepetition ABL Administrative Agent and the Prepetition Term Agent, the "Prepetition ABL Parties"), the Prepetition ABL Lenders provided revolving credit, term loans, and other financial accommodations to, and issued letters of credit for the account of, the Prepetition ABL Borrower pursuant to the Prepetition Documents (the "Prepetition ABL Facility").

   (ii) *Prepetition ABL Obligations.* The Prepetition ABL Facility

provided the Prepetition ABL Borrower with, among other things, (a) up to $70,000,000 aggregate principal amount of Revolver Loans (as defined in the Prepetition ABL Agreement), and (b) $15,000,000 in Term Loans (as defined in the Prepetition ABL Agreement). As of the Petition Date, the aggregate principal amount outstanding under the Prepetition ABL Facility was not less than $28,513,758.59 (collectively, together with accrued and unpaid interest, outstanding letters of credit and bankers' acceptances, any reimbursement obligations (contingent or otherwise) in respect of letters of credit and bankers' acceptances, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition ABL Borrower's or the Prepetition ABL Guarantors' obligations pursuant to, or secured by, the Prepetition ABL Documents, including all applicable "Obligations" as defined in the Prepetition ABL Agreement, and all interest, fees (including amendment fees), prepayment premiums, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "Prepetition ABL Obligations"), including not less than $13,513,758.59 in outstanding principal amount of Revolver Loans and $15,000,000 in outstanding principal amount of Term Loans.

(iii)    *Prepetition ABL Liens and Prepetition ABL Collateral.* As more fully set forth in the Prepetition ABL Documents and the DIP Motion, prior to the Petition Date, the Prepetition ABL Borrower and the Prepetition ABL Guarantors granted to the Prepetition ABL Administrative Agent, for the benefit of itself and the Secured Parties (as defined in the

Prepetition ABL Agreement), a first priority security interest in and continuing lien on (the "Prepetition ABL Liens") substantially all of their assets and property (which for the avoidance of doubt includes Cash Collateral), including mortgages on certain owned real property, the Collateral (as defined in the Prepetition Credit Agreement), and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition ABL Collateral"), subject only to the Prepetition ABL Permitted Prior Liens (as defined herein).    Each of the Prepetition ABL Guarantors has jointly and severally, absolutely, unconditionally and irrevocably guaranteed the Prepetition ABL Obligations.

            (iv)    *Prepetition Second Lien Notes.*  Pursuant to that certain Indenture dated as of July 7, 2014 (as amended, restated, supplemented, waived or otherwise modified from time to time, the "Second Lien Indenture," collectively and with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Second Lien Documents," and together with the Prepetition ABL Documents, the "Prepetition Documents"), among (a) the Company, as issuer, (b) Wilmington Trust, National Association as trustee and collateral agent (in such capacity, the "Indenture Trustee"), and (c) the guarantors party thereto (the "Second Lien Note Guarantors" and together with the Prepetition ABL Guarantors, the "Prepetition Guarantors"), the Company incurred indebtedness to the holders (collectively, the "Second Lien Noteholders," and together with the Indenture Trustee, the "Prepetition Second Lien Parties," and together with the Prepetition ABL Parties, the "Prepetition Secured Parties") of 10.00% Second Lien Subordinated Secured Notes Due 2021 (collectively, the "Prepetition Second Lien Notes").

(v)     *Prepetition Second Lien Obligations.*  Pursuant to the Indenture, the Prepetition Second Lien Notes were originally issued with a face value of $10.0 million. As of the Petition Date, following the accrual of PIK Interest, the aggregate principal amount outstanding under the Prepetition Second Lien Notes was $14,870,087.41 (collectively, together with accrued and unpaid interest, indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Company's and the Second Lien Note Guarantors' obligations pursuant to the Prepetition Second Lien Notes and the Prepetition Second Lien Documents, the "Prepetition Second Lien Obligations," and together with the Prepetition ABL Obligations, the "Prepetition Secured Obligations").

(vi)     *Prepetition Second Priority Liens and Prepetition Second Lien Priority Collateral.*  As more fully set forth in the Indenture and the DIP Motion, prior to the Petition Date, the Company and the Second Lien Notes Guarantors granted to the Indenture Trustee, for the benefit of itself and the Prepetition Second Lien Parties, a second priority security interest in and continuing lien on (the "Prepetition Second Priority Liens") substantially all of their assets and property (excluding the Debtors' interest in real estate), in each case whether then owned or existing or thereafter acquired or arising (the "Prepetition Second Priority Collateral").

(vii)     *Sanpower Secured Notes.*  Beginning in January 2018 through to July 16, 2018, Sanpower (Hong Kong) Company Limited ("Sanpower"), as lender, entered into 17 separate Secured Subordinated Promissory Notes (each a "Sanpower Secured Note," and collectively, the "Sanpower Secured Notes") with Brookstone Company, Inc., as borrower, each due July 8, 2019.  The Sanpower Secured Notes are guaranteed by the Debtors Brookstone

Purchasing, Inc. and Big Blue Audio LLC pursuant to the Guaranty dated June 29, 2018 between the Sanpower Guarantors as guarantors and Sanpower, as lender. The Sanpower Secured Notes are secured by liens on (the "<u>Prepetition Sanpower Liens</u>", and together with the Prepetition ABL Liens and the liens securing the Prepetition Second Priority Liens, the "<u>Prepetition Liens</u>") all of the assets of Brookstone Company, Inc., and (ii) by certain intellectual property assets of Brookstone Purchasing, Inc. and Big Blue Audio LLC pursuant to an Intellectual Property Security Agreement dated as of July 6, 2018 (the "<u>Prepetition Sanpower Collateral</u>" and together with the Prepetition ABL Collateral and the Prepetition Second Priority Collateral, the "<u>Prepetition Collateral</u>"). The Sanpower Secured Notes are not secured by assets of any of the other Debtors.

(viii) *Priority of Prepetition Liens; Subordination Agreement.* The Prepetition ABL Administrative Agent and the Indenture Trustee entered into that certain Subordination Agreement dated as of July 7, 2014 (the "<u>Subordination Agreement</u>") to govern the respective rights, obligations, and priority of the Prepetition Secured Parties. Pursuant to the Subordination Agreement and on the terms set forth therein (a) the Prepetition ABL Liens in respect of the Prepetition Collateral securing the Prepetition ABL Obligations are senior and prior in right to any Prepetition Second Priority Lien in respect of Prepetition Collateral securing the Prepetition Second Lien Obligations, and (b) the Prepetition Second Priority Liens in respect of the Prepetition Collateral securing the Prepetition Second Lien Obligations are junior and subordinate in all respects to the Prepetition ABL Liens in respect of Prepetition Collateral securing the Prepetition ABL Obligations. The Debtors have acknowledged and agreed to the Subordination Agreement. The Sanpower Secured Notes are contractually subordinated to the obligations underlying the Prepetition ABL Obligations until payment in full of such obligations.

(ix)    *Validity, Perfection, and Priority of Prepetition ABL Liens and Prepetition ABL Obligations.* The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition ABL Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition ABL Parties for fair consideration and reasonably equivalent value; (b) the Prepetition ABL Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to certain liens senior by operation of law (including any that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or otherwise permitted by the Prepetition ABL Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition ABL Liens as of the Petition Date, the "Permitted Prior Liens"); (c) the Prepetition ABL Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition ABL Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition ABL Liens or Prepetition ABL Obligations exist, and no portion of the Prepetition ABL Liens or Prepetition ABL Obligations is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition ABL Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition ABL Facility; (f) the

Debtors have waived, discharged, and released any right to challenge any of the Prepetition ABL Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition ABL Obligations; and (g) the Prepetition ABL Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(x)    *No Control.*    None of the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders or the Prepetition Secured Parties controls the Debtors or their properties or operations, has authority to determine the manner in which any of the Debtors' operations are conducted or is a control person or insider of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Interim Order, this Final Order, the DIP Facility, the DIP Documents, the Prepetition Secured Facilities, and/or the Prepetition Documents.

(xi)    *Default by the Debtors.*    The Debtors acknowledge and stipulate that they had been and are in default of their obligations under the Prepetition Documents, including as a result of the Cases, and that an Event of Default had occurred under the Prepetition Documents prior to entry of the Interim Order.  But for the "roll up" authorized pursuant to entry of the Interim Order, the interest on the Debtors' prepetition obligations would have accrued at the default rate.

G.    **Permitted Prior Liens**.  Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP Administrative Agent, the Prepetition Secured Parties, or the Committee, to challenge the validity, priority, enforceability, seniority,

avoidability, perfection, or extent of any alleged Permitted Prior Lien and/or security interests. For the purposes hereof, any alleged claim arising or asserted as a right of reclamation or return (whether asserted under Section 546(c) of the Bankruptcy Code or otherwise) is not a Permitted Prior Lien. Any alleged claim arising or asserted as a right of reclamation or return (whether asserted under Section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the DIP Facility, DIP Liens and DIP Collateral as such claims had with respect to the Prepetition ABL Liens in the Prepetition ABL Collateral and the DIP Collateral.

       H.    **Cash Collateral**. All of the Debtors' cash, including any cash in deposit accounts of the Debtors, wherever located, constitutes Cash Collateral of the Prepetition ABL Parties.

       I.    **Findings Regarding Corporate Authority.** Each Debtor has all requisite corporate power and authority to execute and deliver the DIP Documents to which it is a party and to perform its obligations thereunder.

       J.    **Subordination Agreement and Sanpower Secured Notes**. Pursuant to section 510 of the Bankruptcy Code, the Subordination Agreement and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Documents shall (i) remain in full force and effect, (ii) continue to govern the relative obligations, priorities, rights, and remedies of the Prepetition Secured Parties (including the relative priorities, rights and remedies of such parties with respect to the replacement liens and administrative expense claims and superpriority administrative expense claims granted to the Prepetition ABL Parties, or amounts payable, by the Debtors under the Interim Order, this Final Order or otherwise and the modification of the automatic stay), and (iii) not be deemed to be amended, altered, or modified

by the terms of the Interim Order, this Final Order or the DIP Documents, unless expressly set forth herein or therein.  The DIP Facility is a "Permitted Refinancing" of the Prepetition ABL Facility as such term is used in the Subordination Agreement, and any repayment of the Prepetition ABL Obligations pursuant to the Interim Order and this Final Order shall not be deemed to constitute a "Payment in Full" of the Prepetition ABL Obligations as such term is used in the Subordination Agreement or in any of the Sanpower Secured Notes.  As described in the DIP Motion, pursuant to Section 2.3 of the Subordination Agreement, the Prepetition Second Lien Parties have agreed they will not request or accept adequate protection or any other relief in connection with the use of cash collateral or such DIP financing.

