## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BROOKSTONE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 18-11780 (BLS) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Ref. Docket No. 1114** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE THIRD AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF BROOKSTONE HOLDINGS CORP., ET AL., SUBMITTED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AS CO-PROPONENTS

Upon consideration of the *Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code of Brookstone Holdings Corp., et al., Submitted by the Debtors and the Official Committee of Unsecured Creditors as Co-Proponents* attached hereto as Exhibit A (together with all exhibits thereto, and as may be amended, modified, or supplemented, the "Plan") jointly proposed by the above-captioned debtors and debtors in possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Cases (the "Committee," and together with the Debtors, the "Plan Proponents"); and this Court having approved the *Disclosure Statement for the First Amended Joint Plan of Liquidation Under Chapter 11 of Brookstone Holdings Corp., et al., Submitted by the Debtors and the Official Committee of Unsecured Creditors as Co-Proponents*, [Docket No. 1038] (the "Disclosure Statement"), by order dated February 4, 2019 [Docket No. 1034] (the

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: Brookstone Holdings Corp. (4638), Brookstone, Inc. (2895), Brookstone Company, Inc. (3478), Brookstone Retail Puerto Rico, Inc. (5552), Brookstone International Holdings, Inc. (8382), Brookstone Purchasing, Inc. (2514), Brookstone Stores, Inc. (2513), Big Blue Audio LLC (N/A), Brookstone Holdings, Inc. (2515), and Brookstone Properties, Inc. (2517). The Debtors' corporate headquarters and the mailing address for each Debtor is One Innovation Way, Merrimack, NH 03054.

"Disclosure Statement Order"); and the Plan Proponents having filed the Plan Supplement on March 4, 2019 [Docket No. 1089]; and upon the affidavits of service filed reflecting compliance with the notice and solicitation requirements of the Disclosure Statement Order [Docket Nos. 949, 954, 1053, 1095, 1100] (the "Notice Affidavits"); and upon the *Notice of (I) Approval of Disclosure Statement, (II) Establishment of Voting Record Date, (III) Hearing on Confirmation of Plan and Procedures and Deadline for Objecting to Confirmation of Plan, and (IV) Procedures and Deadline for Voting on Plan* [Docket No. 1041] (the "Confirmation Hearing Notice"); and upon the *Declaration of Paul Deutch Regarding Analysis of Ballots For Accepting or Rejecting the Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code of Brookstone Holdings Corp., et al., Submitted by the Debtors And the Official Committee of Unsecured Creditors as Co-Proponents* [Docket No. 1115], filed with this Court on March 15, 2019 (the "Voting Declaration"); and upon the *Declaration of Greg Tribou in Support of Confirmation of the Third Amended Joint Plan of Liquidation of Brookstone Holdings Corp. and its Chapter 11 Affiliates and their Official Committee of Unsecured Creditors* [Docket No. 1116] (the "Tribou Declaration"), filed with this Court on March 15, 2019; and upon the *Memorandum of Law in Support of Confirmation of the Third Amended Joint Plan of Liquidation of Brookstone Holdings Corp. and Its Chapter 11 Affiliates and the Official Committee of Unsecured Creditors* [Docket No. 1117], filed with this Court on March 15, 2019 (the "Confirmation Memorandum"); and any objections to the Plan having been resolved and/or overruled by this Court pursuant to this Confirmation Order; and a hearing to consider Confirmation having been held on March 20, 2019 (the "Confirmation Hearing"); and upon the evidence adduced and proffered and the arguments of counsel made at the Confirmation Hearing; and this Court having reviewed all documents in connection with Confirmation and having heard all parties desiring to be heard;

and upon the record of the Chapter 11 Cases; and after due deliberation and consideration of all of the foregoing; and sufficient cause appearing therefor; this Court hereby makes the following:

**Findings of Fact and Conclusions of Law**

A.    **Findings of Fact and Conclusions of Law.** The findings and conclusions set forth herein, together with the findings of fact and conclusions of law set forth in the record of the Confirmation Hearing, constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to these proceedings pursuant to Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    **Capitalized Terms.** Capitalized terms used herein, but not defined herein, shall have the respective meanings attributed to such terms in the Plan and the Disclosure Statement, as applicable.

C.    **Jurisdiction and Venue.** This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the United States Constitution, and the Debtors consent to entry of this Confirmation Order under the Local Rules and Article III of the United States Constitution. Venue of these proceedings and the Chapter 11 Cases is proper in this district and in this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    **Chapter 11 Petitions.** On August 2, 2018 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors

continue to manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 14, 2018, the U.S. Trustee appointed the Committee. No request has been made for the appointment of a trustee or an examiner.

E.     **Judicial Notice.** This Court takes judicial notice of the docket in the Chapter 11 Cases maintained by the Clerk of this Court and/or its duly appointed agent, including, without limitation, all pleadings, notices, and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before this Court during the Chapter 11 Cases, including, without limitation, the Confirmation Hearing.

F.     **Plan Supplement.** Prior to the Confirmation Hearing, the Debtors, on behalf of the Plan Proponents filed the Plan Supplement. The Plan Supplement complies with the terms of the Plan, and the filing and notice of the Plan Supplement was appropriate and complied with the requirements of the Bankruptcy Code and the Bankruptcy Rules, and no other or further notice is or shall be required. The Plan Proponents are authorized to modify the Plan Supplement documents following entry of this Confirmation Order in a manner consistent with this Confirmation Order.

G.     **Mailing of Solicitation and Confirmation Materials.** As is evidenced by the Voting Declaration and the Notice Affidavits, the transmittal and service of the Plan, the Disclosure Statement, the ballots, the Confirmation Hearing Notice, and the notice of non-voting status were adequate and sufficient under the circumstances, and all parties required to be given notice of the Plan and the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation of the Plan) have been given due, proper, timely, and adequate notice thereof in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law,

and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice of the Plan and the Confirmation Hearing is required.

H.    **Voting.** The procedures by which the ballots for acceptance or rejection of the Plan were distributed and tabulated under the circumstances of the Chapter 11 Cases were fair, properly conducted, and complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, applicable non-bankruptcy law and the Disclosure Statement Order.