<strong>K.</strong>   <strong><u>Findings Regarding Postpetition Financing</u></strong>

(i)   *Request for Postpetition Financing.*  The Debtors seek authority on a final basis to continue (a) using Cash Collateral on the terms described herein, and (b) borrowing under the DIP Facility on the terms described herein and in the DIP Documents to refinance the Prepetition ABL Obligations, to administer their Cases, and to fund their operations.

(ii)   *Priming of the Prepetition Liens.*  The priming of the Prepetition ABL Liens on the Prepetition ABL Collateral under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility and as further described below, will enable the Debtors to continue borrowing under the DIP Facility and to continue to operate their businesses to the benefit of their estates and creditors.  Solely in the event and to the extent that there are Prepetition ABL Obligations that remain outstanding, the Prepetition ABL Parties are each entitled to receive adequate protection as set forth in the Interim Order and this Final Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for any Diminution in Value of

each of their respective interests in the Prepetition ABL Collateral (including Cash Collateral).

(iii)    *Need for Postpetition Financing and Use of Cash Collateral.* Since the Petition Date, the Debtors have had a need to use Cash Collateral and to continue obtaining credit on a final basis pursuant to the DIP Facility in order to, among other things, administer and preserve the value of their estates.  The ability of the Debtors to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, and otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, and parties-in-interest.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms.*   Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility.  The Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  The Debtors have also been unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. As described in the DIP Declaration, financing on a postpetition basis on better terms is not otherwise available without granting the DIP Administrative Agent,

for the benefit of itself and the DIP Lenders: (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth in paragraph 6 of the Interim Order and paragraph 6 hereof; (2) superpriority claims and liens; (3) the other protections set forth in the Interim Order and this Final Order; and (4) a full refinancing of the Prepetition ABL Obligations.

(v)     *Use of proceeds of the DIP Facility.*  As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Administrative Agent, the DIP Lenders, and the Prepetition ABL Parties required and continue to require, and the Debtors have agreed, that proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of this Final Order and the DIP Documents and in accordance with the budget (as the same may be modified from time to time consistent with the terms of the DIP Documents and subject to such variances as permitted in the DIP Agreement, and as set forth in paragraphs 19 and 20 hereof, the "Budget"),[4] solely for: (a) the repayment in cash from the proceeds of the DIP Term Loans to pay off the Term Loans and the replacement and refinancing of the remaining Prepetition ABL Obligations into DIP Obligations to the extent provided for in the Interim Order, this Final Order and the DIP Documents, and subject to the rights preserved in paragraph 42 of this Final Order; (b) working capital and letters of credit; (c) permitted payment of costs of administering the Cases; (d) payment of such other prepetition obligations as set forth in the Budget or otherwise approved by the DIP Administrative Agent and the DIP Term Agent in their sole discretion, and as approved by the Court; (e) payment of interest, fees, expenses and other amounts (including legal and other professionals' fees and expenses of the DIP Administrative Agent and the DIP

---

[4]  A summary of the Budget is attached hereto as **Schedule 1**.

Term Agent) owed under the DIP Documents; (f) payment of certain adequate protection amounts to the Prepetition ABL Parties, as set forth in paragraph 16 hereof; and (g) other general corporate purposes of the Debtors permitted by the Budget and the DIP Documents.

       (vi)   *Application of Proceeds of Collateral.* As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility and authorization to use Cash Collateral, the Debtors, the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, and the Prepetition ABL Parties have agreed that as of and commencing on the date of the Interim Hearing, the Debtors shall apply the proceeds of DIP Collateral in accordance with this Final Order and as provided in the DIP Documents (to the extent not inconsistent with this Final Order).

       (vii)   *Roll-up of Prepetition Revolving Loans.* Immediately upon entry of the Interim Order, without any further action by the Debtors or any other party, all outstanding Prepetition ABL Obligations owing to the Revolving Lenders and their Affiliates (as defined in the DIP Agreement) were converted into DIP Obligations under and as further described in the DIP Documents, with (1) the outstanding principal amount of all Revolving Loans being replaced and refinanced into DIP Obligations (the "DIP Revolving Roll-Up Loans") and (2) all accrued interest, expenses, fees and other sums due and payable in respect of the Revolver Loans being paid in cash on the Closing Date (as defined in the DIP Agreement). The replacement and refinancing (or "roll-up") of the DIP Revolving Roll-Up Loans was authorized as compensation for, in consideration for, and solely on account of, the agreement of the Revolving Lenders to fund amounts, and provide other consideration to the Debtors, under the DIP Facility and not as payments under, adequate protection for, or otherwise on account of, any Prepetition ABL Obligations. The Revolving Lenders would not otherwise have consented to the use of their

Cash Collateral or the subordination of their liens to the DIP Liens, and the DIP Administrative Agent, the DIP Term Agent and the DIP Lenders would not be willing to continue providing the DIP Facility or extending credit to the Debtors thereunder without the inclusion of the DIP Revolving Roll-Up Obligations in the DIP Obligations.  Moreover, the replacement and refinancing of all outstanding Revolving Loans into DIP Obligations (a) created greater availability under the DIP Facility, (b) benefited the Debtors and their estates as a result of the DIP Lenders' agreement to make certain revisions to the borrowing base in a manner favorable to the Debtors, and waive certain default interest to which they are entitled under the Prepetition ABL Agreement, and (c) enabled the Debtors to obtain urgently needed financing that they need to administer these Cases and fund their operations.  Because the DIP Revolving Roll-Up Loans remain subject to the reservation of rights in paragraph 42 below, they will not prejudice the right of any other party in interest.

(viii)  *Roll-up of Prepetition Term Loans.*  Immediately upon entry of the Interim Order, without any further action by the Debtors or any other party, all outstanding Prepetition ABL Obligations owing to the Term Lenders and their Affiliates (as defined in the DIP Agreement) were converted into DIP Obligations under and as further described in the DIP Documents, with (1) the outstanding principal amount of all Term Loans being replaced and refinanced into DIP Obligations (the "DIP Term Roll-Up Loans," and together with the DIP Revolving Roll-Up Loans, the "DIP Roll-Up Obligations") and (2) all accrued interest, expenses, fees and other sums due and payable in respect of the Term Loans being paid in cash on the Closing Date (as defined in the DIP Agreement).  The replacement and refinancing (or "roll-up") of the DIP Term Roll-Up Loans was authorized as compensation for, in consideration for, and solely on account of, the agreement of the Term Lenders to fund amounts, and provide other

e

and other professionals' fees and expenses of the Prepetition ABL Administrative Agent and the Prepetition Term Agent whether arising before or after the Petition Date), as more fully set forth in paragraph 16 of the Interim Order and paragraph 16 herein.

M.      **Sections 506(c) and 552(b).**    In light of: (i) the DIP Administrative Agent's and DIP Lenders' agreement that their liens and superpriority claims shall be subject to the Carve Out, (ii) the Prepetition ABL Administrative Agent's and the Prepetition ABL Lenders' agreement that their liens shall be subject to the Carve Out and subordinate to the DIP Liens, and (iii) the payment of expenses as set forth in the Budget in accordance with and subject to the terms and conditions of this Final Order and the DIP Documents, (a) the Prepetition ABL Parties are each entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and (b) the DIP Administrative Agent, the DIP Lenders and the Prepetition ABL Parties are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

N.      **Good Faith of the DIP Administrative Agent, DIP Term Agent and DIP Lenders**.

(i)      *Willingness to Provide Financing.*    The DIP Lenders have indicated a willingness to provide financing to the Debtors subject to: (a) entry of the Interim Order and this Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Documents; (c) satisfaction of the closing conditions set forth in the DIP Documents; and (d) findings by this Court that the DIP Facility is essential to the Debtors' estates, that the DIP Administrative Agent, DIP Term Agent and DIP Lenders are extending credit to the Debtors pursuant to the DIP Documents in good faith, and that the DIP Administrative Agent's, DIP Term Agent's and DIP Lenders' claims, superpriority claims, security interests and liens and

other protections granted pursuant to the Interim Order, this Final Order and the DIP Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

          (ii)     *Business Judgment and Good Faith Pursuant to Section 364(e).* The terms and conditions of the DIP Facility and the DIP Documents, and the interest and fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, are ordinary and appropriate for secured financing to debtors in possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. The terms and conditions of the DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, and the Prepetition ABL Parties, with the assistance and counsel of their respective advisors. Use of Cash Collateral and credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, and the Prepetition ABL Parties within the meaning of section 364(e) of the Bankruptcy Code.

          O.     **Final Hearing**. Notice of the Final Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties-in-interest, including: (i) the U.S. Trustee; (ii) those entities or individuals included on the Debtors' list of 30 largest unsecured creditors on a consolidated basis; (iii) counsel to the Prepetition ABL Administrative Agent; (iv) counsel to the Prepetition Term Agent; (v) counsel to the Indenture Trustee; and (vi) all other parties entitled to notice under the Local Rules. In addition, counsel for the Committee received notice of the Final Hearing and has had sufficient opportunity to review the DIP Motion, the Interim Order and this

Final Order.  The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and no other notice is required in connection with the relief set forth in this Final Order.

Based upon the foregoing findings and conclusions, the findings and conclusions made in the Interim Order, the DIP Motion, the DIP Declaration, the First Day Declaration and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.      Final Financing Approved.  The DIP Motion is granted as set forth herein, the Final Financing (as defined herein) is authorized and approved, and the use of Cash Collateral is authorized, in each case on a final basis and subject to the terms and conditions set forth in the DIP Documents and this Final Order.  Unless otherwise modified herein, all findings of fact, conclusions of law, and authorizations made by this Court in the Interim Order are hereby ratified and incorporated herein by reference as though set forth fully below.  All objections to the DIP Motion and this Final Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled.