I.    **Bankruptcy Rule 3016(a).** In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors and the Committee as the Plan Proponents.

J.    **Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).** As set forth below, the Plan complies with all of the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

K.    **Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).** The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. In addition to Administrative Claims, Professional Fee Claims, and Priority Tax Claims, which need not be classified, the Plan designates five Classes of Claims and Interests. The Claims or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims and Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

L.    **Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).** Article III of the Plan specifies that Class 1 (Other Priority Claims) and Class 2 (Other Secured Claims) are Unimpaired under the Plan. Thus, section 1123(a)(2) of the Bankruptcy Code is satisfied.

M.    **Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).**
Article III of the Plan designates Class 3 (General Unsecured Claims), Class 4 (Existing Equity
Interests in the Brookstone Subsidiaries), and Class 5 (Existing Equity Interests in Brookstone
Parent) as Impaired and specifies the treatment of Claims and Interests in such Classes. Thus,
section 1123(a)(3) of the Bankruptcy Code is satisfied.

N.    **No Discrimination (11 U.S.C. § 1123(a)(4)).** The Plan provides for the same
treatment by the Plan Proponents for each Claim or Interest in each respective Class unless the
Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or
Interest. Thus, section 1123(a)(4) of the Bankruptcy Code is satisfied.

O.    **Implementation of the Plan (11 U.S.C. § 1123(a)(5)).** The Plan, the
Implementation Memorandum, and the Liquidating Trust Agreement provide adequate and
proper means for the Plan's implementation. Thus, section 1123(a)(5) of the Bankruptcy Code is
satisfied.

P.    **Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).** The Plan does not
provide for the issuance of any securities, including non-voting securities, and the Debtors are
being dissolved on, or as soon as practicable after, the Effective Date. Therefore, section
1123(a)(6) of the Bankruptcy Code is satisfied.

Q.    **Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).** Article IV.C.5 of
the Plan provides that the Liquidating Trust shall be governed by the Liquidating Trustee and the
Liquidating Trust Oversight Committee, as set forth in the Liquidating Trust Agreement and in
the Plan. Article IV.C.6 of the Plan provides for the Liquidating Trust to be governed and
administered by the Liquidating Trustee. The Liquidating Trustee was selected by the Plan
Proponents and the Liquidating Trustee's successor, if any, shall be selected pursuant to the

procedures set forth in the Liquidating Trust Agreement. Article IV.C.7 of the Plan provides for the Liquidating Trust Oversight Committee to oversee the activities of the Liquidating Trustee. The members of the Liquidating Trust Oversight Committee were selected by the Plan Proponents and any successors to the members of the Liquidating Trust Oversight Committee shall be selected pursuant to the procedures set forth in the Liquidating Trust Agreement. Therefore, section 1123(a)(7) of the Bankruptcy Code is satisfied.

R.      **Additional Plan Provisions (11 U.S.C. § 1123(b)).** The Plan's provisions are appropriate, in the best interests of the Debtors and their Estates, and consistent with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

S.      **Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).** The Plan Proponents have exercised reasonable business judgment in determining to either assume, assume and assign, or reject each of the Debtors' remaining Executory Contracts and Unexpired Leases as provided for in the Plan, the Plan Supplement, and this Confirmation Order, and any such assumptions and rejections are justified and appropriate in the Chapter 11 Cases. The Debtors' exercise of reasonable business judgment in determining to either assume, assume and assign, or reject each of the Debtors' remaining Executory Contracts and Unexpired Leases is justified and appropriate in the Chapter 11 Cases for the reasons set forth in the Disclosure Statement, the Confirmation Memorandum, and the Tribou Declaration.

T.      **Compromises and Settlements Under and in Connection with the Plan (11 U.S.C. § 1123(b)(3)).** All of the settlements and compromises pursuant to and in connection with the Plan (collectively, the "Settlement") comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. The Settlement is designed to achieve a beneficial and efficient resolution of the Chapter 11 Cases for all parties-in-interest. Accordingly,

01:24280532.1

except as otherwise set forth in the Plan or herein, in consideration for the distributions and other benefits provided for under the Plan, including the release, exculpation, and injunction provisions, the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan. Each component of the Settlement is an integral, integrated, and inextricably linked part of the Settlement.

U.    Based upon the representations and arguments of counsel to the Plan Proponents with respect to Confirmation, all other testimony either actually given or proffered in connection with Confirmation, other evidence introduced at the Confirmation Hearing, and the full record of the Chapter 11 Cases, this Confirmation Order constitutes this Court's approval of the Settlement. Based on the foregoing, the Settlement satisfies the requirements of applicable Third Circuit law for approval of settlements and compromises pursuant to Bankruptcy Rule 9019.

V.    The substantive consolidation of the Debtors' Estates as provided for in Article IV.A of the Plan is justified and appropriate in the Chapter 11 Cases for the reasons set forth in the Disclosure Statement, the Confirmation Memorandum, and the Tribou Declaration.

W.    **Releases, Exculpations, and Injunctions (11 U.S.C. § 1123(b)).** Under the facts and circumstances of the Chapter 11 Cases, the releases, exculpations, and injunctions provided for in the Plan are: (i) within the jurisdiction of this Court under 28 U.S.C. section 1334, (ii) an appropriate exercise of the Debtors' business judgment, (iii) integral elements of the transactions incorporated into the Plan and inextricably bound with the other provisions of the Plan, (iv) in exchange for good and valuable consideration provided by the Released Parties, (v) in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests that are Releasing Parties, (vi) fair, equitable, and reasonable, (vii) given and made after due notice and an opportunity to object and be heard with respect thereto, as the Disclosure Statement, the

Confirmation Hearing Notice, the Voting Instructions, the ballots, and the notice of non-voting status each unambiguously state that the Plan contains certain release, exculpation, and injunction provisions, and therefore such releases are consensual as they pertain to Holders of Claims and Interests, (viii) are consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code and other applicable law, and (ix) a bar to any of the Releasing Parties asserting any released claim against any of the Released Parties as and to the extent provided for in the Plan and this Confirmation Order.