**DIP Facility Authorization**

2.      Authorization of the DIP Facility.  The DIP Facility, including the DIP Roll-Up Obligations, is hereby approved on a final basis.  The Debtors are expressly and immediately authorized and empowered on a final basis to continue borrowing under the DIP Facility, and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Final Order and the DIP Documents, and to execute and deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance

by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens (as defined herein) described in and provided for by the Interim Order, this Final Order and the DIP Documents, including each of Debtors providing its joint and several guarantee of all of the DIP Obligations.  The Debtors are hereby authorized and directed on a final basis to pay, in accordance with the Interim Order and this Final Order, the principal, interest, fees, payments, expenses, and other amounts described in the DIP Documents as such amounts become earned, due and payable and without need to obtain further Court approval, including closing fees, letter of credit fees (including issuance, fronting, and other related charges), unused line fees, arrangement fees, structuring fees, servicing fees, audit fees, appraisal fees, liquidator fees, administrative agent's fees, prepayment premiums, the reasonable fees and disbursements of the DIP Administrative Agent's and the DIP Term Agent's attorneys, advisors, accountants, and other consultants, whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, to implement all applicable reserves and to take any other actions that may be necessary or appropriate, all to the extent provided in the Interim Order, this Final Order or the DIP Documents.  All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations, or otherwise, will be deposited and applied as required by this Final Order and, to the extent not inconsistent with this Final Order, the DIP Documents.  To the extent not inconsistent with this Final Order, the DIP Documents represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

3.    _Authorization to Borrow_.  To prevent immediate and irreparable harm to the Debtors' estates, from the entry of this Final Order through and including the Termination

Date (as defined below), and subject to the terms, conditions, limitations on availability and reserves (as applicable) set forth in the DIP Documents and this Final Order, the Debtors are hereby authorized on a final basis to continue requesting extensions of credit (in the form of loans and letters of credit) up to an aggregate outstanding principal amount of not greater than $30,000,000 at any one time outstanding under the DIP Facility consisting of (a) $15,000,000 in aggregate principal amount of DIP Revolving Loans and commitments and (b) $15,000,000 in aggregate principal amount of DIP Term Loans (the "Final Financing").

4.    DIP Obligations.  The DIP Documents, the Interim Order and this Final Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which shall be enforceable against the Debtors, their estates and any successors thereto, including any trustee appointed in the Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases").  The DIP Obligations include all loans, letter of credit reimbursement obligations, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Administrative Agent, the DIP Term Agent or any of the DIP Lenders, in each case, under, or secured by, the DIP Documents or this Final Order, including all principal, accrued interest, costs, fees, expenses and other amounts under the DIP Documents.  Without limiting the foregoing, the DIP Obligations shall also include cash management and bank product exposure to the extent described in, or secured by, the Prepetition ABL Documents (to the extent outstanding as of the Petition Date) and DIP Documents (on and after the Petition Date), including all Bank Product Obligations (as defined in the DIP Agreement).  All letters of credit issued for the account of the Debtors under the Prepetition ABL

Agreement have continued in place and all obligations under or in connection with such letters of credit are subject to the DIP Agreement and constitute DIP Obligations. The Debtors shall be jointly and severally liable for the DIP Obligations. The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the Termination Date (as defined herein), except as provided in paragraph 33 herein. No obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Documents (including any DIP Obligation or DIP Liens (as defined below), and including in connection with any adequate protection provided to the Prepetition ABL Parties hereunder) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, except as set forth in paragraph 42 below.

5.    <u>DIP Liens</u>. In order to secure the DIP Obligations, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Administrative Agent, for the benefit of itself, the DIP Term Agent and the DIP Lenders, was granted upon entry of the Interim Order and is hereby granted on a final basis, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "<u>DIP Liens</u>") all real and personal property, whether now existing or hereafter arising and wherever located, tangible and intangible, of each of the

Debtors (the "DIP Collateral"), including: (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including all of the issued and outstanding capital stock of each of its subsidiaries), hedge agreements, furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, fee interests in real property owned by the Debtors, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (b) all owned real property interests, and to the extent subject to a pre-petition mortgage in favor of the Prepetition ABL Administrative Agent, leased real property (including, for the avoidance of doubt, any ground leases) and all proceeds of all other leased real property; (c) actions brought under section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral; (d) the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents; (e) the Debtors' rights under section 506(c) and 550 of the Bankruptcy Code and the proceeds thereof; (f) the Debtors' leasehold interest in the distribution center located in the City of Mexico, Missouri, governed by that certain Amended and Restated Lease Agreement with Option to Purchase, dated as of March 1, 2004, between the City of Mexico, Missouri and Brookstone Stores, Inc. (the "DC Lease"); *provided, however*, that the DIP Liens granted to the DIP Administrative Agent, for the benefit

of itself, the DIP Term Agent and the DIP Lenders, with respect to the DC Lease shall extend solely to DIP Obligations in the amount of (i) $2,500,000, *plus* (ii) any Diminution in Value in the Prepetition Collateral for the period starting on the Petition Date and ending on the date of any sale, transfer or assignment of the DC Lease; and (g) all other DIP Collateral whether or not subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date. Notwithstanding the foregoing, DIP Collateral shall not include any contract or license under which the granting of the DIP Liens thereon would constitute a breach or termination thereof other than to the extent such breach or termination would be rendered ineffective pursuant to applicable law (including applicable state law or the Bankruptcy Code) but shall, in any event, include the proceeds of such contracts and licenses.

6.    <u>DIP Lien Priority</u>. The DIP Liens securing the DIP Obligations are valid, automatically perfected, non-avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien, or claim to any of the DIP Collateral, except that the DIP Liens shall be subject to the Carve Out as set forth in this Final Order and shall otherwise be junior only to Permitted Prior Liens. Other than as set forth herein or in the DIP Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases. The DIP Liens shall not be subject to section 510, 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens. Notwithstanding any provisions of the Interim Order

or this Final Order, or any final orders pertaining to the sale of the Debtors' assets, or any agreements validated by any such orders, any senior liens currently held by the Local Texas Tax Authorities[5] shall neither be primed by, nor subordinated to, any liens granted thereby.

7.    DIP Superpriority Claims.  The DIP Administrative Agent, on behalf of itself, the DIP Term Agent and the DIP Lenders was granted upon entry of the Interim Order and is hereby granted on a final basis, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (collectively, the "DIP Superpriority Claims") for all DIP Obligations: (a) subject only to the Carve Out, having priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code; and (b) which shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law.

8.    No Obligation to Extend Credit.  The DIP Administrative Agent, DIP Term Agent and DIP Lenders shall have no obligation to make any loan or advance, or to issue, amend, renew or extend any letters of credit or bankers' acceptance under the DIP Documents, unless all of the conditions precedent to the making of such extension of credit or the issuance, amendment, renewal, or extension of such letter of credit or bankers' acceptance under the DIP Documents and this Final Order have been satisfied in full or waived by the DIP Administrative

---

[5] As used herein, "Local Texas Tax Authorities" shall mean Bexar County, Cypress-Fairbanks ISD, Dallas County, Fort Bend County, Frisco, Harris County, Montgomery County and Tarrant County.

Agent and the DIP Term Agent and in accordance with the terms of the DIP Agreement.

9.      <u>Use of Proceeds of DIP Facility</u>.  From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility, in accordance with the Budget (subject to such variances as permitted in the DIP Agreement), only for the purposes specifically set forth in the Interim Order, this Final Order and the DIP Documents, and in compliance with the terms and conditions in the Interim Order, this Final Order and the DIP Documents.

10.     <u>DIP Roll-Up Obligations</u>.  Immediately upon entry of the Interim Order, without any further action by the Debtors or any other party, and as a condition to the provision of liquidity under the DIP Facility, all DIP Roll-Up Obligations were replaced and refinanced and now constitute DIP Obligations.  The Court approves such actions on a final basis.  The authorization of the DIP Roll-Up Obligations remains subject to the reservation of rights set forth in paragraph 42 of this Final Order.  No provision of the Interim Order or this Final Order authorizing the DIP Roll-Up Obligations shall adversely affect the Carve Out.

## Authorization to Use Cash Collateral

11.     <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Final Order, the DIP Facility, and the DIP Documents and in accordance with the Budget (subject to such variances as permitted in the DIP Agreement), the Debtors are authorized to continue using Cash Collateral until the Termination Date; *provided, however*, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral solely to meet payroll obligations (other than severance) and pay expenses that the DIP Administrative Agent and the DIP Term Agent approve as critical to keeping the Debtors' business operating in accordance with the Budget, or as otherwise agreed by the DIP Administrative Agent and the DIP Term Agent in their sole discretion, and the Carve Out shall be funded following delivery of

the Carve Out Trigger Notice (as defined herein) as provided in paragraph 39 of this Final Order. Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order, the DIP Facility, the DIP Documents, and in accordance with the Budget.

12.    Adequate Protection Liens.  Solely in the event and to the extent that there are Prepetition ABL Obligations that remain outstanding, the Prepetition ABL Parties received adequate protection as described in the Interim Order and below in this Final Order, including in paragraphs 12 through 16.  Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition ABL Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors granted upon entry of the Interim Order and hereby grant on a final basis to the Prepetition ABL Administrative Agent, for the benefit of itself and the Prepetition ABL Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens on the DIP Collateral (the "Adequate Protection Liens").

13.    Priority of Adequate Protection Liens.

(a)    The Adequate Protection Liens shall be subject to the Carve Out as set forth in this Final Order and shall otherwise be junior only to: (i) the Permitted Prior Liens; (ii) the DIP Liens; and (iii) the Prepetition ABL Liens.  The Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

(b)    Except as provided herein or in the DIP Agreement, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Cases or any Successor Cases, and shall be valid and enforceable

against any trustee appointed in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases. The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

14.    Prepetition ABL Superpriority Claim. As further adequate protection of the interests of the Prepetition ABL Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition ABL Administrative Agent, on behalf of itself and the Prepetition ABL Parties, was granted upon entry of the Interim Order and is hereby granted on a final basis an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases under sections 503 and 507(b) of the Bankruptcy Code (the "Prepetition ABL Superpriority Claim").