X. **Plan Proponents' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).** Pursuant to section 1129(a)(2) of the Bankruptcy Code, the Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1122, 1123, 1124, 1125, and 1126 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order governing notice, disclosure, and solicitation in connection with the Plan, the Disclosure Statement, the Plan Supplement, and all other matters considered by this Court in connection with the Chapter 11 Cases.

Y. **Plan Proposed in Good Faith and Not by Means Forbidden by Law (11 U.S.C. § 1129(a)(3)).** The Plan Proponents have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in good faith, this Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation. The Plan is the result of extensive arm's-length negotiations among the Debtors, the Committee, and other key stakeholders and is supported by the Debtors' requisite creditors and other parties in interest in the Chapter 11 Cases. It is clear that the Plan promotes the objectives and purposes of the Bankruptcy Code.

Z.      **Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).** The procedures set forth in the Plan for this Court's approval of the fees, costs, and expenses to be paid in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

AA.     **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).** Article IV.E.1. of the Plan provides that, on and after the Effective Date, the Debtors' directors and officers shall stay in place until the Debtors are dissolved. The Liquidating Trustee and initial members of the Liquidating Trust Oversight Committee were selected by the Plan Proponents. Their identities and affiliations are set forth in the Plan Supplement. Thus, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

BB.     **No Rate Changes (11 U.S.C. § 1129(a)(6)).** The Plan does not provide for any rate change that requires regulatory approval. Section 1129(a)(6) of the Bankruptcy Code is thus inapplicable.

CC.     **Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).** The "best interests" test is satisfied as to all Impaired Classes under the Plan, as each Holder of a Claim or Interest in such Impaired Classes will receive or retain property of a value, as of the Effective Date, that is not less than the amount that such Holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

DD.     **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).** Class 1 (Other Priority Claims) and Class 2 (Other Secured Claims) are left unimpaired under the Plan and Class 3 (General Unsecured Claims) has voted to accept the Plan in accordance with the Bankruptcy Code, thereby satisfying section 1129(a)(8) as to those Classes. Class 4 (Existing Equity Interests

in the Brookstone Subsidiaries) and Class 5 (Existing Equity Interests in Brookstone Parent) are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Accordingly, section 1129(a)(8) of the Bankruptcy Code has not and cannot be satisfied. The Plan, however, is still confirmable because it satisfies the nonconsensual confirmation provisions of section 1129(b), as set forth below.

EE.    **Treatment of Administrative, Professional Fee, Priority Tax, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).** The treatment of Administrative Claims, Priority Tax Claims, Professional Fee Claims, and Other Priority Claims pursuant to Articles II and III of the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

FF.    **Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).** Class 3 (General Unsecured Claims) is an Impaired Class of Claims that voted to accept the Plan, determined without including any acceptance of the Plan by any insider. Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied.

GG.    **Feasibility (11 U.S.C. § 1129(a)(11)).** The Plan provides for the dissolution of the Debtors on, or as soon as practicable after, the Effective Date and the liquidation of the Debtors' property. Thus, section 1129(a)(11) of the Bankruptcy Code is satisfied.

HH.    **Payment of Fees (11 U.S.C. § 1129(a)(12)).** All fees payable under 28 U.S.C. section 1930 have been paid or will be paid on or before the Effective Date pursuant to the Plan, thus satisfying section 1129(a)(12) of the Bankruptcy Code.

II.    **Retiree Benefits (11 U.S.C. § 1129(a)(13)).** The Plan provides that on the Effective Date, the Debtors shall retain the OPEB Plan or, with the consent of the Liquidating Trustee, shall transfer the OPEB Plan to the Liquidating Trust and, in each case, shall preserve

all rights thereunder. The Plan, therefore, fully complies with sections 1114 and 1129(a)(13) of the Bankruptcy Code.

JJ.   **Miscellaneous   Provisions   (11   U.S.C.   §§ 1129(a)(14)-(16)).**   Sections 1129(a)(14)-(16) of the Bankruptcy Code are inapplicable to Confirmation, as the Debtors (i) have no domestic support obligations (section 1129(a)(14)), (ii) are not individuals (section 1129(a)(15)), and (iii) are not nonprofit corporations (section 1129(a)(16)).

KK.   **No   Unfair   Discrimination;   Fair   and   Equitable   Treatment   (11   U.S.C. § 1129(b)).** The classification and treatment of Interests in Class 4 (Existing Equity Interests in the Brookstone Subsidiaries) and Class 5 (Existing Equity Interests in Brookstone Parent), which are deemed to have rejected the Plan, is proper pursuant to section 1122 of the Bankruptcy Code, does not discriminate unfairly, and is fair and equitable pursuant to section 1129(b)(1) of the Bankruptcy Code. There is no Class of Claims or Interests junior to the Holders of Interests in Class 4 or Class 5 that will receive or retain property under the Plan on account of their Claims or Interests. Accordingly, the Plan does not violate the absolute priority rule, does not discriminate unfairly, and is fair and equitable with respect to each Class that is deemed to have rejected the Plan. Thus, the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to Classes 4 and 5.

LL.   **Only One Plan (11 U.S.C. § 1129(c)).** The Plan is the only chapter 11 plan currently proposed in the Chapter 11 Cases, and section 1129(c) of the Bankruptcy Code is therefore satisfied.

MM.   **Principal Purpose (11 U.S.C. § 1129(d)).** The principal purpose of the Plan is neither the avoidance of taxes, nor the avoidance of the application of section 5 of the Securities

Act of 1933, and no governmental unit has objected to Confirmation on any such grounds. Accordingly, section 1129(d) of the Bankruptcy Code is inapplicable.

NN.    **Satisfaction of Confirmation Requirements.** Based upon the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code, and should be confirmed.

OO.    **Good Faith Solicitation (11 U.S.C. § 1125(e)).** The Plan Proponents and their officers, directors, employees, advisors, Professionals Persons, and agents have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and they are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the injunction and exculpation provisions set forth in Article VIII of the Plan and in this Confirmation Order.