15.    Priority of the Prepetition ABL Superpriority Claim. The Prepetition ABL Superpriority Claim shall be subject to the Carve Out as set forth in this Final Order and shall otherwise be junior only to the DIP Superpriority Claims. The Prepetition ABL Superpriority Claim shall have priority over all other administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 506(c), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code.

16.    Adequate Protection Payments and Protections for Prepetition ABL Parties. As further adequate protection (the "Prepetition ABL Adequate Protection Payments"), the Debtors are authorized and directed on a final basis to provide adequate protection to the

Prepetition ABL Parties in the form of payment in cash (and as to fees and expenses, without the need for the filing of a formal fee application) of (i) to the extent any Prepetition ABL Obligations remained outstanding after entry of the Interim Order, interest (at the default rate) and principal due under the Prepetition ABL Documents, subject to the rights preserved in paragraph 42 below, (ii) to the extent not paid upon entry of the Interim Order, the reasonable and documented fees, out-of-pocket expenses, and disbursements (including the reasonable and documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition ABL Administrative Agent and the Prepetition Term Agent arising prior to the Petition Date, and (iii) the reasonable and documented fees, out-of-pocket expenses, and disbursements (including the reasonable and documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition ABL Administrative Agent and the Prepetition Term Agent arising subsequent to the Petition Date.  Solely to the extent provided for in the Prepetition ABL Agreement, until the earlier to occur of (a) receipt by the Prepetition ABL Administrative Agent, the Prepetition Term Agent and the Prepetition ABL Lenders of releases and discharges of claims and liabilities in form and substance satisfactory to the Prepetition ABL Administrative Agent, the Prepetition Term Agent and the Prepetition ABL Lenders in their sole discretion, or (b) the expiration of the Challenge Deadline (as defined herein) without the commencement of a Challenge (as defined herein), as part of the adequate protection provided under this paragraph 16, the Prepetition Administrative Agent, the Prepetition Term Agent and the Prepetition ABL Lenders shall each be entitled to current payment of all costs, expenses, and other amounts (including reasonable and documented attorneys' fees) incurred in connection with contingent indemnification,

reimbursement or similar continuing obligations arising under the Prepetition ABL Agreement, the other Prepetition ABL Documents or otherwise in respect of the Prepetition ABL Obligations (the "Prepetition ABL Indemnification Obligations"), including in connection with or responding to (1) formal or informal inquiries and/or discovery requests, any adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in paragraph 42 hereof, or (2) any Challenge against the Prepetition ABL Administrative Agent, the Prepetition Term Agent, or Prepetition ABL Lenders related to the Prepetition ABL Documents, the Prepetition ABL Obligations, or the Prepetition ABL Liens granted to the Prepetition ABL Administrative Agent, as applicable, whether in these Cases or independently in another forum, court, or venue. Subject to paragraph 35 of this Final Order, payment of costs, expenses, and other amounts (including reasonable and documented attorneys' fees) incurred in connection with the Prepetition ABL Indemnification Obligations shall be made as and when they arise (and may be paid with the proceeds of the DIP Facility and/or from the proceeds of DIP Collateral), without further order of this Court; *provided*, that (i) any such indemnification claims shall be subject to the terms of the Prepetition ABL Documents (including with respect to application of proceeds), (ii) the rights of parties in interest with requisite standing to object to any such indemnification claim(s) are hereby reserved in accordance with paragraph 42 hereof, and (iii) the Court shall reserve jurisdiction to hear and determine any such disputed indemnification claim(s). Upon the earlier to occur of (a) the Termination Date or (b) delivery of the Carve Out Trigger Notice, the Debtors shall pay to the Prepetition ABL Administrative Agent, for the benefit of the Prepetition ABL Parties, $500,000 into a non-interest bearing account maintained at Wells Fargo Bank, National Association (the "Prepetition ABL Indemnity Reserve") to secure the Prepetition ABL Indemnity Obligations; *provided* that the Debtors shall not be required to fund the Prepetition

ABL Indemnity Reserve if, at the time of the occurrence of the Termination Date or the delivery of the Carve Out Trigger Notice (x) the Prepetition ABL Administrative Agent, the Prepetition Term Agent and the Prepetition ABL Lenders have received releases and discharges of claims and liabilities in form and substance satisfactory to the Prepetition ABL Administrative Agent, the Prepetition Term Agent, and the Prepetition ABL Lenders in their sole discretion, or (y) the Challenge Deadline has passed without the commencement of a Challenge.  The Prepetition ABL Indemnity Obligations shall be secured by a first lien on the Prepetition ABL Indemnity Reserve and the funds therein and by a lien on the Prepetition Collateral.  The Prepetition ABL Administrative Agent (for itself and on behalf of the Prepetition ABL Parties) shall retain and maintain the Prepetition ABL Liens granted to the Prepetition ABL Administrative Agent as security for the amount of any Prepetition ABL Indemnity Obligations not capable of being satisfied from application of the funds on deposit in the Prepetition ABL Indemnity Reserve. The Prepetition ABL Indemnity Reserve, subject to satisfaction of the payment in full of the Prepetition ABL Indemnity Obligations, shall be subject to the DIP Liens and the Adequate Protection Liens, subject to the priority set forth herein.  The Prepetition ABL Indemnity Reserve (and the liens granted to and maintained by the Prepetition ABL Administrative Agent in accordance with this paragraph 16) shall be released and the funds applied in accordance with paragraph 23 of this Final Order upon the earlier to occur of (a) receipt by the Prepetition ABL Administrative Agent, the Prepetition Term Agent and the Prepetition ABL Lenders of releases and discharges of claims and liabilities in form and substance satisfactory to the Prepetition ABL Administrative Agent, the Prepetition Term Agent, and the Prepetition ABL Lenders in their sole discretion, or (b) the expiration of the Challenge Deadline without the commencement of a Challenge.

17.  <u>Adequate Protection Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition ABL Parties hereunder (if any) is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases.  The receipt by the Prepetition Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected.  Further, this Final Order shall not prejudice or limit the rights of the Prepetition ABL Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection in a manner consistent with the Prepetition Documents, and all parties-in-interests' rights are reserved with respect thereto.

**Provisions Common to DIP Financing<br>and Use of Cash Collateral**

18.  <u>Amendment of the DIP Documents</u>.  The DIP Documents may from time to time be amended, modified, or supplemented by the parties thereto without further order of the Court if the amendment, modification, or supplement is (a) non-material or non-adverse to the Debtors and (b) in accordance with the DIP Documents.  In the case of a material amendment, modification, or supplement to the DIP Documents that is adverse to the Debtors' estates, the Debtors shall provide notice (which shall be provided through electronic mail) to counsel to the Committee and the U.S. Trustee (collectively, the "<u>Notice Parties</u>"), each of whom shall have five (5) days from the date of such notice to object in writing to such amendment, modification or supplement.  If all Notice Parties indicate that they have no objection to the amendment, modification or supplement (or if no objections are timely received), the Debtors may proceed to execute the amendment, modification or supplement, which shall become effective immediately upon execution.  If a Notice Party timely objects to such amendment, modification or

supplement, approval of the Court (which may be sought on an expedited basis) will be necessary to effectuate the amendment, modification or supplement; *provided* that such amendment, modification or supplement shall be without prejudice to the right of any party in interest to be heard.  Any material modification, amendment or supplement entered into in accordance with this paragraph shall be filed with the Court.

19.     Budget Maintenance.  The use of borrowings and letters of credit under the DIP Facility and the use of Cash Collateral shall be in accordance with the Budget, subject in all respects to the variances set forth in the DIP Agreement.  The Budget, and any modification to, or amendment or update thereof, shall be approved in writing (including by email) by, and shall be in form and substance satisfactory to, each of the DIP Administrative Agent and the DIP Term Agent in each of their sole discretion and such updated budget shall not be effective until so approved and once so approved shall be deemed an approved Budget hereunder and under the DIP Documents.  The Budget shall be updated, modified or supplemented by the Debtors with the written consent of the DIP Administrative Agent and the DIP Term Agent, and upon the request of the DIP Administrative Agent and the DIP Term Agent from time to time in accordance with the DIP Agreement (provided that any update, modification or supplement shall be approved in writing by, and shall be in form and substance satisfactory to, the DIP Administrative Agent and the DIP Term Agent in their sole discretion), and no such updated, modified or supplemented budget shall be effective until so approved and once approved shall be deemed the "Budget"; *provided, however* that in the event that the DIP Administrative Agent, the DIP Term Agent and the Debtors cannot agree as to an updated, modified or supplemented budget, the prior approved Budget shall continue in effect, with weekly details for any periods after the initial 13-week period to be derived in a manner reasonably satisfactory to the DIP

Administrative Agent and the DIP Term Agent from the monthly budget prepared by the Debtors (and approved by the DIP Administrative Agent and the DIP Term Agent in their sole discretion prior to the Closing Date) for these Cases, and such disagreement shall give rise to an Event of Default under the DIP Agreement once the period covered by the prior approved Budget has terminated. Each Budget delivered to the DIP Administrative Agent and the DIP Term Agent shall be accompanied by such supporting documentation as reasonably requested by the DIP Administrative Agent and the DIP Term Agent and shall be prepared in good faith, with due care and based upon assumptions the Debtors believe to be reasonable. A copy of any Budget (or updated Budget) shall be delivered to counsel for the Committee and the U.S. Trustee after (or if) it has been approved by the DIP Administrative Agent and the DIP Term Agent.

20. <u>Budget Compliance</u>. The Debtors shall at all times comply with the Budget, on the terms and subject to the variances set forth in the DIP Agreement. The Debtors shall provide all reports and other information as required in the DIP Agreement (subject to the grace periods provided therein). The Debtors' failure to comply with the Budget (on the terms and subject to the variances set forth in the DIP Agreement) or to provide the reports and other information required in the DIP Agreement shall constitute an Event of Default (as defined herein), following the expiration of any applicable grace period set forth in the DIP Agreement.