PP.    **Transfer of Apex Assets.** The transfer of the Apex Assets (as defined below) to Apex Digital Inc. ("Apex"), which forms a portion of the Settlement and is described in more detail in the Tribou Declaration, was negotiated and proposed in good faith, from arm's-length bargaining positions, and without collusion. Apex is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is entitled to the protections thereof. Neither the Debtors nor Apex have engaged in any conduct that would cause or permit the transfer of the Apex Assets to be avoided under section 363(n) of the Bankruptcy Code.

QQ.    **Retention of Jurisdiction.** This Court may properly retain jurisdiction over the matters set forth in Article XII of the Plan and/or section 1142 of the Bankruptcy Code.

01:24280532.1

**Based upon the foregoing findings, and upon the record made before this Court at the Confirmation Hearing, and good and sufficient cause appearing therefor, it is hereby ORDERED, ADJUDGED AND DECREED THAT:**

<u>Confirmation of the Plan</u>

1.     The Plan, as and to the extent modified by this Confirmation Order, is approved and confirmed pursuant to section 1129 of the Bankruptcy Code. Any objections to the Plan not otherwise withdrawn, resolved, or otherwise disposed of are overruled and denied.

2.     The terms of the Plan are incorporated by reference into (except to the extent modified by this Confirmation Order), and are an integral part of, this Confirmation Order.

<u>Compromises and Settlements Under the Plan</u>

3.     Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, upon the Effective Date, all settlements and compromises set forth in the Plan (including the Settlement) are approved in all respects, and constitute good faith compromises and settlements.

<u>Classification and Treatment</u>

4.     The Plan's classification scheme is approved. The classifications set forth on the ballots (a) were set forth on the ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes, (c) may not be relied upon by any Holder as representing the actual classification of such Claim under the Plan for distribution purposes, and (d) shall not be binding on the Plan Proponents and the Liquidating Trustee except for Plan voting purposes.

<u>Authorization to Implement the Plan</u>

5.     The Debtors and the Liquidating Trustee, as applicable, are authorized to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of,

01:24280532.1

and to consummate, the Plan and the Plan Transactions, and to execute, enter into, or otherwise make effective all documents arising in connection therewith, including, without limitation, all Plan Documents, prior to, on, and after the Effective Date.

6.      On the Effective Date, the officers of the Debtors are authorized to do all things and to execute and deliver all agreements, documents, instruments, notices, and certificates as are contemplated by the Plan and to take all necessary actions required in connection therewith, in the name of and on behalf of the Debtors.

7.      The approvals and authorizations specifically set forth in this Confirmation Order are not intended to limit the authority of the Liquidating Trustee, the Debtors, or any officer thereof to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.

8.      For the avoidance of doubt, the Plan and this Confirmation Order in no way authorize or approve any incentive payments under sections 105 or 503 of the Bankruptcy Code.

### Enforceability of the Plan

9.      Pursuant to sections 1123(a), 1141(a) and 1142 of the Bankruptcy Code, the Plan and all Plan Documents (including, but not limited to, the Liquidating Trust Agreement) shall be, and hereby are, valid, binding and enforceable.

### Vesting of Assets in the Liquidating Trust

10.      On the Effective Date, the Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Liquidating Trust all of their rights, title, and interest in and to all of the Liquidating Trust Assets, the Administrative/Priority Claims Reserve Account, and the Other Secured Claims Reserve Account, and in accordance with section 1141 of the Bankruptcy Code, except as specifically provided in the Plan or this Confirmation Order, the

Liquidating Trust Assets, the Administrative/Priority Claims Reserve Account, and the Other Secured Claims Reserve Account shall automatically vest in the Liquidating Trust free and clear of all liens, claims, and encumbrances, except to the extent otherwise provided in the Plan or this Confirmation Order; and such transfer shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax.

### Preservation of Retained Causes of Action

11.    Except as otherwise provided in the Plan or this Confirmation Order (a) in accordance with Section 1123(b)(3) of the Bankruptcy Code  and Article IV.M of the Plan, any retained Causes of Action that the Debtors may hold against any Entity shall vest upon the Effective Date in the Liquidating Trust and (b) after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle or compromise any retained Causes of Action, in accordance with the terms of the Liquidating Trust Agreement and without further order of this Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases.

### Reservation of Causes of Action

12.    Unless a Cause of Action against a holder or other Entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including this Confirmation Order), the Debtors and the Liquidating Trustee expressly reserve such Cause of Action for later adjudication by the Liquidating Trustee, including, without limitation, Causes of Action not specifically identified or described in the Plan Supplement or elsewhere or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those the Debtors now believe to exist. Therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue

01:24280532.1

preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation or after the entry of this Confirmation Order or Effective Date based on the Disclosure Statement, the Plan, or this Confirmation Order, except where such Causes of Action have been released in the Plan or any other Final Order. In addition, the Debtors and Liquidating Trustee expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

### Wind-Up and Dissolution of the Debtors

13.     The Debtors shall be dissolved as provided in the Implementation Memorandum. On the Effective Date or as soon thereafter as is reasonably practicable, the Liquidating Trustee shall wind-up the affairs of the Debtors, if any, subject to the Plan, the Implementation Memorandum, and the Liquidating Trust Agreement, and the Liquidating Trustee shall prepare and file (or cause to be prepared and filed) on behalf of the Debtors, all tax returns, reports, certificates, forms, or similar statements or documents (collectively, "Tax Returns") required to be filed or that the Liquidating Trustee otherwise deems appropriate, including the filing of amended Tax Returns or requests for refunds, for all taxable periods ending on, prior to, or after the Effective Date.

### Cancellation of Interests, Existing Securities, and Agreements

14.     On the Effective Date, except to the extent otherwise provided in the Plan or the Implementation Memorandum, all notes, instruments, certificates, and other documents evidencing Claims or Interests, shall be deemed cancelled and surrendered without any need for a Holder to take further action with respect thereto and the obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full and discharged. On the Effective

Date or as soon as reasonably practicable thereafter, as provided in the Implementation Memorandum, all Existing Equity Interests in the Brookstone Subsidiaries and all Existing Equity Interests in Brookstone Parent shall be cancelled and extinguished. Holders of Existing Equity Interests in the Brookstone Subsidiaries and the Brookstone Parent shall not receive any distribution or retain any property pursuant to the Plan.