21. <u>Modification of Automatic Stay</u>. The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including to: (a) permit the Debtors to grant on a final basis the DIP Liens, Adequate Protection Liens (if any), DIP Superpriority Claims, and Prepetition ABL Superpriority Claim (if adequate protection is necessary); (b) permit the Debtors to perform such acts as the DIP Administrative Agent, the DIP Term Agent, the

Prepetition ABL Administrative Agent and the Prepetition Term Agent each may reasonably request to assure the perfection and priority of the liens granted under the Interim Order and this Final Order; (c) permit the Debtors to incur all liabilities and obligations to the DIP Administrative Agent, DIP Term Agent, DIP Lenders, and Prepetition Secured Parties under the DIP Documents, the DIP Facility, and this Final Order, as applicable; and (d) authorize the Debtors to pay, and the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, and the Prepetition ABL Parties to retain and apply, payments made in accordance with the terms of the Interim Order, this Final Order and the DIP Documents.

22.     <u>Perfection of DIP Liens and Adequate Protection Liens</u>.  This Final Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted under the Interim Order, this Final Order and confirmed herein, including the DIP Liens and the Adequate Protection Liens (if any), without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or mortgage) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to evidence or entitle the DIP Administrative Agent, the DIP Lenders, and the Prepetition Secured Parties to the priorities granted herein. Notwithstanding the foregoing, each of the DIP Administrative Agent and the Prepetition ABL Administrative Agent (but only in the event the Prepetition ABL Parties are granted Adequate Protection Liens pursuant to paragraph 12 of this Final Order) is authorized to file, in the applicable registries of deeds and other appropriate public records, as it in its sole discretion deems necessary or advisable, (i) notice of this Final Order, and (ii) such financing statements,

security agreements, mortgages, leasehold mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Adequate Protection Liens, and all such financing statements, mortgages, leasehold mortgages, notices, and other documents are deemed or shall be deemed, as applicable, to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or the Adequate Protection Liens (if any).  The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Administrative Agent and the Prepetition ABL Administrative Agent all such financing statements, mortgages, leasehold mortgages, notices, and other documents as the DIP Administrative Agent, the Prepetition ABL Administrative Agent or the DIP Term Agent may reasonably request.  Each of the DIP Administrative Agent, the DIP Term Agent and the Prepetition ABL Administrative Agent (but only in the event the Prepetition ABL Parties are granted Adequate Protection Liens pursuant to paragraph 12 of this Final Order), in its discretion, may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument.  To the extent that the Prepetition ABL Administrative Agent is the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements, or any other collateral documents or relevant Prepetition ABL Documents then automatically and without further action, (i) the DIP Administrative Agent shall be deemed to be a secured party under such documents, (ii) the DIP Facility, together with any refinancings or replacements thereof, shall be deemed to be secured obligations under such documents, and (iii) the applicable

provisions of such documents shall apply to the DIP Facility; all as fully and completely as if the DIP Administrative Agent was an original secured party in such documents and the DIP Facility was an original secured obligation in such documents.   To the extent the Prepetition ABL Administrative Agent is listed as loss payee or additional insured under any of the Debtors' insurance policies, the DIP Administrative Agent shall also be deemed to be the secured party under such documents or to be the loss payee or additional insured, as applicable.   The Prepetition ABL Administrative Agent shall serve as agent for the DIP Administrative Agent for purposes of perfecting the DIP Administrative Agent's liens on all DIP Collateral that, without giving effect to the Bankruptcy Code and this Final Order, is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party.

23.    Application of Proceeds of Collateral; Creation of Reserves.

(a)    As a condition to the continued extension of credit under the DIP Facility and the continued authorization to use Cash Collateral, the Debtors have agreed that as of and commencing on the date of the Interim Hearing, the Debtors shall apply all net proceeds of DIP Collateral and other payments received by the DIP Administrative Agent, including whether sold in the ordinary course or otherwise, as provided in the DIP Agreement.

(b)    Notwithstanding clause (a) hereof or anything to the contrary in the Final Order or DIP Documents, but subject to and after the funding of the Carve Out in accordance paragraph 39(a)(iii), immediately upon the repayment in full in cash of the DIP Obligations and the Prepetition ABL Obligations, including the cash collateralization of all letters of credit under the DIP Facility in accordance with the terms thereof, and receipt by the DIP Administrative Agent and the DIP Lenders, and the Prepetition ABL Administrative Agent and the Prepetition ABL Lenders, of a "no challenge" letter from the Committee and releases

(satisfactory to the DIP Administrative Agent and the DIP Lenders and the Prepetition ABL Administrative Agent and the Prepetition ABL Lenders), the following amounts shall be escrowed from Cash Collateral (to the extent there is sufficient Cash Collateral after the funding of the Carve Out and the repayment in full of the DIP Obligations and the Prepetition ABL Obligations as provided above):  first, (i) $2.8 million of proceeds shall be funded into an escrow account (the "Stub Rent Carve Out") to satisfy obligations arising under the Debtors' real property leases for the period August 2 through August 31, 2018 ("Stub Rent"), and then, (ii) payments under the key employee incentive plan (the "KEIP") approved by the Court on August 29, 2018, and then, (iii) $2,500,000 (the "Winddown Carve Out"), which shall be used to fund reasonable and necessary costs of winding down the Debtors' business and these cases, including professional fees not otherwise funded as part of the Carve Out and as set forth in the Budget; and (iv) $2,500,000 (the "503(b)(9) Carve Out"), which shall be used solely to satisfy claims allowed under section 503(b)(9) of the Bankruptcy Code (the "503(b)(9) Claims").  Undisputed claims for Stub Rent shall be paid within two weeks of the funding of the Stub Rent Carve Out and the Debtors shall work diligently to reconcile any disputed claims for Stub Rent and pay such amounts when agreed to by the Debtors and the affected landlord or determined by a final order of the Court.  Upon the final reconciliation and payment of Stub Rent, any remaining funds in the Stub Rent Carve Out shall be returned to the Debtors' operating account.  Any unused amounts in the Winddown Carve Out or 503(b)(9) Carve Out shall be returned to the Debtors' (or the Debtors' successors') operating account.

      24.     Protections of Rights of DIP Administrative Agent, DIP Term Agent, DIP Lenders and Prepetition ABL Parties.

      (a)     Unless the DIP Administrative Agent, the DIP Term Agent, and

the Prepetition ABL Administrative Agent, as applicable, shall have provided their prior written consent, or all DIP Obligations and all Prepetition ABL Obligations (excluding contingent indemnification obligations for which no claim has been asserted) have been, or contemporaneously will be, indefeasibly paid in full in cash and the lending commitments under the DIP Facility have terminated, there shall not be entered in any of these Cases or any Successor Cases any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral or Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Prepetition ABL Liens (only in the event and to the extent that there are Prepetition ABL Obligations that remain outstanding), the Adequate Protection Liens (if any), and/or the Prepetition ABL Superpriority Claim; (ii) the use of Cash Collateral for any purpose other than as permitted in the DIP Documents and this Final Order; (iii) except as set forth in the DIP Documents, the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor or any creditor's taking any setoff or recoupment against any of its prepetition indebtedness based upon any such return of goods pursuant to section 553 of the Bankruptcy Code or otherwise; or (iv) any modification of any of the DIP Administrative Agent's, the DIP Term Agent's, the DIP Lenders', or the Prepetition ABL Parties' rights under the Interim Order, this Final Order, the DIP Documents or the Prepetition ABL Documents, as applicable, with respect to any DIP Obligations or Prepetition ABL Obligations.

(b)     Until the DIP Obligations (excluding contingent indemnification

obligations for which no claim has been asserted) have been indefeasibly paid in full in cash, the Debtors shall (i) maintain books, records, and accounts to the extent and as required by the DIP Documents (and subject to the applicable grace periods set forth therein); (ii) reasonably cooperate with, consult with, and provide to the DIP Administrative Agent all such information and documents that any or all of the Debtors are obligated (including upon reasonable request by any of the DIP Administrative Agent) to provide under the DIP Documents or the provisions of this Final Order; (iii) upon reasonable advance notice, permit the DIP Administrative Agent and the Agent's Advisors (as defined in the DIP Agreement) of each of the DIP Administrative Agent and the Prepetition ABL Administrative Agent to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants, and other professional advisors (other than legal counsel) as and to the extent required by the DIP Documents and/or the Prepetition Documents; (iv) permit the DIP Administrative Agent, the Prepetition ABL Administrative Agent and the Agent's Advisors to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations, and assets; and (v) upon reasonable advance notice, permit the DIP Administrative Agent and the Prepetition ABL Administrative Agent to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations, liquidation valuations, and inventory appraisals at reasonable times in respect of any or all of the DIP Collateral and Prepetition Collateral in accordance with the DIP Documents and the Prepetition Documents.

        25.   <u>Credit Bidding</u>.   Subject to a timely and properly filed Challenge

commenced by the Challenge Deadline (which Challenge is successful as set forth in a final judgment), in connection with any sale process authorized by the Court the DIP Administrative Agent, the DIP Lenders, and the Prepetition ABL Parties may credit bid up to the full amount of the applicable outstanding DIP Obligations or Prepetition ABL Obligations (as applicable), in each case including any accrued interest and expenses (each a "Credit Bid") in any sale of any DIP Collateral or Prepetition Collateral, as applicable, whether such sale is effectuated through section 363 or section 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, subject in each case to the rights and duties of the parties under the DIP Documents and the Prepetition Documents and to the provision of consideration sufficient to pay in full in cash any senior liens on the collateral that is subject to the credit bid. Each of the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, and the Prepetition ABL Parties shall be considered a "Qualified Bidder" with respect to its rights to acquire all or any of the assets by Credit Bid.

26.    Proceeds of Subsequent Financing.    If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c), or 364(d) or in violation of the DIP Documents at any time prior to the indefeasible repayment in full of all DIP Obligations, and the termination of the DIP Administrative Agent's and the DIP Lenders' obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, and such facilities are secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Administrative Agent to be applied in accordance with this Final Order and the DIP Documents.

27.     Cash Collection.  From and after the date of the entry of the Interim Order,

all collections and proceeds of any DIP Collateral or Prepetition Collateral or services provided

by any Debtor and all Cash Collateral (except as otherwise set forth herein or in the DIP

Agreement) that shall at any time come into the possession, custody, or control of any Debtor, or

to which any Debtor is now or shall become entitled at any time, shall continue to be promptly

deposited in the same lock-box and/or deposit accounts into which the collections and proceeds

of the Prepetition Collateral were deposited under the Prepetition Documents (or in such other

accounts as are designated by the DIP Administrative Agent from time to time) (collectively, the

"Cash Collection Accounts"), which accounts (except as otherwise set forth in the DIP

Agreement) shall be subject to the sole dominion and control of the DIP Administrative Agent.