### Substantive Consolidation

15.     Pursuant to sections 105(a) and 1123(a)(5)(C) of the Bankruptcy Code, the substantive consolidation of the Debtors is hereby approved, effective as of the Effective Date. As a result of such substantive consolidation, on and after the Effective Date, (a) all assets and all liabilities of the Debtors shall be deemed merged into Brookstone Parent, (b) all guaranties of any Debtor of the payment, performance, or collection of obligations of another Debtor shall be eliminated and cancelled, (c) any obligation of any Debtor and all guaranties thereof executed by one or more of the other Debtors shall be treated as a single obligation, and such guaranties shall be deemed a single Claim against the consolidated Debtors, (d) all joint obligations of two or more Debtors and all multiple Claims against such entities on account of such joint obligations shall be treated and allowed only as a single Claim against the consolidated Debtors, and (e) each Claim filed in the Chapter 11 Case of any Debtor shall be deemed filed against the consolidated Debtors and a single obligation of the consolidated Debtors on and after the Effective Date. Upon the Effective Date, all Intercompany Claims shall be cancelled and extinguished. Holders of Intercompany Claims shall not receive any distribution or retain any property pursuant to the Plan.

16.     The substantive consolidation effected pursuant to Article IV.A of the Plan shall not affect (other than for purposes related to funding distributions under the Plan and as set forth in Article IV.A of the Plan), among other things, (a) the legal and organizational structure of the

Debtors, (b) any Causes of Action, (c) defenses to any Causes of Action or requirements for any third party to establish mutuality to assert a right of setoff, or (d) distributions out of any insurance policies or proceeds of such policies. The Plan and Disclosure Statement, jointly, shall serve as, and shall be deemed to be, a motion for entry of an Order of this Court approving the substantive consolidation of the Debtors' Estates and Chapter 11 Cases. Notwithstanding the substantive consolidation provided for in the Plan and approved by this Confirmation Order, each and every Debtor shall remain responsible for the payment of U.S. Trustee fees pursuant to 28 U.S.C. section 1930 until its particular case is closed, dismissed or converted.

### Plan Distributions

17.    The Liquidating Trustee shall make all distributions required to be made to Holders of Allowed Claims pursuant to the Plan and the Liquidating Trust Agreement. The Liquidating Trust shall hold and distribute the Liquidating Trust Assets, the Administrative/Priority Claims Reserve Account, and the Other Secured Claims Reserve Account in accordance with the provisions of the Plan and the Liquidating Trust Agreement.

18.    The Liquidating Trustee shall make all distributions required to be made to such Holders of Allowed Claims pursuant to the Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of the Liquidating Trustee's duties as disbursing agent unless otherwise ordered by this Court.

19.    Except to the extent provided in section 506(b) of the Bankruptcy Code, the Plan, or this Confirmation Order, postpetition interest shall not accrue or be paid on Claims, and no Holder of an Allowed Claim shall be entitled to interest accruing on any Claim from and after the Petition Date.

## Administration of the Liquidating Trust

20. The Liquidating Trust Agreement, substantially in the form filed with the Plan Supplement, is hereby approved.

21. The appointment of META Advisors LLC as the Liquidating Trustee is hereby approved. The Liquidating Trustee shall be compensated in the manner set forth in and consistent with the Liquidating Trust Agreement. The Liquidating Trustee shall have all powers, rights, duties and protections afforded the Liquidating Trustee under the Plan, this Confirmation Order, and the Liquidating Trust Agreement. The appointment of the parties set forth in the Liquidating Trust Agreement as the members of the Liquidating Trust Oversight Committee are hereby approved. The Liquidating Trust Oversight Committee shall have all powers, rights, duties and protections afforded the Liquidating Trust Oversight Committee under the Plan, this Confirmation Order, and the Liquidating Trust Agreement.

## Executory Contracts and Unexpired Leases

22. On the Effective Date, except as otherwise provided herein, each of the Debtors' Executory Contracts and Unexpired Leases not previously assumed or rejected pursuant to an order of this Court shall be deemed rejected as of the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code except any Executory Contract or Unexpired Lease (a) identified on the Assumed Executory Contract and Unexpired Lease List as an Executory Contract or Unexpired Lease designated for assumption, (b) which is the subject of a separate motion or notice to assume or reject Filed by the Debtors and pending as of the Confirmation Hearing, (c) that previously expired or terminated pursuant to its own terms, or (d) that was previously assumed or rejected by any of the Debtors.

23. On the Effective Date, the Debtors shall assume all of the Executory Contracts and Unexpired Leases listed on the Assumed Executory Contract and Unexpired Lease List

01:24280532.1

contained in the Plan Supplement. The Executory Contracts listed on the Assumed Executory Contract and Unexpired Lease List which are listed on Exhibit A to the Tribou Declaration shall, on the Effective Date and following assumption by the Debtors, be assigned to Apex and the Unexpired Leases listed on the Assumed Executory Contract and Unexpired Lease List which are listed on Exhibit A to the Tribou Declaration shall, on the Effective Date and following assumption by the Debtors, be assigned to Paradies-Chicago, LLC. All assumed Executory Contracts and Unexpired Leases listed on the Assumed Executory Contract and Unexpired Lease List which are not listed on Exhibit A to the Tribou Declaration shall become Liquidating Trust Assets and shall be transferred to the Liquidating Trust on the Effective Date; *provided* that with respect to the Master Subscription and Services Agreement, including the Commerce Platform Services Production Subscription (as may have been amended, modified, or supplemented, the "MSA") with Demandware, LLC ("Demandware"), a Salesforce.com, Inc. company, dated April 20, 2015, the Plan Proponents, Apex, and Demandware agree that (a) the cure amount for the MSA shall be $0.00 and (b) to the extent any Proofs of Claim or requests for payment have been filed, or are at any point in the future filed in the Chapter 11 Cases by or on behalf of Demandware, the Debtors or the Liquidating Trustee, as applicable, are authorized to disallow and expunge such claims from the claims register without further order of the Court. On the Effective date, the MSA will be deemed assumed and assigned to Apex and Apex will be deemed the "Customer" under the MSA. This Confirmation Order shall constitute an order of this Court approving any such assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

24.    **Unless otherwise provided by a separate Court order, any Proofs of Claim asserting Rejection Claims pursuant to the Plan or otherwise must be Filed with the Claims**

and Balloting Agent no later than the later of 35 days after the Effective Date or 35 days after the effective date of rejection. Rejection Claims shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan, as applicable. Any Rejection Claims that are not timely Filed pursuant to Article V.B of the Plan shall be forever disallowed and barred.