All proceeds and other amounts in the Cash Collection Accounts shall be remitted to the DIP

Administrative Agent for application in accordance with the DIP Documents and this Final

Order.  Unless otherwise agreed to in writing by the DIP Administrative Agent, or otherwise

provided for herein, the Debtors shall maintain no accounts except those identified in any cash

management order entered by the Court (a "Cash Management Order").  The Debtors and the

financial institutions where the Debtors' Cash Collection Accounts are maintained (including

those accounts identified in any Cash Management Order) are authorized and directed to remit,

without offset or deduction, funds in such Cash Collection Accounts upon receipt of any

direction to that effect from the DIP Administrative Agent.

28.     Maintenance of DIP Collateral.  Until the indefeasible payment in full of

all DIP Obligations, all Prepetition ABL Obligations, and the termination of the DIP

Administrative Agent's and the DIP Lenders' obligation to extend credit under the DIP Facility,

the Debtors shall: (a) insure the DIP Collateral as required under the DIP Facility or the

Prepetition ABL Facility (but only in the event that there are Prepetition ABL Obligations that remain outstanding), as applicable; and (b) maintain the cash management system in effect as of the Petition Date, as modified by any Cash Management Order, or as otherwise required by the DIP Documents or this Final Order.

29. <u>Disposition of DIP Collateral.</u>  Until, or contemporaneously with, the indefeasible payment in full of all DIP Obligations and Prepetition ABL Obligations, the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral or Prepetition Collateral other than in the ordinary course of business without the prior written consent of the DIP Administrative Agent and Prepetition ABL Administrative Agent, as applicable (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Administrative Agent, DIP Lenders, the Prepetition ABL Administrative Agent, or the Prepetition ABL Parties, or from any order of this Court), except as otherwise provided for in the DIP Documents or otherwise ordered by the Court.

30. <u>DIP Termination Date</u>.  On the DIP Termination Date: (a) all applicable DIP Obligations shall be immediately due and payable, all commitments to extend credit under the applicable DIP Facility will terminate, other than as required in paragraph 39 with respect to the Carve Out, all treasury and cash management, hedging obligations and bank product obligations constituting Obligations (as defined in the DIP Agreement) shall be cash collateralized, and all letters of credit and bankers' acceptances outstanding shall be cash collateralized in an amount equal to 105% of the face amount thereof, and such cash collateral shall not be subject to or subordinate to the Carve Out; (b) all authority to use Cash Collateral shall cease, *provided, however*, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral to pay payroll obligations (other than severance) and other

expenses that the DIP Administrative Agent and DIP Term Agent approve as critical to keeping the Debtors' business operating subject to the Budget; *provided further* that following delivery of the Carve Out Trigger Notice (as defined herein), the Debtors shall be entitled to fund the Carve Out (as defined herein) in accordance with paragraph 39 of this Final Order; and (c) upon the expiration of the Remedies Notice Period, the DIP Administrative Agent shall be entitled to exercise rights and remedies under the DIP Documents in accordance with this Final Order (including paragraph 33). For the purposes of this Final Order, "<u>DIP Termination Date</u>" shall mean the "Termination Date" as defined in the DIP Agreement.

31.    <u>Events of Default</u>.  The occurrence of any of the following events, unless waived by the DIP Administrative Agent and DIP Term Agent in writing and in accordance with the terms of the DIP Agreement, shall constitute an event of default (an "<u>Event of Default</u>"): (a) the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Final Order, including the failure to comply with the Case Milestones (as defined herein), or (b) the occurrence of an "Event of Default" the DIP Agreement.

32.    <u>Milestones</u>.  As a condition to the DIP Facility and the use of Cash Collateral, the Debtors shall comply with the Required Milestones (as defined on Schedule 4.18 to the DIP Agreement), which are set forth on <u>Schedule 2</u> hereto (as may be amended from time to time in accordance with the DIP Documents, the "<u>Case Milestones</u>"). For the avoidance of doubt, the failure of the Debtors to comply with any of the Case Milestones shall (a) constitute an Event of Default under the DIP Agreement and this Final Order; (b) subject to the expiration of the Remedies Notice Period (as defined below), result in the automatic termination of the Debtors' authority to use Cash Collateral under this Final Order; and (c) permit the DIP

Administrative Agent, subject to paragraph 33, to exercise the rights and remedies provided for in this Final Order and the DIP Documents.

33. <u>Rights and Remedies Upon Event of Default</u>. Immediately upon the occurrence and during the continuation of an Event of Default, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this Final Order (and the Remedies Notice Period) (a) the DIP Administrative Agent may declare (any such declaration shall be referred to herein as a "<u>Termination Declaration</u>") (i) all DIP Obligations owing under the respective DIP Documents to be immediately due and payable, (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, (iii) termination of the DIP Facility and the DIP Documents as to any future liability or obligation of the DIP Administrative Agent, the DIP Term Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, and (iv) that the application of the Carve Out has occurred through the delivery by the DIP Administrative Agent of the Carve Out Trigger Notice (as defined herein) to the Debtors, the U.S. Trustee, and counsel to the Committee; and (b) the DIP Administrative Agent may declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral (the date which is the earliest to occur of any such date a Termination Declaration is delivered and the DIP Termination Date shall be referred to herein as the "<u>Termination Date</u>"). The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the Committee, and the U.S. Trustee. The automatic stay in the Cases otherwise applicable to the DIP Administrative Agent, the DIP Lenders, and the Prepetition ABL Parties is hereby modified so that five (5) business days after the date a

Termination Declaration is delivered (the "Remedies Notice Period"), subject to first funding the Carve Out (as defined herein), the DIP Administrative Agent and the DIP Lenders shall be entitled to exercise their rights and remedies in accordance with the DIP Documents and this Final Order to satisfy the DIP Obligations, DIP Superpriority Claim, and DIP Liens; *provided* that upon the repayment in full of the DIP Obligations, and to the extent that there are Prepetition ABL Obligations that remain outstanding, the Prepetition ABL Parties shall be entitled to exercise their rights and remedies in accordance with the Prepetition ABL Documents and this Final Order to satisfy the Prepetition ABL Obligations, the Prepetition ABL Adequate Protection Liens, and the Prepetition ABL Superpriority Claim. During the Remedies Notice Period, the Debtors and/or the Committee shall be entitled to seek an emergency hearing within the Remedies Notice Period. Unless the Court orders otherwise, the automatic stay, as to DIP Administrative Agent, the DIP Lenders, and the Prepetition ABL Parties, as applicable, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration of the Remedies Notice Period, the DIP Administrative Agent, the DIP Lenders, and, in the event that there are Prepetition ABL Obligations that remain outstanding, the Prepetition ABL Parties shall be permitted to exercise all remedies set forth herein, in the DIP Documents or the Prepetition ABL Documents, as applicable, and as otherwise available at law without further order of or application or motion to the Court consistent with the Subordination Agreement, the DIP Agreement and paragraph 29 of this Final Order. Upon the occurrence and during the continuation of an Event of Default and the expiration of the Remedies Notice Period, the DIP Administrative Agent and any liquidator or other professional will have the right to access and utilize, on a royalty-free basis, any trade names, trademarks, copyrights or other intellectual property and any warehouse, distribution centers, store or other

locations that the Debtors have a right to occupy to the extent necessary or appropriate in order to sell, lease or otherwise dispose of any of the DIP Collateral, including pursuant to any Court approved sale process.

34.    <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order</u>.  The DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, and the Prepetition ABL Parties have acted in good faith in connection with the Interim Order and this Final Order and are entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code.  Based on the findings set forth in the Interim Order, this Final Order and the record made during the Interim Hearing and the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of the Interim Order or this Final Order are hereafter reargued, reconsidered, reversed, modified, amended, or vacated by a subsequent order of this Court or any other court, the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, and the Prepetition ABL Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code to the maximum extent set forth therein.

35.    <u>DIP and Other Expenses</u>.  The Debtors are authorized and directed to pay (a) all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses due and outstanding as of the Petition Date of the Prepetition ABL Parties in accordance with the Prepetition ABL Documents, and (b) all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, in connection with the DIP Facility, as provided in the DIP Documents including attorneys' fees, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses.  Payment of all such

fees and expenses shall not be subject to allowance by the Court. Professionals for the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, and the Prepetition ABL Parties shall not be required to submit invoices in any particular format, however any time that such professionals seek payment of fees and expenses from the Debtors, each professional shall provide copies of its invoices (which shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) to the U.S. Trustee and counsel for the Committee contemporaneously with the delivery of such fee and expense statements to the Debtors. Any objections raised by the Debtors, the U.S. Trustee or the Committee with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) days of the receipt of such invoice; if after ten (10) days such objection remains unresolved, it will be subject to resolution by the Court. Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors. Notwithstanding the foregoing, the Debtors were authorized and directed to pay on the Closing Date all reasonable and documented fees, costs, and out-of-pocket expenses of the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, and the Prepetition ABL Parties incurred on or prior to such date. No attorney or advisor to the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders or any Prepetition ABL Party shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

36.    <u>Indemnification</u>.  The Debtors shall indemnify and hold harmless the DIP Administrative Agent, the DIP Term Agent, and the DIP Lenders in accordance with the terms and conditions of the DIP Agreement.  Upon the repayment in full in cash of the DIP Revolving Loans, the Debtors shall pay $500,000 from proceeds of the DIP Collateral into an indemnity account (the "<u>DIP Indemnity Account</u>") subject to first priority liens of the DIP Administrative Agent, for the benefit of the DIP Administrative Agent, the DIP Term Agent and the DIP Lenders.  The DIP Indemnity Account shall secure contingent indemnification obligations and other contingent claims arising under the DIP Agreement, the other DIP Documents or otherwise in respect of the DIP Obligations until such time as the DIP Administrative Agent, the DIP Term Agent and the DIP Lenders receive releases and discharges of claims and liabilities in form and substance reasonably satisfactory to the DIP Administrative Agent, the DIP Term Agent, and the DIP Lenders.