### Transfer of Apex Assets

25.     Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtors are authorized to transfer and assign the assets set forth on Exhibit B to the Tribou Declaration (and described in more detail therein) (collectively, the "Apex Assets"), to Apex in exchange for the Apex Consideration (as defined in the Tribou Declaration). The Apex Assets shall be transferred to Apex and, upon the Effective Date, such transfer shall (a) be valid, legal, binding, and effective, (b) vest Apex with all right, title, and interest of the Debtors in the Apex Assets, and (c) be free and clear of any charge, lien, claim, right, demand, mortgage, lease, debt, losses, damage, demand, fine, judgment, penalty, Liability, obligation, commitment, assessment, cost, expense, loss, expenditure, charge, fee, penalty, fine, contribution, premium, covenants not to sue, licenses, sublicenses and other similar rights, sublease, hypothecation, deed of trust, pledge, security interest, option, right of use or possession, right of first offer or first refusal, rights of others, easement, restrictive covenant, right of way, preemptive right, conditional sale, servitude, conditional sale agreement or restriction (whether on voting, sale, transfer, defenses, set-off or recoupment rights, disposition or otherwise), encroachment, encumbrance, third party interest or other restriction or limitation of any kind, whether imposed by contract, legal requirement, equity or otherwise, including any

"interest" as that term is used in section 363(f) of the Bankruptcy Code, of any and every kind, nature, and description in accordance with section 363(f) of the Bankruptcy Code.

26.    The transfer and assignment of the Apex Assets is undertaken without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the transfer and assignment of the Apex Assets shall not affect the validity of such transactions, unless such authorization and consummation of such transaction is duly stayed pending such appeal. Apex is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code. As a good-faith purchaser, Apex has not colluded with any of the other parties and, therefore, the transfer and assignment of the Apex Assets pursuant to this Confirmation Order may not be avoided pursuant to section 363(n) of the Bankruptcy Code. The transfer of the Apex Consideration to the Debtors, including, without limitation, the waiver of liabilities in connection therewith, is authorized. The transfer and assignment of the Apex Assets is "AS IS-WHERE IS," without any representations or warranties of any kind from the Debtors.

**Disputed Claims**

27.    Except as otherwise specifically provided in the Plan, this Confirmation Order and the Liquidating Trust Agreement, after the Effective Date, the Liquidating Trustee shall have the sole authority (a) to file, withdraw, or litigate to judgment objections to Claims, (b) to settle, compromise, or Allow any Claim or Disputed Claim without any further notice to or action, order, or approval by this Court except as otherwise provided in the Plan or Liquidating Trust Agreement, (c) to amend the Schedules in accordance with the Bankruptcy Code, and (d) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by this Court. Any agreement entered

into by the Liquidating Trustee (acting in accordance with the terms of the Liquidating Trust Agreement) with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim.

28.     **All objections to Claims shall be Filed by the Liquidating Trustee on or before the Claim Objection Deadline, which date may be extended by this Court upon a motion filed by the Liquidating Trustee on or before the Claim Objection Deadline with notice only to those parties entitled to notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002 as of the filing of such motion.**

**Administrative Claims**

29.     **All requests for payment of an Administrative Claim must be Filed with this Court and served on counsel to the Liquidating Trustee, counsel to the Debtors, and counsel to the U.S. Trustee no later than the Administrative Claim Bar Date;** *provided,* *however,* **that Persons that asserted administrative claims with a timely filed Proof of Claim for prepetition Claims or Rejection Claims do not need to file additional requests for payment of such Administrative Claims.** In the event of an objection to allowance of an Administrative Claim, this Court shall determine the Allowed amount of such Administrative Claim.

30.     Notwithstanding any terms in the Plan or this Confirmation Order to the contrary, a Holder of a Claim related to the Cigna Contract (a "Cigna Claimant") shall not be required to File a request for Allowance or payment of an Administrative Claim as a condition of having an Allowed Administrative Claim. For the avoidance of doubt, each Cigna Claimant must otherwise fully comply with all terms of any applicable contract, policy, or other document or agreement, including, without limitation, the Cigna Contract, with respect to Filing a Claim in these Chapter

11 Cases and with respect to any other relevant requirement of such contract, policy, or other document or agreement.

31.    Notwithstanding any terms in the Plan or this Confirmation Order to the contrary, pursuant to section 503(b)(1)(D) of the Bankruptcy Code, the Texas Comptroller of Public Accounts ("Texas Comptroller") shall not be required to File a request for Allowance or payment of an Administrative Claim as a condition of having an Allowed Administrative Claim. The Liquidating Trustee shall report and pay the Texas franchise tax for postpetition tax periods (2019 annual and 2019 final) when due under and in accordance with state law. Any setoff rights of the Texas Comptroller are preserved pursuant to section 553 of the Bankruptcy Code.

### Professional Fee Claims

32.    **All final applications for payment of Professional Fee Claims must be Filed with this Court and served on counsel to the Plan Proponents, counsel to the Liquidating Trustee, and counsel to the U.S. Trustee no later than the Professional Fee Claims Bar Date (4:00 p.m. prevailing Eastern Time on the date that is 60 days after the Effective Date), unless otherwise ordered by this Court or such later date is agreed to by the Liquidating Trustee. Objections to such applications must be Filed and served on counsel to the Plan Proponents, counsel to the Liquidating Trustee, counsel to the U.S. Trustee, and the requesting Professional Person on or before the date that is 14 days after the date on which the applicable application was served (or such longer period as may be allowed by Order of this Court or by agreement with the requesting Professional Person).**

33.    All Professional Fee Claims shall be paid by the Liquidating Trust to the extent approved by Order of this Court on or as soon as reasonably practical after the first Business Day following the date upon which such Claim becomes Allowed, unless such Holder shall agree to a different treatment of such Claim. Prior to the Effective Date, the Debtors shall establish the

Administrative/Priority Claims Reserve Account, which shall include funds to be used to pay Professional Fee Claims unless and until all Professional Fee Claims have been paid in full, otherwise satisfied, or withdrawn. The Administrative/Priority Claims Reserve Account shall vest in the Liquidating Trust and shall be maintained by the Liquidating Trustee in accordance with the Plan, the Implementation Memorandum, and the Liquidating Trust Agreement.