37.    <u>Proofs of Claim</u>.  The DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, and Prepetition ABL Parties will not be required to file proofs of claim in any of the Cases or Successor Cases for any claim allowed herein.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases to the contrary, the Prepetition ABL Administrative Agent, on behalf of itself and the Prepetition ABL Parties, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in each of the Cases or Successor Cases with respect to the Prepetition ABL Obligations.  Any proof of claim filed by the Prepetition ABL Administrative Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition ABL Parties.  Any order entered by the Court in relation to the establishment of a bar date in any of

the Cases or Successor Cases shall not apply to any claim of the DIP Administrative Agent, the DIP Lenders, and the Prepetition ABL Parties arising under, or in connection with, the DIP Documents or the Prepetition ABL Documents, as applicable.

38.    <u>Rights of Access and Information</u>.  Without limiting the rights of access and information afforded the DIP Administrative Agent, the DIP Term Agent and the DIP Lenders under the DIP Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Administrative Agent, the DIP Term Agent and the Prepetition ABL Administrative Agent reasonable access to the Debtors' premises and their books and records in accordance with the DIP Documents and the Prepetition ABL Documents, as applicable, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.  The DIP Lenders may participate in any such visit or inspection at the expense of the Debtors as set forth in the DIP Documents. In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants, to cooperate, consult with, and provide to the DIP Administrative Agent, the DIP Term Agent and the Prepetition ABL Administrative Agent all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any of the Debtors.

39.    <u>Carve Out</u>.

(a)    Subject to the terms and conditions contained in this paragraph 39, the DIP Liens, DIP Superpriority Claim, the Prepetition Liens, the Adequate Protection Liens and the Prepetition ABL Superpriority Claim are all subordinate to the following (collectively, the "<u>Carve Out</u>"):

(i)    Allowed administrative expenses pursuant to 28 U.S.C. §

1930(a)(6) for fees payable to the Office of the United States Trustee, as determined by agreement of the U.S. Trustee or by final order of this Court and 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of this Court;

        (ii)    All accrued and unpaid fees, disbursements, costs and expenses, allowed at any time by this Court and incurred by professionals retained by the Debtors or the Committee (the "Case Professionals"), through the date of service of a Carve Out Trigger Notice (as defined below), up to and as limited by the Budget amounts for each Case Professional or category of Case Professional through the date of service of said Carve Out Trigger Notice (including partial amounts for any Carve Out Trigger Notice given other than at the end of a week, and after giving effect to all carryforwards and carrybacks from prior or subsequent favorable budget variances for such Case Professional), less the amount of any prepetition retainers received by such Case Professionals and not previously returned or applied to fees and expenses; and

        (iii)    All accrued and unpaid fees, disbursements and expenses incurred by the Case Professionals from and after the date of service of a Carve Out Trigger Notice, to the extent allowed at any time, in an aggregate amount not to exceed $350,000 (the "Carve Out Cap") less the amount of any prepetition retainers received by such Case Professionals and not applied to the fees, disbursements, costs and expenses set forth in clause (b) above.  The Carve Out Cap shall be reduced on a dollar-for-dollar basis by any payments of fees or expenses of the Case Professionals made after delivery of the Carve Out Trigger Notice in respect of fees and expenses incurred after delivery of the Carve Out Trigger Notice.  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by the DIP Administrative Agent to the Debtors and their counsel, the U.S. Trustee and lead counsel to any Committee,

which notice may be delivered at any time by the DIP Administrative Agent (a) in connection with the repayment in full in cash of the DIP Obligations and the Prepetition ABL Obligations owing to the Revolving Lenders and their Affiliates (as defined in the DIP Agreement) or (b) following the occurrence and continuance of any Event of Default and, in any case, shall specify that it is a "Carve Out Trigger Notice."  Coincident with the repayment in full in cash of the DIP Obligations and the Prepetition ABL Obligations owing to the Revolving Lenders and their Affiliates (as defined in the DIP Agreement) (the date of such repayment, the "Repayment Date"), an amount equal to the Carve Out (as of the Repayment Date), shall, to the extent reflected in the most recent borrowing base certificate delivered to the DIP Administrative Agent by the Debtors and maintained as part of a reserve against the borrowing base, be funded (to the extent of any shortfall therein) with the proceeds of DIP Revolving Loans (which shall then constitute DIP Obligations owing to the Revolving Lenders and their Affiliates (as defined in the DIP Agreement) and be included in the repayment amount) and/or Cash Collateral.  Following delivery of a Carve Out Trigger Notice, upon the funding of the Carve Out as of the date of the Carve Out Trigger Notice, none of the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, and the Prepetition ABL Parties shall have any further liability whatsoever for the Carve Out (including any amounts described in subsections (a)(i)-(iii) above) or any subordination in respect thereof.

(b)    For the avoidance of doubt (but subject to subsection (a)(iii) above), the Carve Out shall be senior to the DIP Liens, the DIP Superpriority Claim, the Prepetition Liens, the Adequate Protection Liens and the Prepetition ABL Superpriority Claim, and any and all other forms of adequate protection, liens or claims securing the DIP Obligations and/or the Prepetition Secured Obligations.

(c)      Nothing herein, including the inclusion of line items in the Budget for Case Professionals, shall be construed as consent to the allowance of any particular professional fees or expense of the Debtors, of any Committee, or of any other person or shall affect the right of the DIP Administrative Agent, the Prepetition ABL Administrative Agent, or the Prepetition Secured Lenders to object to the allowance and payment of such fees and expenses.   The DIP Administrative Agent, the DIP Term Agent, the DIP Lenders and the Prepetition ABL Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code.   Nothing in the Interim Order or this Final Order or otherwise shall be construed to obligate the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders or the Prepetition ABL Parties in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

40.      <u>Limitations on Use of DIP Proceeds, Cash Collateral, and Carve Out</u>.   The DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral and the Carve Out may not be used in connection with: (a) except to contest the occurrence of an Event of Default, preventing, hindering, or delaying any of the DIP Administrative Agent's, the DIP Term Agent's, the DIP Lenders', or the Prepetition ABL Parties' enforcement or realization upon any of the DIP Collateral or Prepetition Collateral; (b) using or seeking to use Cash Collateral except as provided for in this Final Order and the DIP Documents; (c) except as permitted in the DIP Documents, selling or otherwise disposing of DIP Collateral without the consent of the DIP Administrative Agent; (d) except as permitted in the DIP Documents, using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Administrative

Agent; (e) except as permitted in the DIP Documents, incurring Indebtedness (as defined in the DIP Agreement) without the prior consent of the DIP Administrative Agent; (f) seeking to amend or modify any of the rights granted to the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, or the Prepetition ABL Parties under the Interim Order, this Final Order, the DIP Documents, or the Prepetition ABL Documents, including seeking to use Cash Collateral and/or DIP Collateral on a contested basis; (g) objecting to or challenging in any way the DIP Liens, the DIP Obligations, the Prepetition ABL Liens, the Prepetition ABL Obligations, the DIP Collateral (including Cash Collateral) or, as the case may be, Prepetition Collateral, or any other claims or liens, held by or on behalf of any of the DIP Administrative Agent, the DIP Lenders, or the Prepetition ABL Parties, respectively; (h) asserting, commencing, or prosecuting any claims or causes of action whatsoever, including any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against any of the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, the Prepetition ABL Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees; (i) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition ABL Liens, the Prepetition ABL Obligations or any other rights or interests of any of the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, or the Prepetition ABL Parties; or (j) seeking to subordinate, recharacterize, disallow or avoid the DIP Obligations or the Prepetition ABL Obligations; *provided, however*, that the Carve Out and such collateral proceeds and loans under the DIP Documents may be used for allowed fees and expenses, in an amount not to exceed $50,000 in the aggregate (the "Investigation Budget Amount"), incurred solely by

the Committee, in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority or extent of the Prepetition Liens, Prepetition ABL Obligations and Prepetition Collateral (other than the Prepetition Sanpower Liens and the Prepetition Sanpower Collateral), in accordance with paragraph 42 of this Final Order.

41.    Payment of Compensation. Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses or shall affect the right of the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, or the Prepetition ABL Parties to object to the allowance and payment of such fees and expenses. So long as an unwaived Event of Default has not occurred, the Debtors shall be permitted to pay fees and expenses allowed and payable by final order (that has not been vacated or stayed, unless the stay has been vacated) under sections 328, 330, 331, and 363 of the Bankruptcy Code, as the same may be due and payable, as reflected in the most recent Budget provided by the Debtors to the DIP Administrative Agent and the DIP Term Agent.

42.    Effect of Stipulations on Third Parties.

(a)    *Generally*. The admissions, stipulations, agreements, releases, and waivers set forth in the Interim Order and this Final Order (collectively, the "Prepetition Lien and Claim Stipulations") are and shall be binding on the Debtors. In addition, the Prepetition Lien and Claim Stipulations shall be binding on any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and, other than the stipulations contained in paragraph F(vii), all creditors and parties in interest and all of their successors in interest and assigns, including the Committee, unless, and solely to the extent that, a party in interest with standing and requisite authority (other than the Debtors, as to which any Challenge (as defined below) is irrevocably waived and relinquished) (i) has timely filed the appropriate

pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph 42) challenging the Prepetition Lien and Claim Stipulations (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge") by no later than (a) October 13, 2018, for the Committee, or (b) October 17, 2018, for any other party in interest with requisite standing (the "Challenge Deadline"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition ABL Administrative Agent and Prepetition Term Agent (with respect to the Prepetition ABL Documents), or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal.    Notwithstanding the foregoing, if a chapter 11 trustee is appointed or the Cases are converted to chapter 7 prior to the expiration of the Challenge Deadline, (1) the chapter 11 trustee or chapter 7 trustee, as applicable, shall have until the later of the Challenge Deadline or the tenth (10th) day after the appointment of the chapter 11 trustee or the conversion of the Cases to chapter 7, as applicable, to commence a Challenge, subject to any further extension by order of the Court for cause; and (2) if the Committee has asserted a Challenge prior to the Challenge Deadline, the chapter 11 trustee or chapter 7 trustee will stand in the shoes of the Committee in such Challenge.