### Release, Injunction, Exculpation and Related Provisions

34.     The release, injunction, exculpation, and related provisions set forth in Article VIII of the Plan are hereby approved and authorized in their entirety, and such provisions are effective and binding on all Persons and Entities as and to the extent provided for therein.

35.     **Releases**. As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Releasing Parties will be deemed to release and forever waive and discharge the Released Parties from and against all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date (including prior to the Petition Date) in any way relating to the Debtors, the Chapter 11 Cases, the Plan, the Disclosure Statement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, including, without limitation, the administration of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Plan Supplement, the Disclosure Statement, or related agreements, instruments, or other documents, or any other act, omission, transaction,

01:24280532.1

agreement, event, or other occurrence taking place before the Effective Date and that could have been asserted by or on behalf of the Debtors or their Estates at any time on or prior to the Effective Date against the Released Parties, except that the Releasing Parties will not be deemed to release, waive, or discharge the Released Parties from and against any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct or gross negligence. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or any Executory Contract or Unexpired Lease assumed during the Chapter 11 Cases or under the Plan.

36.    Each Holder of a Claim in Class 3 shall be a Releasing Party and, as such, provides the releases set forth in Article VIII.B.1 of the Plan, unless such Holder votes to reject the Plan and timely submits a Release Opt-Out indicating such Holder's decision to not participate in the releases set forth in Article VIII.B.1 of the Plan. For the avoidance of doubt, each Holder of a Claim in Class 3 that votes to accept the Plan is a Releasing Party and any Release Opt-Out that might be submitted by any such Holder that voted to accept the Plan shall be void and of no effect.

37.    Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors and their Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to

the Debtors and their successors and assigns, including the Liquidating Trust, in accordance with the Plan.

38.    **Exculpation**. Except as otherwise specifically provided in the Plan, each Debtor, each Estate, and each Exculpated Party is hereby released and exculpated from any claim, obligation, Cause of Action, or liability for any Exculpated Claim, except to the extent such claim, obligation, Cause of Action, or liability arises from willful misconduct or gross negligence, but in all respects such released Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Debtors, the Estates, and the Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with applicable law with regard to the transactions and treatment of Claims and Interests in the Chapter 11 Cases and in connection with the Plan Transactions, the negotiation, formulation, or preparation of the Plan Documents or related agreements, instruments, or other documents in connection with the Plan, and the distribution of and the solicitation of votes on the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Without limiting the generality of the foregoing, each Debtor, each Estate, and each Exculpated Party shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code. Notwithstanding anything to the contrary in the foregoing, the releases and exculpations set forth above do not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed or deemed executed to implement the Plan, or

any Executory Contract or Unexpired Lease assumed during the Chapter 11 Cases or under the Plan.

39.    **Injunction**. Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Parties and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Interest, from taking any of the following actions against, as applicable, any Estate, any Released Party, the Liquidating Trust, their respective successors and assigns, and any of their respective assets and properties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, Causes of Action or interests, (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Released Parties (other than the Debtors) on account of or in connection with or with respect to any such claims, Causes of Action or interests, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Released Parties (other than the Debtors), or their respective property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests, (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Released Parties (other than the Debtors) or against their respective property or estates on account of or in connection with or with respect to any such claims, Causes of Action or interests unless such Entity has timely asserted such setoff right before Confirmation in a Proof of Claim or document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim, Cause of Action or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise, and (v) commencing or continuing in any manner any action or other proceeding of any kind on account

of or in connection with or with respect to any such claims, Causes of Action or interests released or settled pursuant to the Plan. Notwithstanding the foregoing, or any of the releases, discharges, injunctions or waivers set forth herein, nothing in the Plan or the Confirmation Order shall modify the rights, if any, of any counterparty to an unexpired lease of non-residential real property to assert any right of setoff or recoupment that such counterparty may have under applicable bankruptcy or non-bankruptcy law, including, but not limited to, the ability, if any, of such counterparties to setoff or recoup a security deposit held pursuant to the terms of their unexpired lease with the Debtors or the Liquidating Trust.

40.    Notwithstanding anything to the contrary contained in this Confirmation Order or in the Plan, nothing in this Confirmation Order or in the Plan shall release or otherwise limit or impact QBE Insurance Corporation and its affiliated insurance companies, including without limitation, Praetorian Insurance Company, Stonington Insurance Company, and General Casualty Company of Wisconsin's ability to assert claims (including, without limitation, guaranty claims) against Sanpower (Hong Kong) Company Limited. Notwithstanding anything to the contrary contained in this Confirmation Order or in the Plan, including Article VIII.F of the Plan, any and all rights of recoupment and/or setoff belonging to (a) Bed Bath & Beyond, Inc. and Bed Bath & Beyond Canada L.P. or any of their affiliates (collectively, "BBB") with respect to any of the Debtors and (b) any of the Debtors with respect to BBB are expressly reserved and preserved; and nothing in this Confirmation Order or in the Plan shall operate to prevent the effectuation of any recoupment and/or setoff by BBB or any of the Debtors or otherwise impair any recoupment and/or setoff rights of BBB or any of the Debtors. Notwithstanding anything to the contrary contained in this Confirmation Order or in the Plan, any and all rights of setoff belonging to (a) GGP Inc., Jones Lang LaSalle Americas, Inc., and

Turnberry Associates (collectively, the "Landlords") with respect to any of the Debtors and (b) any of the Debtors with respect to the Landlords are expressly reserved and preserved; and nothing in this Confirmation Order or in the Plan shall operate to prevent the effectuation of any setoff by the Landlords or any of the Debtors or otherwise impair any setoff rights of the Landlords or any of the Debtors, including, without limitation, any requirement pursuant to the Plan that an Entity must timely assert such setoff right before Confirmation in a Proof of Claim or document Filed with the Bankruptcy Court explicitly preserving such setoff.

41.    Notwithstanding anything contained in the Plan, the Confirmation Order, or related Plan documents (collectively, the "Documents"): nothing in the Documents shall (a) release, enjoin, or discharge any non-Debtor from any claim, liability, interest, suit, right or cause of action of the United States, (b) affect or impair any rights of the United States to assert setoff and recoupment against the Debtors and/or the Liquidating Trust and such rights are expressly preserved, (c) be construed as a compromise or settlement of any claim, liability, suit, right, cause of action, or interest of the United States, (d) constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy law, (e) divest any tribunal of any jurisdiction it may have to interpret the Documents or to adjudicate any defense asserted under the Documents, (f) expand the scope of Section 505 of the Bankruptcy Code, or (g) require the United States to File a request for Allowance or payment of an Administrative Claim as a condition of having an Allowed Administrative Claim. Administrative Claims of the United States Allowed pursuant to the Plan or the Bankruptcy Code shall be paid in full in cash and shall accrue interest and penalties as provided by non-bankruptcy law until paid in full.

## Payment of Statutory Fees

42.     All fees payable pursuant to section 1930 of title 28 of the Judicial Code, as determined by this Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the Debtors or the Liquidating Trustee on behalf of each of the Debtors, on the Effective Date, and following the Effective Date, the Debtors or the Liquidating Trustee on behalf of each of the Debtors, as applicable, shall pay such fees as they are assessed and come due for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first. The Liquidating Trust shall have the obligation to file quarterly post-confirmation operating reports and to pay quarterly fees to the Office of the United States Trustee pursuant to section 1930 of title 28 of the Judicial Code for each and every Debtor until its particular case is closed, dismissed or converted. Notwithstanding anything to the contrary in the Plan, the U.S. Trustee shall not be required to file any proofs of claim with respect to quarterly fees payable pursuant to section 1930 of title 28 of the Judicial Code.

## Termination of Debtors' Professionals

43.     Effective immediately upon the filing of the Notice of Confirmation and Effective Date, the Debtors' retention of Gibson, Dunn & Crutcher LLP ("GDC") and Young Conaway Stargatt & Taylor, LLP ("YCST") as bankruptcy counsel to the Debtors, Berkeley Research Group, LLC ("BRG") as financial advisor to the Debtors, GLC Advisors & Co., LLC and GLCA Securities, LLC (together, "GLC") as investment banker to the Debtors, and Marc Heimowitz as an independent director of the Debtors shall be terminated without the need for further action on the part of this Court, the Debtors, the Liquidating Trustee, or any other party; *provided, however,* that GDC, YCST, BRG, and GLC shall continue to be retained with respect to applications Filed or to be Filed pursuant to sections 330 and 331 of the Bankruptcy Code.

### Dissolution of the Committee

44.     On the Effective Date, the Committee shall dissolve and all members, ex officio members, employees, attorneys, financial advisors, other Professional Persons, or other agents thereof shall be released and discharged from all rights and duties arising from or related to the Chapter 11 Cases, *provided*, *however*, following the Effective Date, the Committee shall continue to have standing and a right to be heard with respect to (a) Claims and/or applications for compensation by professionals and requests for allowance of Administrative Expenses for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code, (b) any appeals of this Confirmation Order that remain pending as of the Effective Date to which the Committee is a party, and (c) responding to creditor inquiries for 180 days following the Effective Date.

### Notice of Entry of Confirmation Order and Effective Date

45.     Pursuant to Bankruptcy Rules 2002 and 3020(c), the Plan Proponents or the Debtors, on the Plan Proponents' behalf, are hereby authorized to serve a notice of entry of this Confirmation Order and the occurrence of the Effective Date, substantially in the form attached hereto as Exhibit B (the "Notice of Confirmation and Effective Date") on the Effective Date, on all Holders of Claims against or Interests in the Debtors and all other Persons on whom the Confirmation Hearing Notice was served. The form of the Notice of Confirmation and Effective Date is hereby approved in all respects. The Notice of Confirmation and Effective Date shall constitute good and sufficient notice of the entry of this Confirmation Order and of the relief granted herein, including, without limitation, any bar dates and deadlines established under the Plan and this Confirmation Order, and no other or further notice of the entry of this Confirmation Order, the occurrence of the Effective Date, and any such bar dates and deadlines need be given.

01:24280532.1

### Retention of Jurisdiction

46.     Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by this Court, this Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, to take the actions specified in Article XII of the Plan.

### References to Plan Provisions

47.     The failure to specifically include or to refer to any particular article, section, or provision of the Plan or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, and such article, section, or provision shall have the same validity, binding effect, and enforceability as every other article, section, or provision of the Plan, it being the intent of this Court that the Plan (as and to the extent modified by this Confirmation Order) be confirmed in its entirety.

### Rules Governing Conflicts Between Documents

48.     In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement and any other Order in the Chapter 11 Cases, or any other agreement to be executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take precedence; *provided, however*, that this Confirmation Order shall control and take precedence in the event of any inconsistency between this Confirmation Order, any provision of the Plan, and any of the foregoing documents.

### Extension of Injunctions and Stays

49.     Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (including any injunctions

or stays contained in or arising from the Plan or this Confirmation Order), shall remain in full force and effect.

## Section 1146 Exemption

50.    Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated by the Plan, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or any similar tax or fee.

## Headings

51.    Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

01:24280532.1

### No Stay of Confirmation Order

52.     Notwithstanding Bankruptcy Rules 3020(e) and 6004(h) and any other

Bankruptcy Rule to the contrary, to the extent applicable, there is no reason for delay in the

implementation of this Confirmation Order and, thus, this Confirmation Order shall be effective

and enforceable immediately upon entry.

Dated: March 20, 2019
      Wilmington, Delaware

                                   Brendan L. Shannon
                                   United States Bankruptcy Judge