(b)    *Binding Effect*.  To the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien

and Claim Stipulations, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Stipulations shall, pursuant to this Final Order, become binding, conclusive, and final on any person, entity, or party in interest in the Cases, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party in interest, including a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates, other than with respect to the stipulations contained in paragraph F(vii). Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Stipulations shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (a) above except to the extent that any of such Prepetition Lien and Claim Stipulations is expressly the subject of a timely and properly filed Challenge, which Challenge is successful as set forth in a final judgment as provided in subparagraph (a) above. To the extent any such Challenge proceeding is timely and properly commenced, the Prepetition ABL Parties shall be entitled to payment of the related costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred under the Prepetition Documents in defending themselves in any such proceeding as adequate protection. Upon a successful Challenge brought pursuant to this paragraph 42, the Court may fashion any appropriate remedy.

(c)     Notwithstanding anything to the contrary in this Final Order, the Challenge Deadline shall not apply with respect to Sanpower or the Sanpower Secured Notes.

43.     <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

44.    <u>Section 506(c) Claims</u>.  No costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, the Prepetition ABL Parties, or any of their respective claims, the DIP Collateral, or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders or the Prepetition ABL Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

45.    <u>No Marshaling/Applications of Proceeds</u>.  The DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, and the Prepetition ABL Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Final Order and the DIP Documents notwithstanding any other agreement or provision to the contrary.  Notwithstanding the foregoing or anything to the contrary in this Final Order or the DIP Documents, the DIP Obligations and Prepetition ABL Obligations shall only be satisfied out of causes of action arising under Chapter 5 of the Bankruptcy Code and state law equivalents, and proceeds thereof, after all other DIP Collateral has been exhausted.

46.    <u>Section 552(b)</u>.  The Prepetition ABL Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition ABL Parties, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

47.   <u>Access to DIP Collateral</u>.  Notwithstanding anything contained herein to the contrary (but subject to the last sentence of this paragraph 47, which shall control in the event of any conflict) and without limiting any other rights or remedies of the DIP Administrative Agent exercisable on behalf of the DIP Lenders contained in this Final Order, the DIP Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Documents, upon written notice to the landlord of any leased premises that an Event of Default or the Termination Date has occurred and is continuing, the DIP Administrative Agent may, subject to the applicable notice provisions, if any, in this Final Order and any separate applicable agreement by and between such landlord and the DIP Administrative Agent, enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtors' rights, privileges and responsibilities as lessee under such lease without interference from the landlords thereunder. Nothing herein shall require the DIP Administrative Agent to assume any lease as a condition to the rights afforded in this paragraph.  For the avoidance of doubt, subject to (and without waiver of) the rights of the DIP Administrative Agent, the DIP Term Agent and the DIP Lenders under applicable nonbankruptcy law, the DIP Administrative Agent, the DIP Term Agent and/or the DIP Lenders can only enter upon a leased premises in accordance with (i) a separate agreement with the landlord at the applicable leased premises or (ii) upon entry of an order of this Court obtained by motion of the DIP Administrative Agent, the DIP Term Agent and/or the DIP Lenders on such notice to the applicable landlord as shall be required by the Court; *provided*, *however*, that such restriction on the rights of the DIP Administrative Agent, the DIP Term Agent and the DIP Lenders to access any leased premises shall not apply to the Debtors' distribution center located in the City of Mexico, Missouri, governed by that certain Amended

and Restated Lease Agreement with Option to Purchase, dated as of March 1, 2004, between the City of Mexico, Missouri and Brookstone Stores, Inc.

48.    Limits on Lender Liability.    Nothing in the Interim Order, this Final Order, any of the DIP Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders or the Prepetition ABL Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Cases. The DIP Administrative Agent, the DIP Term Agent and the DIP Lenders shall not, solely by reason of having made loans under the DIP Facility, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute). Nothing in the Interim Order, this Final Order or the DIP Documents, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, or any of the Prepetition ABL Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

49.    Insurance Proceeds and Policies.    As of the entry of the Interim Order and to the fullest extent provided by applicable law, the DIP Administrative Agent (on behalf of the DIP Lenders) and the Prepetition ABL Administrative Agent (on behalf of the Prepetition ABL Lenders) were, and were deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors that in any way

relates to the DIP Collateral or proceeds thereof.

50.    Joint and Several Liability.  Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that Debtors shall be jointly and severally liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and of the DIP Facility and the DIP Documents.

51.    No Superior Rights of Reclamation.  Based on the findings and rulings herein regarding the integrated nature of the DIP Facility and the Prepetition Documents and the relation back of the DIP Liens, in no event shall any alleged right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) be deemed to have priority over the DIP Liens.

52.    Rights Preserved.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, subject to the DIP Documents, the Prepetition Documents and the Subordination Agreement, as applicable: (a) the DIP Administrative Agent's, the DIP Term Agent's, the DIP Lenders' and the Prepetition ABL Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, and/or the Prepetition ABL Parties under the Bankruptcy Code or under non-bankruptcy law, including the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims or

privileges (whether legal, equitable or otherwise) of any of the DIP Administrative Agent, the DIP Lenders, or the Prepetition ABL Parties. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', the Committee's, or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Final Order.

53.    No Waiver by Failure to Seek Relief.    The failure of the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, or Prepetition ABL Parties to seek relief or otherwise exercise their rights and remedies under this Final Order, the DIP Documents, the Prepetition ABL Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, the Prepetition ABL Parties, the Committee, or any party in interest.

54.    Binding Effect of Final Order.    Immediately upon execution by this Court, the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, the Prepetition ABL Parties, all other creditors of any of the Debtors, any Committee (or any other court appointed committee) appointed in the Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

55.    No Modification of Final Order.    Until and unless the DIP Obligations and the Prepetition ABL Obligations (other than contingent obligations with respect to then unasserted claims) have been indefeasibly paid in full in cash, and all letters of credit under the

DIP Facility shall have been cancelled, backed, or cash collateralized in accordance with the terms thereof (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the DIP Administrative Agent, the DIP Term Agent and the Prepetition ABL Administrative Agent, (i) any modification, stay, vacatur or amendment to this Final Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claims or Prepetition ABL Superpriority Claim, other than the Carve Out; (b) without the prior written consent of the DIP Administrative Agent, the DIP Term Agent and the Prepetition ABL Administrative Agent for any order allowing use of Cash Collateral (other than as permitted during the Remedies Notice Period) resulting from DIP Collateral or Prepetition Collateral; (c) without the prior written consent of the DIP Administrative Agent and DIP Term Agent, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Documents; or (d) without the prior written consent of the Prepetition ABL Administrative Agent, any lien on any of the DIP Collateral with priority equal or superior to the Prepetition ABL Liens or Adequate Protection Liens (other than the DIP Liens).  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Final Order without the prior written consent, as provided in the foregoing, of the DIP Administrative Agent, the DIP Term Agent and the Prepetition ABL Administrative Agent, and no such consent shall be

implied by any other action, inaction or acquiescence of the DIP Administrative Agent, the DIP Term Agent or the Prepetition ABL Administrative Agent.

56.   Continuing Effect of Subordination Agreement.   Nothing in this Final Order shall alter or affect the rights or obligations of the Debtors, the DIP Administrative Agent, the DIP Lenders, and the Prepetition Secured Parties under the Subordination Agreement.

57.   Final Order Controls.   In the event of any inconsistency between the terms and conditions of the DIP Documents, the Interim Order, and/or of this Final Order, the provisions of this Final Order shall govern and control.

58.   Discharge.   The DIP Obligations and the obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted), on or before the effective date of such confirmed plan of reorganization, unless each of the DIP Administrative Agent, the DIP Term Agent, the DIP Lenders, and the Prepetition ABL Administrative Agent, as applicable, has otherwise agreed in writing.

59.   Survival.   The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases. The terms and provisions of this Final Order, including the claims, liens, security interests, and other protections granted to the DIP Administrative Agent, DIP Term Agent, DIP Lenders, and

Prepetition Secured Parties granted pursuant to the Interim Order and this Final Order and/or the DIP Documents, notwithstanding the entry of any such orders described in (a)-(d), above, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until: (i) in respect of the DIP Facility, all the DIP Obligations, pursuant to the DIP Documents and this Final Order, have been indefeasibly paid in full in cash (other than contingent obligations with respect to then unasserted claims) and all letters of credit under the DIP Facility shall have been cancelled or cash collateralized in accordance with the terms thereof (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility are terminated, and (ii) in respect of the Prepetition ABL Facility, all of the Prepetition ABL Obligations pursuant to the Prepetition ABL Documents and this Final Order, have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted) and the Challenge Deadline has passed without a Challenge being asserted. The terms and provisions concerning the indemnification of the DIP Administrative Agent and the DIP Lenders shall continue in the Cases, in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP Documents and/or the indefeasible repayment of the DIP Obligations.

60.    Treatment of Proceeds from Sale of Texas Assets. As adequate protection for the claims of the Local Texas Tax Authorities, the Debtors will fund a segregated account (the "Local Texas Tax Account") in the amount of $50,000 from the proceeds of the non-ordinary course sale of any of the Debtors' assets located in the state of Texas. The liens asserted by the Local Texas Tax Authorities (and all other liens junior to those of the Local

Texas Tax Authorities) shall attach to the Local Texas Tax Account to the same extent and with the same priority as the liens the Local Texas Tax Authorities assert against such assets of the Debtors.  The Local Texas Tax Account shall be maintained solely for the purpose of providing adequate protection for the Local Texas Tax Authorities prior to the distribution of any proceeds to any other creditor and shall constitute neither the allowance of the claims of the Local Texas Tax Authorities, nor a floor or cap on the amounts the Local Texas Tax Authorities may be entitled to receive.  All parties' rights to object to the priority, validity, amount and extent of the claims and liens asserted by the Local Texas Tax Authorities are fully preserved.  Funds in the Local Texas Tax Account may be distributed upon agreement between the Local Texas Tax Authorities and the Debtors, with the consent of the DIP Administrative Agent and the DIP Term Agent, or by subsequent order of the Court, duly noticed to the Local Texas Tax Authorities, the DIP Administrative Agent and the DIP Term Agent.

61.    *Nunc Pro Tunc* Effect of this Final Order.    This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

62.    Retention of Jurisdiction.  The Court has and will retain jurisdiction to enforce the terms of, any and all matters arising from or related to the DIP Facility, and/or this Final Order.

Dated:   August 30, 2018
         Wilmington, Delaware

BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE